1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

10

11

12

13

14

15

16

| | |
|---|---|
| KATHERINE MOUSSOURIS, HOLLY MUENCHOW, and DANA PIERMARINI, on behalf of themselves and a class of those similarly situated,<br><br>                    Plaintiffs,<br><br>            v.<br><br>MICROSOFT CORPORATION<br><br>                    Defendant. | Case No.  15 cv 1483 (JLR)<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**(Trial by Jury Demanded)** |

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs Katherine Moussouris, Holly Muenchow, and Dana Piermarini ("Plaintiffs"), on

behalf of themselves and all others similarly situated, allege as follows:

### <u>SUMMARY OF CLAIMS</u>

1.      Plaintiffs bring this action alleging violations of Title VII of the Civil Rights Act

of 1964, 72 U.S.C. §§ 2000e *et seq*. ("Title VII"), and the Washington Law Against

Discrimination, Rev. Code Wash. § 49.60.010. *et seq*., to challenge Microsoft Corporation's

("Microsoft") continuing policy, pattern, and practice of sex discrimination against female

employees in technical and engineering roles, including technical sales and services positions

("female technical employees") with respect to performance evaluations, pay, promotions, and

other terms and conditions of employment.  Microsoft has implemented these policies and

practices despite knowing that they have a longstanding disparate impact on female technical

1    employees.  Microsoft also retaliates against female technical employees who complain about this
2    discrimination.

3         2.      Microsoft is a global provider of software and software-related services as well as
4    hardware devices.  In 2015, Microsoft generated $93.6 billion dollars in net revenue and $12.2
5    billion dollars in net income.  Microsoft is a major employer, with a headcount of approximately
6    118,000 full-time employees in 2015, many of whom are technical employees.

7         3.      As a result of Microsoft's policies, patterns, and practices, female technical
8    employees receive less compensation and are promoted less frequently than their male
9    counterparts.  Microsoft's company-wide policies and practices systematically violate female
10   technical employees' rights and result in the unchecked gender bias that pervades its corporate
11   culture.  The disadvantage to female technical employees in pay and promotion is not isolated or
12   exceptional, but rather the regular and predictable result of Microsoft's policies and practices and
13   lack of proper accountability measures to ensure fairness.

14        4.      In addition to bringing this action on behalf of themselves, Plaintiffs also bring this
15   action on behalf of a class of similarly situated current and former female technical employees
16   employed by Microsoft in the United States (the "Class"), in order to end Microsoft's
17   discriminatory policies and practices and to make the Class whole.

18                              **THE PARTIES**
19   **Plaintiff Katherine Moussouris**

20        5.      Plaintiff Katherine Moussouris is a woman who lives in Kirkland, Washington.
21   She is a citizen of the United States.

22        6.      Ms. Moussouris was employed by Microsoft from approximately April 2007 to
23   May 30, 2014 in Redmond, Washington.
24   **Plaintiff Holly Muenchow**

25        7.      Plaintiff Holly Muenchow is a woman who lives in Woodinville, Washington.
26   She is a citizen of the United States.

27        8.      Ms. Muenchow has been employed by Microsoft since approximately September
28   2002 in Redmond, Washington.

**Plaintiff Dana Piermarini**

9.      Plaintiff Dana Piermarini is a woman who lives in Leesburg, Virginia.  She is a citizen of the United States.

10.      Ms. Piermarini has been employed by Microsoft since approximately September 2006.

**Defendant**

11.      Defendant Microsoft is a corporation formed under the laws of the State of Washington with its corporate headquarters within the city of Redmond, King County, at One Microsoft Way, Redmond, Washington 98052-7329.

12.      Upon information and belief, Microsoft's headquarters in the State of Washington maintains control, oversight, and direction over the operation of its facilities, including its employment practices.

13.      During all relevant times, Microsoft was Plaintiffs' employer within the meaning of all applicable statutes.

14.      At all times pertinent hereto, Microsoft has employed more than five hundred people.

**JURISDICTION AND VENUE**

15.      This Court has original subject matter jurisdiction over Title VII claims pursuant to 28 U.S.C. § 1331 and 1343 and 42 U.S.C. § 2000e-5(f)(3), because they arise under the laws of the United States and are brought to recover damages for deprivation of equal rights.

16.      This Court has jurisdiction over the Washington Law Against Discrimination claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which: (a) there are 100 or more members in the proposed class; (b) at least some members of the proposed class have a different citizenship from Defendant; and (c) the claims of the proposed class members exceed $5,000,000 in the aggregate.

17.      In addition, this Court has supplemental jurisdiction over the Washington Law Against Discrimination claims because they arise from a common nucleus of operative facts with

**SECOND AMENDED CLASS ACTION COMPLAINT**

the federal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

18.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)-(c) and 42 U.S.C. § 2000e-5(f)(3), because Microsoft maintains offices in this district, conducts business in this district, and a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this district, and because the alleged unlawful employment practices were committed here, and employment records relevant to those practices are maintained and administered here.

19.     The Western District of Washington has personal jurisdiction over Microsoft because it maintains offices in this District, does business in Washington and in this district, and because many of the acts complained of and giving rise to the claims alleged herein occurred in Washington and in this District.

20.     Plaintiffs have exhausted their administrative remedies and complied with all statutory prerequisites to their Title VII claims.  Plaintiff Katherine Moussouris filed a charge of gender discrimination and retaliation individually and on behalf of all similarly situated female technical employees employed by Microsoft with the Equal Employment Opportunity Commission ("EEOC") on May 14, 2014.  The EEOC charge is attached as Exhibit A (and incorporated herein).  By notice dated June 29, 2015, the EEOC issued a Notice of Right to Sue. The original complaint in this action was filed within ninety days of the Notice of Right to Sue. Where applicable, under the Ninth Circuit's application of the single-filing rule, Muenchow is not required to have filed a separate charge of gender discrimination and retaliation with the EEOC, but instead may piggy-back off the previous filing of Moussouris, because Moussouris's EEOC charge relates to the same claims that Muenchow asserts.

21.     Where applicable, under the Ninth Circuit's application of the single-filing rule, Piermarini is not required to have filed a separate charge of gender discrimination and retaliation with the EEOC, but instead may piggy-back off the previous filing of Moussouris, because Moussouris's EEOC charge relates to the same claims that Piermarini asserts.

**SECOND AMENDED CLASS ACTION COMPLAINT**

**FACTUAL ALLEGATIONS**

22.     Microsoft maintains uniform employment, compensation, performance review, and promotion policies throughout the United States.  Microsoft also cultivates and promotes a common corporate culture. These policies and this culture originate in Microsoft's headquarters in the State of Washington, and are disseminated to its offices in the rest of the country.

23.     Microsoft's offices throughout the U.S. use a common organizational structure, organizing technical employees by levels.

24.     In positions that Microsoft categorizes as "Tech" in nature, only 16.9% of employees are female, while 83% are male.[1]

25.     Microsoft discriminates against female technical employees in (1) performance evaluations; (2) compensation; and (3) promotions.

**Performance Evaluations**

26.     Microsoft uses uniform, unvalidated, and unreliable procedures for evaluating employee performance that systematically undervalue female technical employees relative to their similarly situated male peers.  This has been true throughout the class period, although Microsoft changed some aspects of its performance review system in 2013.

**2011-2013 – "Stack Ranking"**

27.     For many years and continuing through 2013, Microsoft used a companywide "stack ranking" system for evaluating employee performance, which force ranked employees from best to worst using a performance rating from 1 through 5, with 1 being best, and 5 being worst.  Only a certain percentage of employees in a defined peer group could be assigned a certain rank – for example, 20% of employees could receive a 1, 20% a 2, 45% a 3, 10% a 4, and the remaining 5% received a 5.

28.     This process is an invalid performance measurement system, as it sets arbitrary cutoffs among performers with similar performance.  The stack ranking process forces a

---

[1] *See* Our Workforce 2015: Tech, Microsoft Corporation, *available at* https://www.microsoft.com/en-us/diversity/inside-microsoft/default.aspx#epgDivFocusArea (last visited April 5, 2016); *see also* Request for Judicial Notice Ex. A, Dkt. 30-1.

distribution of performance ratings outcomes (from 1 through 5) regardless of whether there are meaningful performance differences between individual employees within a particular peer group.

29.     Worse still, an employee's rank was not based on valid and reliable performance measures.  Microsoft instructed managers to evaluate employees based on three criteria: 1) "the What," which assessed their results against their "commitments"; 2) "the How," which assessed how the results were accomplished as demonstrated through  "competencies"; and 3) "Proven Capability," which assessed whether the employees had a demonstrated history of taking on more challenging work while continuing to deliver results.  Microsoft did not instruct managers to assign the three inputs any particular weight in undertaking this process.  Microsoft also did not ensure that managers were trained to assess these inputs in uniform and consistent ways to ensure reliability.  In fact, managers' assignment of employees' ranking relative to their peers was untethered from any kind of valid performance metric that could be reliably compared from one employee to another.  The "How," for example, involves the questions, "Did the employee effectively collaborate, exhibit judgment, and demonstrate adaptability?" and "What was the impact the employee had on others' results through how the employee worked?"  Microsoft describes the "Proven Capability" metric as "a demonstrated history of taking on more challenging work while continuing to deliver results," which is similarly unreliable and susceptible to inconsistent and biased measurement.  Managers were instructed to use the three unreliable qualitative assessments of employees' performance (that is, "the What," "the How," and "Proven Capability") in assigning the employees in their review group a recommended ranking from best to worst (1 through 5).

30.     To gather information on employees in these three areas, Microsoft gave employees the opportunity to nominate certain individuals to provide input on their performance.  Microsoft managers, however, had the ability to add or remove reviewers at their election.  Accordingly, they were able to influence the performance evaluation process by controlling which individuals would ultimately provide feedback on a particular employee.

SECOND AMENDED CLASS ACTION COMPLAINT

31.     Technical employees were organized into peer groups to be rated against one another in a so-called "calibration meeting."  These meetings were attended by managers ("Calibration Managers"), who presented the merits of their own employees and attempted to discredit the merits of the other Calibration Managers' employees.  The Calibration Managers did not follow a reliable standard for ensuring consistency of review and comparison across performers.  After a week of such meetings, the "Calibration Owner" (the manager of the Calibration Managers, typically a Director or Partner) would finally resolve the order of the stack for all employees discussed in a given meeting.  Because of the lack of reliable metrics, an employee could end up on the bottom of the stack, regardless of her actual performance record and regardless of the rank her Manager originally recommended.

32.     After conclusion of the calibration meetings, the results were rolled up as "ratings recommendations" to be reviewed and approved by the leadership of each organization within Microsoft, typically by a high-level manager, such as a Corporate Vice President and/or Executive Vice President.  During this third-tier review, employees' rankings could shift if the higher-level manager determined that the distribution needed to be adjusted.

33.     This forced ranking process took place twice each year, with the mid-year stack ranking used as a mechanism to determine mid-year promotions, and the end of year stack ranking used for compensation and year-end promotion decisions.

34.     In this system, female technical employees were systematically undervalued compared to their male peers because as a group they received, on average, lower rankings despite equal or better performance.  Upon information and belief, female employees were most adversely impacted by the calibration meetings, where the vast majority (over 80%)[2] of attending managers were men. The proportion of men in management roles only increases at higher levels of the organization, including with each successive review of the ratings recommendations.

---

[2] *See* Our Workforce 2015: Leadership, Microsoft Corporation, *available at* https://www.microsoft.com/en-us/diversity/inside-microsoft/default.aspx (last visited April 5, 2016).

SECOND AMENDED CLASS ACTION COMPLAINT

35.     Predictably, performance management systems that include unreliable and invalid criteria create inaccurate and biased outcomes.  Social science research describes the reasons why such inaccurate performance measurements systematically disadvantage women, particularly where women work in male-dominated roles and where evaluators are men, as is frequently the case at Microsoft.[3]

36.     Upon information and belief, Microsoft's stack ranking system has had an adverse impact upon female employees.

**2014-Present – "Connect" (or, stack ranking by a different name)**

37.     In 2014, Microsoft implemented a similar stack ranking system called Connect to manage employee performance evaluation.  This system is still in place today.

38.     The Connect system is a similarly unvalidated and unreliable discriminatory performance evaluation procedure that systematically undervalues female technical employees relative to their male peers, and results in lower scores than men in similar positions despite equal or better performance.

39.     Within Connect, managers rate their direct reports based upon the employees' "impact."  Impact includes three factors: "key individual accomplishments that contribute to team, business, or customer impact"; "your contributions to the success of others"; and "your results that build on the work, ideas, or efforts of others."  The Connect tool contains a horizontal bar with a marker that can slide from left (low impact) to right (high impact).  Managers place the marker somewhere on the scale for each employee, and can also enter a brief justification for the impact assessment (1,000 characters or less).  Managers are not trained to calibrate their ratings to a common understanding of performance across reviewers.

---

[3] *See, e.g.*, Alice H. Eagly, Mona G. Makhijani and Bruce G. Klonsky, *Gender and the Evaluation of Leaders: A Meta-analysis*, 111 (1) Psychological Bulletin 3, 3-22 (Jan. 1992) (observing that devaluation of women's performance is greater when women leaders "occupied male-dominated roles and when the evaluators were men"); Karen S. Lyness and Madeline E. Heilman, *When Fit is Fundamental: Performance Evaluation and Promotions of Upper-level Female and Male Managers*, 91 (4) Journal of Applied Psychology 777, 777-85 (2006) ("[N]egative expectations resulting from perceptions of lack of fit detrimentally affect how women are regarded and how their work is evaluated when they are in traditionally male jobs.").

**SECOND AMENDED CLASS ACTION COMPLAINT**

40.     Next, managers attend "People Discussions" with the other managers in their organization, and the managers' leader.  Managers discuss impact recommendations and who deserves the highest scores.  The impact recommendations are then rolled-up to the leader, who can adjust where employees fall on the impact spectrum based on the leader's perceptions of impact.  Those results are then rolled up through the management chain, with each subsequent level of manager adjusting results, until the organization's leader makes a final determination.

41.     While different in form, this system functions much like stack ranking in substance, forcing a distribution of performance scores, with a similarly adverse impact on female technical employees, for the same reasons.

**Compensation**

42.     Microsoft employs uniform, unvalidated, and unreliable procedures for determining employees' compensation that disparately impact female professionals.

43.     Microsoft determines employees' compensation primarily by their performance review results.  Because female technical employees systematically receive worse results, they also earn less than their male peers.

44.     Under both the stack ranking and Connect performance review processes, compensation has been determined by performance rating and job level (e.g., 59, 60, 61, etc.). Class members' compensation has included three components: salary, bonus, and stock awards. After each year-end review, class members are eligible for a merit increase to base salary, a "performance review bonus," and "performance review stock awards."  Whether, and how much, an employee receives in any of these categories is determined by her performance rating and her job level.

45.     For example, during the stack ranking era, employees ranked as 5's received no merit increase, no bonus, and no stock awards.  Employees ranked as 4's were eligible for a bonus of between 5 to 15% of salary, depending on their level.  Employees ranked as 3's were eligible for a bonus of 10 to 30% of salary, depending on their level, and so forth.  The same type of scale, defined by performance rank and job level, determined merit increases and stock awards.

46.     Under the Connect process, an employee's placement on the "impact" scale determines her merit increase, bonus, and stock awards.  Based on the employee's job level, the placement on the scale automatically correlates with a pre-determined rewards outcome that is designed to make all allocations fit within the organization's overall targets.  As an employee's impact placement changes with each level of management review, so does the employee's compensation outcome.

47.     Because female technical employees have been systematically disadvantaged by both the stack ranking and Connect processes, their compensation likewise has been adversely impacted.

**Promotions**

48.     Microsoft also employs common, unvalidated, unreliable, and discriminatory procedures for selecting employees for promotion.  Because promotions are tied to the performance review process, female technical employees are adversely impacted in promotions as well.

49.     Microsoft does not apply legitimate or objective criteria for promotions of technical employees.  Promotions are not determined by objective, valid, and/or reliable performance measures.  Instead, employee promotions are tap-on-the-shoulder.

50.     Under the stack ranking process, promotions were discussed at the end of the calibration meeting process.  Depending on where employees ended up in the overall rank, their Calibration Managers could identify them as eligible for promotion (or not), while also arguing for or against promotions for other managers' reports.  Promotion recommendations stemming from calibration meetings were then rolled up to organizational leadership for final determination.

51.     Under the Connect process, when managers place their reports on the impact scale, they are also required to check either a "yes" or a "no" button for promotion.  Managers may submit a brief justification for the recommendation (1,000 character limit).  The recommendations are discussed during the "People Discussions," and then submitted and rolled up through the manager's reporting chain for review, along with the overall impact rating.  Each subsequent management level reviews and adjusts promotions decisions along with

SECOND AMENDED CLASS ACTION COMPLAINT

1   impact/compensation outcomes.  Ultimately, as with performance and compensation, final

2   promotion decisions are made by the organization leader.

3          52.     Overall, Microsoft promotes an overwhelmingly disproportionate number of men,

4   and passes over equally or more qualified women.

5                          **CLASS ACTION ALLEGATIONS**

6          53.     Plaintiffs Moussouris, Muenchow, and Piermarini bring this class action pursuant

7   to Federal Rules of Civil Procedure 23(a), (b)(2), and (c)(4) seeking liability-phase injunctive and

8   declaratory relief on behalf of a nationwide Class of all female technical employees employed by

9   Microsoft in the United States at any time from July 18, 2013 through the resolution of this action

10  for claims under Title VII, and for the period from May 14, 2011 through resolution of this action

11  for claims under the Washington Law Against Discrimination.  Plaintiff also brings this class

12  action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) seeking backpay, monetary

13  damages, and other make-whole relief on behalf of a nationwide Class of all female technical

14  employees employed by Microsoft in the United States at any time from July 18, 2013 through

15  the resolution of this action for claims under Title VII, and for the period from May 14, 2011

16  through resolution of this action for claims under the Washington Law Against Discrimination.

17  Excluded from the Class are retail store employees and employees in Microsoft's Legal, Finance

18  and Human Resources departments.  Plaintiffs reserve the right to amend the definition of the

19  Class based on discovery or legal developments.

20         54.     Plaintiffs are members of the Class they seek to represent.

21         55.     The members of the Class identified herein are so numerous that joinder of all

22  members is impracticable.  Microsoft had a headcount of approximately 118,000 full-time

23  employees in 2015.  Although Plaintiffs do not know the precise number of female technical

24  employees at Microsoft, nationwide or in Washington, the number is far greater than can be

25  feasibly addressed through joinder.

26         56.     There are questions of law and fact common to the Class, and these questions

27  predominate over any questions affecting only individual members.  Common questions include:

28

a.      whether Microsoft's policies and practices discriminate against female technical employees;

b.      whether Microsoft's policies and practices violate Title VII and/or the Washington Law Against Discrimination;

c.      whether Microsoft's performance evaluation system discriminates against female technical employees;

d.      whether Microsoft's compensation system discriminates against female technical employees;

e.      whether Microsoft's promotion system discriminates against female technical employees;

f.      whether Microsoft has failed to implement policies and procedures to prevent retaliation against employees who challenge gender discrimination in the workplace, has failed to address complaints of gender discrimination in the workplace, and has failed to conduct proper investigations of the same; and

g.      whether equitable remedies, injunctive relief, compensatory damages, and punitive damages for the Class are warranted.

57.     Plaintiffs' claims are typical of the claims of the Class they seek to represent.

58.     Plaintiffs will fairly and adequately represent and protect the interests of the Class they seek to represent.

59.     Plaintiffs have retained counsel competent and experienced in complex class actions and employment discrimination litigation.

60.     Class certification is appropriate as to each Class pursuant to Federal Rule of Civil Procedure 23(b)(2) because Microsoft has acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the Class they seek to represent.  The Class Members in each Class are entitled to injunctive relief to end Microsoft's common, uniform, unfair, and discriminatory policies and practices.

**SECOND AMENDED CLASS ACTION COMPLAINT**

61.     Class certification is also appropriate as to each Class pursuant to Federal Rule of Civil Procedure 23(b)(3) because for each Class, common questions of fact and law predominate over any questions affecting only individual members of that Class, and because for each Class, a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The Class Members in each Class have been damaged and are entitled to recovery as a result of Microsoft's common, unfair, and discriminatory policies and practices.  Microsoft has computerized account data, payroll data, and personnel data that will make calculation of damages for specific Class Members in each Class relatively simple. The propriety and amount of punitive damages are based on Microsoft's common conduct, making these issues common to each Class.

## CLAIMS OF NAMED PLAINTIFFS

### Plaintiff Katherine Moussouris

62.     Plaintiff Moussouris was hired by Microsoft in April of 2007 as a Security Program Manager in the Trustworthy Computing Group.  During her tenure at Microsoft, Ms. Moussouris consistently achieved and usually exceeded her performance goals, and made significant contributions to Microsoft's business. Yet, as a result of Microsoft's forced ranking process, Ms. Moussouris received lower performance ratings than her male peers, despite having better performance during the same performance period.

63.     For example, in May 2012, Ms. Moussouris's manager told her that she had outstanding performance and had earned a rating of 2.  However, after the forced ranking process, she instead received a 3.

64.     Similarly, in May 2013, Ms. Moussouris's manager again commended her performance and told her she deserved a 1.  After the forced ranking process, Ms. Moussouris received a 2.

65.     Microsoft also paid Ms. Moussouris less than her male peers throughout her tenure at the company.

**SECOND AMENDED CLASS ACTION COMPLAINT**

66.     Microsoft also discriminated against Ms. Moussouris in its promotion process. From 2010 to 2014, Microsoft passed her over for promotions in favor of less qualified and less experienced men.

67.     For example, in 2012, while Ms. Moussouris was on maternity leave, she was not put forward for a promotion to Level 65, Principal Security Strategist, for which she was eligible and eminently well qualified.  In the year prior, Ms. Moussouris had been responsible for an industry-leading initiative that resulted in the highest-rated news announcement for the Microsoft Trustworthy Computing Group.  However, Microsoft instead selected Ms. Moussouris's male colleague, who was less qualified, to be her manager.  Ms. Moussouris's managers from 2011 through 2013 told her that although the impact, quality, and scope of her work had been "Principal-level" for years, certain managers did not like her manner or style, and so Microsoft did not promote her.  Ms. Moussouris was subject to an invalid and gender biased selection process.

68.     In 2013, Ms. Moussouris was again passed over for promotion to Level 65, despite newsworthy new initiatives she created that are still referred to in the security industry.  Instead, Microsoft promoted two less qualified men in the Trustworthy Computing Group, who had not performed the same scope of work as Ms. Moussouris, nor obtained the same level of recognition and accomplishment in the security industry.

69.     Ms. Moussouris also saw other female technical employees passed over for promotion in favor of less-qualified men.  For example, when the director of the Trustworthy Computing Group left, two Principal-level women who had worked for him were not even considered or given the chance to interview for the role.  Instead, Microsoft hired a less-qualified male from outside the company with little to no relevant work experience in managing the specifics of large scale security response in a company with the size and scope of Microsoft.

70.     In 2008, Ms. Moussouris complained about the Director of the Trustworthy Computing Group, who was sexually harassing other women in the Group.  Microsoft investigated and concluded that he had in fact been sexually harassing female employees.  Yet Microsoft's response was to re-assign this male Director to another part of the Trustworthy

SECOND AMENDED CLASS ACTION COMPLAINT

Computing Group, while retaining his title and influence.  Before he was transferred, however, he retaliated against Ms. Moussouris by assigning her a low bonus.  Ms. Moussouris complained about retaliation, but Microsoft took no action.  Since that time, the same Director has been promoted to Senior Director.

71.     Starting in 2013, Ms. Moussouris's manager systematically undermined Ms. Moussouris by reducing the scope of her role, even though her high performance never changed. For example, he took away several of Ms. Moussouris's responsibilities and re-assigned them to a less-qualified and less-experienced man, two levels below Ms. Moussouris.  He also began to assign Ms. Moussouris low-level tasks that he never asked men at Ms. Moussouris's level to do. Ms. Moussouris complained about this unfair treatment, but Microsoft took no action.

72.     Due to the nature and extent of the unfair treatment Ms. Moussouris received, and Microsoft's continued refusal to take any corrective action to address it, Plaintiff was forced to resign on May 30, 2014.

**Plaintiff Holly Muenchow**

73.     Plaintiff Muenchow was hired by Microsoft in September of 2002 as a Software Test Engineer (STE), and was then promoted to I/T Operations ["I/T OPS"] Program Manager in approximately 2007.  In 2012, Ms. Muenchow became a Senior I/T OPS Program Manager, an engineering role where she coordinates product releases to Microsoft clients.

74.     During the Class period, Ms. Muenchow has been subjected to Microsoft's company performance review process, receiving reviews that have not fully recognized her contributions and which have negatively affected her compensation.

75.     In addition, despite her long tenure with Microsoft, Ms. Muenchow has progressed only from a Level 58 to a Level 63.  By contrast, male colleagues have been promoted to higher levels for which she was qualified and not considered.  Ms. Muenchow has observed that women progress more slowly at the company.

76.     As a result of Microsoft's compensation and promotion process, Ms. Muenchow has been paid less than comparable male coworkers in the same position.

**SECOND AMENDED CLASS ACTION COMPLAINT**

77.     Ms. Muenchow believes that Microsoft also disfavors women who take maternity or medical leave, even if it has no impact on their ability to do their job when they are not on leave, thus preventing them from earning top review scores, compensation, or promotions.

**Plaintiff Dana Piermarini**

78.     Plaintiff Piermarini was hired by Microsoft in September of 2006 as a Solutions Specialist in the Sales Division.  Ms. Piermarini has a bachelor's degree in Information Systems with a minor in Computer Science.  In her role as a Solutions Specialist, Ms. Piermarini educates customers on technical aspects of Microsoft products.

79.     During her tenure at Microsoft, Ms. Piermarini has consistently achieved and usually exceeded her performance goals, and made significant contributions to Microsoft's business.

80.     Despite her strong work performance, Ms. Piermarini has progressed only from a Level 62 to a Level 64 over the course of 9 years.  By contrast, male colleagues in comparable positions have been promoted at faster rates.

81.     For example, after returning from maternity leave in 2010 Microsoft denied Ms. Piermarini a promotion from a Level 63 to a Level 64 despite her performance record. Conversely, a male member of her team who was not a top performer received a mid-year 2010 promotion.

82.     Microsoft eventually promoted Ms. Piermarini to a Level 64 in September 2011, where she has stagnated to the present.

83.     Microsoft has and continues to pass her over for promotions in favor of less qualified and less experienced men.

84.     As a result of Microsoft's compensation and promotion process, Ms. Piermarini has been paid less than comparable male coworkers in the same position.

85.     Ms. Piermarini has observed that women progress more slowly and are treated less favorably at Microsoft.

86.     In or around November 2014, Ms. Piermarini asked her manager where she stood in terms of the next level promotion.  He told her that she needed to take on a "big project."

SECOND AMENDED CLASS ACTION COMPLAINT

1   Although this criterion had not been communicated to her previously, nor had it been applied to

2   men who had been promoted in the past, Ms. Piermarini put together a proposal for her manager

3   on her role as lead of a large project.  Although her manager initially expressed support for the

4   role, he refused to provide her any feedback on her proposal.  Several months later, Ms.

5   Piermarini learned through a group email that her manager had assigned the lead role on the

6   project to a male member of the team who was a Level 64 at the time and who has since been

7   promoted to a Level 65.

8       87.    Ms. Piermarini complained to Microsoft Human Resources that she believed her

9   manager was treating her less favorably because of her gender both in terms of work

10  opportunities and by making demeaning and sexist comments.  For example, he dismissed the

11  fact that she had raised concerns with him about his poor treatment of her as compared to others

12  by claiming she had become emotional during the meeting.  He also singled her out for her child-

13  care responsibilities although they had no impact on her performance, and male members of her

14  team were in comparable situations.

15      88.    Microsoft Human Resources concluded their investigation into Ms. Piermarini's

16  complaints finding that her male manager had done nothing wrong.  This same man remains Ms.

17  Piermarini's manager.  Upon information and belief, after Ms. Piermarini complained to Human

18  Resources, her manager retaliated by soliciting negative and demonstrably false comments about

19  Ms. Piermarini for her 2015 end of the year performance evaluation.  Ms. Piermarini also did not

20  receive a promotion in 2015 and, upon information and belief, was paid a smaller bonus amount

21  in comparison to men performing at or below her level.

22                          **CAUSES OF ACTION**

23                        **FIRST CLAIM FOR RELIEF**

24                         **Intentional Discrimination**
    **(Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*., as amended by the Lilly**
25                    **Ledbetter Fair Pay Act of 2009)**
                    **(On Behalf of Plaintiffs and the Class)**
26

27      89.    Plaintiffs incorporate the preceding paragraphs as alleged above.

28

90.     This claim is brought by Plaintiffs on behalf of themselves and the Class they seek to represent.  Plaintiff Moussouris has filed a timely charge with the EEOC on behalf of herself and the Class Members.  Plaintiffs Muenchow and Piermarini may piggy-back off the previous filing of Moussouris, because Moussouris's EEOC charge relates to the same claims that Muenchow and Piermarini assert.

91.     Microsoft has engaged in an intentional, company-wide, and systematic policy, pattern, and/or practice of discrimination against its female technical employees. Microsoft has intentionally discriminated against Plaintiffs and the Class in violation of Title VII by, among other things:

       a.     Utilizing a biased performance rating system;

       b.     Utilizing a biased compensation system;

       c.     Utilizing a biased promotion system; and

       d.     Failing to take reasonable and adequate steps to prevent and correct the use of standardless, unvalidated, and/or illegitimate criteria to determine the terms and conditions of employment.

92.     These company-wide policies are intended to and do have the effect of:

       a.     Denying Plaintiffs and Class Members business opportunities because of their gender;

       b.     Compensating them less because of their gender;

       c.     Failing to promote them because of their gender;

       d.     Evaluating their performance more negatively because of their gender; and

       e.     Providing them with inferior terms and conditions of employment as a result of discriminatory performance measures that systematically disadvantaged them because of their gender.

93.     The discriminatory acts that constitute Microsoft's pattern and/or practice of discrimination have occurred both within and outside the liability period in this case.

94.     As a direct result of Microsoft's discriminatory policies and/or practices as described above, Plaintiffs and the Class have suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

95.     The foregoing conduct constitutes illegal, intentional discrimination and unjustified disparate treatment prohibited by 42 U.S.C. §§ 2000e *et seq.*

96.     Plaintiffs request relief as hereinafter described.

**SECOND CLAIM FOR RELIEF**

**Disparate Impact Discrimination**
**(Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended by the Lilly Ledbetter Fair Pay Act of 2009)**
**(On Behalf of Plaintiffs and the Class)**

97.     Plaintiffs incorporate the preceding paragraphs as alleged above.

98.     This claim is brought by Plaintiffs on behalf of themselves and the Class they seek to represent.  Plaintiff Moussouris has filed a timely charge with the EEOC on behalf of herself and the Class Members.  Plaintiffs Muenchow and Piermarini may piggy-back off the previous filing of Moussouris, because Moussouris's EEOC charge relates to the same claims that Muenchow and Piermarini assert.

99.     Microsoft's reliance on illegitimate and unvalidated systems and criteria to evaluate employee performance, set compensation, select individuals for promotion, and determine other terms and conditions of employment, have an adverse impact on female technical employees in violation of Title VII and are not, and cannot be, justified by business necessity. Even if such system and/or policies could be justified by business necessity, less discriminatory alternatives exist and would equally serve any alleged necessity.

100.     Microsoft has maintained these discriminatory policies, patterns, and/or practices both within and outside the liability period in this case.

101.     As a direct result of Microsoft's discriminatory policies and/or practices as described above, Plaintiffs and the Class have suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

SECOND AMENDED CLASS ACTION COMPLAINT

102.   The foregoing policies, patterns, and/or practices have an unlawful disparate impact on women in violation of 42 U.S.C. §§ 2000e *et seq.*

103.   Plaintiffs request relief as hereinafter described.

### THIRD CLAIM FOR RELIEF

### Intentional Discrimination
### (Washington Law Against Discrimination, Rev. Code Wash. § 49.60.010. *et seq.*)
### (On Behalf of Plaintiffs and the Class)

104.   Plaintiffs incorporate the preceding paragraphs as alleged above.

105.   This claim is brought by Plaintiffs on behalf of themselves and the Class they seek to represent.

106.   Microsoft has engaged in an intentional, company-wide, and systematic policy, pattern, and/or practice of discrimination against its female technical employees. Microsoft has intentionally discriminated against Plaintiffs and the Class in violation of the Washington Law Against Discrimination by, among other things:

    a.   Utilizing a biased performance rating system;

    b.   Utilizing a biased compensation system;

    c.   Utilizing a biased promotion system; and

    d.   Failing to take reasonable and adequate steps to prevent and correct the use of standardless, unvalidated, and/or illegitimate criteria to determine the terms and conditions of employment.

107.   These company-wide policies are intended to and do have the effect of:

    a.   Denying Plaintiffs and Class Members business opportunities because of their gender;

    b.   Compensating them less because of their gender;

    c.   Failing to promote them because of their gender;

    d.   Evaluating their performance more negatively because of their gender; and

    e.   Providing them with inferior terms and conditions of employment as a result of discriminatory performance measures that systematically disadvantaged them because of their gender.

**SECOND AMENDED CLASS ACTION COMPLAINT**

108. The discriminatory acts that constitute Microsoft's pattern and/or practice of discrimination have been based in and emanated from within the State of Washington, and have occurred both within and outside the liability period in this case. The discriminatory policies, patterns, and practices have had a discriminatory impact on the female employees of Microsoft nationwide.

109. As a direct result of Microsoft's discriminatory policies and/or practices as described above, Plaintiffs and the Class have suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

110. The foregoing conduct constitutes illegal, intentional discrimination and unjustified disparate treatment prohibited by the Washington Law Against Discrimination, Rev. Code Wash. § 49.60.010. *et seq*.

111. Plaintiffs request relief as hereinafter described.

### FOURTH CLAIM FOR RELIEF

**Disparate Impact Discrimination**
**(Washington Law Against Discrimination, Rev. Code Wash. § 49.60.010. *et seq*.)**
**(On Behalf of Plaintiffs and the Class)**

112. Plaintiffs incorporate the preceding paragraphs as alleged above.

113. This claim is brought by Plaintiffs on behalf of themselves and the Class they seek to represent.

114. Microsoft's reliance on illegitimate and unvalidated systems and criteria to evaluate employee performance, set compensation, and select individuals for promotion, and determine other terms and conditions of employment, have an adverse impact on female technical employees in violation of the Washington Law Against Discrimination and are not, and cannot be, justified by business necessity. Even if such systems and/or policies could be justified by business necessity, less discriminatory alternatives exist and would equally serve any alleged necessity.

115. Microsoft has maintained these discriminatory policies, patterns, and/or practices arising in and/or emanating from within the State of Washington, both within and outside the

SECOND AMENDED CLASS ACTION COMPLAINT

1   liability period in this case.  The discriminatory policies, patterns, and practices have had a

2   discriminatory impact on the female employees of Microsoft nationwide.

3       116.    As a direct result of Microsoft's discriminatory policies and/or practices as

4   described above, Plaintiffs and the Class have suffered damages including, but not limited to, lost

5   past and future income, compensation, and benefits.

6       117.    The foregoing policies, patterns, and/or practices have an unlawful disparate

7   impact on women in violation of the Washington Law Against Discrimination, Rev. Code Wash.

8   § 49.60.010. *et seq*.

9       118.    Plaintiffs request relief as hereinafter described.

10                          **FIFTH CLAIM FOR RELIEF**

11                                **Retaliation**
                    **(Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*.)**
12                  **(On Behalf of Plaintiffs Moussouris and Piermarini Individually)**

13       119.    Plaintiffs Moussouris and Piermarini incorporate the preceding paragraphs as

14  alleged above.

15       120.    This claim is brought by Plaintiffs Moussouris and Piermarini individually.

16  Plaintiff Moussouris has timely filed a charge with the EEOC alleging individual and class

17  retaliation claims and has thus exhausted her administrative remedies.  Plaintiff Piermarini may

18  piggy-back off the previous filing of Moussouris, because Moussouris's EEOC charge relates to

19  the same claims that Piermarini asserts.

20       121.    Plaintiffs Moussouris and Piermarini engaged in protected activities, including

21  making internal complaints of unlawful discrimination and filing charges with the EEOC

22  complaining of Microsoft's discriminatory policies and practices.

23       122.    Microsoft took adverse actions against Plaintiffs Moussouris and Piermarini with

24  the purpose of retaliating against them because of their participation in protected activities, and

25  Plaintiffs Moussouris and Piermarini suffered damages as a result of that conduct.

26       123.    Plaintiffs Moussouris and Piermarini request relief as hereinafter described.

27

28

**SECOND AMENDED CLASS ACTION COMPLAINT**

### SIXTH CLAIM FOR RELIEF

### Retaliation
### (Washington Law Against Discrimination, Rev. Code Wash. § 49.60.010. *et seq.*
### (On Behalf of Plaintiff Moussouris Individually)

124.    Plaintiff Moussouris incorporates the preceding paragraphs as alleged above.

125.    This claim is brought by Plaintiff Moussouris individually.

126.    Plaintiff Moussouris engaged in protected activities, including making internal complaints of unlawful discrimination and filing charges with the EEOC complaining of Microsoft's discriminatory policies and practices.

127.    Microsoft took adverse actions against Plaintiff Moussouris with the purpose of retaliating against her because of her participation in protected activities during the liability period in the State of Washington, and Plaintiff Moussouris suffered damages in the State of Washington as a result of that conduct.

128.    Plaintiff Moussouris requests relief as hereinafter described.

### PRAYER FOR RELIEF

129.    WHEREFORE, Plaintiffs and the Class pray for relief as follows:

a.    Certification of the case as a class action on behalf of the proposed Class;

b.    Designation of Representative Plaintiffs Moussouris, Muenchow, and Piermarini as representatives of the Class;

c.    Designation of Representative Plaintiffs' counsel of record as Class Counsel for the Class;

d.    A declaratory judgment that the practices complained of herein are unlawful and violate 42 U.S.C. §§ 2000e, *et seq.*; and the Washington Law Against Discrimination, Rev. Code Wash. § 49.60.010. *et seq.*;

e.    A preliminary and permanent injunction against Microsoft and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in policies, patterns, and/or practices that discriminate against Plaintiffs or the Class because of their gender or participation in this lawsuit;

SECOND AMENDED CLASS ACTION COMPLAINT

f.      An order that Microsoft institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees regardless of gender, and that it eradicate the effects of their past and present unlawful employment practices;

g.      An order requiring Microsoft to develop and institute accurate and validated standards for evaluating performance, determining pay, and making promotion decisions;

h.      An order appointing a monitor to ensure that Microsoft complies with the injunction provisions of any decree that the Court orders;

i.      An order retaining jurisdiction over this action to ensure that Microsoft complies with such a decree;

j.      An order restoring Plaintiff Moussouris and Class Members to their rightful positions at Microsoft (*i.e.*, reinstatement), or in lieu of reinstatements, an order for front pay benefits;

k.      Back pay (including interest and benefits) for the Representative Plaintiffs and Class Members;

l.      All damages sustained as a result of Microsoft's conduct, including damages for emotional distress, humiliation, embarrassment, and anguish, according to proof;

m.      Exemplary and punitive damages in an amount commensurate with Microsoft's ability to pay and to deter future conduct;

n.      Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

o.      Pre-judgment and post-judgment interest, as provided by law; and

p.      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## JURY DEMAND

130.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury in this action.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated:  April 6, 2016

By: _____

Sharon M. Lee (Wash. Bar No. 37170)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
2101 Fourth Avenue, Suite 1900
Seattle, Washington 98121
Telephone:  (206) 739-9059
Facsimile:   (415) 956-1008
E-Mail: slee@lchb.com

**SECOND AMENDED CLASS ACTION COMPLAINT**

1          Kelly M. Dermody (*pro hac vice*)
         Anne B. Shaver (*pro hac vice*)
2          Michael Levin-Gesundheit (*pro hac* vice)
         **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
3          275 Battery Street, 29th Floor
         San Francisco, CA 94111-3339
4          Telephone:  (415) 956-1000
         Facsimile:   (415) 956-1008
5          E-Mail: kdermody@lchb.com
         E-Mail: ashaver@lchb.com
6          E-Mail: mlevin@lchb.com

7          Adam T. Klein (*pro hac vice*)
         Cara E. Greene (*pro hac vice*)
8          Ossai Miazad (*pro hac vice*)
         **OUTTEN & GOLDEN LLP**
9          3 Park Avenue, 29th Floor
         New York, New York 10016
10         Telephone:  (212) 245-1000
         Facsimile:  (212) 977-4005
11         E-Mail: ATK@outtengolden.com
         E-Mail: CEG@outtengolden.com
12         E-Mail: OM@outtengolden.com

13         Jahan C. Sagafi (*pro hac vice*)
         Katrina L. Eiland (*pro hac vice*)
14         **OUTTEN & GOLDEN LLP**
         One Embarcadero Center, 38th Floor
15         San Francisco, California 94111
         Telephone:  (415) 638-8800
16         Facsimile:  (415) 638-8810
         E-Mail: jsagafi@outtengolden.com
17         E-Mail: keiland@outtengolden.com

18         Michael Subit (Wash. Bar No. 29189)
         **FRANK FREED SUBIT & THOMAS LLP**
19         705 Second Avenue, Suite 1200
         Seattle, Washington 98104
20         Telephone: (206) 682-6711
         Facsimile: (206) 682-0401
21         E-Mail: msubit@frankfreed.com

22

23         *Attorneys for Plaintiffs and the proposed Class*

24

25

26

27

28

         **SECOND AMENDED CLASS ACTION COMPLAINT**