# Exhibit G

**Lieff
Cabraser
Heimann&
Bernstein**

Attorneys at Law

Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
t 415.956.1000
f 415.956.1008

April 4, 2016

**VIA ELECTRONIC MAIL**

Lynne C. Hermle
Jessica R. Perry
Megan M. Lawson
Orrick Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025
lchermle@orrick.com
jperry@orrick.com
megan.lawson@orrick.com

Wendy Butler Curtis
Orrick Herrington & Sutcliffe LLP
Columbia Center
1152 15th Street, NW
Washington, DC 2000
wcurtis@orrick.com

Lauri A. Damrell
Orrick Herrington & Sutcliffe LLP
400 Capitol Mall
Suite 3000
Sacramento, CA 95814
ldamrell@orrick.com

Mark S. Perris
Orrick Herrington & Sutcliffe LLP
701 5th Avenue, #5600
Seattle, WA 98104
mparris@orrick.com

RE:    *Moussouris, et al. v. Microsoft Corp.*, No 2:15-cv-01483 (JLR)

Dear Counsel:

Thank you for meeting and conferring with us on Tuesday, March 29, 2016. Below I note some clarifications to the memorialization you provided via email on Friday, April 1, 2016. The topics presented below generally track the topics in your April 1 email.

**30(b)(6) Depositions**

We have not agreed to a time period from May 14, 2011 to the present. *See* Relevant Time Period below. We also stated that we intend to take 30(b)(6) depositions on performance evaluations, promotions, compensation, and the human resources process in May or June.

Plaintiffs have not "agreed to provide Microsoft with set of standard questions for which they will seek answers on each MS People data field during deposition." That said, Plaintiff are able to provide the following guidance. Without data dictionaries and user manuals for the

1

April 4, 2016
Page 2

identified HR databases, Plaintiffs need to understand the definitions of each relevant data field and corresponding data populating those fields, how that information is used by Microsoft for performance evaluations, compensation setting, and promotions (including the workflow process), any changes of those data fields and data elements throughout the class period, and the full scope of possible data for each data field in each database.

## Named Plaintiffs Deposition Scheduling
We expect to get back to you shortly with respect to dates.

## Relevant Time Period
Under the court's order issued three weeks ago, the class period begins on May 14, 2011.  Pre-liability discovery is routine in Title VII cases and often extends back five years or more.  We believe a two-year period is more than reasonable and accordingly we offered to move the beginning of the relevant time period for our document requests from January 1, 2008 to January 1, 2009, approximately two years before the start of the class period, as reflected in the court's recent order.  We also explained that while we would require pre-class discovery of policies and data, we would be willing to discuss limiting the categories of documents for which we are seeking production before the start of the class period.  You offered to produce documents dated from 2010 onward.  We did not agree.

Please let us know by April 6, 2016 if you are unwilling to produce data and policy information from 2009 onward.

## Scope of the Class
In addition to providing a list of all professions, disciplines, and job titles Microsoft defines as "technical" for the purposes of reporting data on its website, Microsoft agreed to provide a list of all professions, disciplines, and job titles it does not consider technical.  We agreed to this course of action and plan to respond to Microsoft's proposed exclusions.  You did not indicate when you would provide these lists, but as this issue informs several categories of documents produced, we ask that you do so with all possible speed in the next week.

We indicated that we would be willing to consider a proposal to exclude individuals from the class based on level.  You indicated that you would submit a proposal, but did not indicate when.  As with the above, the sooner we can resolve this issue, the better.

## Document Production Prioritization
We asked generally for you to prioritize production of documents related to compensation setting, and you agreed to do so.  We also request that you prioritize documents related to performance rating, promotions, and complaints.

April 4, 2016
Page 3

### **Plaintiffs' Requests for Production of Documents**

**Requests 2 & 3:**

You indicated that you would provide a list reflecting profession, discipline, and job title for employees within the company, and you indicated that you believe the corporate organization charts we seek do not exist. We asked if any intranet pages explain corporate organization or structure to employees. You indicated that you would investigate if anything exists besides the "Dr. Whom" intranet tool. We suggested the director of human resources or marketing may maintain documents reflecting an understanding of corporate organization. We also suggested that budget documents might indicate corporate organization or structure. You stated that you would ask for these types of documents from your client.

**Request 4:**

On the topic of promotion lists, you explained that it is your position that the data requested in RFP #5 should cover this information. We indicated we agreed your position, so long as the data set produced in response to RFP #5 contains all the content that would be present in promotion lists. For example, if Microsoft does not include names in the data, but names are included in the promotion lists, then Plaintiffs seek production of those lists. They are relevant, among other reasons, to track actors who are the subject of internal complaints and individuals whom our witnesses may know by name.

**Request 10:**

You requested agreement that a categorical privilege log be appropriate for gender-related statistical audits, analyses, studies, or reports, and that you believe it is likely that everything within this category is privileged. We did not agree. We also stated our position that emails between employees discussing these reports and reports transmitted to government agencies are certainly not privileged and fall within the scope of this request as well.

**Request 12:**

You asked whether we would agree to limit the scope of our request for documents relating to hiring and retention plans for female employees to documents created by the human resources department. We indicated that we could not agree to that limitation, and that while we do not expect Microsoft to search manager by manager for these documents, the scope must include documents produced by the diversity and women's initiatives. You also asked whether we would agree to limit the scope of our request to gender-based retention plans, as opposed to also gender-based hiring plans. We explained that hiring and retention go hand in hand because women's hiring initiatives are often undertaken in light of high attrition rates among female employees. You indicated you would give our position some thought.

**Request 13:**

We asked if you could look for job descriptions that also describe levels, and you indicated that you would search for these documents.

3

April 4, 2016
Page 4

Request 16:

You stated that you had not found documentation of the content of calibration meetings, whether in the form of notes or audio/video recordings. We indicated that from our review of your document production, HR partners attend, participate in, and take notes at calibration meetings and are responsible for collecting materials, such as Calibration Workbooks and other documentation, from the meetings. We suggested that you seek such documentation from the Microsoft HR department. You said you would take this request to your client.

Request 19:

We indicated we would not accept a categorical privilege log for EEO-1 reports and similar internal reports.

Request 20:

You indicated that you would produce the policy documents we have requested. We clarified that we are not seeking all individual-level responses to surveys, but we do seek reports or summaries of results, including those discussing or analyzing the results of employee surveys that may be circulated via email. We did not commit to accepting anonymized responses, but we are willing to consider that request.

Request 23:

You stated that you are still investigating whether a log of formal legal complaints exists. You did not give a timeline for when your investigation will be complete. We request a response this week, as this has been outstanding for several months.

Request 24:

We indicated that we expect documents responsive to this request largely to come from certain women's groups within the company, and we expect Microsoft to look to content produced by those groups or employees administering those groups at different points in time. We agreed that custodian searches likely would be required for those individuals leading/administering these groups, but if a repository of information from these employee groups exists, we expect Microsoft to produce responsive documents from there as well.

Request 25:

You confirmed that you are investigating what documents exist referring or relating to the demographics of Microsoft competitors. You did not give a timeline for when this investigation will be complete. Please let us know.

Request 30:

We agreed to discuss documents related to affirmative defenses during the next meet and confer call.

April 4, 2016
Page 5


### Supplementing Responses

We do not recall you stating that Microsoft would not be supplementing its response to request for production #22.  We indicated that we seek information on how internal complains are tracked, and you stated that you would get back to us.


Very truly yours,

Michael Levin-Gesundheit


cc:    Plaintiffs' counsel


1299765.1