# Exhibit Q

## Shaver, Anne B.

| | |
|---|---|
| **From:** | Damrell, Lauri A. <ldamrell@orrick.com> |
| **Sent:** | Thursday, June 09, 2016 8:42 AM |
| **To:** | Shaver, Anne B. |
| **Cc:** | Curtis, Wendy Butler; Perry, Jessica R.; Lawson, Megan M.; Hermle, Lynne C. |
| **Subject:** | RE: Moussouris - meet and confer letter |

Anne,

Thank you for your June 2, 2016 letter.  We write to supplement and clarify the summary provided therein.

**AEO Designations**:

The third parties who provided Plaintiffs' feedback necessarily expected that such feedback would be disclosed exclusively to members of management who would make decisions regarding compensation and promotions.  Thus, these employees did indeed have an expectation that such feedback would not be shared publicly in litigation.  We maintain that feedback provided by Microsoft employees about named Plaintiffs that would not otherwise be shared with Plaintiffs in the course of their work is appropriately designated AEO.

In order to determine whether AEO designations are appropriate, a court must determine that "particularized harm will result from disclosure of information to the public."  *In re Roman Catholic Archbishop*, 661 F.3d 417, 424 (9th Cir. 2011).  "[I]f the court concludes that such harm will result from disclosure of the discovery documents, then it must proceed to balance 'the public and private interests to decide whether [maintaining] a protective order is necessary.'"  *Id*.  (citing *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002).  The court must determine whether "good cause" exists to keep the documents in question public.  *Glenmede Trust Co. v. Thompson*,  56 F.3d 476, 483 (3[d] Cir. 1995).  When deciding whether "good cause" exists, courts apply the following factors:

> 1) Whether disclosure  will violate any privacy interests; 2) whether the information is being sought for a legitimate purpose or for an improper purpose; 3) whether disclosure of the information will cause a party embarrassment; 4) whether confidentiality is being sought over information important to public health and safety; 5) whether the sharing of information among litigants will promote fairness and efficiency; 6) whether a party benefitting from the order of confidentiality is a public entity or official; and 7) whether the case involves issues important to the public.

*Id*.  These factors weigh in favor of affording the documents in question AEO protection.

Particularized harm will result if the documents in question are disclosed to Plaintiffs.  When providing feedback to other employees at Microsoft, individuals are assured that their comments will be accorded confidentiality.  Should this promise of confidentiality to feedback providers be broken, Microsoft employees will no longer feel comfortable providing candid and timely feedback.  This is particularly true for subordinate reviewers.  At Microsoft, feedback is provided by reports, managers, and peers.  Such feedback is crucial to employee and corporate development.  Grave harm would result if feedback provided with the promise of confidentiality were disclosed to the parties about whom feedback was provided, particularly when it involves current employees like Ms. Piermarini and Ms. Muenchow.

Moreover, good cause exists to maintain the AEO designation.  Several of the *Glenmede Trust* "good cause" analysis favors AEO protection.  As discussed more thoroughly above, disclosure to Plaintiffs will violate the privacy interests of the reviewers.  In addition, should feedback given with the expectation of privacy be revealed to the subject of the feedback, such revelation would likely result in embarrassment to the people who provided feedback, particularly for current employees.  Some of the individuals who provided feedback to them were and may continue to be named

Plaintiffs' reports.  As a general proposition, should such feedback be disclosed to the subject of the feedback, feedback will be chilled.  The information sought is not important to public health or safety, nor is Microsoft a public figure; thus, factors four and six weigh in favor of confidentiality.  Sharing of feedback will not substantially promote fairness and efficiency, since Plaintiffs need not see their performance feedback in order to participate fully and adequately in the proceedings.  Indeed, Plaintiffs' attorneys may provide advice to Plaintiffs based on the feedback provided in their reviews.  Therefore, factor five weighs in favor of confidentiality.  Taken together, the analysis set forth in *Glenmede Trust* favors affording the documents in question AEO protection.

Courts that have examined this very issue have found that AEO designation is appropriate.  *See United States v. Mount Sinai Hosp.*, No. 13-CV-04735 (RMB)(BCM), 2016 WL 2587393, at *7 (S.D.N.Y. May 4, 2016) (finding AEO designations appropriate for notes prepared in the investigation of sexual harassment allegations because release of such documents would be "highly likely to harm non-party individuals," particularly current employees); *see also Petz v. Ethan Allen, Inc.*, 113 F.R.D. 494, 497 (D. Conn. 1985) (examination of performance evaluations limited to plaintiff's counsel).

We are happy to meet and confer as to particular documents as to which you request that we lift the AEO designation.  However, we object to lifting the AEO designation as to all of Plaintiffs' performance evaluation documents.

**Scope of Class**:

The relevant scope of the class will be determined by the court after the parties have presented their arguments in favor of and in opposition to class certification, if the court determines class treatment is appropriate at all in this case.  That said, we agree not to dispute Plaintiffs' class definition for purposes of pre-class certification discovery.

**Category 16**:

We confirm that the following custodians are included in our document productions thus far:

1. Andrew Cushman;
2. Emily Anderson;
3. Mike Reavey;
4. Adrian Vinca;
5. Alain Raitt;
6. Alex Chi;
7. Bryna McCool;
8. Jim Warner;
9. Jing Sun;
10. Ken Reppart;
11. Merrie McGaw;
12. Nina Somerville;
13. Noah Sandidge;
14. David Walker;
15. Dick Hoell;
16. Chris Betz;
17. Jerry Bryant;
18. Judy Mims; and
19. Melinda DeLanoy.

Documents for these custodians were searched and produced in preparation for plaintiffs' depositions.  We invited you to give input on searches used for this exercise many times and you declined.   Thus, the time to request particular searches for these custodians has passed.

Moreover, your assertion that "the additional burden of running five to ten search terms on each [of 77 additional custodians] will be minimal" is patently false.  On average, Microsoft custodians have 46 GBs of searchable data.  For 96 custodians, that is more than 4 TBs of data to search.  Even if we could achieve a 95% cull rate from search terms, there would be over 207 GBs of data to process and review.  While that GB count is pre-dedupe, conservatively, we estimate that we would have at least 300,000 documents to review post-dedupe.  Even if all 19 custodians completely duped out, we estimate, conservatively, 250,000 documents would still need to be reviewed post-dedupe.

**Employee Surveys**:

We can confirm that we have obtained the questions for Microsoft 360 and the Connect Pulse Survey and will be producing these next week.  We continue to investigate the Assessment Tool Survey.

**Documents Identified in Your April 11, 2016 Letter**:

At this time we can confirm that we will be producing the EEO and Affirmative Action Executive Summary for Senior Managers document next week.

**MSMOMs Anonymous SharePoint**:

We have learned that MSMOMs is a Microsoft social organization that provides resources and organizes events for Microsoft employees who are also mothers.

**Named Plaintiffs' Performance Evaluation Documents**:

We can confirm that we have not located Ms. Muenchow's 2009 Mid-Year Check-In.  Otherwise, we have produced all available Performance Evaluation Documents.

**Internal Complaint Documents**:

We will be presenting our witness to testify as to the topics listed in your  Amended Notice of Deposition Regarding Complaints and Compliance dated May 11, 2016.  We can confirm that we will be producing relevant, non-privileged internal complaints prior to the scheduled deposition date: June 28, 2016.

**Next Meet and Confer**:

We have confirmed that we will next convene for our meet and confer discussion on June 13, 2016 at 1:00 p.m. PST.

Best regards,

Lauri

---

**From:** Shaver, Anne B. [mailto:ashaver@lchb.com]
**Sent:** Thursday, June 02, 2016 5:40 PM
**To:** Damrell, Lauri A. <ldamrell@orrick.com>; Curtis, Wendy Butler <wcurtis@orrick.com>; Perry, Jessica R. <jperry@orrick.com>; Lawson, Megan M. <megan.lawson@orrick.com>
**Subject:** Moussouris - meet and confer letter

Counsel,

Please see the attached correspondence regarding yesterday's call.  We would appreciate your speedy attention to the 2014-2016 plaintiff performance evaluation documents.

3

Thanks,

**Lieff Cabraser Heimann & Bernstein**
Attorneys at Law

**Anne B. Shaver**
ashaver@lchb.com
t 415.956.1000
f 415.956.1008

Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
www.lieffcabraser.com

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

4