# Exhibit T



**ORRICK, HERRINGTON & SUTCLIFFE** LLP
400 CAPITOL MALL
SUITE 3000
SACRAMENTO, CALIFORNIA 95814-4497

*tel* +1-916-447-9200
*fax* +1-916-329-4900
**WWW.ORRICK.COM**

June 25, 2016

Lauri A. Damrell
(916) 329-7914
ldamrell@orrick.com

VIA EMAIL

Kelly M. Dermody
Anne B. Shaver
Michael Levin Gesundheit
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339

Sharon M. Lee
Lieff Cabraser Heimann & Bernstein, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA 98121

Michael Subit
Frank Freed Subit & Thomas LLP
705 Second Avenue, Suite 1200
Seattle, WA 98104

Adam T. Klein
Cara E. Greene
Ossai Miazad
Outten & Golden LLP
3 Park Avenue, 29th Floor
New York, NY 10016

Jahan C. Sagafi
Katrina L. Eiland
Outten & Golden LLP
One Embarcadero Center, 38th Floor
San Francisco, CA 94111

Re: *Moussouris v. Microsoft Corporation*, W.D. Wash. Case No. 2:15-cv-01483 (JLR)

Dear Counsel:

We write in response to your June 22, 2016 letter regarding Internal Complaints and Internal Audits. We are also confirming that Plaintiffs have refused to appear for the "complaints and compliance" deposition they noticed for June 28, 2016 notwithstanding Microsoft's good faith efforts to make that witness available and produce sufficient documents in advance of the deposition based on the needs Plaintiffs articulated in meet-and-confer discussions.

**Internal Complaints**

Plaintiffs have mischaracterized the nature of the parties' meet and confer discussions on this topic. At the outset of the parties' meet and confer discussions about internal complaints, Microsoft agreed to produce a log of formal legal complaints. Plaintiffs acknowledged and memorialized this on March 29, 2016 and April 8, 2016. *See* April 19, 2016 letter from Yaman

1



June 25, 2016
Page 2

Salahi.  However, as the meet and confer discussions progressed, plaintiffs continued to broaden what they were seeking in their discovery requests.  On April 18, 2016, Plaintiffs raised the possibility of Microsoft producing copies of complaints that were not filed on a public docket (i.e., those filed with administrative agencies, but not those filed in court on a public docket).  On April 28, 2016, Microsoft confirmed that it planned to produce a log of legal and administrative complaints.  *See* April 29, 2016 letter from Michael Levin-Gesundheit.

Unfortunately, notwithstanding Microsoft's agreement, plaintiffs decided to push for even more discovery on April 28, indicating that, in addition to the logs that Microsoft agreed to produce, they were seeking "non-privileged internal complaints…so that [Plaintiffs] may walk through exemplar complaints with the [30(b)(6)] witness."  *Id*.  However, as Microsoft explained on April 18, it had serious concerns about Plaintiffs seeking discovery about private and highly confidential internal complaints and compliance systems because of the extent to which it would intrude on the policies and practices of Microsoft's legal department, which are largely protected by the attorney-client and attorney work product privileges.  *See* April 19, 2016 letter from Y. Salahi.  Microsoft expressed further concern about Plaintiffs' overbroad request for complaints regarding issues that extend well beyond the scope of this litigation, including those related to sexual harassment, maternity leave, and other topics only vaguely described as "unfair treatment."[1]  *Id.*  Given the difficulties associated with determining whether it would even be possible to identify the additional complaints requested by Plaintiffs much less determine whether any number of the potentially responsive documents were privileged, Microsoft indicated on April 28 that it would have to consider this request further.  *See* April 29, 2016 letter.

During the parties' next weekly meet-and-confer teleconference on May 5, 2016, Microsoft agreed to provide a proposal regarding privilege protection for internal complaints.  *See* May 5, 2016 letter from Michael Levin-Gesundheit.  Microsoft further explained on May 23, 2016 that though Microsoft was continuing to work to formulate a proposal, the issue was tied to the parties' ongoing negotiations regarding the scope of the class (both with regard to temporal scope and the proposed class definition). Without fully understanding the breadth of the class and who Plaintiffs believe are included in it, Microsoft could not properly identify in-scope complaints and assess the extent of what Plaintiffs were seeking in discovery.  *See* May 23, 2016 email from Lauri Damrell.  Microsoft further noted that, as of May 23, Plaintiffs had yet to propose which professions they believed to be included in their class definition.  *Id.*

---

[1] Despite these concerns, Microsoft ultimately agreed to compromise on this issue to avoid further discovery disputes and expand its search for complaints to those alleging sexual harassment and pregnancy discrimination. *See* June 15, 2016 letter from Michael Levin-Gesundheit.



ORRICK

June 25, 2016
Page 3

Nevertheless, in the meantime, Microsoft was willing to work with Plaintiffs to calendar June 28, 2016 for the 30(b)(6) deposition on complaints and compliance to continue to move discovery along given the tight discovery schedule.  And, based on Plaintiffs' previous communications, there was no reason to believe that Plaintiffs would not have sufficient documents in advance of June 28 to allow them to prepare for the deposition.  Indeed, because they already had the complaint files of their own named Plaintiffs, they had "exemplars" they could walk through with the witness.

Plaintiffs did not ultimately clarify their proposed class definition until May 24, 2016. Immediately thereafter, Microsoft began to assess precisely what documents would fall within the scope of Plaintiffs' continually growing request related to employee complaints, and the extent to which privilege applied to those documents.

As Microsoft learned in its review, this is not a simple task.  One complaint investigation file may include hundreds of pages.  Moreover, Microsoft's legal counsel is extensively involved when complaints alleging violations of its anti-discrimination and anti-harassment policies are raised.  To the extent that any non-privileged documents exist in these highly confidential files involving sensitive and private matters, they are regularly intertwined with attorney work product and communications with counsel.  To further complicate matters, investigators handle multiple matters at a time and may communicate with internal Microsoft counsel or others regarding multiple investigations in a single email.  Thus, an investigation file related to a complaint made by a putative class member may include numerous documents related to employees and/or allegations wholly irrelevant to Plaintiffs' claims.  Some files also include communications and other documents related to allegations that are completely outside the scope of Plaintiffs' claims (e.g., allegations related to race, age, or national origin).  Nor is it possible to single out and produce the actual "complaint" raised by the employee.  In many cases, employees raise issues orally, so there is no written "complaint" in the file.  Nor do the files necessarily have a clean, non-privileged summary of the complaint that can easily be pulled from the file.

Nevertheless, in a good faith attempt to keep the June 28 deposition on calendar, Microsoft contacted Plaintiffs on June 21 to get a better understanding of what Plaintiffs believed they needed for the deposition and to offer to produce a sampling of investigation files in advance of the deposition. The sampling would include non-privileged documents from three investigation files for complaints lodged by employees in the Cloud and Enterprise, Applications and Services, and Windows and Devices organizations.  Since Microsoft has already produced the files for Ms. Moussouris (Technology and Research) and Ms. Piermarini (Sales and Marketing), this would round out the five organizations that Plaintiffs included in their putative class definition.

During the June 21, 2016 call, Plaintiffs explained their concern that Microsoft produced only a handful of documents related to the complaint investigation process, and that they believed



June 25, 2016
Page 4

(without explanation) that only a complete production of investigation files would provide Plaintiffs with more insight into how the investigation process works, including what they believed would be instructions provided to investigators on how to conduct investigations. However, Microsoft has already produced two investigation files to Plaintiffs (for Piermarini and Moussouris) and neither file reflects such "instructions." And, as Microsoft explained, the additional investigation files, even if produced, would reflect the same. Microsoft, therefore, told Plaintiffs that if they believe that certain types of instructions, policies or procedures were missing from Microsoft's production, please identify what they are so that Microsoft can respond by indicating either that no such documents exist (privileged or otherwise), or that the documents they seek are privileged, with an explanation of the basis for the privilege. Plaintiffs flatly rejected this reasonable proposal on June 22, 2016.

Microsoft's position about what it is willing to produce with regard to complaints has not changed. As Microsoft has stated at the outset, it is agreeable to provide a log of relevant complaints that includes non-privileged information about the complaints. This is more than ample information to allow Plaintiffs to prepare for the complaints and compliance deposition, and Plaintiffs have not provided any basis for concluding otherwise. It is unfortunate that Plaintiffs have chosen to take the June 28, 2016 deposition off calendar when there is no basis to postpone it.

**Internal Audits**

Here, again, Plaintiffs have mischaracterized the parties' meet-and-confer discussions. Plaintiffs have known since at least March 29, 2016 that Microsoft would object to producing an itemized privilege log. *See* April 4, 2016 letter from Michael Levin-Gesundheit. Since that time, Plaintiffs have provided no basis whatsoever to support imposing a burden on Microsoft to search for *presumptively* privileged documents from its in-house attorneys and outside counsel.

Although the parties have now sought the Court's assistance on the above-referenced issues, Microsoft is willing to continue to meet and confer on these issues in advance of the hearing should Plaintiffs choose to do so.

Very truly yours,

Lauri A. Damrell