1

The Honorable James L. Robart

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                    WESTERN DISTRICT OF WASHINGTON

10                           SEATTLE DIVISION

11   KATHERINE MOUSSOURIS, HOLLY           Case No. 2:15-cv-01483-JLR
     MUENCHOW, and DANA PIERMARINI,
12   on behalf of themselves and a class of those   **MOTION TO QUASH PLAINTIFFS'**
     similarly situated,                            **REQUEST FOR INTERNAL**
13                                                  **INVESTIGATION FILES AND**
                    Plaintiffs,                     **APPROVE USE OF A**
14                                                  **CATEGORICAL PRIVILEGE LOG**
             v.
15                                                  **NOTE ON MOTION CALENDAR:**
     MICROSOFT CORPORATION,                         **JULY 18, 2016**
16
                    Defendant.
17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO QUASH AND APPROVE USE OF
CATEGORICAL PRIVILEGE LOG:  2:15-cv-01483-JLR

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1-206-839-4300

## I.   INTRODUCTION AND SUMMARY OF ISSUES PRESENTED

The present dispute involves two significant issues: (1) Plaintiffs' request for highly confidential and substantially privileged investigation files of internal complaints of discrimination and (2) Plaintiffs' demand for an itemized (rather than categorical) privilege log of attorney-client communications and work product regarding Microsoft's gender-related diversity and compliance efforts.  Microsoft proposed reasonable solutions that—consistent with the Federal Rules—strike the proper proportional balance: providing Plaintiffs with sufficient information to prepare their case and not overburdening Microsoft.

Microsoft has engaged in extensive good-faith negotiations with Plaintiffs regarding their extraordinarily broad discovery requests.  The parties have held calls at least weekly to discuss various discovery issues, and the parties have made significant progress (e.g., reducing Plaintiffs' original request for over 500 custodians to 61). However, Plaintiffs are still aiming to boil the ocean with discovery, disregarding the principles of proportionality and what is realistic under the Court's order closing discovery in just over a month on August 12, 2016.

Microsoft has made exhaustive efforts to reach a reasonable resolution on the privilege disputes at issue here. With respect to the internal complaint investigation files, Microsoft has agreed to identify complaints made by putative class members since January 1, 2010 alleging gender discrimination and provide: (1) a log of lawsuits filed; (2) administrative charges filed; (3) demand letters sent to Microsoft; and (4) a log of internal complaints made by putative class members and investigated by Microsoft's Employee Relations Investigation Team ("ERIT"), which is part of the Microsoft legal department. Given the six-year-plus period of time at issue in discovery and the breadth and diversity of the nationwide putative class, this is a significant undertaking. Plaintiffs now claim they are entitled to the *entire* investigation file for each complaint, notwithstanding the extent to which the files are privileged and the unduly burdensome review that Microsoft would have to undertake before production—burdens not warranted given the relative low probative value of the documents sought.  Plaintiffs also insist on expanding the scope to include complaints of retaliation and "unfair treatment," even though these are beyond the scope of Plaintiffs' classwide allegations.  Furthermore, Plaintiffs

MOTION TO QUASH AND APPROVE USE OF
CATEGORICAL PRIVILEGE LOG:  2:15-CV-01483-JLR

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1-206-839-4300

1   seek to conduct broad searches of the custodial files of Microsoft ERIT investigators, which

2   contain extensive privileged material.  Plaintiffs refuse to acknowledge the burdens associated

3   with these requests, and when Microsoft proffered a 30(b)(6) witness to testify on these issues

4   and validate the extent of the privilege, Plaintiffs refused to appear for the deposition.

5          Microsoft has also attempted a reasonable agreement with Plaintiffs' counsel regarding

6   its privilege logs. Plaintiffs' requests for documents regarding gender discrimination

7   complaints and Microsoft's compliance with anti-discrimination laws go to the heart of the

8   privileged work of Microsoft's in-house and outside attorneys. Plaintiffs' requests for these

9   documents seek thousands of privileged materials involving dozens of attorneys—as well as

10  employees and consultants working at the direction of attorneys.  Plaintiffs' request that

11  Microsoft collect, review, and log each one of these documents is unduly burdensome.  Under

12  these circumstances, a categorical privilege log is appropriate under the Federal Rules of Civil

13  Procedure and the Western District of Washington proposed ESI protocol and Microsoft

14  proposed such a log to Plaintiffs. Plaintiffs rejected this as well, again without justification.

15         Microsoft respectfully requests that the Court (1) deny Plaintiffs' request to expand the

16  scope of what Microsoft has agreed to produce regarding complaints made by putative class

17  members and custodial data of ERIT investigators and (2) approve Microsoft's use of a

18  categorical log of attorney-client communications and documents created at the direction of

19  counsel regarding gender-related diversity and compliance efforts.

20  ## II.   MICROSOFT ENGAGED IN EXTENSIVE GOOD FAITH NEGOTIATIONS

21         From the outset, Microsoft has made every effort to meet and confer with Plaintiffs to

22  produce relevant, proportionate, and reasonable discovery at this pre-certification stage of the

23  case.  To date, Microsoft has produced over 140,800 pages of documents (10.6 GB), which

24  required review of over 7,800,000 (78 GBs), costing Microsoft over $525,000 for review and

25  production alone, not including the time invested by internal Microsoft staff or outside counsel

26  fees.  Declaration of Lauri A. Damrell ("Damrell Decl."), ¶ 2.  The parties have also spent

27  months negotiating the scope of custodian-level searches, which, based on Plaintiffs' latest

28  iteration, would include a collection from over 60 custodians (negotiated down from Plaintiffs'

MOTION TO QUASH AND APPROVE USE OF
CATEGORICAL PRIVILEGE LOG:  2:15-CV-01483-JLR                - 2 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1-206-839-4300

1   original request for over 500) and would involve an additional review of at least another

2   20,000,000 pages (200 GBs). *Id.* ¶ 3. In addition, Microsoft has spent hundreds of hours

3   answering Plaintiffs' questions on Microsoft's databases, providing detailed declarations from

4   IT personnel, presenting multiple witnesses at deposition, and retaining an outside data

5   consultant to confirm Microsoft witness testimony on the burdens associated with Plaintiffs'

6   requests. *Id.* ¶ 4. Based on the parties' discussions, Microsoft has agreed to produce nearly

7   ***200 separate personnel data fields*** for over 66,000 employees dating back to January 1, 2010.

8   *Id.*  Beyond that (and relevant to the dispute here), Microsoft engaged in further meet and

9   confer discussions regarding Plaintiffs' RFP No. 21, which requests:

10
11
12
13
14
15
16
17

> All DOCUMENTS (including but not limited to investigation
> files, logs, OR databases) that REFER OR RELATE TO internal
> requests, inquiries, demands, claims, grievances, concerns
> protests, OR complaints made by DEFENDANT'S applicants,
> employees, AND/OR managers against DEFENDANT,
> REFERRING OR RELATING TO unfair treatment against any
> woman, including gender discrimination, sexual harassment,
> pregnancy discrimination, hostile work environment, AND/OR
> retaliation, including investigations of such requests, inquiries,
> demands, claims, grievances, concerns, protests, AND/OR
> complaints. This document request includes all forms of
> COMMUNICATIONS—either in writing OR orally (where such
> COMMUNICATIONS have been taped, logged, noted AND/OR
> investigated and described through records of the investigation),
> formal OR informal, to DEFENDANT OR to any other party.

18   *Id.* ¶ 5. From the very beginning, Microsoft objected to this request to the extent it asks

19   Microsoft to produce documents protected by attorney-client and attorney work product

20   privileges. *Id.* ¶ 6. The volume of privileged documents implicated by this request is

21   extensive. ERIT sits within Microsoft's legal department, and Microsoft's Employment Law

22   Group ("ELG") is typically involved in every ERIT investigation, to varying degrees,

23   depending upon the specific investigation. *Id.* ¶ 7. In some cases, ELG attorneys designate

24   the investigation as "attorney-directed" or "attorney-requested," in which case the

25   investigation is protected by the attorney-client privilege and/or attorney work-product

26   doctrines, and thus, are not subject to production. *Id.* ¶ 8. An investigation may be designated

27   as "attorney-directed" or "attorney-requested" at any stage of the investigation. *Id.* In

28   addition, even when an investigation is not "attorney-directed" or "attorney-requested," ERIT

investigators generally consult with ELG attorneys during an investigation on a variety of issues and those privileged communications are often included in the investigation file. *Id.* ¶ 9. Thus, determining whether any given document within an investigation file (which may be hundreds of pages long) is protected by the attorney-client and/or work product privileges is an extraordinarily time consuming process that requires a sophisticated legal review and extensive quality control given the highly sensitive nature of the material. *Id.* ¶ 10.

To further complicate matters, investigators handle multiple matters and may communicate with Microsoft counsel regarding multiple investigations in a single email. *Id.* ¶ 11. Thus, an investigation file related to a putative class member's complaint may include numerous documents related to employees and/or allegations wholly irrelevant to Plaintiffs' claims. *Id.* Some files also include documents related to allegations that are outside the scope of Plaintiffs' claims (e.g., allegations related to race, age, national origin), which Microsoft would have to exclude or at least redact from the file. *Id.*

It is also difficult to isolate the putative class member's "complaint" within an investigation file. In many cases, employees raise issues orally, so there is no written "complaint" in the file. *Id.* ¶ 12. Nor do the files necessarily have a clean, non-privileged summary of the complaint that can easily be pulled from the file. *Id.*

Given these serious concerns, Microsoft ultimately agreed to identify complaints made by putative class members alleging gender discrimination (including pregnancy discrimination) and sexual harassment, specifically: (1) A log of civil complaints, including the case name, case number, jurisdiction, and case status (e.g. open or closed) filed from January 1, 2010 to present; (2) copies of EEOC and state agency charges filed from January 1, 2010 to present; (3) copies of attorney demand letters sent to Microsoft on behalf of putative class members from January 1, 2010 to present; and (4) a log of internal complaints investigated by ERIT, including the complainant's unique identifier, job title, the basis for the complaint, the year the complaint was received, and the outcome, from January 1, 2010 to present. *Id.* ¶ 13.

Plaintiffs' explanation of how they would be willing to narrow RFP No. 21 shifted throughout the parties' discussions. *Id.* ¶¶ 15-25. Plaintiffs did not indicate that they wanted

MOTION TO QUASH AND APPROVE USE OF
CATEGORICAL PRIVILEGE LOG:  2:15-cv-01483-JLR         - 4 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1-206-839-4300

1    "non-privileged internal complaints" until April 28, 2016, and when they did, they explained

2    that they simply wanted to "walk through exemplar complaints with the [30(b)(6)] witness."

3    ¶ 16.  Microsoft agreed to provide a proposal regarding privilege protection for internal

4    complaints but explained that without fully understanding Plaintiffs' proposed class (which it

5    had not yet received), Microsoft could not properly identify in-scope complaints related to

6    any of the three categories of complaints and assess the discovery sought.  *Id.* ¶ 18.

7          Plaintiffs did not clarify their proposed class definition until May 24, 2016.  *Id.* ¶ 19.

8    Despite this delay and the ongoing dispute between the parties regarding the proper scope of

9    discovery, Microsoft agreed to produce a witness on June 28, 2016 for the 30(b)(6) deposition

10   that Plaintiffs noticed regarding on complaints and compliance.  *Id.* ¶ 20.  Based on Plaintiffs'

11   previous representation that they wanted to "walk through exemplar complaints" at the

12   deposition, Microsoft believed that its prior production of the non-privileged documents within

13   Moussouris's and Piermarini's complaint files provided Plaintiffs with the "exemplars" they

14   needed in advance of June 28 to allow them to prepare for the deposition.  *Id.*

15         Immediately after Plaintiffs' May 24, 2016 clarification of their class definition,

16   Microsoft began to reassess precisely what documents would fall within the categories of

17   complaints sought by Plaintiffs and the extent to which privilege applied to those documents.

18   *Id.* ¶ 21.  On June 20, 2016, Microsoft communicated its final proposal, which Plaintiffs

19   swiftly rejected.[1]  *Id.*

20         In a good faith attempt to keep the June 28 deposition on calendar, Microsoft contacted

21   Plaintiffs on June 21 to better understand what Plaintiffs believed they needed for the

22   deposition and to offer a sampling of investigation files in advance of the deposition.  *Id.* ¶ 22.

23   The sampling would include non-privileged documents from three additional investigation files

24   for complaints made by employees in departments deemed "technical" by plaintiffs for

---

[1] Plaintiffs claimed in their meet and confer correspondence that Microsoft "reversed course" regarding its position on internal complaints.  This is not true.  Microsoft's final proposal on June 20, 2016 was the result of months-long meet and confer discussions, during which Plaintiffs continually expanded the scope of what they were willing to accept.  Though Plaintiffs' requests were a moving target, the parties' meet and confer communications reflect that Microsoft's position regarding discovery of privileged documents and information remained consistent throughout.  *Id.* ¶¶ 15-20.

MOTION TO QUASH AND APPROVE USE OF
CATEGORICAL PRIVILEGE LOG:  2:15-cv-01483-JLR                - 5 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1-206-839-4300

1   purposes of discovery.  *Id.*  Since Microsoft already produced investigation files for Plaintiffs

2   Moussouris (Technology and Research) and Piermarini (Sales and Marketing), this would

3   round out the five departments that Plaintiffs included in their class definition.  *Id.*

4          Plaintiffs also rejected this proposal.  *Id.* ¶ 23.  They expressed concern that Microsoft

5   produced "only a handful" of documents related to the complaint investigation process, even

6   though Microsoft confirmed that it produced all relevant, responsive, non-privileged materials

7   regarding its investigative process.  Plaintiffs then claimed that only a complete production of

8   investigation files <u>for all</u> investigations would provide sufficient insight into how the process

9   works, including what they believed would be instructions provided to investigators on how to

10  conduct investigations.  *Id.*  Microsoft explained, however, that it had already produced two

11  investigation files to Plaintiffs (for Piermarini and Moussouris) and neither file reflects such

12  "instructions."  *Id.* ¶ 24.  As Microsoft further explained, the additional investigation files,

13  even if produced, would, likewise, not reflect investigation "instructions," and the best way for

14  Plaintiffs to gather additional information regarding how Microsoft generally conducts

15  investigations is to depose its 30(b)(6) witness on these topics on June 28.  *Id.*  Plaintiffs

16  rejected Microsoft's proposal on June 22, 2016 and canceled the deposition.  *Id.* ¶ 25.

17         In addition to seeking ERIT investigation files, Plaintiffs have requested that 25

18  searches be run on custodial data for all ERIT investigators.  This, too, is an extraordinarily

19  broad request that would require collection and review of nearly 700,000 pages (7 GBs),

20  including a large proportion of privileged documents.  *Id.* ¶ 28.  For similar reasons, Microsoft

21  pushed back on having to undertake such an extensive review.

22  **III.  <u>PLAINTIFFS ARE NOT ENTITLED TO INTERNAL INVESTIGATION FILES</u>**

23         **A.   The Burden of Reviewing Microsoft's Investigation Files are Extensive**

24         Once Plaintiffs clarified their proposed class and Microsoft began identifying,

25  collecting, and reviewing the ERIT investigation files, it quickly became clear that reviewing

26  all ERIT investigation files as well as custodian files from ERIT investigators for privilege

27  will be unduly burdensome due to the volume and nature of the documents at issue.

28         Plaintiffs' proposed class definition includes at least 11,625 putative class members

1  and this request encompasses any investigations of complaints lodged by these 11,625

2  putative class members since January 1, 2010. *Id.* ¶ 26. Although a very small percentage of

3  these putative class members ever made a complaint of gender discrimination or sexual

4  harassment since January 2010 (and even fewer of these complaints were ultimately

5  substantiated), the volume of documents is extensive because each investigation file can be

6  hundreds of pages long. *Id.* ¶ 27. Moreover, the 25 searches Plaintiffs want performed on all

7  ERIT custodial data could require a review of 700,000 pages (7 GBs). *Id.* ¶ 28. Based on

8  Microsoft's initial review of ERIT investigation files and ERIT custodial data, Microsoft

9  estimates that it will cost over $165,000 to collect, review, and log these documents. *Id.* ¶ 29.

**B.  The Federal Rules and Case Law Support Microsoft's Position.**

11      The scope of discovery is not without bounds. Revised Rule 26(b)(1) explains that

12  discovery must be relevant to the claims and defenses *and* proportional to the needs of the

13  case. Fed. R. Civ. P. 26(b)(1). Indeed, "[t]he parties and the court have a collective

14  responsibility to consider the proportionality of all discovery and consider it in resolving

15  disputes." Fed. R. Civ. P. 26 advisory comm; *see also Gilead Sciences, Inc. v. Merck & Co.,*

16  *Ins.,* 2016 WL 146574, at *1 (N.D. Cal. Jan. 13, 2016) ("a party seeking discovery of relevant,

17  non-privileged information must show, before anything else, that the discovery sought is

18  proportional to the needs of the case."); *MP Nexlevel v. CVIN*, 2016 WL 1408459 (E.D. Cal.

19  April 11, 2016) (finding additional discovery not required under FRCP 26(b)(1) where

20  relevance was low and burden high); *Roberts v. Clark County Schools*, 312 F.R.D 594, 603 (D.

21  Nev. 2016) ("The 2015 amendments to Rule 26(b)(1) emphasize the need to impose

22  'reasonable limits on discovery through increased reliance on the common-sense concept of

23  proportionality'" citing Chief Justice Roberts 2015 Year-End Report to the Federal Judiciary.);

24  *O'Boyle v. Sweetapple*, 2016 WL 492655, at *3 (S.D. Fla. Feb. 8, 2016) (same).

25      That evidence "might yield helpful information' is not the applicable standard." *Pertile*

26  *v. GM*, 2016 WL 1059450 at*2 (D. Colo. March 17, 2016). In *Pertile*, plaintiff in a personal

27  injury vehicle rollover case moved to compel production of proprietary vehicle design

28  information. *Id*. at *1. The court explained that relevance is not the sole consideration when

1   addressing a motion to compel, rather, "this court must look at proportionality and, because of

2   the sensitivity of the issue, necessity." *Id.* at \*2.  Denying the motion, the court held that "in

3   light of the production of documents and ESI already made…this court cannot conclude, at

4   this juncture, that access…[is] so central to the claims in dispute that their discovery must be

5   compelled." *Id.* at \*5.  Ultimately, Rule 26(b)(1) was "intended to encourage judges to be

6   more aggressive in identifying and discouraging discovery overuse." *Augustyniak v. Lowe's*

7   *Home Ctr.*, 2016 WL 462346, at \*5 (W.D.N.Y. Feb. 8, 2016).

8        Here, the burden of reviewing internal investigation files is disproportionate to any

9   possible benefit given what Microsoft has already produced and its proposed production. At

10  best, Plaintiffs have said they need this discovery to discuss exemplar complaints with

11  Microsoft's 30(b)(6) witness.  However, they could have accomplished this with the sample

12  that Microsoft proposed.  Plaintiffs cannot show how discovery of entire investigation files

13  is relevant to their case and "likely to produce substantiation of class allegations."

14  *Mantolette v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985).  To meet their certification

15  burden, Plaintiffs must show that the alleged discriminatory practices are applied uniformly

16  across the class such that the issues to be determined—the injury and reason for the injury—

17  can be determined on a class-wide basis.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541,

18  2551 (2011).  To that end, they must show that "a class of persons…have suffered the same

19  injury" and their claims are "typical of the class claims."  *Id.* at 2553.  This Court has

20  already denied certification to a nationwide putative class of Microsoft employees alleging

21  discrimination in compensation, recognizing that it "is not possible to make a finding of

22  commonality where putative class involves extensive diversity in terms of geography, job

23  requirements, and/or managerial responsibilities." *Donaldson v. Microsoft Corp.*, 205

24  F.R.D. 558, 567 (W.D. Wash. 2001) (citing cases). The largely unsubstantiated complaints

25  of a handful of putative class members are very unlikely to demonstrate that Plaintiffs'

26  claims are typical of others, and that the entire putative class of 11,625 diverse employees

27  have suffered the same injury.  Microsoft has already agreed to disclose how many

28  complaints were substantiated after investigation by ERIT.  Plaintiffs have not demonstrated

1  why they need the detailed investigation files.  If anything, their insistence that they need

2  these individualized facts only underscores the importance of case-by-case adjudication.

3        Even if plaintiffs could show that pre-class certification discovery could substantiate

4  their class allegations, courts within this jurisdiction have limited that discovery to prevent

5  undue burden on defendants.  *See, e.g.*, *Kingsberry v. Chicago Title Ins. Co.*, 258 F.R.D.

6  668, 671 (W.D. Wash. 2009) ("[If] a case has not yet been certified as a class action, a

7  request to compel discovery on a putative class is overly broad and unduly burdensome

8  when 'to comply, defendant would have to review an extremely large number of files in

9  search of the responsive documents.'") (citation omitted).[2]  Nor does the case law cited by

10 Plaintiffs in the parties' meet and confer discussions support their demand for more

11 expansive discovery.  In *Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 557 (S.D.N.Y.

12 2013), the court granted plaintiffs' motion to compel production of "internal complaints

13 regarding compensation, promotion, or performance review." *Id*. at 564.  But the *Chen-Oster*

14 court did not compel the production of entire investigation files that Plaintiffs seek here.  *See*

15 *id*. at 564, 568; *see also Adams v. City of Montgomery*, 282 F.R.D. 627, 634 (M.D. Ala. 2012)

16 (denying motion to compel investigation file created by defendant following plaintiff's

17 discrimination allegation).  Even if it had, there is no evidence in that case to suggest that

18 Goldman Sachs had similar concerns to those identified by Microsoft.

19     **C.  Plaintiffs Cannot Seek Discovery on Out-of-Scope Issues.**

20        Complaints on issues that go beyond the scope of the claims alleged by Plaintiffs in

21 this lawsuit are irrelevant, and Microsoft should not be required to produce them.  *See, e.g.,*

22 *Walech v. Target Corp*., No. C11-254 RAJ, 2012 WL 1068068, at *8 (W.D. Wash. Mar. 28,

23 2012) (limiting discovery to similar claims); *Moss v. Blue Cross & Blue Shield of Kan., Inc*.,

24 241 F.R.D. 683, 692 (D. Kan. 2007) (same); *Pleasants v. Allbaugh*, 208 F.R.D. 7, 15 (D.D.C.

25 2002) ("the proper scope of discovery seeking other complaints of discrimination against

26 defendant must be limited in time, type of action complained of or type of discrimination

27 _____

28 [2] In *Kingsberry*, after determining plaintiffs' requests for insurance policies in several states was overly broad and unduly burdensome, the court limited discovery by requiring defendant to produce only a sampling of policies.

1   alleged").  Plaintiffs are not entitled to complaints regarding retaliation because Plaintiffs have

2   not alleged class-wide retaliation.  Moreover, if the complaint underlying the retaliation

3   complaint is based on gender discrimination, sexual harassment, or pregnancy discrimination,

4   they will be included in the complaints that Microsoft has agreed to include in its production.

5          Generic complaints of "unfair treatment" are also problematic because a search for

6   such complaints would be extraordinarily burdensome and go well beyond the scope of this

7   litigation.  Such complaints could arise in various contexts, formally and informally, orally and

8   in writing, with managers, HR, and possibly others.  Microsoft does not centrally track these

9   complaints because it would be nearly impossible to do so.  A search of HR personnel alone

10  would involve a review of over 1,000 custodians.  Damrell Decl. ¶ 30.  Undergoing the burden

11  of tracking down complaints of "unfair treatment" is not warranted given their low probative

12  value, and Plaintiffs have no legal support for such an overbroad search.

13         The discrimination and harassment complaints of putative class members that

14  Microsoft has agreed to produce are more than broad enough to include any complaints that

15  could possibly be relevant to this lawsuit.  As Microsoft explained to Plaintiffs, ERIT

16  undertakes investigations when an employee raises complaints related to potential policy

17  violations regarding: (1) harassment or discrimination; (2) retaliation; (3) conflicts of interest

18  related to family or romantic relationships; (4) equal employment opportunity; or (5) sexually

19  explicit or offensive material.  Damrell Decl. at 31.  Complaints may fall within this scope

20  regardless whether the complainant uses specific terms like "discrimination" or "harassment."

21  *Id.*  Again, Plaintiffs could have explored this process further if it had proceeded with the

22  30(b)(6) deposition on June 28, but Plaintiffs' canceled that deposition.  For these reasons,

23  Microsoft respectfully requests that this Court deny Plaintiffs' request to expand discovery

24  regarding complaints beyond what Microsoft has already agreed to produce.

25  **IV.  <u>A CATEGORICAL PRIVILEGE LOG IS APPROPRIATE</u>**

26         Plaintiffs have propounded at least three Requests for Production ("RFPs") that seek

27  documents closely connected to Microsoft's legal practices and seek extensive privileged

28  material, including documents that refer or relate to:  (1) Microsoft's compliance efforts

MOTION TO QUASH AND APPROVE USE OF
CATEGORICAL PRIVILEGE LOG:  2:15-CV-01483-JLR
- 10 -
ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1-206-839-4300

pursuant to Title VII and state discrimination statutes (RFP 19); (2) Microsoft's affirmative

action, diversity, non-discrimination and/or equal employment opportunity policies,

statements, guidelines, practices plans and/or training programs (RFP 20); and (3) internal

requests, inquiries, demands, claims, grievances, concerns, protests or complaints made

regarding "unfair treatment"[3]  (RFP 21).   Damrell Decl. ¶ 5.  Microsoft has agreed to produce

thousands of pages of responsive, non-privileged documents for these requests, including, for

example, Microsoft's policies that it communicates to employees regarding equal employment

opportunity, and the documents submitted to the U.S. Department of Labor, Office of Federal

Compliance Programs ("OFCCP").  However, given the legal nature of these specific requests,

the volume of attorney-client privileged communications and work performed at the direction

of counsel is overwhelming.  To ensure federal contractors comply with their the contractual

promise of affirmative action and equal employment opportunity required of those who do

business with the Federal government, OFCCP conducts thousands of evaluations a year based

on a variety of neutral factors such as contract expiration date and contract value.  See Federal

Contractor Selection System (FCSS) - Questions and Answers, *available at*

https://www.dol.gov/ofccp/regs/compliance/faqs/fcssfaqs.htm.  Since OFCCP could knock on

the door at any one of Microsoft's dozens of offices across the country at any time,

Microsoft—like many other respected federal contractors—engages in-house and outside

counsel to ensure that it is prepared for that possibility.

A categorical log is appropriate under the Federal Rules of Civil Procedure and

Western District of Washington proposed ESI procedures.  The Committee Notes on the 1993

amendments to Federal Rule 26 explicitly contemplate that a categorical log is appropriate

when producing an item-by-item log would be unduly burdensome.  Fed. R. Civ. P. 26(b)(5)

advisory committee notes, 1993 amends. ("Details concerning time, persons, general subject

matter, etc., may be appropriate if only a few items are withheld, but may be unduly

burdensome when voluminous documents are claimed to be privileged or protected,

---

[3] If the Court grants the relief Microsoft seeks above regarding complaints, a privilege log would not be necessary
for that subset of documents, making this argument moot for that subset.

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1-206-839-4300

1 particularly if the items can be described by categories.").  Similarly, this Court's Model

2 Agreement Regarding Discovery of Electronically Stored Information (*available at*

3 http://www.wawd.uscourts.gov/sites/wawd/files/ModelESIAgreement.pdf) suggests that a

4 document-by-document log may not be appropriate in all cases.  Courts have approved

5 categorical logs when the burden of producing a log listing each individual document is too

6 great, so long as the log contains enough information to allow the opposing party to evaluate

7 the privilege claims.  *See In re Phenylpropanolamine Prods. Liab. Litig.*, MDL No. 1407,

8 2002 U.S. Dist. LEXIS 26794 (W.D. Wash. Oct. 3, 2002)); *see also Schmidt v. Levi Strauss &*

9 *Co.*, No. C04-01026 RMW (HRL), 2007 U.S. Dist. LEXIS 18787 (N.D. Cal. Feb. 28, 2007).

10 Microsoft has therefore offered Plaintiffs the following categorical log:

| Category | Description | Privilege Type |
|---|---|---|
| 1 | Correspondence between Microsoft attorneys and Microsoft employees regarding Microsoft's gender- related diversity and compliance efforts from January 1, 2010 to present for purposes of obtaining legal advice. | Attorney-Client Communication; Work Product |
| 2 | Documents created at direction of counsel regarding Microsoft's gender-related diversity and compliance efforts from January 1, 2010 to present. | Attorney-Client Communication; Work Product |
| 3 | Communications between Microsoft attorneys and outside counsel regarding Microsoft's gender-related diversity and compliance efforts from January 1, 2010 to present for purposes of obtaining legal advice. | Attorney-Client Communication; Work Product |

17      Again, Microsoft estimates that it will cost over $165,000 to collect, review, redact, and

18 log just the ERIT investigation files and custodial data.  Damrell Decl. at 29.  Individually

19 logging all files potentially responsive to Plaintiffs' RFP Nos. 19-21 would be exponentially

20 greater.  Significantly, because some of the documents are in paper format, Microsoft cannot

21 create a metadata log for all files as contemplated under the ESI protocol.  *See* Dkt. No. 50.

22 Microsoft would have to create a document-by-document log for at least some of the files.

23 Because of these burdens and because the privilege calls are adequately described above, a

24 categorical log is appropriate.[4]

25 

---

26 [4] During the meet and confer discussions, Plaintiffs rejected the idea of a categorical log outright without referencing any particular category of documents that they believed should not be classified as "privileged."

27 Should Plaintiffs have concerns about a particular subset of documents, they should challenge that issue.  Even if they raise such a challenge, Microsoft should not be required to collect, review, redact, and log the totality of all privileged files.  Rather, the parties could meet and confer to identify a reasonable sample to review, redact and

28 log.  If Plaintiffs have concerns about the sample log, they can then challenge Microsoft's designations.

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1-206-839-4300

1

2

3    Dated: July 7, 2016                   Respectfully Submitted,

4                                          By:  *s/Mark S. Parris*
                                                *s/Lynne C. Hermle*
5                                               *s/Jessica R. Perry*
                                                Mark S. Parris (WSBA No. 13870)
6                                               mparris@orrick.com

7                                               701 Fifth Avenue
                                                Suite 5600
8                                               Seattle, Washington 98104-7097
                                                Telephone: 206-839-4300
9                                               Facsimile: 206-839-4301

10                                              Lynne C. Hermle (Admitted *Pro Hac Vice*)
                                                Jessica R. Perry (Admitted *Pro Hac Vice*)
11                                              lchermle@orrick.com
                                                jperry@orrick.com
12
                                                1000 Marsh Road
13                                              Menlo Park, California 94025
                                                Telephone:  650-614-7400
14                                              Facsimile:   650-614-7401

15
                                           *Attorneys for Defendant Microsoft Corporation*
16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 7, 2016, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of the filing to all counsel of record.


DATED:  July 7, 2016                          ORRICK, HERRINGTON & SUTCLIFFE LLP


By:   *s/Mark S. Parris*
Mark S. Parris (WSBA No. 13870)
mparris@orrick.com

701 Fifth Avenue, Suite 5600
Seattle, WA  98104-7097
Telephone:   206-839-4300
Facsimile:    206-839-4301

MOTION TO QUASH AND APPROVE USE OF
CATEGORICAL PRIVILEGE LOG:  2:15-CV-01483-JLR                - 14 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1-206-839-4300