The Honorable James L. Robart

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

SEATTLE DIVISION

KATHERINE MOUSSOURIS, HOLLY
MUENCHOW, and DANA PIERMARINI,
on behalf of themselves and a class of those
similarly situated,

          Plaintiffs,

   v.

MICROSOFT CORPORATION,

          Defendant.

Case No. 2:15-cv-01483-JLR

**DECLARATION OF LAURI A.
DAMRELL IN SUPPORT OF
MOTION TO QUASH PLAINTIFFS'
REQUEST FOR INTERNAL
INVESTIGATION FILES AND
APPROVE USE OF A
CATEGORICAL PRIVILEGE LOG**

**NOTE ON MOTION CALENDAR:
July 18, 2016**

**ORAL ARGUMENT REQUESTED**

DECLARATION OF LAURI A. DAMRELL IN SUPPORT
OF MOTION TO QUASH:  2:15-CV-01483-JLR

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1-206-839-4300

I, Lauri A. Damrell, hereby declare:

1.      I am a member of the State Bar of California and a partner in the law firm of Orrick, Herrington & Sutcliffe LLP, and am lead counsel of record in this action for defendant Microsoft Corporation.  I make this declaration in support of Defendant's Motion to Quash Plaintiffs' Request for Internal Investigation Files and Approve Use of a Categorical Privilege Log.  I have personal knowledge of the matters contained in this declaration, except where expressly stated to be alleged on information and belief, and, if called to testify as a witness as to those matters, could do so competently.  As to the matters stated to be declared on the basis of information and belief, I am informed and believe those matters to be true.

2.      From the outset, Microsoft has made every effort to meet and confer with Plaintiffs to produce relevant, proportionate, and reasonable discovery at this pre-certification stage of the case.  To date, Microsoft has produced over 140,800 pages of documents (10.6 GB), which required review of over 7,800,000 (78 GBs), costing Microsoft over $525,000 for review and production alone, not including the time invested by internal Microsoft staff or outside counsel fees.

3.      The parties have also spent months negotiating the scope of custodian-level searches, which, based on Plaintiffs' latest iteration, would include a collection from 60 custodians (negotiated down from Plaintiffs' original request for over 500) and would involve an additional review of at least another 20,000,000 pages (200 GBs).

4.      In addition, Microsoft has spent hundreds of hours answering Plaintiffs' questions on Microsoft's databases, providing detailed declarations from IT personnel, presenting multiple witnesses at deposition, and retaining an outside data consultant to confirm Microsoft witness testimony on the burdens associated with Plaintiffs' requests.  Based on the parties' discussions, Microsoft has agreed to produce nearly ***200 separate personnel data fields*** for over 66,000 employees dating back to January 1, 2010.

5.      Beyond that (and relevant to the dispute here), Microsoft engaged in further meet and confer discussions regarding Plaintiffs' RFP No. 21, which requests:

DECLARATION OF LAURI A. DAMRELL IN SUPPORT
OF MOTION TO QUASH:  2:15-CV-01483-JLR

- 1 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1-206-839-4300

All DOCUMENTS (including but not limited to investigation files, logs, OR databases) that REFER OR RELATE TO internal requests, inquiries, demands, claims, grievances, concerns protests, OR complaints made by DEFENDANT'S applicants, employees, AND/OR managers against DEFENDANT, REFERRING OR RELATING TO unfair treatment against any woman, including gender discrimination, sexual harassment, pregnancy discrimination, hostile work environment, AND/OR retaliation, including investigations of such requests, inquiries, demands, claims, grievances, concerns, protests, AND/OR complaints. This document request includes all forms of COMMUNICATIONS—either in writing OR orally (where such COMMUNICATIONS have been taped, logged, noted AND/OR investigated and described through records of the investigation), formal OR informal, to DEFENDANT OR to any other party.

A true and correct copy of Plaintiffs' Requests for Production is attached hereto as **Exhibit A**.

6.      From the very beginning, Microsoft objected to this request to the extent it asks Microsoft to produce documents protected by attorney-client and attorney work product privileges. A true and correct copy of Microsoft's Responses and Objections to Plaintiffs' Requests for Production is attached hereto as **Exhibit B**.

7.      ERIT sits within Microsoft's legal department, and Microsoft's Employment Law Group ("ELG") is typically involved in every ERIT investigation, to varying degrees, depending upon the specific investigation.

8.      In some cases, ELG attorneys designate the investigation as "attorney-directed" or "attorney-requested." An investigation may be designated as "attorney-directed" or "attorney-requested" at any stage of the investigation.

9.      In addition, even when an investigation is not "attorney-directed" or "attorney-requested," ERIT investigators generally consult with ELG attorneys during an investigation on a variety of issues and those privileged communications are often included in the investigation file.

10.     Thus, determining whether any given document within an investigation file (which may be hundreds of pages long) is protected by the attorney-client and/or work product privileges is an extraordinarily time consuming process that requires a sophisticated legal review and extensive quality control given the highly sensitive nature of the material.

DECLARATION OF LAURI A. DAMRELL IN SUPPORT
OF MOTION TO QUASH:  2:15-CV-01483-JLR          - 2 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1-206-839-4300

11.     To further complicate matters, investigators handle multiple matters at a time and may communicate with internal Microsoft counsel or others regarding multiple investigations in a single email.  Thus, an investigation file related to a complaint made by a putative class member may include numerous documents related to employees and/or allegations wholly irrelevant to Plaintiffs' claims.  Some files also include communications and other documents related to allegations that are completely outside the scope of Plaintiffs' claims (e.g., allegations related to race, age, or national origin), which Microsoft would have to exclude or at least redact from the file.

12.     It is also difficult to isolate the putative class member's "complaint" within an investigation file.  In many cases, employees raise issues orally, so there is no written "complaint" in the file.  Nor do the files necessarily have a clean, non-privileged summary of the complaint that can easily be pulled from the file.

13.     Given these serious concerns, Microsoft ultimately agreed to identify complaints made by putative class members alleging gender discrimination (including pregnancy discrimination) and sexual harassment, specifically: (1) A log of civil complaints, including the case name, case number, jurisdiction, and case status (e.g. open or closed) filed from January 1, 2010 to present; (2) copies of EEOC and state agency charges filed from January 1, 2010 to present; (3) copies of attorney demand letters sent to Microsoft on behalf of putative class members from January 1, 2010 to present; and (4) a log of internal complaints investigated by ERIT, including the complainant's unique identifier, job title, the basis for the complaint, the year the complaint was received, and the outcome, from January 1, 2010 to present.

14.     At the outset of the parties' meet and confer discussions about internal complaints, Microsoft agreed to produce a log of formal legal complaints.  Plaintiffs acknowledged and memorialized this on March 29, 2016 and April 8, 2016. *See* April 19, 2016 letter from Yaman Salahi, a true and correct copy of which is attached hereto as **Exhibit C**.

15.     During a teleconference on April 18, 2016, Plaintiffs raised the possibility of Microsoft producing copies of complaints that were not filed on a public docket (i.e., those

DECLARATION OF LAURI A. DAMRELL IN SUPPORT
OF MOTION TO QUASH:  2:15-CV-01483-JLR          - 3 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1-206-839-4300

filed with administrative agencies, but not those filed in court on a public docket). On April 28, 2016, Microsoft confirmed that it planned to produce a log of legal and administrative complaints, as memorialized in the April 29, 2016 letter from Michael Levin-Gesundheit, a true and correct copy of which is attached hereto as **Exhibit D**.

16. In their April 29, 2016 letter (**Exhibit D**), Plaintiffs stated that in addition to the logs that Microsoft agreed to produce, they were seeking "non-privileged internal complaints...so that [Plaintiffs] may walk through exemplar complaints with the [30(b)(6)] witness." However, as Microsoft explained on April 18, it had serious concerns about Plaintiffs seeking discovery about private and highly confidential internal complaints and compliance systems because of the extent to which it would intrude on the policies and practices of Microsoft's legal department, which are largely protected by the attorney-client and attorney work product privileges. *See* **Exhibit C**. Given the difficulties associated with determining whether it would even be possible to identify the additional complaints requested by Plaintiffs much less determine whether any number of the potentially responsive documents were privileged, Microsoft indicated on April 28 that it would have to consider this request further. *See* **Exhibit D**.

17. During the parties' next weekly meet-and-confer teleconference on May 5, 2016, Microsoft agreed to provide a proposal regarding privilege protection for internal complaints. *See* May 5, 2016 letter from Michael Levin-Gesundheit, a true and correct copy of which is attached hereto as **Exhibit E**.

18. Microsoft further explained on May 23, 2016 that though Microsoft was continuing to work to formulate a proposal, the issue was tied to the parties' ongoing negotiations regarding the scope of the class (both with regard to temporal scope and the proposed class definition). Without fully understanding the breadth of the class and who Plaintiffs believe are included in it, Microsoft could not properly identify in-scope complaints and assess the extent of what Plaintiffs were seeking in discovery. *See* May 23, 2016 email from Lauri Damrell, a true and correct copy of which is attached hereto as **Exhibit F**.

DECLARATION OF LAURI A. DAMRELL IN SUPPORT
OF MOTION TO QUASH:  2:15-CV-01483-JLR                - 4 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1-206-839-4300

Microsoft further noted that, as of May 23, Plaintiffs had yet to propose which professions they believed to be included in their class definition. *Id.*

19.     Plaintiffs did not clarify their proposed class definition until May 24, 2016. *See* e-mail from A. Shaver dated May 24, 2016, a true and correct copy of which is attached hereto as **Exhibit G**.

20.     Despite this delay and the ongoing dispute between the parties regarding the proper scope of discovery on these issues, Microsoft agreed to produce a witness on June 28, 2016 for the 30(b)(6) deposition that Plaintiffs noticed regarding on complaints and compliance.  Based on Plaintiffs' previous representation that they wanted to "walk through exemplar complaints" during the deposition, Microsoft believed that its prior production of the non-privileged documents within Moussouris's and Piermarini's complaint files provided Plaintiffs with the "exemplars" they needed in advance of June 28 to allow them to prepare for the deposition.

21.     Immediately after Plaintiffs' May 24, 2016 clarification of their class definition, Microsoft began to reassess precisely what documents would fall within the categories of complaints sought by Plaintiffs and the extent to which privilege applied to those documents. On June 20, 2016, Microsoft communicated its final proposal, which Plaintiffs swiftly rejected. *See* letter from L. Damrell dated June 20, 2016 and letter from A. Shaver dated June 22, 2016. True and correct copies of these letters are attached hereto as **Exhibits H and I**.

22.     In a good faith attempt to keep the June 28 deposition on calendar, Microsoft contacted Plaintiffs on June 21 to get a better understanding of what Plaintiffs believed they needed for the deposition and to offer to produce a sampling of investigation files in advance of the deposition. *See* letter from L. Damrell dated June 25, 2016, a true and correct copy of which is attached hereto as **Exhibit J**.  The sampling would include non-privileged documents from three additional investigation files for complaints made by employees in departments deemed "technical" by plaintiffs for purposes of discovery. *Id*. Since Microsoft has already produced the files for Plaintiffs Moussouris (Technology and Research) and Piermarini (Sales

DECLARATION OF LAURI A. DAMRELL IN SUPPORT
OF MOTION TO QUASH:  2:15-CV-01483-JLR                - 5 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1-206-839-4300

and Marketing), this would round out the five departments that Plaintiffs included in their putative class definition.

23.    Plaintiffs also rejected this proposal. *See* **Exhibit I**.  They expressed concern that Microsoft produced "only a handful" of documents related to the complaint investigation process, even though Microsoft confirmed that it produced all relevant, responsive, non-privileged materials regarding its investigative process.  Plaintiffs then claimed that only a complete production of investigation files for all investigations would provide sufficient insight into how the investigation process works, including what they believed would be instructions provided to investigators on how to conduct investigations.  *Id*.

24.    Microsoft explained, however, that it had already produced two investigation files to Plaintiffs (for Piermarini and Moussouris) and neither file reflects such "instructions." *See* **Exhibit J**.  As Microsoft further explained, the additional investigation files, even if produced, would, likewise, not reflect investigation "instructions," and the best way for Plaintiffs to gather additional information regarding how Microsoft generally conducts investigations is to depose its 30(b)(6) witness on these topics on June 28.  *Id*.

25.    Plaintiffs rejected Microsoft's proposal on June 22, 2016 and canceled the deposition. *See* **Exhibits I and J.**

26.    Plaintiffs' proposed class definition includes at least 11,625 putative class members and this request encompasses any investigations of complaints lodged by these 11,625 putative class members since January 1, 2010.

27.    Although a very small percentage of these putative class members ever made a complaint of gender discrimination or sexual harassment since January 2010 (and even fewer of these complaints were ultimately substantiated), the volume of documents is extensive because each investigation file can be hundreds of pages long.

28.    Moreover, the 25 searches Plaintiffs want performed on all ERIT custodial data could require a review of nearly 700,000 pages (7 GBs).

DECLARATION OF LAURI A. DAMRELL IN SUPPORT
OF MOTION TO QUASH:  2:15-CV-01483-JLR          - 6 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1-206-839-4300

29. Based on Microsoft's initial review of ERIT investigation files and ERIT custodial data, Microsoft estimates that it will cost over $165,000 to collect, review, and log these documents.

30. Generic complaints of "unfair treatment" are also problematic because a search for such complaints would be extraordinarily burdensome and go well beyond the scope of this litigation. Such complaints could arise in various contexts, formally and informally, orally and in writing, with managers, HR, and possibly others. Microsoft does not centrally track these complaints because it would be nearly impossible to do so. A search of HR personnel alone would involve a review of over 1,000 custodians.

31. ERIT undertakes investigations when an employee raises complaints related to potential violations of Microsoft's policies regarding: (1) anti-harassment or anti-discrimination; (2) non-retaliation; (3) avoidance of conflicts of interest related to family or romantic relationships in the workplace; (4) equal employment opportunity; or (5) sexually explicit or offensive material. Complaints may fall within this scope regardless whether the complainant expressly uses specific terms like "discrimination" or "harassment."

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 7, 2016 in Sacramento, California.

_____*s/ Lauri A. Damrell*_____
Lauri A. Damrell

DECLARATION OF LAURI A. DAMRELL IN SUPPORT
OF MOTION TO QUASH:  2:15-CV-01483-JLR         - 7 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1-206-839-4300

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2016, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of the filing to all counsel of record.

DATED:  July 7, 2016                    ORRICK, HERRINGTON & SUTCLIFFE LLP


By:  _s/ Mark S. Parris_
      Mark S. Parris (WSBA No. 13870)
      mparris@orrick.com

      701 Fifth Avenue, Suite 5600
      Seattle, WA  98104-7097
      Telephone:   206-839-4300
      Facsimile:   206-839-4301

DECLARATION OF LAURI A. DAMRELL IN SUPPORT
OF MOTION TO QUASH:  2:15-CV-01483-JLR          - 8 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1-206-839-4300