1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10 KATHERINE MOUSSOURIS, et al.,

11                     Plaintiffs,

12            v.

13 MICROSOFT CORPORATION,

14                     Defendant.

CASE NO. C15-1483JLR

ORDER

15                    **I.    INTRODUCTION**

16        Before the court are three motions.  Defendant Microsoft Corporation moves to

17 dismiss Plaintiffs Katherine Moussouris, Holly Muenchow, and Dana Piermarini's

18 (collectively, "Plaintiffs") disparate impact claims (MTD (Dkt. # 62)) and moves to

19 establish that the potential liability period under Washington law begins on September

20 16, 2012 (Msft. SOL Mot. (Dkt. # 121)).  Plaintiffs oppose both motions.  (MTD Resp.

21 (Dkt. # 71); Plfs. SOL Resp. (Dkt. # 131).)  In addition, Plaintiffs move to establish that

22 the potential liability period under Washington law begins on May 14, 2011.  (Plfs. SOL

1  Mot. (Dkt. # 122).)  Microsoft opposes Plaintiffs' motion.[1]  (Msft. SOL Resp. (Dkt.

2  # 132).)  The court has considered the parties' submissions, the appropriate portions of

3  the record, and the relevant law.[2]  Considering itself fully advised, the court DENIES

4  Microsoft's motion to dismiss, GRANTS Microsoft's motion to establish that the

5  potential liability period under Washington law begins on September 16, 2012, and

6  DENIES Plaintiffs' motion to establish that the potential liability period under

7  Washington law begins on May 14, 2011.

8  ## II.    BACKGROUND

9         Plaintiffs are three current or former Microsoft employees who assert claims for

10  gender-based employment discrimination against female technical employees.  (*See*

11  *generally* SAC (Dkt. # 55); *see also* Compl. (Dkt. # 1); FAC (Dkt. # 8).)  On May 13,

12  2014, Ms. Moussouris filed a charge of discrimination with the Washington State Human

13  Rights Commission ("WSHRC") and the Equal Employment Opportunity Commission

14  ("EEOC") on behalf of herself and "other similarly situated female employees in

15  engineering and technical roles . . . at Microsoft."  (SAC ¶ 20, Ex. A ("EEOC Charge") at

16  1-2, 5.)  The discrimination charge eventually led to this lawsuit.

17  _____

18     [1] Pursuant to the parties' stipulation, the court ordered the parties to brief the liability
period issue by filing a joint statement of the issue followed by simultaneous opening briefs and
19  simultaneous response briefs.  (8/22/16 Min. Order (Dkt. # 107) at 1-2.)  The court construes
both opening briefs as motions.  (*See* Msft. SOL Mot.; Plfs. SOL Mot.)

20     [2] Microsoft and Plaintiffs request oral argument on Microsoft's motion to dismiss.  (*See*
21  MTD; MTD Resp.)  Microsoft also requests oral argument on the liability period issue (*see* Msft.
SOL Mot.; Msft. SOL Resp.), whereas Plaintiffs do not (*see* Plfs. SOL Mot; Plfs. SOL Resp.)
The court concludes that oral argument would not be helpful to its disposition of these motions
22  and denies the requests for oral argument.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

1    In their first amended complaint, Plaintiffs, on behalf of a putative class, claimed

2    intentional discrimination and disparate impact discrimination in violation of Title VII of

3    the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Washington

4    Law Against Discrimination ("WLAD"), RCW 49.60.010 *et seq.*  (FAC ¶¶ 71-100.)  Ms.

5    Moussouris and Ms. Piermarini also alleged retaliation in violation of Title VII, and Ms.

6    Moussouris added a claim for retaliation in violation of the WLAD.  (*Id.* ¶¶ 101-10.)  Ms.

7    Moussouris and Ms. Piermarini brought these retaliation claims on behalf of themselves,

8    not on behalf of the putative class.  (*Id.*)

9    On March 7, 2016, the court dismissed Plaintiffs' disparate impact claims, as

10   alleged in the first amended complaint, for failure to state a claim.  (3/7/16 Order (Dkt.

11   # 52) at 20-23; *see also* FAC.)  The court concluded that Plaintiffs "merely assert[ed] as

12   fact the causation element of Plaintiffs' prima facie [disparate impact] claims," and

13   therefore held that the court could not "plausibly infer that the allegedly offending

14   employment practices cause the alleged disparate impact."  (3/7/16 Order at 21, 23.)

15   However, the court granted Plaintiffs leave to amend their complaint (*id.* at 23), and on

16   April 6, 2016, Plaintiffs filed their second amended complaint (SAC).  The second

17   amended complaint is now the operative complaint.  (*See* Dkt.)

18   Plaintiffs' second amended complaint adds substantial detail to the allegations that

19   pertain to Plaintiffs' disparate impact claims.[3]  (*See, e.g.*, SAC ¶¶ 24, 26-32, 41, 43-51,

20   53.)  Plaintiffs assert that the disparate impact stems from the confluence of Microsoft's

21

22      [3] Because the instant motions do not challenge the merits of Plaintiffs' disparate
treatment and retaliation claims, the court omits those allegations from its factual summary.

1   stack ranking system of evaluating technical employees, the gender makeup of

2   Microsoft's technical departments, and systemic biases.  (*Id.* ¶¶ 26-41.)  Because

3   Microsoft utilizes the performance evaluations to determine compensation and

4   promotions, Plaintiffs allege the impacts on themselves and the class they seek to

5   represent are far-reaching.  (*Id.* ¶¶ 42-52.)

6        Plaintiffs describe in detail the stack ranking process and how it allegedly

7   disparately impacts female technical employees.  From 2011 to 2013, Microsoft used a

8   "companywide 'stack ranking' system for evaluating employee performance, which force

9   ranked employees from best to worst using a performance rating from 1 [best] to 5

10  [worst]."  (*Id.* ¶ 27.)  Microsoft applied a curve so that only a certain percentage of

11  employees in each "defined peer group" could attain each rating.  (*Id.*)  Microsoft applied

12  this curve by holding biannual "calibration meetings" at which managers assessed three

13  factors:  the results an employee obtained, how the employee obtained those results, and

14  whether the employee had a history of continuing to develop his or her capabilities.  (*Id.*

15  ¶¶ 29, 31.)  Managers obtained this information by soliciting input from colleagues.  (*Id.*

16  ¶ 30.)  Although an employee could suggest colleagues to evaluate the employee's work,

17  the managers retained full discretion to determine how much weight to assign to each

18  evaluation.  (*Id.*)

19       At the calibration meetings, managers "presented the merits of their own

20  employees and attempted to discredit the merits of the other [managers'] employees."

21  (*Id.* ¶ 31.)  Following a "week of such meetings," the "calibration owner," who oversaw

22  the managers, "resolve[d] the order of the stack for all employees discussed in a given

1    meeting." (*Id.*) A "higher-level manager" then performed a final review of the

2    calibration owner's rankings before finalizing the stacks. (*Id.* ¶ 32.)

3        In 2014, Microsoft transitioned its performance evaluation procedure to a system

4    called Connect, which Plaintiffs characterize as similar to the prior stack ranking system.

5    (*Id.* ¶¶ 37-38.) Managers rate their employees on a sliding scale based on their "impact,"

6    which purports to measure "key individual accomplishments," "contributions to the

7    success of others," and "results that build on the work, ideas, or efforts of others." (*Id.*

8    ¶ 39.) Managers then convene at "people discussions," which resemble calibration

9    meetings. (*Id.* ¶ 40.) The subsequent steps in the Connect process mirror those in the

10    prior stack ranking process. (*Id.*)

11        Plaintiffs allege these performance evaluation methods are "invalid" because they

12    "set arbitrary cutoffs among performers with similar performance" and are "not based on

13    valid and reliable performance measures." (*Id.* ¶¶ 28-29; *see also id.* ¶¶ 38-39.)

14    Furthermore, Plaintiffs allege that the "vast majority (over 80%)" of the managers at the

15    calibration meetings and people discussions were men, and Plaintiffs posit that "female

16    technical employees were systematically undervalued compared to their male peers

17    because as a group they received, on average, lower rankings despite equal or better

18    performance." (*Id.* ¶ 34; *see also id.* ¶ 24 ("In positions that Microsoft categorizes as

19    "Tech" in nature, only 16.9% of employees are female, while 83% are male.").)

20    Plaintiffs then detail how this alleged disparity affected female technical employees'

21    compensation and promotions. (*Id.* ¶¶ 42-52.)

22

1    Microsoft moves to dismiss Plaintiffs' disparate impact claims.  (MTD.)  The

2    parties also dispute how far back the statute of limitations reaches, and the determination

3    of that issue will impact the putative class definition.  (Plfs. SOL Mot.; Msft. SOL Mot.)

4    Those issues are now before the court.

5                              III.    ANALYSIS

6    **A.    Microsoft's Motion to Dismiss**

7    Microsoft contends that the second amended complaint fails to adequately plead

8    disparate impact claims because (1) it insufficiently identifies the employment practice or

9    practices that allegedly disparately impact women (MTD at 3-6), and (2) like the first

10   amended complaint, Plaintiffs fail to plausibly allege causation (*id.* at 6-12).  The court

11   addresses each of these contentions in turn.

12          1.   Legal Standard

13   When considering a motion to dismiss under Federal Rule of Civil Procedure

14   12(b)(6), the court construes the complaint in the light most favorable to the nonmoving

15   party.  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir.

16   2005).  The court must accept all well-pleaded facts as true and draw all reasonable

17   inferences in favor of the plaintiff.  *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135

18   F.3d 658, 661 (9th Cir. 1998).  "To survive a motion to dismiss, a complaint must contain

19   sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

20   face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

21   550 U.S. 544, 570 (2007)); *see Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th

22   Cir. 2010).  "A claim has facial plausibility when the plaintiff pleads factual content that

1   allows the court to draw the reasonable inference that the defendant is liable for the

2   misconduct alleged." *Iqbal*, 556 U.S. at 678.  The court, however, need not accept as true

3   a legal conclusion presented as a factual allegation.  *Id.*  Finally, dismissal under Rule

4   12(b)(6) can be based on the lack of a cognizable legal theory or the absence of sufficient

5   facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901

6   F.2d 696, 699 (9th Cir. 1990).

7          "To establish a prima facie case of disparate impact under Title VII, the plaintiffs

8   must:  (1) show a significant disparate impact on a protected class or group; (2) identify

9   the specific employment practices or selection criteria at issue; and (3) show a causal

10  relationship between the challenged practices or criteria and the disparate impact."[4]

11  *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1190 (9th Cir. 2002).  However, at the

12  pleading stage, "[t]he burden of establishing a prima facie case is not onerous. . . . The

13  plaintiff must only make allegations sufficient to raise an inference or presumption of

14  discrimination."  *Gilley v. JPMorgan Chase Bank, N.A.*, No. 12CV1774 AJB (JMA),

15  2012 WL 10424926, at *3 (S.D. Cal. Oct. 12, 2012) (citing *Tex. Dep't of Cmty. Affairs v.*

16  *Burdine*, 450 U.S. 248, 254 (1981)).

17         2.  Specific Employment Practice

18         "The plaintiff must begin by identifying the specific employment practice that is

19  challenged."  *Watson v. Fort Worth Bank and Tr.*, 487 U.S. 977, 994 (1988) (plurality

20

_____

21     [4] Because the WLAD is patterned after Title VII, Washington courts have applied the
   same framework to disparate impact claims under the WLAD as applies under federal law.  *See*
   *Oliver v. Pac. Nw. Bell Tel. Co.*, 724 P.2d 1003, 1005 (Wash. 1986).  Accordingly, the court's
22  analysis in this section applies to Plaintiffs' state and federal disparate impact claims.

ORDER- 7

1    opinion), *superseded by statute on other grounds*, 42 U.S.C. § 2000e-2(k).[5]  Plaintiffs

2    challenge Microsoft's "performance review practice."  (MTD Resp. at 3.)  According to

3    Plaintiffs, this stack-ranking process not only assesses performance but also affects pay

4    and promotion decisions and causes a far-reaching disparate impact.  (*Id.*)  Plaintiffs cite

5    allegations in the amended complaint that detail Microsoft's performance review practice

6    (*id.* at 4-5), and Plaintiffs therefore contend that they have stated a plausible and

7    sufficiently specific claim for disparate impact (*id.* at 5-10).

8           Microsoft's argues that Plaintiffs fail to challenge a specific employment practice

9    causing a disparate impact and instead allege a "laundry list criticizing myriad aspects of"

10   Microsoft's performance, compensation, and promotion evaluation practices.  (MTD

11   Reply (Dkt. # 74) at 4.)  To the contrary, the allegations appear somewhat unspecific only

12   because the second amended complaint explains not just how Microsoft's performance

13   evaluation system functions (FAC ¶¶ 27-33, 37, 39-40), but also how that system

14   allegedly disparately impacts women's performance evaluations (*id.* ¶¶ 34-36, 38, 41),

15   compensation (*id.* ¶¶ 43-47), and promotion (*id.* ¶¶ 48-52); *see also* 42 U.S.C.

16   § 2000e-2(k)(1)(B)(i) ("With respect to demonstrating that a particular employment

17   practice causes a disparate impact . . . , the complaining party shall demonstrate that each

18

19          ───────────────

20          [5] *See Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 656 (1989), *superseded by statute
     on other grounds*, 42 U.S.C. § 2000e-2(k); *see also Smith v. Jackson*, 544 U.S. 228, 241 (2005)
     ("[T]he employee is responsible for isolating and identifying the specific employment practices

21   that are allegedly responsible for any observed statistical disparities." (internal quotes omitted));
     *Am. Fed'n of State, Cty., & Mun. Emps., AFL-CIO (AFSCME) v. Washington*, 770 F.2d 1401,

22   1405 (9th Cir. 1985) ("Disparate impact analysis is confined to cases that challenge a specific,
     clearly delineated employment practice applied at a single point . . . .").

1    particular challenged employment practice causes a disparate impact, except that if the

2    complaining party can demonstrate to the court that the elements of a respondent's

3    decisionmaking process are not capable of separation for analysis, the decisionmaking

4    process may be analyzed as one employment practice.").  The detail that Plaintiffs have

5    added in the second amended complaint enhances—rather than detracts from—the

6    specificity with which Plaintiffs identify the challenged practice.[6]  In other words, the

7    details in Plaintiffs' allegations make it less likely, not more likely, that Microsoft will be

8    held "liable for the myriad of innocent causes that may lead to statistical imbalances" in

9    the workforce.  *Smith*, 544 U.S. at 242 (internal quotations omitted).

10          Accordingly, the court concludes that Plaintiffs sufficiently identify a challenged

11   employment practice and declines to dismiss Plaintiffs' disparate impact claims on that

12   basis.

13          3.  Causation

14          "A plaintiff who fails to allege facts at the pleading stage . . . demonstrating a

15   causal connection cannot make out a prima facie case of disparate impact."  *Texas Dep't*

16   *of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, --- U.S. ---, 135 S. Ct. 2507,

17   _____

18          [6] In its March 7, 2016, order, the court "focuse[d] its analysis of Plaintiffs' disparate
19   impact claim on Microsoft's performance evaluation method" precisely because that method was
     "the only 'specific employment practice[]' about which Plaintiffs allege[d] meaningful factual
     detail."  (3/7/16 Order at 21 n.8 (second alteration in original) (quoting *Hemmings*, 285 F.3d at
20   1190).)  Plaintiffs have not omitted any of that "meaningful factual detail" from the second
     amended complaint.  (*Compare* FAC *with* SAC.)  Rather, Plaintiffs added the allegations
21   regarding causation in an effort to remedy the pleading deficiencies identified in the court's
     order.  (*See* 3/7/16 Order at 22-23 ("Plaintiffs' nonconclusory allegations do not give rise to a
     plausible inference that one or more of Microsoft's policies caused a disparate impact upon
22   women."); *compare* FAC ¶¶ 26-29, 31, 34, 45-46, *with* SAC ¶¶ 34-36, 38, 41, 43-52.)

1   2523 (2015).  At the pleading stage, a plaintiff may satisfy this "robust causality

2   requirement," *id.*, by alleging nonconclusory facts that, accepted as true, support a

3   reasonable inference that the challenged practice caused a disparate impact, *Iqbal*, 556

4   U.S. at 678.[7]

5        Microsoft contends that Plaintiffs fail to satisfy this pleading requirement

6   regarding causation.  (MTD at 6-12.)  Plaintiffs most succinctly summarize their response

7   in the following sentence:

8        It is more than plausible that a performance review system which forces a
    distribution on a curve regardless of performance, allows managers to
9        handpick those providing input to employee performance, includes
    unreliable criteria to measure performance, does not instruct managers on
10       the weight to be afforded to particular performance criteria nor calibrates
    [sic] all managers to a uniform application of said criteria, allows
11       performance scores to be altered by subsequent managers with no actual
    knowledge of an employee's performance but with only a mandate to meet
12       a particular forced distribution, operates in an environment overwhelmingly
    dominated by men, and under which the Plaintiffs personally and women
13       they observed were harmed, would cause a disparate impact on women."

14  (MTD Resp. at 14.)  The court agrees that the characteristics of the performance review

15  system described in the second amended complaint "nudge" Plaintiffs' claims—

16  particularly the disputed element of causation—"across the line from conceivable to

17  plausible."  *Twombly*, 550 U.S. at 570.

18

19  _____

20     [7] *See also* 42 U.S.C. § 2000e-2(k)(1)(A)(i) ("An unlawful employment practice based on
    disparate impact is established under this subchapter only if . . . a complaining party
21  demonstrates that a respondent uses a particular employment practice that causes a disparate
    impact on the basis of race, color, religion, sex, or national origin and the respondent fails to
22  demonstrate that the challenged practice is job related for the position in question and consistent
    with business necessity.").

1    Plaintiffs' disparate impact claim relies on the theory that Microsoft's stack

2    ranking process led to arbitrary differentiations between technical employees' evaluations

3    and that "such inaccurate performance measurements systematically disadvantage

4    women, particularly where women work in male-dominated roles and where evaluators

5    are men."[8]   (SAC ¶ 35; *see also id.* ¶¶ 24, 34 (alleging that over 80 percent of the

6    managers in Microsoft's calibration meetings were men).)   Plaintiffs allege that they have

7    witnessed and experienced this impact firsthand.   (*Id.* ¶¶ 67, 69, 75, 79-80, 85.)   In

8    addition, Plaintiffs point to several statistics and studies that empirically support their

9    theory of causation.[9]   (*See* SAC ¶ 35 n.3.)

10   Microsoft argues that Plaintiffs' allegations "must set forth sufficient facts to

11   'tend[] to exclude the possibility that [ ] alternative explanation[s]' for the alleged

12   percentages—for example, a difference in interest or qualifications among candidates—

---

14   [8] Plaintiffs allege that the stack ranking system also causes a disparate impact in
15   compensation and promotion because the flawed performance evaluations form the basis of
     compensation and promotion decisions. (SAC ¶¶ 43, 48.)   Microsoft does not challenge the
     sufficiency of these allegations.  (*See generally* MTD.)   Instead, Microsoft challenges whether
16   the premise of these allegations—that the stack ranking process causes a disparate impact on
     performance evaluations—is sufficiently pleaded.  (*Id.* at 6-12.)   Accordingly, the court focuses
17   its analysis herein on whether Plaintiffs adequately allege that premise.

18   [9] For instance, researchers conducting a meta-analysis of research on evaluations of
     female leaders concluded that women were disproportionately devalued under certain
     circumstances, such as when women led or managed "in stereotypically masculine styles,"
19   women "occupied male-dominated roles," and "the evaluators were men."  Alice H. Eagly, et al.,
     *Gender and the Evaluation of Leaders:  A Meta-Analysis*, 111 PSYCHOL. BULL. 3, 18 (1992),
20   (*available at* Dkt. # 63-3); *see also* Karen S. Lyness & Madeline E. Heilman, *When Fit is
     Fundamental:  Performance Evaluations and Promotions of Upper-Level Female and Male
21   Managers*, 91 J. OF APPLIED PSYCHOL. 777 (2006), (*available at* Dkt. # 63-4).  Microsoft
     correctly argues that these studies imperfectly apply to Plaintiffs' allegations in this case (MTD
     at 10-12; MTD Reply at 10-11), but the studies nonetheless support the reasonableness of the
22   inference that Plaintiffs ask the court to draw regarding causation.

1    '[are] true in order to render [their] allegations plausible within the meaning of *Iqbal* and

2    *Twombly*.'"  (MTD Reply at 9 (quoting *In re Century Aluminum Co.*, 729 F.3d 1104,

3    1108 (9th Cir. 2013)) (alterations in original).)  Common sense tends to exclude the

4    possibility that Plaintiffs lacked interest in being positively evaluated, paid more, or

5    promoted.  *See Iqbal*, 556 U.S. at 679.  Furthermore, Plaintiffs allege that they and

6    similarly situated women performed as well as or better than their male peers but

7    received inferior performance evaluations.  (FAC ¶¶ 62, 74-75, 79-81.)  Accordingly, the

8    court concludes that, at a minimum, the parties have set forth multiple plausible causes of

9    the alleged disparate impact on female technical employees at Microsoft.  *See Starr v.*

10   *Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("If there are two alternative explanations, one

11   advanced by defendant and the other advanced by plaintiff, both of which are plausible,

12   plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)."); *see also In re*

13   *Century Aluminum Co.*, 729 F.3d at 1108.

14        Based on the foregoing analysis, the court concludes that Plaintiffs have stated

15   plausible disparate impact claims and denies Microsoft's motion to dismiss those claims.

16   **B.    Liability Period under the WLAD**

17        The parties agree that the WLAD imposes a three-year statute of limitations (*see*

18   Plfs. SOL Mot. at 1; Msft. SOL Mot. at 1), but they dispute how that statute of limitations

19   applies.  Plaintiffs argue that Ms. Moussouris tolled the statute of limitations when she

20   filed her EEOC charge on May 14, 2014.  (Plfs. SOL Mot. at 1; SAC ¶ 20; EEOC

21   Charge.)  Plaintiffs therefore contend that their putative class can date back to May 14,

22   2011, for claims under the WLAD.  (Plfs. SOL Mot. at 1; SAC ¶ 53.)  Microsoft argues

1    that Ms. Moussouris tolled the statute of limitations for the putative class not upon filing

2    her EEOC charge, but when she filed the original complaint on September 16, 2015.

3    (Msft. SOL Mot. at 1; Compl. at 1.)  Pursuant to the court's order (8/22/16 Min. Order),

4    Plaintiffs and Microsoft have submitted simultaneous motions and simultaneous

5    responses so the court can determine this issue.

6            The only argument that Plaintiffs advance in support of their position is that the

7    court should equitably toll the statute of limitations as of the date Ms. Moussouris filed

8    her EEOC charge.[10]  (*See* Plfs. SOL Mot. at 3-9; *see also* Plfs. SOL Resp. at 1-8.)

9    "Equitable tolling is appropriate when consistent with both the purpose of the statute

10   providing the cause of action and the purpose of the statute of limitations."  *Millay v.*

11   *Cam*, 955 P.2d 791, 797 (Wash. 1998).  The Washington Supreme Court has held that

12   "there may be cases in which the filing deadline for a discrimination action may be

13   equitably tolled."[11]  *Douchette v. Bethel School Dist. No. 403*, 818 P.2d 1362, 1364

14   (Wash. 1991).  However, "[c]ourts typically permit equitable tolling to occur only

15   sparingly."  *State v. Robinson*, 17 P.3d 653, 659 (Wash. Ct. App. 2001) (internal

16   quotations omitted).  The proponent of equitable tolling bears the burden of proof on the

17   issue.  *See Benyaminov v. City of Bellevue*, 183 P.3d 1127, 1133 (Wash. Ct. App. 2008).

18

19   _____

20   [10] The court thus treats as unrebutted the principal argument in Microsoft's motion—that
     absent equitable tolling, "Plaintiffs' WLAD claims are timely only three years before the date on
     which their Complaint containing those claims was filed."  (Msft. SOL Mot. at 4.)

21   [11] "Federal courts . . . apply a forum state's law regarding tolling, including equitable
     tolling when not inconsistent with federal law."  *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir.

22   1999).

1    Where, as here, none of the controlling facts are in dispute, a district court may decide the

2    question of equitable tolling as a matter of law.  *See Aronsen v. Crown Zellerbach*, 662

3    F.2d 584, 595 (9th Cir. 1981).

4            As a threshold matter, Plaintiffs frame the majority of their argument from Ms.

5    Moussouris's perspective because she filed the EEOC charge.[12]  That focus is misplaced.

6    Ms. Moussouris's WLAD claims are timely irrespective of whether the court equitably

7    tolls the statute of limitations.  Although Ms. Moussouris, as a putative class

8    representative, has a collateral interest in pursuing the claims of the putative class,[13] the

9    individuals with a direct interest in equitable tolling are those that would be in the class

10   Plaintiffs propose (SAC ¶ 53) but would not be in the class as Microsoft seeks to narrow

11   it (*see* Msft. SOL Mot. at 1).  In other words, the court analyzes equitable tolling from the

12   perspective of female technical employees who left Microsoft between May 14, 2011,

13   and September 16, 2012, but otherwise meet Plaintiffs' proposed class definition (the

14   "would-be class members").  (*See* SAC ¶ 53.)

15

16   ───────────────

17           [12] (*See, e.g.*, Plfs. SOL Mot. at 5 (*citing Salgado v. Atl. Richfield Co.*, 823 F.2d 1322,
     1326 (9th Cir. 1987)) ("Here, Plaintiff Moussouris not only had to await the EEOC's
18   investigation of individual claims before filing her federal claims, but also had to await
     completion of both the agency's and her own investigation of class claims, evidence of which is
19   difficult to obtain at the outset of a discrimination case.  Thus, the EEOC's investigation was
     even more important to Ms. Moussouris's eventual civil Class Action Complaint than it was to
20   the plaintiff bringing individual claims in *Salgado*.").)

21           [13] *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 404 (1980) (holding that a
     putative class representative's claim does not become moot "upon expiration of the named
22   plaintiff's substantive claim" because "[t]he proposed representative retains a 'personal stake' in
     obtaining class certification sufficient to assure that Art. III values are not undermined"); *Chen v.
     Allstate Ins. Co.*, 819 F.3d 1136, 1147 (9th Cir. 2016).

ORDER- 14

1    Plaintiffs must prove that equitable tolling applies.  *See Benyaminov*, 183 P.3d at

2    1133.  The record contains no evidence that any would-be class members relied on Ms.

3    Moussouris's EEOC charge.  Indeed, given that the would-be class members allegedly

4    experienced discrimination between May 2011 and September 2012 but took no action to

5    assert claims before May 2014, it is unreasonable to infer that they would have pursued

6    claims on their own behalf but for Ms. Moussouris's EEOC charge.  The record also

7    contains no evidence implying that the would-be class members faced any hindrance to

8    separately filing their own claims.  The court therefore cannot conclude that the would-be

9    class members exercised "reasonable diligence" in pursuing their claims.  *Benyaminov v.*

10   *City of Bellevue*, 183 P.3d 1127, 1130 (Wash. Ct. App. 2008); *see also Douchette*, 818

11   P.2d at 1365.  Furthermore, there is no evidence that Microsoft acted in bad faith toward,

12   deceived, or falsely assured the would-be class members.  *See Douchette*, 818 P.2d at

13   1365 (listing the "claimant's reliance on deception or false assurances on the part of the

14   employer" as one factor in assessing equitable tolling).[14]

15   On the other hand, Plaintiffs present evidence that they contend supports their

16   argument that the WSHRC misleads discrimination victims in a manner that warrants

17

18   _____

19   [14] Bad faith is a relevant but not a necessary factor for purposes of demonstrating an
     entitlement to equitable tolling.  *Compare Millay*, 955 P.2d at 797 ("The predicates for equitable

20   tolling are bad faith, deception, or false assurances by the defendant and the exercise of diligence
     by the plaintiff."), *with Putz v. Golden*, 847 F. Supp. 2d 1273, 1284 (W.D. Wash. 2012) (quoting

21   *In re Carter*, 263 P.3d 1241, 1247 (Wash. 2011)) ("[T]he Washington Supreme Court expressly
     recognized that the availability of equitable tolling of the statute of limitations is not limited to

22   circumstances 'where one of the predicates of bad faith, deception, and false assurances [i]s
     shown.'" (second alteration in original)).

1    equitable tolling.  (Plfs. SOL Mot. at 6-7; Klein Decl. (Dkt. # 123)[15] ¶ 8, Ex. C

2    ("WSHRC Homepage")); *see Douchette*, 818 P.2d at 1365 (adding that one factor to

3    consider when deciding whether to equitably toll the statute of limitations is the

4    "claimant's reliance on authoritative statements made by the administrative agency that

5    misled [the] claimant about the nature of her rights").  Specifically, Plaintiffs argue that

6    the WSHRC's website directs employment discrimination victims to file a charge "with

7    WSHRC **within six months**, from the date of the alleged violation, in order to protect

8    [*the victim's*] rights."  (*See* WSHRC Homepage at 1 (emphasis in original).)  This

9    language could mislead a reader to think that filing with WSHRC within six months is

10   both necessary and sufficient to protect one's rights.  The more natural reading, however,

11   is that filing with the WSHRC within six months of the alleged violation is necessary—

12   but not necessarily sufficient—to protect one's rights.  Because of this interpretation and

13   the absence of evidence that any would-be class member actually detrimentally relied on

14   the WSHRC homepage, the court finds this argument unpersuasive.

15         Plaintiffs also argue that by indicating the classwide nature of her allegations in

16   the EEOC charge, Ms. Moussouris put Microsoft on notice of the allegations and

17   therefore Microsoft "will not be prejudiced by" equitable tolling.  (Plfs. SOL Resp. at 4;

18   *see also* Plfs. SOL Mot. at 3-4.)  Microsoft does not dispute whether it had notice of the

19   claims during the EEOC proceedings, but that notice does not fully eliminate prejudice

20

21         [15] Microsoft moves to strike the Klein Declaration.  (Msft. SOL Resp. at 5-6.)  Because
22   the Klein Declaration does not alter the court's conclusion herein, the court denies Microsoft's
     motion to strike as moot.

1  because "[w]itnesses may no longer be available, memories have faded, and relevant

2  evidence may no longer be obtainable." *Douchette*, 818 P.3d at 1366.  The EEOC charge

3  may have mitigated the prejudice to Microsoft, but it did so in a minimal way that does

4  not justify equitable tolling—especially given Plaintiffs' dearth of other persuasive

5  reasons.

6       In sum, the undisputed facts demonstrate this case does not warrant equitable

7  tolling.[16]  Moreover, even if one or more would-be class members can make an

8  individualized showing that justifies equitable tolling of her claims, the requisite

9  individualized inquiry runs counter to Federal Rule of Civil Procedure 23 and renders the

10  claims unsuited to adjudication in a class proceeding.  *See* Fed. R. Civ. P. 23(a)(2);

11  *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 349-50 (2011).  Therefore, the court concludes

12  this is not one of the rare cases in which equitable tolling is appropriate and that

13  Plaintiffs' proposed class definition is overbroad.  The court accordingly grants

14  Microsoft's motion regarding the potential liability period, denies Plaintiffs' motion on

15  that subject, and orders that in subsequent proceedings, the parties treat September 16,

16

17  [16] Plaintiffs also make a more abstract argument that tolling the statute of limitations for the would-be class members upon the filing of an EEOC charge would effectuate the purposes of the WLAD.  (Plfs. SOL Mot. at 3-6.)  Plaintiffs correctly identify the liberal construction that

18  Washington courts apply to the WLAD in order to further its "policy of the highest order": "deter[ring] and eradicat[ing] discrimination in Washington."  *Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles*, 59 P.3d 655, 667 (Wash. 2002); *see*

19  *also* RCW 49.60.020.  However, the WLAD's liberally construed substantive protections operate in conjunction with its statute of limitations.  Statutes of limitations serve the "valuable

20  purpose[s]" of "promoting certainty and finality" and "protecting against stale claims."  *Rental Hous. Ass'n of Puget Sound v. City of Des Moines*, 199 P.3d 393, 400 (Wash. 2009).  The court

21  is not persuaded that this case warrants subjugating the text of and "valuable" policy embodied in the WLAD's statute of limitations in deference to the policy embodied in its substantive

22  protections.  *Id.*

1  2012, as the operative date to define the putative class under the WLAD.  (*See* SAC

2  ¶ 53.)

3                          **IV.    CONCLUSION**

4          Based on the foregoing analysis, the court DENIES Microsoft's motion to dismiss

5  (Dkt. # 62), GRANTS Microsoft's motion to establish that the potential liability period

6  under Washington law begins on September 16, 2012 (Dkt. # 121), DENIES Plaintiffs'

7  motion to establish that the potential liability period under Washington law begins on

8  May 14, 2011 (Dkt. # 122), and ORDERS that in subsequent proceedings, the parties

9  treat September 16, 2012, as the operative date to define the putative class under the

10  WLAD.

11          Dated this 14th day of October, 2016.

12

13

14  _____

15  JAMES L. ROBART
   United States District Judge

16

17

18

19

20

21

22

ORDER- 18