UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KATHERINE MOUSSOURIS, et al., | CASE NO. C15-1483JLR |
| Plaintiffs, | ORDER |
| v. | |
| MICROSOFT CORPORATION, | |
| Defendant. | |

## I.  INTRODUCTION

Before the court are three motions.  Defendant Microsoft Corporation moves to dismiss Plaintiffs Katherine Moussouris, Holly Muenchow, and Dana Piermarini's (collectively, "Plaintiffs") disparate impact claims (MTD (Dkt. # 62)) and moves to establish that the potential liability period under Washington law begins on September 16, 2012 (Msft. SOL Mot. (Dkt. # 121)).  Plaintiffs oppose both motions.  (MTD Resp. (Dkt. # 71); Plfs. SOL Resp. (Dkt. # 131).)  In addition, Plaintiffs move to establish that the potential liability period under Washington law begins on May 14, 2011.  (Plfs. SOL

ORDER- 1

Mot. (Dkt. # 122).)  Microsoft opposes Plaintiffs' motion.[1]  (Msft. SOL Resp. (Dkt. # 132).)  The court has considered the parties' submissions, the appropriate portions of the record, and the relevant law.[2]  Considering itself fully advised, the court DENIES Microsoft's motion to dismiss, GRANTS Microsoft's motion to establish that the potential liability period under Washington law begins on September 16, 2012, and DENIES Plaintiffs' motion to establish that the potential liability period under Washington law begins on May 14, 2011.

## II.   BACKGROUND

Plaintiffs are three current or former Microsoft employees who assert claims for gender-based employment discrimination against female technical employees.  (*See generally* SAC (Dkt. # 55); *see also* Compl. (Dkt. # 1); FAC (Dkt. # 8).)  On May 13, 2014, Ms. Moussouris filed a charge of discrimination with the Washington State Human Rights Commission ("WSHRC") and the Equal Employment Opportunity Commission ("EEOC") on behalf of herself and "other similarly situated female employees in engineering and technical roles . . . at Microsoft."  (SAC ¶ 20, Ex. A ("EEOC Charge") at 1-2, 5.)  The discrimination charge eventually led to this lawsuit.

---

[1] Pursuant to the parties' stipulation, the court ordered the parties to brief the liability period issue by filing a joint statement of the issue followed by simultaneous opening briefs and simultaneous response briefs.  (8/22/16 Min. Order (Dkt. # 107) at 1-2.)  The court construes both opening briefs as motions.  (*See* Msft. SOL Mot.; Plfs. SOL Mot.)

[2] Microsoft and Plaintiffs request oral argument on Microsoft's motion to dismiss.  (*See* MTD; MTD Resp.)  Microsoft also requests oral argument on the liability period issue (*see* Msft. SOL Mot.; Msft. SOL Resp.), whereas Plaintiffs do not (*see* Plfs. SOL Mot; Plfs. SOL Resp.)  The court concludes that oral argument would not be helpful to its disposition of these motions and denies the requests for oral argument.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

In their first amended complaint, Plaintiffs, on behalf of a putative class, claimed intentional discrimination and disparate impact discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Washington Law Against Discrimination ("WLAD"), RCW 49.60.010 *et seq.* (FAC ¶¶ 71-100.) Ms. Moussouris and Ms. Piermarini also alleged retaliation in violation of Title VII, and Ms. Moussouris added a claim for retaliation in violation of the WLAD. (*Id.* ¶¶ 101-10.) Ms. Moussouris and Ms. Piermarini brought these retaliation claims on behalf of themselves, not on behalf of the putative class. (*Id.*)

On March 7, 2016, the court dismissed Plaintiffs' disparate impact claims, as alleged in the first amended complaint, for failure to state a claim. (3/7/16 Order (Dkt. # 52) at 20-23; *see also* FAC.) The court concluded that Plaintiffs "merely assert[ed] as fact the causation element of Plaintiffs' prima facie [disparate impact] claims," and therefore held that the court could not "plausibly infer that the allegedly offending employment practices cause the alleged disparate impact." (3/7/16 Order at 21, 23.) However, the court granted Plaintiffs leave to amend their complaint (*id.* at 23), and on April 6, 2016, Plaintiffs filed their second amended complaint (SAC). The second amended complaint is now the operative complaint. (*See* Dkt.)

Plaintiffs' second amended complaint adds substantial detail to the allegations that pertain to Plaintiffs' disparate impact claims.[3] (*See, e.g.*, SAC ¶¶ 24, 26-32, 41, 43-51, 53.) Plaintiffs assert that the disparate impact stems from the confluence of Microsoft's

---

[3] Because the instant motions do not challenge the merits of Plaintiffs' disparate treatment and retaliation claims, the court omits those allegations from its factual summary.

ORDER- 3

stack ranking system of evaluating technical employees, the gender makeup of Microsoft's technical departments, and systemic biases. (*Id.* ¶¶ 26-41.) Because Microsoft utilizes the performance evaluations to determine compensation and promotions, Plaintiffs allege the impacts on themselves and the class they seek to represent are far-reaching. (*Id.* ¶¶ 42-52.)

Plaintiffs describe in detail the stack ranking process and how it allegedly disparately impacts female technical employees. From 2011 to 2013, Microsoft used a "companywide 'stack ranking' system for evaluating employee performance, which force ranked employees from best to worst using a performance rating from 1 [best] to 5 [worst]." (*Id.* ¶ 27.) Microsoft applied a curve so that only a certain percentage of employees in each "defined peer group" could attain each rating. (*Id.*) Microsoft applied this curve by holding biannual "calibration meetings" at which managers assessed three factors: the results an employee obtained, how the employee obtained those results, and whether the employee had a history of continuing to develop his or her capabilities. (*Id.* ¶¶ 29, 31.) Managers obtained this information by soliciting input from colleagues. (*Id.* ¶ 30.) Although an employee could suggest colleagues to evaluate the employee's work, the managers retained full discretion to determine how much weight to assign to each evaluation. (*Id.*)

At the calibration meetings, managers "presented the merits of their own employees and attempted to discredit the merits of the other [managers'] employees." (*Id.* ¶ 31.) Following a "week of such meetings," the "calibration owner," who oversaw the managers, "resolve[d] the order of the stack for all employees discussed in a given

ORDER- 4

meeting." (*Id.*)  A "higher-level manager" then performed a final review of the calibration owner's rankings before finalizing the stacks.  (*Id.* ¶ 32.)

In 2014, Microsoft transitioned its performance evaluation procedure to a system called Connect, which Plaintiffs characterize as similar to the prior stack ranking system.  (*Id.* ¶¶ 37-38.)  Managers rate their employees on a sliding scale based on their "impact," which purports to measure "key individual accomplishments," "contributions to the success of others," and "results that build on the work, ideas, or efforts of others."  (*Id.* ¶ 39.)  Managers then convene at "people discussions," which resemble calibration meetings.  (*Id.* ¶ 40.)  The subsequent steps in the Connect process mirror those in the prior stack ranking process.  (*Id.*)

Plaintiffs allege these performance evaluation methods are "invalid" because they "set arbitrary cutoffs among performers with similar performance" and are "not based on valid and reliable performance measures."  (*Id.* ¶¶ 28-29; *see also id.* ¶¶ 38-39.)  Furthermore, Plaintiffs allege that the "vast majority (over 80%)" of the managers at the calibration meetings and people discussions were men, and Plaintiffs posit that "female technical employees were systematically undervalued compared to their male peers because as a group they received, on average, lower rankings despite equal or better performance."  (*Id.* ¶ 34; *see also id.* ¶ 24 ("In positions that Microsoft categorizes as "Tech" in nature, only 16.9% of employees are female, while 83% are male.").)  Plaintiffs then detail how this alleged disparity affected female technical employees' compensation and promotions.  (*Id.* ¶¶ 42-52.)

Microsoft moves to dismiss Plaintiffs' disparate impact claims. (MTD.) The parties also dispute how far back the statute of limitations reaches, and the determination of that issue will impact the putative class definition. (Plfs. SOL Mot.; Msft. SOL Mot.) Those issues are now before the court.

### III.   ANALYSIS

**A.   Microsoft's Motion to Dismiss**

Microsoft contends that the second amended complaint fails to adequately plead disparate impact claims because (1) it insufficiently identifies the employment practice or practices that allegedly disparately impact women (MTD at 3-6), and (2) like the first amended complaint, Plaintiffs fail to plausibly allege causation (*id.* at 6-12). The court addresses each of these contentions in turn.

1. <u>Legal Standard</u>

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The court, however, need not accept as true a legal conclusion presented as a factual allegation.  *Id.*  Finally, dismissal under Rule 12(b)(6) can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

"To establish a prima facie case of disparate impact under Title VII, the plaintiffs must:  (1) show a significant disparate impact on a protected class or group; (2) identify the specific employment practices or selection criteria at issue; and (3) show a causal relationship between the challenged practices or criteria and the disparate impact."[4] *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1190 (9th Cir. 2002).  However, at the pleading stage, "[t]he burden of establishing a prima facie case is not onerous. . . . The plaintiff must only make allegations sufficient to raise an inference or presumption of discrimination."  *Gilley v. JPMorgan Chase Bank, N.A.*, No. 12CV1774 AJB (JMA), 2012 WL 10424926, at *3 (S.D. Cal. Oct. 12, 2012) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).

2. <u>Specific Employment Practice</u>

"The plaintiff must begin by identifying the specific employment practice that is challenged."  *Watson v. Fort Worth Bank and Tr.*, 487 U.S. 977, 994 (1988) (plurality

---

[4] Because the WLAD is patterned after Title VII, Washington courts have applied the same framework to disparate impact claims under the WLAD as applies under federal law.  *See Oliver v. Pac. Nw. Bell Tel. Co.*, 724 P.2d 1003, 1005 (Wash. 1986).  Accordingly, the court's analysis in this section applies to Plaintiffs' state and federal disparate impact claims.

opinion), *superseded by statute on other grounds*, 42 U.S.C. § 2000e-2(k).[5]  Plaintiffs challenge Microsoft's "performance review practice."  (MTD Resp. at 3.)  According to Plaintiffs, this stack-ranking process not only assesses performance but also affects pay and promotion decisions and causes a far-reaching disparate impact.  (*Id.*)  Plaintiffs cite allegations in the amended complaint that detail Microsoft's performance review practice (*id.* at 4-5), and Plaintiffs therefore contend that they have stated a plausible and sufficiently specific claim for disparate impact (*id.* at 5-10).

  Microsoft's argues that Plaintiffs fail to challenge a specific employment practice causing a disparate impact and instead allege a "laundry list criticizing myriad aspects of" Microsoft's performance, compensation, and promotion evaluation practices.  (MTD Reply (Dkt. # 74) at 4.)  To the contrary, the allegations appear somewhat unspecific only because the second amended complaint explains not just how Microsoft's performance evaluation system functions (FAC ¶¶ 27-33, 37, 39-40), but also how that system allegedly disparately impacts women's performance evaluations (*id.* ¶¶ 34-36, 38, 41), compensation (*id.* ¶¶ 43-47), and promotion (*id.* ¶¶ 48-52); *see also* 42 U.S.C. § 2000e-2(k)(1)(B)(i) ("With respect to demonstrating that a particular employment practice causes a disparate impact . . . , the complaining party shall demonstrate that each

---

[5] *See Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 656 (1989), *superseded by statute on other grounds*, 42 U.S.C. § 2000e-2(k); *see also Smith v. Jackson*, 544 U.S. 228, 241 (2005) ("[T]he employee is responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities." (internal quotes omitted)); *Am. Fed'n of State, Cty., & Mun. Emps., AFL-CIO (AFSCME) v. Washington*, 770 F.2d 1401, 1405 (9th Cir. 1985) ("Disparate impact analysis is confined to cases that challenge a specific, clearly delineated employment practice applied at a single point . . . .").

ORDER- 8

particular challenged employment practice causes a disparate impact, except that if the complaining party can demonstrate to the court that the elements of a respondent's decisionmaking process are not capable of separation for analysis, the decisionmaking process may be analyzed as one employment practice."). The detail that Plaintiffs have added in the second amended complaint enhances—rather than detracts from—the specificity with which Plaintiffs identify the challenged practice.[6] In other words, the details in Plaintiffs' allegations make it less likely, not more likely, that Microsoft will be held "liable for the myriad of innocent causes that may lead to statistical imbalances" in the workforce. *Smith*, 544 U.S. at 242 (internal quotations omitted).

Accordingly, the court concludes that Plaintiffs sufficiently identify a challenged employment practice and declines to dismiss Plaintiffs' disparate impact claims on that basis.

3. Causation

"A plaintiff who fails to allege facts at the pleading stage . . . demonstrating a causal connection cannot make out a prima facie case of disparate impact." *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, --- U.S. ---, 135 S. Ct. 2507,

---

[6] In its March 7, 2016, order, the court "focus[ed] its analysis of Plaintiffs' disparate impact claim on Microsoft's performance evaluation method" precisely because that method was "the only 'specific employment practice[]' about which Plaintiffs allege[d] meaningful factual detail." (3/7/16 Order at 21 n.8 (second alteration in original) (quoting *Hemmings*, 285 F.3d at 1190).) Plaintiffs have not omitted any of that "meaningful factual detail" from the second amended complaint. (*Compare* FAC *with* SAC.) Rather, Plaintiffs added the allegations regarding causation in an effort to remedy the pleading deficiencies identified in the court's order. (*See* 3/7/16 Order at 22-23 ("Plaintiffs' nonconclusory allegations do not give rise to a plausible inference that one or more of Microsoft's policies caused a disparate impact upon women."); *compare* FAC ¶¶ 26-29, 31, 34, 45-46, *with* SAC ¶¶ 34-36, 38, 41, 43-52.)

2523 (2015). At the pleading stage, a plaintiff may satisfy this "robust causality requirement," *id.*, by alleging nonconclusory facts that, accepted as true, support a reasonable inference that the challenged practice caused a disparate impact, *Iqbal*, 556 U.S. at 678.[7]

Microsoft contends that Plaintiffs fail to satisfy this pleading requirement regarding causation. (MTD at 6-12.) Plaintiffs most succinctly summarize their response in the following sentence:

> It is more than plausible that a performance review system which forces a distribution on a curve regardless of performance, allows managers to handpick those providing input to employee performance, includes unreliable criteria to measure performance, does not instruct managers on the weight to be afforded to particular performance criteria nor calibrates [sic] all managers to a uniform application of said criteria, allows performance scores to be altered by subsequent managers with no actual knowledge of an employee's performance but with only a mandate to meet a particular forced distribution, operates in an environment overwhelmingly dominated by men, and under which the Plaintiffs personally and women they observed were harmed, would cause a disparate impact on women."

(MTD Resp. at 14.) The court agrees that the characteristics of the performance review system described in the second amended complaint "nudge" Plaintiffs' claims—particularly the disputed element of causation—"across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

---

[7] *See also* 42 U.S.C. § 2000e-2(k)(1)(A)(i) ("An unlawful employment practice based on disparate impact is established under this subchapter only if . . . a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity.").

Plaintiffs' disparate impact claim relies on the theory that Microsoft's stack ranking process led to arbitrary differentiations between technical employees' evaluations and that "such inaccurate performance measurements systematically disadvantage women, particularly where women work in male-dominated roles and where evaluators are men."[8]  (SAC ¶ 35; *see also id.* ¶¶ 24, 34 (alleging that over 80 percent of the managers in Microsoft's calibration meetings were men).)  Plaintiffs allege that they have witnessed and experienced this impact firsthand.  (*Id.* ¶¶ 67, 69, 75, 79-80, 85.)  In addition, Plaintiffs point to several statistics and studies that empirically support their theory of causation.[9]  (*See* SAC ¶ 35 n.3.)

Microsoft argues that Plaintiffs' allegations "must set forth sufficient facts to 'tend[] to exclude the possibility that [ ] alternative explanation[s]' for the alleged percentages—for example, a difference in interest or qualifications among candidates—

---

[8] Plaintiffs allege that the stack ranking system also causes a disparate impact in compensation and promotion because the flawed performance evaluations form the basis of compensation and promotion decisions.  (SAC ¶¶ 43, 48.)  Microsoft does not challenge the sufficiency of these allegations.  (*See generally* MTD.)  Instead, Microsoft challenges whether the premise of these allegations—that the stack ranking process causes a disparate impact on performance evaluations—is sufficiently pleaded.  (*Id.* at 6-12.)  Accordingly, the court focuses its analysis herein on whether Plaintiffs adequately allege that premise.

[9] For instance, researchers conducting a meta-analysis of research on evaluations of female leaders concluded that women were disproportionately devalued under certain circumstances, such as when women led or managed "in stereotypically masculine styles," women "occupied male-dominated roles," and "the evaluators were men."  Alice H. Eagly, et al., *Gender and the Evaluation of Leaders:  A Meta-Analysis*, 111 PSYCHOL. BULL. 3, 18 (1992), (*available at* Dkt. # 63-3); *see also* Karen S. Lyness & Madeline E. Heilman, *When Fit is Fundamental:  Performance Evaluations and Promotions of Upper-Level Female and Male Managers*, 91 J. OF APPLIED PSYCHOL. 777 (2006), (*available at* Dkt. # 63-4).  Microsoft correctly argues that these studies imperfectly apply to Plaintiffs' allegations in this case (MTD at 10-12; MTD Reply at 10-11), but the studies nonetheless support the reasonableness of the inference that Plaintiffs ask the court to draw regarding causation.

'[are] true in order to render [their] allegations plausible within the meaning of *Iqbal* and *Twombly*.'" (MTD Reply at 9 (quoting *In re Century Aluminum Co.*, 729 F.3d 1104, 1108 (9th Cir. 2013)) (alterations in original).) Common sense tends to exclude the possibility that Plaintiffs lacked interest in being positively evaluated, paid more, or promoted. *See Iqbal*, 556 U.S. at 679. Furthermore, Plaintiffs allege that they and similarly situated women performed as well as or better than their male peers but received inferior performance evaluations. (FAC ¶¶ 62, 74-75, 79-81.) Accordingly, the court concludes that, at a minimum, the parties have set forth multiple plausible causes of the alleged disparate impact on female technical employees at Microsoft. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)."); *see also In re Century Aluminum Co.*, 729 F.3d at 1108.

Based on the foregoing analysis, the court concludes that Plaintiffs have stated plausible disparate impact claims and denies Microsoft's motion to dismiss those claims.

**B.   Liability Period under the WLAD**

The parties agree that the WLAD imposes a three-year statute of limitations (*see* Plfs. SOL Mot. at 1; Msft. SOL Mot. at 1), but they dispute how that statute of limitations applies. Plaintiffs argue that Ms. Moussouris tolled the statute of limitations when she filed her EEOC charge on May 14, 2014. (Plfs. SOL Mot. at 1; SAC ¶ 20; EEOC Charge.) Plaintiffs therefore contend that their putative class can date back to May 14, 2011, for claims under the WLAD. (Plfs. SOL Mot. at 1; SAC ¶ 53.) Microsoft argues

that Ms. Moussouris tolled the statute of limitations for the putative class not upon filing her EEOC charge, but when she filed the original complaint on September 16, 2015. (Msft. SOL Mot. at 1; Compl. at 1.)  Pursuant to the court's order (8/22/16 Min. Order), Plaintiffs and Microsoft have submitted simultaneous motions and simultaneous responses so the court can determine this issue.

The only argument that Plaintiffs advance in support of their position is that the court should equitably toll the statute of limitations as of the date Ms. Moussouris filed her EEOC charge.[10]  (*See* Plfs. SOL Mot. at 3-9; *see also* Plfs. SOL Resp. at 1-8.) "Equitable tolling is appropriate when consistent with both the purpose of the statute providing the cause of action and the purpose of the statute of limitations." *Millay v. Cam*, 955 P.2d 791, 797 (Wash. 1998).  The Washington Supreme Court has held that "there may be cases in which the filing deadline for a discrimination action may be equitably tolled."[11]  *Douchette v. Bethel School Dist. No. 403*, 818 P.2d 1362, 1364 (Wash. 1991).  However, "[c]ourts typically permit equitable tolling to occur only sparingly." *State v. Robinson*, 17 P.3d 653, 659 (Wash. Ct. App. 2001) (internal quotations omitted).  The proponent of equitable tolling bears the burden of proof on the issue.  *See Benyaminov v. City of Bellevue*, 183 P.3d 1127, 1133 (Wash. Ct. App. 2008).

---

[10] The court thus treats as unrebutted the principal argument in Microsoft's motion—that absent equitable tolling, "Plaintiffs' WLAD claims are timely only three years before the date on which their Complaint containing those claims was filed." (Msft. SOL Mot. at 4.)

[11] "Federal courts . . . apply a forum state's law regarding tolling, including equitable tolling when not inconsistent with federal law." *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999).

Where, as here, none of the controlling facts are in dispute, a district court may decide the question of equitable tolling as a matter of law.  *See Aronsen v. Crown Zellerbach*, 662 F.2d 584, 595 (9th Cir. 1981).

As a threshold matter, Plaintiffs frame the majority of their argument from Ms. Moussouris's perspective because she filed the EEOC charge.[12]  That focus is misplaced.  Ms. Moussouris's WLAD claims are timely irrespective of whether the court equitably tolls the statute of limitations.  Although Ms. Moussouris, as a putative class representative, has a collateral interest in pursuing the claims of the putative class,[13] the individuals with a direct interest in equitable tolling are those that would be in the class Plaintiffs propose (SAC ¶ 53) but would not be in the class as Microsoft seeks to narrow it (*see* Msft. SOL Mot. at 1).  In other words, the court analyzes equitable tolling from the perspective of female technical employees who left Microsoft between May 14, 2011, and September 16, 2012, but otherwise meet Plaintiffs' proposed class definition (the "would-be class members").  (*See* SAC ¶ 53.)

---

[12] (*See, e.g.*, Plfs. SOL Mot. at 5 (*citing Salgado v. Atl. Richfield Co.*, 823 F.2d 1322, 1326 (9th Cir. 1987)) ("Here, Plaintiff Moussouris not only had to await the EEOC's investigation of individual claims before filing her federal claims, but also had to await completion of both the agency's and her own investigation of class claims, evidence of which is difficult to obtain at the outset of a discrimination case.  Thus, the EEOC's investigation was even more important to Ms. Moussouris's eventual civil Class Action Complaint than it was to the plaintiff bringing individual claims in *Salgado*.").)

[13] *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 404 (1980) (holding that a putative class representative's claim does not become moot "upon expiration of the named plaintiff's substantive claim" because "[t]he proposed representative retains a 'personal stake' in obtaining class certification sufficient to assure that Art. III values are not undermined"); *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1147 (9th Cir. 2016).

Plaintiffs must prove that equitable tolling applies. *See Benyaminov*, 183 P.3d at 1133. The record contains no evidence that any would-be class members relied on Ms. Moussouris's EEOC charge. Indeed, given that the would-be class members allegedly experienced discrimination between May 2011 and September 2012 but took no action to assert claims before May 2014, it is unreasonable to infer that they would have pursued claims on their own behalf but for Ms. Moussouris's EEOC charge. The record also contains no evidence implying that the would-be class members faced any hindrance to separately filing their own claims. The court therefore cannot conclude that the would-be class members exercised "reasonable diligence" in pursuing their claims. *Benyaminov v. City of Bellevue*, 183 P.3d 1127, 1130 (Wash. Ct. App. 2008); *see also Douchette*, 818 P.2d at 1365. Furthermore, there is no evidence that Microsoft acted in bad faith toward, deceived, or falsely assured the would-be class members. *See Douchette*, 818 P.2d at 1365 (listing the "claimant's reliance on deception or false assurances on the part of the employer" as one factor in assessing equitable tolling).[14]

On the other hand, Plaintiffs present evidence that they contend supports their argument that the WSHRC misleads discrimination victims in a manner that warrants

---

[14] Bad faith is a relevant but not a necessary factor for purposes of demonstrating an entitlement to equitable tolling. *Compare Millay*, 955 P.2d at 797 ("The predicates for equitable tolling are bad faith, deception, or false assurances by the defendant and the exercise of diligence by the plaintiff."), *with Putz v. Golden*, 847 F. Supp. 2d 1273, 1284 (W.D. Wash. 2012) (quoting *In re Carter*, 263 P.3d 1241, 1247 (Wash. 2011)) ("[T]he Washington Supreme Court expressly recognized that the availability of equitable tolling of the statute of limitations is not limited to circumstances 'where one of the predicates of bad faith, deception, and false assurances [i]s shown.'" (second alteration in original)).

ORDER- 15

equitable tolling. (Plfs. SOL Mot. at 6-7; Klein Decl. (Dkt. # 123)[15] ¶ 8, Ex. C ("WSHRC Homepage")); *see Douchette*, 818 P.2d at 1365 (adding that one factor to consider when deciding whether to equitably toll the statute of limitations is the "claimant's reliance on authoritative statements made by the administrative agency that misled [the] claimant about the nature of her rights"). Specifically, Plaintiffs argue that the WSHRC's website directs employment discrimination victims to file a charge "with WSHRC **within six months**, from the date of the alleged violation, in order to protect [the victim's] rights." (*See* WSHRC Homepage at 1 (emphasis in original).) This language could mislead a reader to think that filing with WSHRC within six months is both necessary and sufficient to protect one's rights. The more natural reading, however, is that filing with the WSHRC within six months of the alleged violation is necessary—but not necessarily sufficient—to protect one's rights. Because of this interpretation and the absence of evidence that any would-be class member actually detrimentally relied on the WSHRC homepage, the court finds this argument unpersuasive.

Plaintiffs also argue that by indicating the classwide nature of her allegations in the EEOC charge, Ms. Moussouris put Microsoft on notice of the allegations and therefore Microsoft "will not be prejudiced by" equitable tolling. (Plfs. SOL Resp. at 4; *see also* Plfs. SOL Mot. at 3-4.) Microsoft does not dispute whether it had notice of the claims during the EEOC proceedings, but that notice does not fully eliminate prejudice

---

[15] Microsoft moves to strike the Klein Declaration. (Msft. SOL Resp. at 5-6.) Because the Klein Declaration does not alter the court's conclusion herein, the court denies Microsoft's motion to strike as moot.

because "[w]itnesses may no longer be available, memories have faded, and relevant evidence may no longer be obtainable." *Douchette*, 818 P.3d at 1366. The EEOC charge may have mitigated the prejudice to Microsoft, but it did so in a minimal way that does not justify equitable tolling—especially given Plaintiffs' dearth of other persuasive reasons.

In sum, the undisputed facts demonstrate this case does not warrant equitable tolling.[16] Moreover, even if one or more would-be class members can make an individualized showing that justifies equitable tolling of her claims, the requisite individualized inquiry runs counter to Federal Rule of Civil Procedure 23 and renders the claims unsuited to adjudication in a class proceeding. *See* Fed. R. Civ. P. 23(a)(2); *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 349-50 (2011). Therefore, the court concludes this is not one of the rare cases in which equitable tolling is appropriate and that Plaintiffs' proposed class definition is overbroad. The court accordingly grants Microsoft's motion regarding the potential liability period, denies Plaintiffs' motion on that subject, and orders that in subsequent proceedings, the parties treat September 16,

---

[16] Plaintiffs also make a more abstract argument that tolling the statute of limitations for the would-be class members upon the filing of an EEOC charge would effectuate the purposes of the WLAD. (Plfs. SOL Mot. at 3-6.) Plaintiffs correctly identify the liberal construction that Washington courts apply to the WLAD in order to further its "policy of the highest order": "deter[ring] and eradicat[ing] discrimination in Washington." *Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles*, 59 P.3d 655, 667 (Wash. 2002); *see also* RCW 49.60.020. However, the WLAD's liberally construed substantive protections operate in conjunction with its statute of limitations. Statutes of limitations serve the "valuable purpose[s]" of "promoting certainty and finality" and "protecting against stale claims." *Rental Hous. Ass'n of Puget Sound v. City of Des Moines*, 199 P.3d 393, 400 (Wash. 2009). The court is not persuaded that this case warrants subjugating the text of and "valuable" policy embodied in the WLAD's statute of limitations in deference to the policy embodied in its substantive protections. *Id.*

1  2012, as the operative date to define the putative class under the WLAD. (*See* SAC
2  ¶ 53.)

### IV. CONCLUSION

Based on the foregoing analysis, the court DENIES Microsoft's motion to dismiss (Dkt. # 62), GRANTS Microsoft's motion to establish that the potential liability period under Washington law begins on September 16, 2012 (Dkt. # 121), DENIES Plaintiffs' motion to establish that the potential liability period under Washington law begins on May 14, 2011 (Dkt. # 122), and ORDERS that in subsequent proceedings, the parties treat September 16, 2012, as the operative date to define the putative class under the WLAD.

Dated this 14th day of October, 2016.

JAMES L. ROBART
United States District Judge