THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KATHERINE MOUSSOURIS, HOLLY MUENCHOW, and DANA PIERMARINI, on behalf of themselves and a class of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>Defendant. | Case No. 2:15-cv-01483-JLR<br><br>**MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD FOR PRIVILEGE/WORK PRODUCT**<br><br>NOTE ON MOTION CALENDAR:<br>APRIL 14, 2017 |

MOTION TO COMPEL
Case No. 2:15-cv-01483-JLR
1342828.4

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

# TABLE OF CONTENTS

                                                                                                          **Page**

I. INTRODUCTION ............................................................................................................1

II. LEGAL STANDARD .....................................................................................................1

III. ARGUMENT ..................................................................................................................2

    A. Marketing Communications About Microsoft's Image Are Not Privileged. .........3

    B. Communications About Self-Critical Gender Analyses Are Not Protected. .........5

        1. The April 2016 Equal Pay Study Was A Marketing Venture And The Underlying Materials Are Not Privileged. ........................................5

        2. Annual Diversity Audits Are A Regular Business Practice And The Underlying Materials Are Not Privileged Or Work Product. .............7

            a. The Communications Facilitated Routine Business And The Privilege Does Not Apply. .........................................................7

            b. The Reviews Were Not Done Because Of Litigation So The Work Product Doctrine Does Not Apply. ................................8

        3. Miscellaneous Diversity Audits Are A Regular Business Practice And Are Not Privileged Or Work Product. .................................................9

        4. Privilege Was Waived Due To Affirmative Defenses. ...............................9

    C. Emails Sent To Mass Distribution Lists and to Third Parties Waive Privilege. ...............................................................................................................10

        1. Microsoft Has Not Shown that Each Recipient Had "Need to Know." ......................................................................................................10

        2. Microsoft Has Not Shown That Third Parties Are "Employees" .............12

IV. CONCLUSION .............................................................................................................12

MOTION TO COMPEL
Case No. 2:15-cv-01483-JLR
1342828.4

-i-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

# TABLE OF AUTHORITIES

**Page**

### **CASES**

*Agster v. Maricopa Cnty.*,
  422 F.3d 836 (9th Cir. 2005)...................................................................................................1

*Anderson v. Marsh*,
  312 F.R.D. 584 (E.D. Cal. 2015)..............................................................................................6

*Bittaker v. Woodford*,
  331 F.3d 715 (9th Cir. 2003)..................................................................................................10

*Burlington N. & Santa Fe R.R Co. v. U.S.*,
  408 F.3d 1142 (9th Cir. 2005)..................................................................................................1

*Chevron Corp. v. Pennzoil Co.*,
  974 F.2d 1156 (9th Cir. 1992)................................................................................................10

*Clarke v. Am. Comm. Nat'l Bank*,
  974 F.2d 127 (9th Cir. 1992)....................................................................................................1

*Cruz v. Coach Stores, Inc.*,
  196 F.R.D. 228 (S.D.N.Y. 2000).........................................................................................7, 8

*Engurasoff v. Zayo Group LLC*,
  2015 WL 335793 (N.D. Cal. Jan. 23 2015).......................................................................4, 10

*Export-Import Bank v. Asia Pulp & Paper Co.*,
  232 F.R.D. 103 (S.D.N.Y. 2005)............................................................................................12

*Haugh v. Schroder Inv. Mgmt.*,
  2003 WL 21998674 (S.D.N.Y. Aug. 25, 2003)...................................................................4, 5

*Home Indem. Co. v. Lane Powell Moss & Miller*,
  43 F.3d 1322 (9th Cir. 1995)..................................................................................................10

*HSS Enters., LCC v. Amco Ins. Co.*,
  No. 06-1485-JPD, 2008 WL 163669 (W.D. Wash. Jan. 14, 2008).....................................3, 8

*In re Chase Bank USA*,
  2011 WL 3268091 (N.D. Cal. Jul. 28, 2011)..........................................................................4

*In re Pac. Pictures Corp.*,
  679 F.3d 1121 (9th Cir. 2012)...........................................................................................1, 12

*Kelley v. Microsoft Corp.*,
  2009 WL 168258 (W.D. Wash. Jan. 23, 2009)......................................................................12

*Lewis v. Wells Fargo*,
  266 F.R.D. 433 (N.D. Cal. 2010).....................................................................................2, 8, 9

*Lyondell-Citgo Refining, LP, v. Petroleos de Venezuela, S.A*,
  2004 WL 3019767 (S.D.N.Y. Dec. 29, 2004).......................................................................10

*Marceau v. I.B.E.W.*,
  246 F.R.D. 610 (D.Ariz. 2007).................................................................................................8

*Musa-Muaremi v. Florists' Transworld Delivery, Inc.*,
  270 F.R.D. 312 (N.D. Ill. 2010)......................................................................................1, 5, 9

*Norton v. Town of Islip*,
  2015 WL 5542543 (E.D.N.Y. Sept. 18, 2015).......................................................................11

MOTION TO COMPEL
Case No. 2:15-cv-01483-JLR
1342828.4

-ii-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

*OOIDA Risk Retention Grp. v. Bordeaux*,
  No. 15-81, 2016 WL 427066 (D. Nev. Feb. 3, 2016) ..........1

*Phillips v. C.R. Bard., Inc.*,
  290 F.R.D. 615 (D. Nev. 2013) ..........passim

*Scholtisek v. Eldre Corp.*,
  441 F. Supp. 2d 459 (W.D.N.Y. 2006) ..........10

*Thomas v. Kellogg Co.*,
  2016 WL 2939099 (W.D. Wash. May 20, 2016) ..........10

*Underwriters at Lloyd's London v. Bear LLC*,
  2016 WL 3092120 (S.D. Cal. June 2, 2016) ..........1

*Union Pac. R.R. v. Mower*,
  219 F.3d 1069 (9th Cir. 2000) ..........2

*United States v. Amlani*,
  169 F.3d 1189 (9th Cir. 1999) ..........10

*United States v. Chen*,
  99 F.3d 1495 (9th Cir. 1996) ..........1

*United States v. ChevronTexaco Corp.*,
  241 F.Supp.2d 1065 (N.D. Cal. 2002) ..........3, 4

*United States v. Graf*,
  610 F.3d 1148 (9th Cir. 2010) ..........12

*United States v. ISS Marine Serv., Inc.*,
  905 F.Supp.2d 121 (D.D.C. 2012) ..........6, 8

*United States v. Ormat Indus.*,
  2016 WL 4107682 (D. Nev. Aug. 1, 2016) ..........12

*United States v. Richey*,
  632 F.3d 559 (9th Cir. 2011) ..........2, 8

*United States v. Ruehle*,
  583 F.3d 600 (9th Cir. 2009) ..........3

**RULES**

Fed. R. Civ. P. 26(b)(3)(A) ..........2

MOTION TO COMPEL
Case No. 2:15-cv-01483-JLR
1342828.4

-iii-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

## I. INTRODUCTION

Plaintiffs challenge three discrete categories of documents on Microsoft's logs: 1) communications with marketing employees about Microsoft's public image on diversity issues; 2) communications regarding routine gender audits of pay, promotion, and performance review systems; and 3) communications sent to mass email distribution lists and to third party consultants, where any applicable privilege was waived. These documents are relevant to Microsoft's knowledge of gender-based issues in its common practices and culture and its apparent attempts to hide these findings rather than fixing the issues.[1]

## II. LEGAL STANDARD

The federal law of privilege and work product applies. *Agster v. Maricopa Cnty.*, 422 F.3d 836, 839–40 (9th Cir. 2005). The attorney-client privilege protects communications between an attorney and her client made in confidence for the purpose of securing legal advice from the lawyer. *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996). Microsoft bears the burden of establishing that the privilege applies to documents in question. *Clarke v. Am. Comm. Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992). "That counsel is 'cc'd' on an email is not enough to trigger the attorney-client privilege," and there is no privilege "where counsel is providing business advice." *OOIDA Risk Retention Grp. v. Bordeaux*, No. 15-81, 2016 WL 427066, at *7 (D. Nev. Feb. 3, 2016). The privilege does not extend to an attorney's "strictly editorial" changes to documents, *Musa-Muaremi v. Florists' Transworld Delivery, Inc.*, 270 F.R.D. 312, 316 (N.D. Ill. 2010), or a document sent to an attorney "to the extent that it only reveals underlying facts." *Underwriters at Lloyd's London v. Bear LLC*, 2016 WL 3092120, at *4 (S.D. Cal. June 2, 2016). Privilege is waived if communications are disclosed to a third party, *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1126-27 (9th Cir. 2012), or where a party provides defective and unreliable logs. *Burlington N. & Santa Fe R.R Co. v. U.S.*, 408 F.3d 1142, 1149 (9th Cir. 2005).[2]

---

[1] The meet and confer record is set forth in paragraphs 7-23 of the Shaver Declaration, filed herewith. This Motion is based on the audit privilege log produced by Microsoft on March 20, 2017. Shaver Decl., ¶¶ 10, 24.

[2] *See also Musa-Muaremi*, 270 F.R.D. at 315. Waiver on the basis of defective logs may be justified here, *see*

*Footnote continued on next page*

MOTION TO COMPEL
Case No. 2:15-cv-01483-JLR
1342828.4

-1-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

Attorney work product protection applies only to materials "prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3)(A). The material must be prepared with specific litigation in mind; a "generalized fear of litigation" is insufficient. *Lewis v. Wells Fargo*, 266 F.R.D. 433, 441 (N.D. Cal. 2010). The materials must also be co-extensive in scope with the litigation to warrant protection, not broader or pertaining to a different set of employees. *Id*. A document that serves a "dual purpose, that is, where it was not prepared *exclusively* for litigation" is only subject to work product protection if "the document can be fairly said to have been prepared or obtained *because of* the prospect of litigation." *United States v. Richey*, 632 F.3d 559, 568 (9th Cir. 2011) (emphasis added). For dual purpose documents, "courts must consider the totality of the circumstances and determine whether the document . . . would not have been created in substantially similar form but for the prospect of litigation." *Id.*

## III. ARGUMENT

To understand the arguments below, it is important for the Court to have some insight into a larger cultural problem of privilege use at Microsoft. The astonishing volume of withheld documents – still over 80,000 – is a result of two Microsoft practices: (1) training employees to copy internal lawyers in emails any time they mention ▮▮▮ data, even if no legal advice is at issue, *see, e.g.,* Shaver Decl., Ex. S ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮")[3]; and (2) performing routine gender audits to stay competitive in the market for talent, but under the imprimatur of the legal department in order to protect the audits from discovery. Because it cannot claim "self-critical analysis privilege,"[4]

---

*Footnote continued from previous page*
Shaver Decl., ¶ 31-35, but other grounds are more than sufficient to overcome privilege.
[3] Plaintiffs have attached many other examples showing this policy at Shaver Decl., Ex. S. E.g., ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮") (emphasis in original); ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮").
*See, e.g., Union Pac. R.R. v. Mower*, 219 F.3d 1069, 1076 n.7 (9th Cir. 2000).

MOTION TO COMPEL
Case No. 2:15-cv-01483-JLR
1342828.4
-2-
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

1  Microsoft copies attorneys or uses them to perform routine business to hide non-privileged
2  materials. But "corporations may not conduct their business affairs in private simply by staffing
3  a transaction with attorneys." *United States v. ChevronTexaco Corp.*, 241 F.Supp.2d 1065, 1076
4  (N.D. Cal. 2002).

Microsoft's practices thwart the principle of "full and free discovery of the truth,"[5] resulting in an enormous expenditure of wasted resources in this litigation. The record indicates that withheld documents were not individually reviewed to ensure that each document met the criteria for privilege or work product. Instead, communications on non-legal issues were withheld if a lawyer was copied, a routine practice as outlined above. Shaver Decl., ¶ 33 (challenges to documents during meet and confer resulted in Microsoft changing privilege designation of 73% of those withheld in one instance and more than 30% in another; multiple copies of identical documents, one redacted and the other not, reflect nothing privileged in redactions).[6] Although case law would support it, Plaintiffs do not even challenge assertions of privilege under any scenario where the logged communications include outside counsel in any way (to, from, or copied). Nevertheless, there are still thousands of improperly withheld documents. This is the backdrop for this motion.

**A.    Marketing Communications About Microsoft's Image Are Not Privileged.**

Plaintiffs challenge 109 entries on Microsoft's logs representing "attorney-client" emails between marketing employees and in-house counsel, or simply among marketing employees, regarding the following subjects: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.[7] Shaver Decl., Ex. B. These are non-

---

[5] *United States v. Ruehle*, 583 F.3d 600, 607-08 (9th Cir. 2009); *HSS Enters., LCC v. Amco Ins. Co.*, No. 06-1485-JPD, 2008 WL 163669, at *3 (W.D. Wash. Jan. 14, 2008).

[6] *Compare, e.g.,* Unredacted: "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" with "[Blank] redacted". These pairs of unredacted and redacted versions of the same documents afford a significant glimpse into Microsoft's privilege designation process. *See* Shaver Decl., ¶ I (compilation of pairs).

[7] These subjects correspond to Column P on Microsoft's Analysis Log & General Log. *See* Shaver Decl., Ex. B.

MOTION TO COMPEL
Case No. 2:15-cv-01483-JLR
1342828.4
-3-
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

privileged business communications improperly withheld for privilege.

Reviewing marketing materials is not a legal function, even if performed by a lawyer. "A media campaign is not a litigation strategy. Some attorneys may feel it is desirable at times to conduct a media campaign, but that decision does not transform their coordination of a campaign into legal advice." *Haugh v. Schroder Inv. Mgmt.*, 2003 WL 21998674, at *3 (S.D.N.Y. Aug. 25, 2003). That the materials at issue have legal implications – *e.g.*, the Equal Pay Study or diversity data generally – does not change this. *See, e.g., Phillips v. C.R. Bard., Inc.*, 290 F.R.D. 615, 645 (D. Nev. 2013) (privilege did not protect public relations document because "while the prospect of litigation is mentioned, it clearly revolves around how Bard should address media coverage of this event."); *In re Chase Bank USA*, 2011 WL 3268091, at * 2 (N.D. Cal. Jul. 28, 2011) ("A communication does not become privileged simply because the author mentions a legal issue. Instead the primary purpose of the communication must be analyzed to determine if it is related to legal advice or instead to further a business objective."). The primary purpose of these communications is marketing, *i.e.*, whether, how, and when Microsoft should publish the results and details of the Equal Pay Study and miscellaneous diversity data reports, and how those results and details should be characterized or spun.

Microsoft withholds these emails due to general characteristics rather than privileged content; for instance, where a marketing employee sends, or states that she *may* send, marketing material to in-house counsel.[8] Shaver Decl., ¶ 35, Ex. I. But sending marketing content to a lawyer does not transform it into a request for legal advice. *See Chase Bank*, 2011 WL 3268091, at *3 ("[s]imply suggesting something needs 'legal approval' is not sufficient to confer privilege if the communication otherwise involves business strategy of a non-legal nature"); *id*. (rejecting privilege where "forwarding a communication to a lawyer with the subject line 'legal review needed,'" and "stating an intention to pass an issue 'along to the legal team to ensure they are

---

[8] Also relevant is the fact that all of the documents Plaintiffs challenge were sent to in-house counsel, rather than external counsel. *See Engurasoff v. Zayo Group LLC*, 2015 WL 335793, at *3 (N.D. Cal. Jan. 23 2015) (documents with only in-house more likely business than legal purposes); *ChevronTexaco*, 241 F. Supp. 2d at 1074 (same).

MOTION TO COMPEL  
Case No. 2:15-cv-01483-JLR  
1342828.4

-4-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP  
275 Battery Street, 29th Floor  
San Francisco, CA 94111-3339  
Tel. 415.956.1000 • Fax 415.956.1008

aware' or noting that 'counsel is reviewing the issues'"). *See also Bard*, 290 F.R.D. at 656 (email "stating that he would like to forward the attachment and another document to counsel . . . in and of itself [does not] pose a request for legal advice."). Where the content of the emails is not otherwise legal, merely stating that counsel has, will, or should review it does not make it so.

Microsoft also withholds emails where in-house counsel sends stylistic edits on marketing materials. In fact, in one such document, the marketing employees actually complain about in-house counsel's "█████████████████████████████████ █████" Shaver Decl., Ex. M (emphasis added).[9] But edits that are not legally substantive are not legal advice. *Musa-Muaremi*, 270 F.R.D. at 316 (rejecting privilege where contribution by counsel was strictly editorial or "word-smithing"); *Bard*, 290 F.R.D. at 646 (in-house counsel's comment on communications plan, conveyed in email to marketing managers, was not legal advice because the comment did not "have legal significance"); *Haugh*, 2003 WL 21998674, at *3 (documents "with the design of a public relations campaign" were not sent for the purpose of seeking legal advice and therefore were not privileged).

### B. Communications About Self-Critical Gender Analyses Are Not Protected.

Microsoft is withholding thousands of communications regarding three categories of self-critical analyses: 1) the April 2016 Equal Pay Study (based on privilege only); 2) its annual audit of pay and promotion decisions for adverse impact (based on privilege and work product); and 3) miscellaneous diversity studies (based on privilege and work product).

#### 1. The April 2016 Equal Pay Study Was A Marketing Venture And The Underlying Materials Are Not Privileged.

In 2016, an institutional shareholder called Arjuna Capital introduced an initiative across many technology companies, including Microsoft, calling for transparency in gender pay data. Shaver Decl., Ex. N. Arjuna agreed to withdraw its pay initiative when Microsoft agreed to

---

[9] *See* Shaver Decl., Ex. I (more examples where counsel's input was merely editorial). Plaintiffs provide a chart with the names and job titles of the marketing employees who received the challenged documents at Shaver Decl. Ex. K.

MOTION TO COMPEL
Case No. 2:15-cv-01483-JLR
1342828.4
-5-
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

disclose "details of its salary equity" on its website, resulting in the April 2016 Equal Pay Study. *Id*. Plaintiffs seek over 850 emails related to the Study sent between marketing, HR, and in-house counsel (no external counsel), regarding: ███████████████████████████████ ███████████████████████████.[10] *Id*., ¶ 26.

The Study was undertaken for a business purpose: to appease activist shareholders. Microsoft also turned it into a marketing venture, proudly announcing the purported results of the Study on its website.[11] (Notably, one withheld email chain on the subject of "results of study" has the subject line: "██████████████████," raising some questions about what Microsoft is hiding in those results.[12]) Because the purpose of the study was not legal, the vast majority of emails associated with it likewise lack a legal purpose. *See Bard*, 290 F.R.D. at 628 (party seeking to apply attorney-client privilege to communication involving in-house counsel must demonstrate that "primary purpose" of communication was to obtain or provide *legal* advice).

Courts reviewing business audits in the context of pending litigation have held that where the audit would have been done for the business purpose anyway, pending litigation does not confer privilege. *See United States v. ISS Marine Serv., Inc.*, 905 F.Supp.2d 121, 128 (D.D.C. 2012) (rejecting privilege where defendant claimed internal audit about potential government overcharging was also the subject of the government's lawsuit, explaining that "if the investigation was of a nature that the business would ordinarily have conducted it in all events [] then the privilege will not apply."); *Anderson v. Marsh*, 312 F.R.D. 584 (E.D. Cal. 2015) (report prepared pursuant to department procedure not privileged even though lawsuit filed and report reviewed by counsel).

As in *ISS Marine* and *Marsh*, the emails here were sent in the ordinary course of responding to a shareholder initiative and pursuing company marketing goals. The inclusion of counsel on the emails does not change their character.

---

[10] "Subject" corresponds to Column R in Microsoft's Analysis Privilege Log, as shown in Exs. B-G to Shaver Decl.
[11] *See* https://www.microsoft.com/en-us/diversity/inside-microsoft/default.aspx#epgDivFocusArea.
[12] Shaver Decl., Ex.C, Rows 115, 121, 127, 129, 133, 135, 137-39, 141, 143-44, 150 (emphasis added).

MOTION TO COMPEL
Case No. 2:15-cv-01483-JLR
1342828.4
-6-
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

## 2. Annual Diversity Audits Are A Regular Business Practice And The Underlying Materials Are Not Privileged Or Work Product.

Every year Microsoft audits the results of the performance review, compensation, and promotion process to monitor for adverse impact.[13] Microsoft has a business interest in ensuring that it retains diverse talent. *See, e.g.,* Shaver Decl., Ex. O sl. 2 ("███████████ ███████████"); Ex. P sl. 17 ("███████████ ███████████ ███████████"); Ex. Q sl. 2 ("███████████ ███████████ ███████████"). The audits are not done "because of" pending litigation, nor is their scope limited to any lawsuit. Rather, as one HR leader told an employee who asked about female promotion rates, "███████████ ███████████ ███████████" *Id.*, Ex. R. Housing these reviews under the legal department does not protect them from discovery.[14] As this Court noted when ordering Microsoft to provide an individualized audit log, "there are going to be documents in there in terms of internal audits or internal analyses that were done for business and not legal purposes[.]" Shaver Decl., Ex. T at 18:23-19:1.

### a. The Communications Facilitated Routine Business And The Privilege Does Not Apply.

Internal audits performed in the regular course of business are not protected by the attorney-client privilege. In *Cruz v. Coach Stores, Inc.*, 196 F.R.D. 228 (S.D.N.Y. 2000), for example, notes relating to an investigation into claims of misconduct were not privileged because "the purpose of the 'investigative audit' was not solely, or even primarily, to enable its counsel to render legal advice to Coach." *Id.* at 231. The court noted that the company would have done the

---

[13] Shaver Decl., Ex. L.
[14] *See, e.g.,* Shaver Decl., Ex. S ███████████ ███████████).

MOTION TO COMPEL
Case No. 2:15-cv-01483-JLR
1342828.4

-7-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

investigation as a matter of business principle, regardless of whether it needed legal advice. *Id.* "Coach had a strong economic incentive in ascertaining whether its own employees were lining their pockets at the company's expense by taking commercial bribes. The public interest would hardly be served by cloaking the fruits of those inquiries with privilege simply on the ground of encouraging Coach to make an inquiry that it necessarily would have made in any case." *Id.* at 232. *See also Marceau v. I.B.E.W.*, 246 F.R.D. 610, 613 (D.Ariz. 2007) (rejecting privilege for audit of employee misconduct, even though attorneys were retained to prepare it and it was marked privileged, because "purpose of the activity" is what controls and report was "prepared for the business purpose of addressing issues of continuing concern to management."); *HSS Enters.*, 2008 WL 163669, at *4 (efforts of and documents generated by lawyers were made for purpose of claims investigation and adjustment, not for rendering legal services, and thus not protected by the attorney-client privilege); *ISS Marine*, 905 F. Supp. 2d at 131 (no privilege where business motivation to conduct the internal investigation). Here, Microsoft had a clear business motivation for its annual audits. The audit communications should be produced.

### b. The Audits Were Not Performed Because Of Litigation So The Work Product Doctrine Does Not Apply.

Although Microsoft faces the prospect of gender litigation at any time, documents are not work product unless "the document can be fairly said to have been prepared or obtained *because of* the prospect of litigation." *Richey*, 632 F.3d at 568. Because these audits were done annually for business purposes, they were not conducted because of the prospect of litigation.

Critically, compliance audits (*i.e.*, audits undertaken to ensure compliance with the law) do not qualify for work product protection as they are not done "because of" litigation, but rather for compliance purposes. For example, in *Lewis*, the court held that documents related to an FLSA compliance audit were not work product, even though Wells Fargo had litigated employee misclassification in the past and it was again at issue in that case. "A generalized fear of litigation does not turn a compliance audit into attorney work product." 266 F.R.D. at 441. The

MOTION TO COMPEL
Case No. 2:15-cv-01483-JLR
1342828.4

-8-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

1  court also found that because of the need to ensure compliance, the documents "would have been
2  created in substantially similar form even if no litigation was anticipated," and hence did not
3  satisfy the work product requirements. *Id*. at 440. *See also Musa-Muaremi*, 270 F.R.D. at 317
4  (notes of investigation into employee complaints not work product where prepared as per policy
5  and not because of litigation, even where employer "anticipates the possibility of litigation from
6  an event or accident"); *Bard*, 290 F.R.D. at 635 (prospect of litigation is not sufficient).

As far as specific litigation, Microsoft argues that the litigation matters cited in its privilege logs render the annual audit materials work product. Shaver Decl., ¶ 23. But it has produced no evidence that the annual audits were undertaken *because of* these matters, nor could it. The cited matters are not related in scope or focus to the annual audits: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id*. These cannot justify a blanket work product protection for all gender audits over 7 years. *See Lewis*, 266 F.R.D. at 441 (defendant failed to show audits were tied to specific jobs challenged in the litigation upon which work product assertion was based).

### 3. Miscellaneous Diversity Audits Are A Regular Business Practice And Are Not Privileged Or Work Product.

In addition to its annual company-wide audits of diversity data, the logs show that Microsoft engages in miscellaneous or one-off diversity audits on particular subsets of employees. Shaver Decl., ¶ 28. The primary reason for these efforts is to minimize employee attrition by identifying places of tension in the workforce, for instance, by investigating through data whether a particular manager struggles with diverse teams or has outsized attrition rates. *Id*. Regardless, these audits are business related and no privilege or work product applies.

### 4. Privilege Was Waived Due To Affirmative Defenses.

Microsoft claims that "*at all times and places mentioned in the Complaint*, [it] acted *without malice* and *with a good faith belief* in the propriety of its conduct." Ans., Dkt. 61, at 19

MOTION TO COMPEL
Case No. 2:15-cv-01483-JLR
1342828.4
-9-
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

(17th Aff. Def.). Yet it refuses to provide Plaintiffs with evidence that goes to the heart of that assertion. Microsoft cannot have it both ways. *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) ("The privilege which protects attorney-client communications may not be used both as a sword and a shield.").[15] Due to its affirmative defenses, Microsoft has waived privilege over the gender audit documents.

### C. Emails On Mass Distribution Lists And With Third Parties Waive Privilege.

Microsoft has waived any privilege as to 196 emails on mass email distribution lists ("listservs") and 112 emails sent to external consultants. *See* Shaver Decl. Exs. F & G.[16]

#### 1. Microsoft Has Not Shown That Each Recipient Had "Need to Know."

In order to maintain privilege over a document shared with numerous email recipients, Microsoft must demonstrate that the document was not "disseminated beyond those with a 'need to know' *for legal advice* purposes." *Thomas v. Kellogg Co.*, 2016 WL 2939099, at *2 (W.D. Wash. May 20, 2016).[17] Dissemination of a document to a listserv "goes against [a party's] assertion that it was sent only to people who needed the information to perform their jobs." *Bard*, 290 F.R.D. at 655. "[A]dding an attorney to an email string or a distribution list" does not "make[] widely disseminated, business communications privileged." *Kellogg Co.*, 2016 WL 2939099, at *2. Instead, an email sent to a listserv is presumptively <u>not</u> privileged.[18].

Microsoft withholds emails sent to seven different challenged listservs.[19] Microsoft has not explained why the members of these listservs satisfy the "need to know" test. Courts consider

---

[15] *See also United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999); *Bittaker v. Woodford*, 331 F.3d 715, 720-21 (9th Cir. 2003); *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995).
[16] To the extent any are also labelled work product, they are also not protected for the reasons in section II.B.2.b.
[17] *See also Scholtisek v. Eldre Corp.*, 441 F. Supp. 2d 459, 464 (W.D.N.Y. 2006) (party asserting privilege must show recipient "need[ed] to know" content of communication to perform job effectively).
[18] *See Lyondell-Citgo Refining, LP, v. Petroleos de Venezuela, S.A*, 2004 WL 3019767, at *1 (S.D.N.Y. Dec. 29, 2004) ("The number of email recipients who were outside the legal department further militated in favor of a finding that the document was not privileged. . . the more people outside of the legal department receive this, the more possible it is that this is business advice."); *Engurasoff*, 2015 WL 335793, at *3 (number of recipients and fact that attorney was merely copied suggest that emails could be regarding business strategy and not involving legal advice).
[19] Plaintiffs do not challenge documents sent to listservs that appear to be populated solely by legal staff. Shaver Decl. ¶ 12. For challenged listservs, the names, descriptions, and members are set forth in Shaver Decl., Ex. J.

MOTION TO COMPEL
Case No. 2:15-cv-01483-JLR
1342828.4
-10-
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

"the role in the corporation of the employee . . . who receives the communication," whether a communication to an employee in that role "necessarily incorporates legal advice," and whether the recipient "is a policymaker generally or is responsible for the specific subject matter at issue in a way that depends upon legal advice." *Verschoth* v. *Time Warner, Inc.*, 2001 WL 286763, at *2 (S.D.N.Y. Mar. 22, 2001). For six of the listservs, Microsoft has done no more than provide an incomplete and inapposite list of current (2017) members, despite contested emails that date back to 2011.[20] Shaver Decl. ¶¶ 12-14. For the seventh, Microsoft merely provided examples of 12 non-attorney employee recipients "among others," describing them as "HR Generalists." *Id.*, Ex J.[21] Microsoft has come nowhere near meeting its burden to show privilege was not waived.[22]

In fact, the logs show that the 196 contested emails were sent to employees with a wide variety of roles. For example, the "█████████████████" listserv, which contained 31 challenged emails dating to June 2011, has 25 members in 2017, including a "Business Manager," "Marketing Communications Manager," "Executive Business Administrator," and organizational development and HR employees. Shaver Decl., Ex. K. The "██████████████" listserv, with 20 challenged emails dating to October 2014, has 35 members in 2017 whose roles range from "Recruiting" to "Finance" to "Business Programs & Operations." *Id*. Similarly, the "█████████████████" listserv (with 14 challenged emails dating to November 2015) includes in 2017 a "Business Manager," "Marketing Communications Manager," and "Executive Business Administrator." *Id.*[23] Not only has Microsoft failed to meet its burden by merely providing names of *current* listserv members, but it cannot satisfy it given the number of individuals and breadth of roles included, and the fact that

---

[20] While contested emails date from 2011 to present, Microsoft has not retained historic listserv membership information. Shaver Decl. ¶ 14. Thus, there is no accurate record regarding to whom these emails were sent and no way for Microsoft to demonstrate that each (unknown) recipient had a specific need to know the information shared.
[21] *See* Shaver Decl., Ex. A, March 9, 2017 Email from Heather Clark.
[22] *See Norton v. Town of Islip*, 2015 WL 5542543, at *4 (E.D.N.Y. Sept. 18, 2015) (privilege waived because "[d]efendants have failed to carry their burden" to show "why *all* or even most" employees who received memos "have a need to know confidential legal communications in order to perform their jobs").
[23] Other listservs have as few as five members in 2017, but many members perform business functions, and it is unclear how many members the lists had before 2017 or what roles the members performed at the time in question.

MOTION TO COMPEL
Case No. 2:15-cv-01483-JLR
1342828.4

-11-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

most members are business people. Any privilege has been waived.

### 2. Microsoft Has Not Shown That Third Parties Are "Employees".

Microsoft is withholding 112 emails sent to four third-party public relations firms. Shaver Decl., Ex. G. "[D]isclosing privileged documents to third parties will generally destroy the privilege." *Pac. Pictures*, 679 F.3d at 1126-27; *see also United States v. Graf*, 610 F.3d 1148, 1158 (9th Cir. 2010) (disclosure to external consultant waives privilege, unless consultant is "functional equivalent of an employee."). In applying the functional equivalent test, courts consider a consultant's overall responsibilities, and whether she "managed company employees" and served as the "primary agent in its communications with corporate counsel." *Id.* at 1157, 1159.[24] This requires a "detailed factual showing"; a "cursory statement of responsibilities is insufficient." *United States v. Ormat Indus.*, 2016 WL 4107682, at *7 (D. Nev. Aug. 1, 2016). Here, Microsoft offered no basis at all for employees at three firms. As to the fourth (Waggener Edstrom), it first asserted that the entire global firm is the functional equivalent of a Microsoft employee, Shaver Decl. ¶ 16, an untenable position, and when pressed asserted that the three employees in question worked all or most of the time for Microsoft during some of the class discovery period.[25] Microsoft has not shown that the Waggener employees managed its employees or served as its primary contact with corporate counsel.[26] Waiver applies.

## IV. CONCLUSION

Plaintiffs respectfully request that the Court grant the motion to compel.[27]

---

[24] Other courts have considered "whether the consultant had primary responsibility for a key corporate job," "whether there was a continuous and close working relationship between the consultant and the company's principals on matters critical to the company's position in litigation," and "whether the consultant is likely to possess information possessed by no one else at the company." *Export-Import Bank v. Asia Pulp & Paper Co.*, 232 F.R.D. 103, 113 (S.D.N.Y. 2005). Privilege may even be waived when hiring consultants to provide "litigation advisory services." *See Kelley v. Microsoft Corp.*, 2009 WL 168258, at *1, *3 (W.D. Wash. Jan. 23, 2009).
[25] Microsoft admits that two of these employees worked for non-Microsoft clients during the discovery period, as confirmed on the employees' social media profiles. Shaver Decl. ¶ 18, Ex. A (March 21, 2017 Email from L. Damrell).
[26] Plaintiffs are also concerned that Microsoft has not identified all third party correspondence on its privilege logs, despite requests that it do so. Shaver Decl., ¶ 15 & Ex. A (March 15, 2017 Email from Michael Levin-Gesundheit). If there are other third parties on the logs that Plaintiffs have not managed to discover, Microsoft has not justified withholding their communications either.
[27] *See* [Proposed] Order Granting Motion, filed herewith, setting out the specific documents to be produced.

MOTION TO COMPEL
Case No. 2:15-cv-01483-JLR
1342828.4
-12-
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

| | | |
|---|---|---|
| 1 | Dated: March 24, 2017 | **FRANK FREED SUBIT & THOMAS LLP** |
| 2 | | |
| 3 | | By: /s/ Michael Subit |
| 4 | | Michael Subit (Wash. Bar No. 29189)<br>705 Second Avenue, Suite 1200 |
| 5 | | Seattle, WA 98104<br>Telephone: (206) 682-6711 |
| 6 | | Facsimile: (206) 682-0401<br>E-Mail: msubit@frankfreed.com |
| 7 | | |
| 8 | | **LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP** |
| 9 | | Kelly M. Dermody (admitted *pro hac vice*)<br>Anne B. Shaver (admitted *pro hac vice*) |
| 10 | | Michael Levin-Gesundheit (admitted *pro hac vice*) |
| 11 | | Yaman Salahi (admitted *pro hac vice*)<br>275 Battery Street, 29th Floor |
| 12 | | San Francisco, CA 94111-3339<br>Telephone: (415) 956-1000 |
| 13 | | Facsimile: (415) 956-1008<br>E-Mail: kdermody@lchb.com |
| 14 | | E-Mail: ashaver@lchb.com<br>E-Mail: mlevin@lchb.com |
| 15 | | E-Mail: ysalahi@lchb.com |
| 16 | | Sharon M. Lee (Wash. Bar No. 37170) |
| 17 | | **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP** |
| 18 | | 2101 Fourth Avenue, Suite 1900<br>Seattle, WA 98121 |
| 19 | | Telephone: (206) 739-9059<br>Facsimile: (415) 956-1008 |
| 20 | | E-Mail: slee@lchb.com |
| 21 | | Rachel J. Geman (admitted *pro hac vice*) |
| 22 | | **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP** |
| 23 | | 250 Hudson Street, 8th Floor<br>New York, NY 10013-1413 |
| 24 | | Telephone: (202) 355-9500<br>Facsimile: (202) 355-9592 |
| 25 | | E-Mail: rgeman@lchb.com |
| 26 | | |

MOTION TO COMPEL
Case No. 2:15-cv-01483-JLR
1342828.4

-13-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

Adam T. Klein (admitted pro hac vice)
Ossai Miazad (admitted pro hac vice)
Elizabeth V. Stork (admitted pro hac vice)
**OUTTEN & GOLDEN LLP**
3 Park Avenue, 29th Floor
New York, NY 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005
E-Mail: ATK@outtengolden.com
E-Mail: OM@outtengolden.com
E-Mail: estork@outtengolden.com

*Attorneys for Plaintiffs and the Proposed Class*

MOTION TO COMPEL
Case No. 2:15-cv-01483-JLR
1342828.4

-14-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008