1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

8

WESTERN DISTRICT OF WASHINGTON

9

SEATTLE DIVISION

10

11  KATHERINE MOUSSOURIS, HOLLY
    MUENCHOW, and DANA PIERMARINI,
12  on behalf of themselves and a class of
    those similarly situated,
13
              Plaintiffs,
14
        v.
15
    MICROSOFT CORPORATION,
16
              Defendant.
17

Case No.  2:15-cv-01483-JLR

**REPLY IN SUPPORT OF CLASS
CERTIFICATION**

18
19
20
21
22
23
24
25
26
27
28

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT .......................................................................................................................2

I.  Plaintiffs Satisfy Rule 23(a) .....................................................................................2

    A.  Commonality Is Readily Satisfied. ....................................................................2

        1.  Microsoft concedes a common process using common criteria. ...............2

        2.  Plaintiffs' disparate impact claim raises common questions. ....................3

            a.  Expert testimony supports disparate impact commonality ............4

            b.  Microsoft misstates Plaintiffs' burden regarding causation. ........10

            c.  The case law supports commonality here. ...................................12

        3.  Plaintiffs' disparate treatment claim raises common questions. ..............14

            a.  Plaintiffs' anecdotal evidence is both sufficient and admissible. ..............................................................................15

            b.  Microsoft's employee declarations deserve no weight. ...............16

            c.  Microsoft argues a new standard for intentional discrimination ...............................................................17

    B.  The Named Plaintiffs Are Typical. .................................................................18

    C.  Plaintiff Moussouris is Adequate. ..................................................................19

II.  Plaintiffs Satisfy Rule 23(b). ...................................................................................20

    A.  Plaintiffs Satisfy Rule 23(b)(2). ......................................................................20

    B.  Plaintiffs Satisfy Rule 23(b)(3). ......................................................................23

        1.  Common Questions Predominate Over Individual Questions. ................23

        2.  Superiority Is Satisfied Even if Class Members Are Well Paid. ..............25

III.  The Court May Certify Liability for Class Resolution Under 23(c)(4). ...........................25

REPLY ISO CLASS CERTIFICATION
Case No. 2:15-cv-01483-JLR

-i-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

**Cases**

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997) ................................................................19

*Arabian v. Sony Electronics Inc.*,
No. 05-1741, 2007 WL 627977 (S.D. Cal. Feb. 22, 2007) .......................21

*Ashker v. Gov. of State of Cal.*,
No. 09-5796, 2014 WL 2465191 (N.D. Cal. June 2, 2014) .......................21

*Barraza v. C.R. Bard Inc.*,
322 F.R.D. 369 (D. Ariz. 2017).............................................20

*Barrett v. Option One Mortg. Corp.*,
2012 WL 4076465 (D. Mass. Sept. 18, 2012).................................6

*Beck v. Boeing Co.*,
60 F. App'x 38 (9th Cir. Feb. 25, 2003).................................7, 17

*Bell v. Lockheed Martin Corp.*,
2011 WL 6256978 (D.N.J. Dec. 14, 2011) ................................6

*Belt v. Emcare. Inc.*,
299 F. Supp. 2d 664 (E.D. Tex. 2003) ................................16

*Bennett v. Nucor Corp.*,
656 F.3d 802 (8th Cir. 2011) ..........................................5

*Brown v. Nucor Corp.*,
785 F.3d 895 (4th Cir. 2015).......................................16, 17

*Butler v. Home Depot, Inc.*,
No. 94-4335, 1997 WL 375285 (N.D. Cal. Apr. 24, 1997) ..................18

*Butler v. Sears, Roebuck & Co.*,
727 F.3d 796 (7th Cir. 2013)...........................................25

*Byrd v. Merrill Lynch*,
No. 10-247, 2011 WL 2680572 (D.N.J. July 8, 2011) .....................15

*Camp v. Alexander*,
300 F.R.D. 617 (N.D. Cal. 2014)........................................16

*Chen-Oster v. Goldman, Sachs & Co.*,
251 F. Supp. 3d 579 (S.D.N.Y. 2017) .................................22

*Chin v. Port Auth. of N.Y. & N.J.*,
685 F.3d 135 (2d Cir. 2012) ...........................................11

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ....................................................24

*Day v. Sears Holdings Corp.*,
930 F. Supp. 2d 1146 (C.D. Cal. 2013).................................15

*Donaldson v. Microsoft Corp.*,
205 F.R.D. 558 (W.D. Wash. 2001)......................................20

*Easterling v. Conn. Dep't of Corr.*,
278 F.R.D. 41 (D. Conn. 2011) .....................................11, 21

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ...................................................16

*Ellis v. Costco Wholesale Corp.*,
285 F.R.D. 492 (N.D. Cal. 2012) ................................passim

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ..........................................14

*Flores v. Anjost Corp.*,
284 F.R.D. 112 (S.D.N.Y. 2012)........................................16

REPLY ISO CLASS CERTIFICATION

Case No. 2:15-cv-01483-JLR

-ii-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

*Fosmire v. Progressive Max Insurance Co.*,
277 F.R.D. 625 (W.D. Wash. 2011) ...................................................20

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
528 U.S. 167 (2000) ..........................................................................21

*Gilchrist v. Bolger*,
89 F.R.D. 402 (S.D. Ga. 1981),
*aff'd*, 733 F.2d 1551 (11th Cir. 1984) ..............................................19

*Godoy v. Maplehurst Bakeries, Inc.*,
747 F. Supp. 2d 298 (D.P.R. 2010) ...................................................15

*Gonzales v. Comcast Corp.*,
No. 10-1010, 2012 WL 10621 (E.D. Cal. Jan. 3, 2012) ....................22

*Gonzalez v. Millard Mall Servs., Inc.*,
281 F.R.D. 455 (S.D. Cal. 2012) .......................................................16

*Grosz v. Boeing Co.*,
No. 02-71, 2003 WL 22971025 (C.D. Cal. Nov. 7, 2003),
*aff'd*, 136 F. App'x 960 (9th Cir. 2005) ...........................................24

*Hartman v. United Bank Card Inc.*,
No. 11-1753-JLR, 2012 WL 4758052 (W.D. Wash. Oct. 4, 2012) ........24

*Hilao v. Estate of Marcos*,
103 F.3d 767 (9th Cir. 1996) .............................................................24

*Houser v. Pritzker*,
28 F. Supp. 3d 222 (S.D.N.Y. 2014) .....................................10, 24, 25

*In re Deepwater Horizon*,
739 F.3d 790 (5th Cir. 2014) .............................................................25

*In re Johnson*,
760 F.3d 66 (D.C. Cir. 2014) .............................................................19

*In Re Zurn Pex Plumbing Prods. Liab. Litig.*,
644 F.3d 604 (8th Cir. 2011) .............................................................16

*Jones v. Nat'l Council of Young Men's Christian Assn's*,
34 F. Supp. 3d 896 (N.D. Ill. 2014) ...................................................14

*La Day v. Catalyst Tech., Inc.*,
302 F.3d 474 (5th Cir. 2002) .............................................................15

*Lafate v. Vanguard Grp., Inc.*,
No. 13-5555, 2014 WL 4384510 (E.D. Pa. Sept. 5, 2014) ................18

*Leyva v. Medline Indus. Inc.*,
716 F.3d 510 (9th Cir. 2013) .............................................................25

*MAI Sys. Corp. v. Peak Computer, Inc.*,
991 F.2d 511 (9th Cir. 1993) .............................................................21

*Mevorah v. Wells Fargo Home Mortg.. Inc.*,
No. 05-1175, 2005 WL 4813532 (N.D. Cal. Nov. 17, 2005)..............16

*Ochoa v. McDonald's Corp.*,
No. 3:14-CV-02098-JD, 2016 WL 3648550 ......................................19

*Paige v. California*,
291 F.3d 1141 (9th Cir. 2002) ...............................................5, 10, 11

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) .............................................................21

*Pena v. Taylor Farms Pac., Inc.*,
305 F.R.D. 197 (E.D. Cal. 2015), *aff'd*, 690 F. App'x 526 (9th Cir. 2017)..............................19

REPLY ISO CLASS CERTIFICATION
Case No. 2:15-cv-01483-JLR

-iii-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

*Puffer v. Allstate Ins. Co.*,
  255 F.R.D. 450, 457 (N.D. Ill. 2009), *aff'd*, 675 F.3d 709 (7th Cir. 2012) ..............24

*Raffin v. Medicredit, Inc.*,
  No. 15-4912, 2017 WL 131745 (C.D. Cal. Jan. 3, 2017)..........................................21

*Randall v. Rolls-Royce Corp.*,
  637 F.3d 818 (7th Cir. 2011)....................................................................................20

*Rhodes v. Cracker Barrel Old Country Store, Inc.*,
  213 F.R.D. 619 (N.D. Ga. 2003) ..............................................................................24

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015)......................................................................................25

*Robinson v. Metro-North Commuter R.R. Co.*,
  267 F.3d 147 (2d Cir. 2001)................................................................................24, 25

*Rodriguez v. Hayes*,
  591 F.3d 1105 (9th Cir. 2010)............................................................................22, 23

*Ross v. Lockheed Martin Corp.*,
  267 F. Supp. 3d 174 (D.D.C. 2017)....................................................................11, 12

*Schmidt v. Lessard*,
  414 U.S. 473 (1974) ..................................................................................................21

*Schulken v. Wash. Mut. Bank*,
  No. 09-2780, 2012 WL 28099 (N.D. Cal. Jan. 5, 2012) ..........................................22

*Seaman v. Duke Univ.*,
  No. 15-00462 (M.D.N.C. Feb. 1, 2018) ...................................................................23

*Shook v. Board of County Commissioners*,
  543 F.3d 597 (10th Cir. 2008) ..................................................................................21

*Smith v. Xerox Corp.*,
  196 F.3d 358 (2d Cir. 1999)......................................................................................11

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ....................................................................................19

*Staub v. Proctor Hosp.*,
  131 S.Ct. 1186 (2011) ...............................................................................................10

*Stiller v. Costco Wholesale Corp.*,
  673 F. App'x 783 (9th Cir. 2017) .............................................................................14

*Sullivan v. Dollar Tree Stores*,
  623 F.3d 770 (9th Cir. 2010).....................................................................................17

*Teamsters v. United States*,
  431 U.S. 324 (1977) ....................................................................................................7

*Torres v. Mercer Canyons, Inc.*,
  835 F.3d 1125 (9th Cir. 2016)...................................................................................24

*Troy v. Kehe Food Distribs., Inc.*,
  276 F.R.D. 642 (W.D. Wash. 2011)..........................................................................14

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) ................................................................................................1

*U.S. & Vulcan Soc'y v. City of N.Y.*,
  681 F. Supp. 2d 274 (E.D.N.Y. 2010) ......................................................................21

*U.S. & Vulcan Soc'y v. City of N.Y.*,
  No. 07-2067, 2013 WL 5542459 (E.D.N.Y. Aug. 30, 2013) ...................................21

*United States v. City of New York*,
  276 F.R.D. 22 (E.D.N.Y. 2011).................................................................................24

REPLY ISO CLASS CERTIFICATION
Case No. 2:15-cv-01483-JLR

-iv-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

*Valerino v. Holder*,
   283 F.R.D. 302 (E.D. Va. 2012)..............................................6, 13, 14

*Wagner v. Taylor*,
   836 F.2d 578 (D.C. Cir. 1987).......................................................19

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ...............................................................passim

*Walters v. Reno*,
   145 F.3d 1032 (9th Cir. 1998) .....................................................22

*Watson v. Fort Worth Bank & Trust*,
   487 U.S. 977 (1988) ....................................................................11

*Wells v. Ramsay, Scarlett & Co.*,
   506 F.2d 436 (5th Cir. 1975) .......................................................19

*Williams v. Boeing Co.*,
   225 F.R.D. 626 (W.D. Wash. 2005)..............................7, 10, 17, 23

*Zuniga v. Bernalillo Cty.*,
   319 F.R.D. 640 (D.N.M. 2016) ....................................................14

**Statutes**

Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2.....................22

**Rules**

Fed. R. Evid. 801(d)(2)(C) ................................................................15

Fed. R. Evid. 801(d)(2)(D) ................................................................15

Fed. R. Evid. 803(6) ..........................................................................15

**Treatises**

Haan, C., E. Reardon & A. Saad, "Employment Discrimination Litigation,"
   *Litigation Services Handbook*, Roman Weil, et al., eds. (2012) ................9

REPLY ISO CLASS CERTIFICATION
Case No. 2:15-cv-01483-JLR

-v-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

**INTRODUCTION**

Plaintiffs challenge Microsoft's practice of awarding pay and promotions to women in just two professions based on common criteria applied in a common Calibration process ultimately approved by four Executive Vice Presidents who oversee the entire proposed Class.[1] The opposition record underscores the uniformity of the challenged system. Yet rather than grapple with the applicable law against the claims presented, Microsoft attacks a claim that Plaintiffs have not made. Plaintiffs do not challenge the so-called individual pay and promotion decisions made by thousands of managers, or pure manager discretion. Microsoft does not have a system of pure manager discretion.

Microsoft offers no rebuttal to Plaintiffs' expert, Industrial/Organizational Psychologist Dr. Ann Marie Ryan, who identifies common infirmities with Microsoft's pay and promotion system. Microsoft instead relies on unreliable witness declarations from its captive, current employees and opinions from a purported HR investigations expert, Ms. Rhoma Young, who did not address the challenged pay and promotion systems at all and admitted her observations are ███████████████████████.[2] While Plaintiffs' statistical expert Dr. Henry Farber, a Princeton University Professor of Labor Economics, found robust and pronounced disparities harming women, Microsoft's statistical expert, Dr. Ali Saad, reimagined Microsoft's workforce, assuming explanatory factors or slicing the population in ways inconsistent with the record, all while making numerous material math errors. Even so, Dr. Saad's alternate approach amounts to "competing classwide explanations for the observed raw disparity and therefore support[s], rather than undermine[s], a finding of commonality." *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 524 (N.D. Cal. 2012).

Critically, Microsoft relies on the same sources of common evidence as Plaintiffs—pay and promotion data, common policies, and common evidence of Microsoft's knowledge of common problems (or lack thereof) with the systems—merely disputing what inferences can properly be drawn from it. This common evidence is appropriate for merits review by the trier of fact. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1049 (2016). Rule 23 is satisfied.

---

[1] Farber Reply ¶ 16.
[2] Young Tr. 40:11-12; 43:1-2. Evidence is attached to the Shaver Reply Declaration ("Shaver Reply Decl.").

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

**ARGUMENT**

Microsoft appears to concede numerosity, the adequacy of Plaintiff Muenchow, and the adequacy of counsel. It focuses its attacks on commonality, typicality, and the adequacy of Plaintiff Moussouris, as well as the elements of Rule 23(b). Microsoft's attacks are meritless.

**I.     Plaintiffs Satisfy Rule 23(a)**

    **A.     Commonality Is Readily Satisfied.**

        **1.     Microsoft concedes a common process using common criteria.**

Microsoft likens this case to *Dukes*, "one of the most expansive class actions ever," 564 U.S. at 342, but the class here is tiny in comparison and carefully circumscribed: women in just two professions (Engineering and I/T Operations or "I/T Ops") subject to the same, uniform compensation and promotion process, overwhelmingly working in the same geographic area under the same chain of command. Ninety percent worked in Washington (including 72 percent at the Redmond headquarters),[3] and ██████████████ reported up to only four Executive Vice Presidents ("EVPs").[4] Microsoft's descriptions of its Calibration system reinforce that a class action is appropriate to resolve Plaintiffs' challenge to a uniform practice.[5]

Microsoft agrees that "from 2011 to 2013, Microsoft made pay decisions using a performance evaluation approach focused on employee contributions relative to peers." Def. Br. at 5. It also affirms the common features of the system: "Microsoft provided general guidance regarding evaluation of the 'what' and 'how' of employee performance"; "Managers ultimately recommended a performance rating for each employee, ranging from a high of '1' to a low of '5'"; "Managers met during a 'calibration meeting' to discuss the performance of employees reporting to them ('direct reports') who performed similar functions—at which time managers could adjust recommended ratings based on a comparison of employees to larger groups";[6] and "Pay and promotion decisions at the initial calibration meeting rolled up to another meeting with

<hr/>

[3] Farber Reply ¶ 4.
[4] Farber Reply ¶ 16.
[5] While Microsoft accuses Plaintiffs of using a made-up label—Calibration—on two distinct processes, that misses the point. Plaintiffs use "Calibration" as a shorthand for the pay and promotion process through which Microsoft applies common ill-defined criteria in an unreliable way to make pay and promotion decisions.
[6] DeCaprio ¶ 4; Helf, ¶¶ 9, 25; Ku, ¶ 9; Mao, ¶ 5; Shepherd, ¶¶ 4, 12; Wilson, ¶¶ 9, 16, 20. Microsoft envisions Plaintiffs' challenge as being about decisions because they happened in a meeting. That is false. Women perform equally well, but are paid less, due to the uniform pay and promotion criteria and process, as approved by 4 EVPs.

Case No. 2:15-cv-01483-JLR

-2-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

higher level managers" with "an [EVP] as the formal 'final approver' for pay and promotion decisions."[7] Def. Br. at 6-8. In 2014, Microsoft agrees that it eliminated "calibration" meetings and instead implemented "people discussions"; that prior to the group-level discussions, "managers evaluate employees' impact,"[8] and instead of giving them a numerical rating between 1 and 5, they assign them to a position on a sliding scale that is coded from ███;[9] with the slider recommendations then reviewed by successively higher level managers until the EVP of each organization gives final approval.[10] Def. Br. 8-9. Microsoft also agrees that promotions are determined in this process (calibration or people discussions), based on three common criteria. Def. Br. 7, 9 (promotion turned on "(1) employee readiness, (2) business need, and (3) available budget.").[11] These same three promotion criteria remained unchanged throughout the class period. *Id*. Microsoft's witnesses affirm these common characteristics.[12]

Microsoft offers a few immaterial variations in how pay or promotion decisions were internally documented or communicated across groups. For example, Microsoft states that the calibration meetings were not literally identical, emphasizing the use of an Excel spreadsheet versus another format to memorialize the meeting. There are numerous similar examples that fail to undermine the overwhelming commonality of the process. *See* Shaver Reply Decl., Ex. A (table showing Microsoft's alleged variations as immaterial and/or unsupported by record).[13]

## 2. Plaintiffs' disparate impact claim raises common questions.

Microsoft contends that, like *Dukes*, no commonality exists here because Plaintiffs challenge the exercise of discretion by individual managers. In *Dukes*, plaintiffs described a system of no system at all, with local managers across thousands of stores applying their own judgments to make pay and promotion decisions without any common direction or involvement

---

[7] *See also* DeCaprio, ¶16; Helf, ¶¶12, 21, 28; Liuson, ¶ 17; Lockard, ¶ 5; Shepherd, ¶¶ 7, 12-13; Wilson, ¶ 24.
[8] *See also* DeCaprio, ¶ 4; Helf, ¶¶ 4, 31; Jarvis, ¶ 4; Ku, ¶ 10; Liuson, ¶ 15-16; Lockard, ¶ 6; Mao, ¶ 7; Shepherd, ¶¶ 5, 15; Wilson, ¶¶ 10, 23.
[9] *See also* DeCaprio, ¶ 12; Ku, ¶ 10; Shepherd, ¶ 21.
[10] *See also* DeCaprio, ¶ 16; Jarvis, ¶¶ 13, 16-17; Ku, ¶ 10; Shepherd, ¶ 24; Wilson, ¶24.
[11] *See also* Iyer, ¶¶ 7-8; Jarvis, ¶12; Ku, ¶12; Liuson, ¶13-15; Lockard, ¶ 9; Mao, ¶ 9; Shepherd, ¶ 24.
[12] *See* fns. 6-11.
[13] For example, Microsoft notes differences in: (a) length of time of projects on which employees were evaluated, (Helf, ¶ 16); (b) who created documentation of meetings (Coleman Tr. 22:3-18, Dkt. 288-4); (c) documentation via an excel spreadsheet, talent card, or in-house software (*id*. at 23:24-4); (d) communicating initial recommendations verbally or in writing (*id*. at 30:25-31:21); and (e) use of various props to visually represent employees discussed (DeCaprio, ¶¶ 9-10). None of these variations negate the uniform process and criteria which Plaintiffs challenge.

REPLY ISO CLASS CERTIFICATION
Case No. 2:15-cv-01483-JLR

-3-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

by senior management. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 344-45 (2011). By contrast, Plaintiffs claim that Microsoft uses common criteria in a uniform Calibration process that disadvantages women to a statistically significant degree, and that a core group of senior managers oversee and approve these actions. Accordingly, there's ample "glue holding the alleged *reasons* for those [employment] decisions together . . .produc[ing] a common answer to the crucial question *why was I disfavored*." *Id*. at 352.

### a. Expert testimony supports disparate impact commonality.

Plaintiffs have provided robust expert evidence from Dr. Ann Marie Ryan and Dr. Henry Farber regarding the common challenged system that results in adverse impact against women. The defense experts, Dr. Ali Saad and Ms. Rhoma Young, do not disturb Plaintiffs' submissions. Microsoft also misstates the standard on expert evidence and causation in a Title VII case.

### i. Dr. Ryan's opinions support commonality.

Dr. Ryan finds that Microsoft uses common and ill-defined pay and promotion criteria, fails to implement them in a reliable way, and divorces performance from rewards. Strikingly, Microsoft leaves Dr. Ryan's opinions *unrebutted*, offering no expert opinion opposing hers. Instead, Microsoft misrepresents Dr. Ryan's criticisms of pay and promotion Calibration as proof that Plaintiffs challenge nothing more than managerial discretion. To the contrary, Dr. Ryan identifies common vague pay criteria such as "impact" and notes that the job-relatedness of the process for moving employees across levels within a career stage are not established. Ryan ¶¶ 28, 13(i). Dr. Ryan also found that the common promotion process was not aligned with job requirements. Ryan ¶ 13(ii); Ryan Reply ¶¶ 2, 5. Ryan critiques the implementation of these processes, noting that Microsoft distributed uniform core "competencies" and "key results" for every job title to serve as guides for evaluation by managers, but "evaluators were free to weight competencies and key results in ways not correlated with other raters or aligned with job requirements." Ryan ¶ 13, 20. Dr. Ryan's review of Microsoft's fact witness declarations confirmed her opinions, including the common, inadequate training managers reported receiving in advance of Calibration. Ryan Reply ¶ 4. Here, there is substantial evidence of a common

REPLY ISO CLASS CERTIFICATION
Case No. 2:15-cv-01483-JLR

-4-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

mode for managers to exercise their discretion.[14] *Dukes*, 564 U.S. at 356 (common mode where managers exercise discretion in a common way with some common direction).

### ii. Dr. Farber's expert analysis supports commonality.

Plaintiffs' statistical expert, Dr. Henry Farber, provides robust common proof that women are disadvantaged in pay and promotions. Dr. Farber's aggregate analysis is the appropriate method to demonstrate evidence of discrimination across the Class because Class members at the company are subject to uniform policies implemented and overseen by a small group of high level managers. Ritchie Tr. 447:16-448:6 (███████████████████████████████████ ███████████████████████); *id.* at 495:10-497:16 (████████████████ ████████████████████████████████████████████████████████ █████████); Johnson ¶ 6 (Dkt. 39) (discussing five levels of managers that submit or approve rewards, ending a level below the COO or CEO). As another court in this Circuit found, "[n]ot only do the larger aggregate numbers allow for a robust analysis and yield more reliable and more meaningful statistical results," but Microsoft's "own [] practices support a nationwide statistical analysis" as they are "uniform across the company." *Ellis*, 285 F.R.D. at 523.[15] By contrast, in *Dukes* and the other cases Microsoft cites, courts found that relevant decisions were made at lower, more dispersed and differentiated levels of the organization than present here. *See Dukes*, 564 U.S. at 356-57 (decisions made at store level and no common national or regional policies limited store-level discretion); *Bennett v. Nucor Corp.*, 656 F.3d 802, 815-16 (8th Cir. 2011) ("*Where there is strong evidence that employment practices varied significantly from department to department*, such a bottom-line [plant-wide statistical analysis] is insufficient to demonstrate that any disparate treatment or impact present in one department was common to all the others.") (emphasis added).[16]

---

[14] Microsoft also suggests that Dr. Ryan should be ignored because, like plaintiffs' expert in *Dukes*, she cannot identify the percentage of women at Microsoft who were discriminated against. But *Dukes* was looking at a different issue, considering a challenge to myriad unconscious biases by tens of thousands of managers across over 45 states rather than, as here, a common process with common criteria and a small collection of ultimate decision makers. Regardless, it would be improper for experts here to reach *legal* conclusions about the merits of the liability case.

[15] *See also Paige v. California*, 291 F.3d 1141, 1148 (9th Cir. 2002) ("[I]t is a generally accepted principle that aggregated statistical data may be used where it is more probative than subdivided data. . . .The plaintiff should not be required to disaggregate the data into subgroups which are smaller than the groups which may be presumed to have been similarly situated and affected by common policies.").

[16] Microsoft misleadingly quoted only the non-italicized portion of this sentence in its brief. Def. Br. at 24 n.17.

REPLY ISO CLASS CERTIFICATION
Case No. 2:15-cv-01483-JLR
-5-
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

Dr. Farber ensures that he compares "apples to apples" across the Class by controlling for the type of work each employee performs, as defined in Microsoft's own, detailed Job Title Taxonomy. Farber ¶¶ 15, 32-33.[17] Even when Dr. Farber adds unnecessary controls for various organizational and product units at Microsoft, *on top of* Title, Discipline, and Profession, statistically significant pay and promotion gaps remain. Farber Reply ¶¶ 79-80.[18] In fact, even if Dr. Farber disaggregates by Level 1 supervisor, which he does not concede is appropriate, the data reflect that virtually all women at Microsoft work for Level 1 supervisors where women earn less than men, and the difference is statistically significant. Farber Reply ¶ 16.

Notably, in *Ellis*, the court rejected the disaggregated statistical approach of Dr. Saad, the same defense expert Microsoft uses here. Microsoft argues that *Ellis* is distinguishable because Dr. Saad's analysis in this case is not susceptible to the same sample size issues that were present there. Def. Br. at 24 n.17. But the sample size issue was not the only reason the court in *Ellis* accepted plaintiffs' aggregate analysis. It also found the plaintiffs' analysis more closely tracked how relevant employment decisions were made. 285 F.R.D. at 523. Here, Dr. Farber's analysis comports with reliable statistical methods and tracks how employment decisions were made, while Dr. Saad's analysis suffers from several fatal flaws.

*First*, Dr. Saad inappropriately purports to use Dr. Farber's model to predict pay and promotion outcomes for individuals, and Microsoft then argues that variability in pay and promotion outcomes for individuals shows a lack of commonality. Def. Br. 24-28. But statistical models that show a pattern or practice of discrimination are not designed to predict outcomes for any individual in the class; even Microsoft recognizes this. *Id.* at 42 (arguing that parties must litigate "whether [] the employee was adversely affected in pay or promotion relative to male peers, which statistics cannot determine."); Farber Reply ¶12. Also, as a legal

---

Microsoft's other authority is similarly distinguishable. *See Barrett v. Option One Mortg. Corp.*, 2012 WL 4076465, at *3 (D. Mass. Sept. 18, 2012) (discretionary decisions by individual brokers in lending discrimination case with no common policy guiding discretion); *Valerino v. Holder*, 283 F.R.D. 302, 315 (E.D. Va. 2012) (individual marshals "use their own judgment" to evaluate applicants); *Bell v. Lockheed Martin Corp.*, 2011 WL 6256978, at *7-8 (D.N.J. Dec. 14, 2011) (no common policy where "Lockheed's discretionary employment policies are substantially identical in nature to Wal–Mart's discretionary policies").

[17] Citations to Dr. Farber's original report are to the corrected version located at Dkt. 331.
[18] Dr. Saad argues that there is no average pay difference for IT Ops, examined alone, under Dr. Farber's model. Saad ¶ 6. Dr. Saad declines to specify to which model he refers and cites no corresponding Table or figure for this claim. He also could not identify any supporting analysis at his deposition. Saad Tr. 307:22- 310:5.

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

matter, to establish a prima facie case in the liability phase, Plaintiffs are "not required to offer evidence that each person [who] seek[s] relief was a victim of the employer's discriminatory policy," but rather, Plaintiffs must show that "discrimination was the company's standard operating procedure," and "[t]his may be done through statistics alone." *Beck v. Boeing Co.*, 60 F. App'x 38, 39 (9th Cir. Feb. 25, 2003) (quoting *Teamsters v. United States*, 431 U.S. 324, 336, 339-40, 360 (1977)). *See also Williams v. Boeing Co.*, 225 F.R.D. 626, 634 (W.D. Wash. 2005) ("Plaintiffs need not present evidence during the liability phase that each member of the class was a victim of the employer's discriminatory policy or practice."). Thus, it is statistically improper *and* legally unnecessary to use Dr. Farber's regression to predict individual injuries.[19]

*Second*, Dr. Saad's individual predictions for promotions are based on faulty logic. Dr. Saad's predictions assume that if the probability of promotion for a particular worker in a particular year is greater than 50%, then that promotion should have occurred, and if the probability of promotion is less than 50%, then that promotion should not have occurred. Saad ¶ 49. As Dr. Farber explains, this assumption is inconsistent with reality, and applying it to actual Microsoft promotions means that Dr. Saad would predict that less than 60% of the promotions that *actually occurred* at Microsoft should have occurred. Farber Reply ¶¶ 21-23.

*Third*, Dr. Saad invents distinctions in Microsoft's promotion process in order to disaggregate promotions data. Although Microsoft's uniform promotion criteria apply no matter when the promotion occurs,[20] Dr. Saad arbitrarily divides the promotions analysis by time of year. Curiously, Dr. Saad's report states that the promotions analysis must be divided into separate times of the year "because they fall under different promotion budgets." Saad ¶ 103. Yet in his deposition, he admitted that this statement is untrue (it is the same budget, Saad Tr. 72:8-74:2), and that he did not know how promotion budgets are set at Microsoft because promotion budgeting "was really not part of the scope or relevant to my analysis," *id*. 71:8-23.[21] Dr. Saad then asserts that "business need" justifies separating on- and off-cycle promotions.

---

[19] Dr. Saad's individual estimates also fail to consider the economic value of lost promotions. Farber Reply ¶ 17.
[20] Ritchie Tr. 495:20-496:7 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).
[21] It also would not be credible for Microsoft, a top 30 company, to suggest it cannot afford earned promotions.

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

This distinction does not arise from Microsoft's actual policies, but rather from Dr. Saad's "study" of written promotion justifications that was so arbitrary and poorly constructed that it undermines Dr. Saad's credibility. Farber Reply ¶¶ 36-43. All promotion decisions are based on Microsoft business needs; the reason for each is irrelevant to statistical analysis. *Id.*

**Fourth**, Dr. Saad argues that Dr. Farber should have analyzed the promotions of IT Operations and Engineering employees separately, but ignores that Dr. Farber *already* included controls for Discipline *and* Job Title (which, by definition, include Profession) to account for any differences between Engineering and IT Operations. Additionally, movement between the two Professions is common—█% of individuals who ever worked in IT Operations from January 1, 2010 to August 31, 2016 also worked in Engineering during this period, so analyzing promotion data with the two Professions combined is appropriate. Farber Reply ¶ 26.

**Fifth**, Dr. Saad uses a "Z-model" to analyze promotions in lieu of Dr. Farber's probit analysis, which is inappropriate in this context as it requires splitting employees into small pools of homogeneous individuals for analysis, which Dr. Saad does somewhat arbitrarily. Farber Reply ¶¶ 44-51. As in *Ellis*, the result is that many pools are so small (with only a few, or even zero, employees and in many cases eliminating any gender diversity) that they are useless for this analysis. *Id.* ¶ 48; *Ellis*, 285 F.R.D. at 522-23 (separating data into small sample sizes "would tend to obscure the overall pattern of promotion rates"); Saad Tr. 203:21-204:3 (admitting same). Dr. Saad acknowledges in his own publication that in order for a Z-model to be reliable, there must be a certain sample size and number of expected selections in the pools, and that situations where many factors (such as experience, seniority, and education) influence the probability of promotion often require multiple regression analysis, which is what Dr. Farber used.[22] In sum, Dr. Saad's "Z-score" pool analysis of promotions contradicts his own guidance, and is useless.

**Sixth**, Dr. Saad argues that Dr. Farber should have used additional controls for Career Stage and Stock Level that have the effect of reducing—though not eliminating—the gender-based pay gap, but his basis for doing so is not supported by statistical methods or by the facts of the case. Saad ¶¶ 150-68. As Dr. Farber explains in both his Report and Reply Report, it is

---

[22] *See* Haan, C., E. Reardon & A. Saad, "Employment Discrimination Litigation," *Litigation Services Handbook*, Roman Weil, et al., eds. (2012) at 10, 12-13.

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

inappropriate to control for Stock Level because it is the expression of a pay band, as Microsoft

acknowledges, and adding it would effectively regress pay on itself. *See* Shaver Reply Decl., Ex.

K (representing to OFCCP that ███████████████████████████████████

███████████████████); Farber Reply ¶ 59 ("[Saad] has essentially asked the question,

after controlling for how much each worker earns, do women earn less than men?"). Dr. Farber

did not use Career Stage because he found it to be redundant of two controls, Discipline and

Standard Title, that were already in his model. Farber ¶6; Farber Tr. 144:8-21. However, even if

Dr. Farber incorporates Career Stage, as Dr. Saad suggests, statistically significant pay

disparities remain. Farber Reply ¶ 70, Table 11.[23]

**Seventh,** Dr. Saad's additional suggested controls—prior experience, part-time work,

LOA status, patents, hire source (college or lateral), and organizational unit or business

product—are either factors for which there is no available data (*e.g.*, patents) or have no

significant effect on the analysis. Farber Reply ¶¶ 73-80. Notably, Dr. Saad's opinion that these

factors would be correlated with gender is based on regressive views of women in the workplace,

including that the gender pay gap persists in "high wage, high skill occupations," because "these

are jobs in which flexibility—whether part year or part time work—is a distinct drawback" and

"there are time pressures in the form of inflexible deadlines." Saad ¶ 180. The implication is that

women do not prefer "high wage, high skill" jobs, as Dr. Saad argued in *Ellis*.[24]

**Finally**, Dr. Saad faults Dr. Farber for not restricting his analysis to the class liability

period, beginning in September 2012. Saad ¶ 17, n.11. However, as Saad's Appendix 2 and Dr.

Farber's Reply Report demonstrate, restricting the analysis to the class liability period makes

virtually no difference to the conclusions that women are underpaid and under-promoted relative

to men and that these differences are statistically significant. Saad, Appendix 2; Farber Reply

---

[23] Even if Dr. Farber used a Stock Level control, as Dr. Saad advocates, a statistically significant gender pay gap remains. Saad ¶¶ 175-76. Dr. Saad tries to minimize this inconvenient fact as "practically insignificant." But, these pay gaps—████████████—are both practically and statistically significant. Farber Reply ¶ 64.

[24] *See* Declaration of Ali Saad re First Report Submitted in Opposition to Plaintiffs' Motion for Class Certification, *Ellis v. Costco Wholesale Corp.*, No. 04-3341, ECF No. 156 (Sep. 28, 2006) at ¶¶ 5-12 (explaining "inherent differences in basic preferences" for types of work between men and women, and suggesting that women, like workers in developing nations, are less likely to invest in human capital given their differing social roles, because they expect to participate less in the labor market than men); Declaration of Ali Saad re Second Report Submitted in Opposition to Plaintiffs' Motion for Class Certification, *Ellis*, ECF No. 158 (Sep. 28, 2006) at ¶¶ 10, 86, 88, and 105 (suggesting women may not be able to do jobs that require early morning or irregular hours).

REPLY ISO CLASS CERTIFICATION
Case No. 2:15-cv-01483-JLR
-9-
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

¶¶ 6-7, Tables 1C-8C, Figures 1C-3C.[25]

### iii.    Dr. Saad's own analysis supports commonality.

While Dr. Saad's analysis is wrong for the reasons set forth above, at most it presents alternative common evidence that can be considered on a class basis. The "battle of the experts" supports commonality. *Ellis*, 285 F.R.D. at 524 ("[D]isputes [regarding which variables to include the model] amount to competing classwide explanations for the observed raw disparity and therefore support, rather than undermine, a finding of commonality."). To the extent that Microsoft argues there is no disparate impact based on Dr. Saad's disaggregated data, this is a fact question that need not be resolved at this stage. *Id.* (court need not resolve this factual question at Rule 23; rather, it presents a common question suitable for classwide resolution."); *Williams*, 225 F.R.D. at 635 ("Statistical dueling is not relevant to the class certification determination.") (alterations and citation omitted).[26]  As *Ellis* recognized, resolving such expert disagreements now "would run afoul of the Ninth Circuit's clear instruction that the Court examine the merits only insofar as it is *necessary to determine whether there was a common pattern and practice that could affect the class as a whole*." 285 F.R.D at 527.

### b.    Microsoft misstates Plaintiffs' burden regarding causation.

Microsoft argues that commonality fails because Plaintiffs' experts do not opine that calibration is the cause of the observed disparities. Def. Br. at 21. But whether the challenged practices caused the disparities within the meaning of the anti-discrimination law (which, for example, does not require discrimination be the sole cause[27]) is for the trier of fact at the merits stage. "Statistical evidence is used to demonstrate how a particular employment practice causes a protected minority group to be underrepresented in a specific area of employment (for

---

[25] Moreover, pre-liability data is admissible in Title VII cases, *Paige*, 291 F.3d at 1149, as this Court already recognized here. *See* June 6, 2016 Hr'g Tr. 13:7-10; Sep. 7, 2016 Hr'g Tr. at 20:8-9 (ordering Microsoft to produce pre-liability data because probative of discrimination).

[26] *See also In re Aftermarket Auto Lighting Prods. Antitrust Litig.*, 276 F.R.D. 364, 373-74 (C.D. Cal. 2011) (post-*Dukes* case finding that courts "need not cho[o]se between experts" at certification stage because inquiry limited to determining whether merits issues can be resolved through "generalized proof common to the class"); *Houser v. Pritzker*, 28 F. Supp. 3d 222, 243-44 (S.D.N.Y. 2014) (where plaintiffs' expert showed adverse impact nationwide, and defense expert showed no impact at local level, "the Court need not resolve such 'battles of the experts' at this juncture. . . . [T]he fact that both sides' experts are able to provide classwide answers to the liability question suffices to satisfy the commonality requirement").

[27] *Staub v. Proctor Hosp.*, 131 S.Ct. 1186, 1191 (2011).

REPLY ISO CLASS CERTIFICATION
Case No. 2:15-cv-01483-JLR
-10-
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

example, hiring or promotion). The statistical analysis must show a disparity that is 'sufficiently substantial' as to 'raise such an inference of causation.'" *Paige*, 291 F.3d at 1145 (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994-95 (1988)); *Smith v. Xerox Corp.*, 196 F.3d 358, 365 (2d Cir. 1999) (same); *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 151 (2d Cir. 2012) (same).[28] This merits question is not ripe at the Rule 23 stage. What matters now is that Plaintiffs have demonstrated that their claims can be resolved with common proof that will drive the resolution of each class members' claim. *McReynolds*, 672 F.3d at 490 ("We are not suggesting . . . that management's teaming and account distribution policies have a racial effect. The fact that black brokers have on average lower earnings than white brokers *may have different causes altogether*. The only issue at this stage is whether the plaintiffs' claim of disparate impact is most efficiently determined on a class-wide basis rather than in 700 individual lawsuits.") (emphasis added); *Ellis*, 285 F.R.D. at 510 ("[C]ommonality is even clearer with respect to disparate impact, as Plaintiffs have identified specific employment practices they *allege* have caused the gender disparity in promotions . . . .") (emphasis added).

Microsoft's reliance on *Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174 (D.D.C. 2017) is misplaced. *Ross* did not involve a contested Rule 23 motion, but a complaint filed together with a proposed class settlement. *Id*. at 179. Plaintiffs had not conducted discovery, and relied only on their pleadings. *Id*. at 184. Critically, plaintiffs failed to present any statistical analysis, let alone one that would give rise to an inference that the challenged performance review policy caused the alleged disparate impact. The court recognized the role of statistics in this inquiry: "to support a claim for disparate impact, the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Id*. at 182 (citations omitted). Unlike here, the court noted, "Plaintiffs have pointed to no evidence of biased decision making of any kind, and certainly not statistical evidence of the type that demonstrates that the discretionary ratings decisions led to racially

---

[28] *See also Easterling v. Conn. Dep't of Corr.*, 278 F.R.D. 41, 48 (D. Conn. 2011) ("[L]iability stage of this case was resolved on the basis of generalized proof: the plaintiff made a prima facie showing—via class-wide statistical evidence—that the challenged physical fitness test caused a disparate impact on the basis of sex, and the defendant failed to rebut that statistical evidence or demonstrate a business justification for the test's use.").

REPLY ISO CLASS CERTIFICATION
Case No. 2:15-cv-01483-JLR

-11-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

disparate outcomes *in a common way*." *Id*. at 198.

Microsoft also relies on Dr. Saad to argue that changes to female ratings during Calibration mean that the process "benefitted" women rather than disparately impacting them. But all that Dr. Saad has established for Microsoft is that women start off even more disadvantaged than the end data provided to Dr. Farber ultimately show.

### c.   The case law supports commonality here.

Plaintiffs present an extensive documentary record, witness testimony, and expert opinion.  Under applicable jurisprudence, Plaintiffs have more than met their burden.

Microsoft attempts to distinguish *Ellis*—which went back and forth to the Ninth Circuit around the *Dukes* decision—and *McReynolds*—a seminal post-*Dukes* employment class action circuit decision—based on the size and number of job titles in the class.  But neither issue was dispositive in those decisions.  Rather, the courts granted certification of the disparate impact claim in each case because plaintiffs challenged a common employment policy, with analyses that support certification here.  In *Ellis*, a disparate impact promotion challenge, the court held:

> Because the question . . . is whether Defendant's policies and practices have a disparate impact on the Class as a whole without regard to intent, the *Dukes*-identified problem of decentralized and discretionary individual managers' decisions presents less of a hurdle to certification if the plaintiffs identify specific companywide employment practices responsible for the disparate impact. . . . Plaintiffs have identified such specific employment practices . . . include[ing] *inter alia*, a tap-on-the-shoulder appointment process (without an application or interview), the mandated lack of posting for open positions, promotion exclusively from within, a requirement of MM experience . . . , reliance on unwritten and informal evaluation of candidates by senior management . . . , reliance on promotable lists of desired candidates, reliance on common but unvalidated criteria for assessing candidates (supplied by the CEO and other top executives), and placing a premium on schedule flexibility and ability to relocate. Plaintiffs' argument—that such companywide practices lead to disparate outcomes—is a common question subject to classwide proof and rebuttal.

285 F.RD. at 531.  The court acknowledged that the promotion system "authorize[d] the exercise of discretion at particular levels," but found that did not bar certification because "the discretion was guided and influenced by discrete policies, practices, and culture which disfavored women." *Id*. at 533.  Like *Ellis*, Microsoft's Calibration process relies on common but unvalidated criteria, following a set of common procedures, with final approval by just four EVPs.

Similarly, in *McReynolds v. Merrill Lynch*, the Seventh Circuit reversed a class

REPLY ISO CLASS CERTIFICATION
Case No. 2:15-cv-01483-JLR

-12-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

certification denial in a disparate impact challenge where managers retained "a measure of discretion" but "the exercise of that discretion is influenced by the two company-wide policies at issue." 672 F.3d 482, 488-89 (7th Cir. 2012). There, plaintiffs challenged a teaming policy and an account distribution policy on behalf of black brokers working in 600 branch offices under the supervision of 135 managers. *Id*. at 488. The teaming policy allowed brokers to form teams in order to share clients, though it did not require they do so. *Id*. The account distribution policy provided criteria for managers to follow when awarding accounts of departing brokers to remaining brokers. *Id*. at 488-89. The court rejected the idea that teaming and account distribution were not subject to challenge because one was undertaken at the election of employees and the other at the discretion of managers:

> [P]ermitting brokers to form their own teams and prescribing criteria for account distributions that favor the already successful . . . are practices of Merrill Lynch, rather than practices that local managers can choose or not at their whim. Therefore challenging those policies in a class action is not forbidden by the *Wal-Mart* decision; rather that decision helps (as the district judge sensed) to show on which side of the line that separates a company-wide practice from an exercise of discretion by local managers this case falls.

*Id.* at 490. Clearly, teaming between individual coworkers and account distribution by individual managers in 600 different branch offices involve more discretion than what is alleged here.

Microsoft also cites several cases for the proposition that "*Dukes* prohibits class certification where individualized, discretionary decisions of individual supervisors are at issue." Def. Br. at 18. Yet none of these cases is analogous to this one. In *Valerino v. Holder*, 283 F.R.D. 302 (E.D. Va. 2012), for example, plaintiffs challenged a promotion process with multiple phases. The court noted that the first phase—which plaintiffs *did not* challenge – subjected applicants to an "objective procedure, or method, for scoring" whereby everyone "was subjected to a common standard and thus share the same claim to prejudice under that standard." *Id*. at 313. The second phase, which was the subject of the lawsuit, involved scoring by managers who applied no common criteria—it was "completely discretionary." *Id*. Because, unlike here, there was no common mode of exercising discretion in the phase challenged by plaintiffs, that claim had to be evaluated under the disparate treatment standard. As to that standard, the court found that plaintiffs had not submitted proof of a general policy of

REPLY ISO CLASS CERTIFICATION
Case No. 2:15-cv-01483-JLR

-13-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

discrimination, as they failed to submit *any* statistical evidence to support it. *Id*. at 314-15. Microsoft's other cases likewise involve policies that wholly delegated discretion to managers with no common mode to exercise it, or that were not common to the class.[29]

### 3. Plaintiffs' disparate treatment claim raises common questions.

At this stage Plaintiffs must show that the "significant proof" of discrimination they will present on the merits is common to the class as a whole, enabling resolution of the question whether discrimination was Microsoft's standard operating procedure without relying on individualized information. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011) ("the district court was not required to resolve factual disputes regarding: (1) whether women were in fact discriminated against in relevant managerial positions at Costco, or (2) whether Costco does in fact have a culture of gender stereotyping and paternalism."). Plaintiffs have done so. Contrary to Microsoft's argument, Plaintiffs need not establish their prima facie case of intentional discrimination at the Rule 23 stage. Def. Br. at 29. The Court must probe the merits only to the extent necessary to determine whether this standard is met. *Ellis*, 657 F.3d at 981.

Here, Plaintiffs have produced ample proof of intentional discrimination against the Class: statistical evidence of discrimination in the Calibration process;[30] company documents showing that Microsoft's senior leadership knew of the disparities; company documents showing a culture hostile to women, and an HR department unable or unwilling to correct it; and representative testimony (declarations) illustrating Class members' experiences of gender discrimination at Microsoft. *See* Pl. Br. at 10-27. Microsoft's attacks on Plaintiffs' evidence of intentional discrimination misstate the record and, at most, merely challenge the persuasiveness

---

[29] *See Jones v. Nat'l Council of Young Men's Christian Assn's*, 34 F. Supp. 3d 896, 904 (N.D. Ill. 2014) (denying certification where "the Y vested its supervisors and managers with substantial discretion and that there was no common policy or procedure uniformly applicable to the Y's employees because the procedures changed over time, offered many different avenues for pay raises and promotions, and were subject to ad hoc exceptions, thus creating myriad permutations that undermined the plaintiffs' assertion of uniformity."); *Zuniga v. Bernalillo Cty.*, 319 F.R.D. 640, 688 (D.N.M. 2016) (rejecting certification because "[l]ike in *Wal–Mart v. Dukes*, Bernalillo County's practice is for individual managers to make employee selection and compensation decisions."); *Stiller v. Costco Wholesale Corp.*, 673 F. App'x 783 (9th Cir. 2017) (certification denied because policy not uniform to class). By contrast, in another case Microsoft relies on, *Troy v. Kehe Food Distribs., Inc.*, 276 F.R.D. 642, 644 (W.D. Wash. 2011) (Robart, J.), this Court granted certification in a wage and hour case where a common policy was challenged.

[30] Microsoft's only challenge to Plaintiffs' statistical evidence with regards to the disparate treatment claim is that, when the data is disaggregated by supervisor, it does not show a common pattern. While such disaggregation is unsound as set forth in § I.A.2.a., this is a common merits question that need not be resolved at this stage.

REPLY ISO CLASS CERTIFICATION
Case No. 2:15-cv-01483-JLR

-14-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

of the evidence—a common question for the jury.

### a. Plaintiffs' anecdotal evidence is both sufficient and admissible.

Plaintiffs have submitted substantial evidence that Microsoft has a general policy of intentional discrimination, including ███ complaints of gender discrimination; eleven declarations filed by Class members describing a culture of gender bias; internal Microsoft memoranda that evince awareness of (but no solution to) the systemic disadvantages faced by women at the company; and responses to Microsoft's self-serving pay equity announcements showing scores of employees complaining of gender bias in stock leveling. *See* Pl. Br. at 13-27. While there is no threshold amount of Rule 23 evidence to show a general policy of discrimination, this evidentiary record is sufficient under any standard.

Microsoft asserts that Plaintiffs have not met their burden due to the number of Class member declarations. But there is no requirement that anecdotal evidence be limited to litigation declarations, nor would that make sense. Contemporaneous business records created outside the context of litigation are at least as probative as documents created to support a case after a lawsuit is filed. Voluntary declarations necessarily cannot tell the full story because they will not reflect statements from those Class members who signed severance agreements paying them for their silence on gender bias issues. In addition, the women who submitted declarations describe how fear of retaliation for speaking out about gender discrimination is prevalent. *See* Alberts Decl. ¶ 8, Dkt. 237; Smith Decl. ¶ 10, Dkt. 244; Moussouris Decl. ¶ 7, Dkt. 242; *see also* Dove Tr. 59:18-20 ("I had been blackballed in the organization because of my ERIT complaint"). Declarations are the tip of the iceberg, as confirmed by voluminous other evidence.

Microsoft also incorrectly argues that its internal complaint records are inadmissible. Internal complaint files are admissible as business records under Fed. R. Evid. 803(6) because they are contemporaneous records of a regularly conducted activity.[31] They are also admissible as party admissions under Fed. R. Evid. 801(d)(2)(C) and (D).[32] However, even if the internal

---

[31] *See, e.g., La Day v. Catalyst Tech., Inc.,* 302 F.3d 474, 481 n.7 (5th Cir. 2002) (HR investigator's notes of sexual harassment investigation were admissible under business records exemption); *Byrd v. Merrill Lynch,* No. 10-247, 2011 WL 2680572, *6 (D.N.J. July 8, 2011) (same).

[32] *See Godoy v. Maplehurst Bakeries, Inc.,* 747 F. Supp. 2d 298, 305 (D.P.R. 2010) (internal complaint is party admission and not hearsay); *Day v. Sears Holdings Corp.,* 930 F. Supp. 2d 1146, 1183 n.138 (C.D. Cal. 2013)

REPLY ISO CLASS CERTIFICATION
Case No. 2:15-cv-01483-JLR

-15-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

1  complaints contained hearsay that did not fall within a hearsay exception, they would still be

2  relevant evidence at the Rule 23 stage where the rules of evidence do not apply with rigidity.[33]

3  Microsoft likewise misstates the standard under Title VII in arguing that evidence of a

4  culture of discrimination is irrelevant to whether there is discrimination in promotions or pay,

5  because Plaintiffs have not demonstrated a causal relationship between the work environment

6  and the pay and promotion outcomes.  Def. Br. at 31.  As the court explained in *Brown v. Nucor*

7  *Corp.*, "[s]uch a perspective, however, is perplexingly divorced from reality and the history of

8  workplace discrimination. It is difficult to fathom how widespread [gender] animus of the type

9  alleged here, an animus that consistently emphasized the inferiority of [female] workers, bears

10  no relationship to decisions whether or not to promote an employee of that [gender]."  785 F.3d

11  895, 912 (4th Cir. 2015).

12                          **b.    Microsoft's employee declarations deserve no weight.**

13  Microsoft offers ten Class member declarations from current employees who rely on

14  Microsoft for their livelihoods, including one who has been promoted out of the Class. Courts

15  recognize that employer-solicited declarations of incumbent employees are unreliable because of

16  the employer's inherent economic power over its employees.[34] While these Class members

17  nonetheless confirmed the uniform practices and criteria challenged here, *see, e.g.*, fns. 6-11, the

18  sample Plaintiffs deposed knew nearly nothing about the lawsuit, had not received the complaint

19  or class certification brief, did not know about the OFCCP's Notice of Violation against the

20  company, were unaware of the evidence amassed against Microsoft by Plaintiffs (including

21  expert analysis of pay data), and were not provided with Plaintiffs' counsel's contact

22  (human resources comments regarding investigation into sexual harassment qualified as party admissions).

23  [33] *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (class certification determination is "of necessity . . . not accompanied by the traditional rules and procedures applicable to civil trials"); *In Re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 613-14 (8th Cir. 2011) (FRE should not be strictly applied at class certification);

24  *Gonzalez v. Millard Mall Servs., Inc.*, 281 F.R.D. 455, 459 (S.D. Cal. 2012) (same);  *Flores v. Anjost Corp.*, 284 F.R.D. 112, 124 n.3 (S.D.N.Y. 2012) (same).

25  [34] *See Camp v. Alexander*, 300 F.R.D. 617, 622 (N.D. Cal. 2014) ("[C]ourts have . . . noted the potential for coercion in situations where employers contact putative class member employees."); *Mevorah v. Wells Fargo Home Mortg.,*

26  *Inc.*, No. 05-1175, 2005 WL 4813532, at *4 (N.D. Cal. Nov. 17, 2005) ("[W]here the absent class member and the defendant are involved in an on-going business relationship, such as employer-employee, any communications are

27  more likely to be coercive.") (quoting *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 668 (E.D. Tex. 2003)); *id.* ("[I]t is reasonable to assume that an employee would feel a strong obligation to cooperate with his or her employer in defending against a lawsuit."); *Brown*, 785 F.3d at 914 (cautioning courts to "proceed with eyes open to the

28  imbalance of power and competing interests" when assessing the weight of statements from current employees).

REPLY ISO CLASS CERTIFICATION
Case No. 2:15-cv-01483-JLR                              -16-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

information.[35] Witnesses also testified that they had *no position* on whether a class should be certified, contrary to the declarations submitted. Shariff Tr. 14:14-16; Calla Tr. 14:22-25.[36] Class member depositions were defended by "independent" counsel chosen by Microsoft, who did not inform witnesses that they represent Microsoft in other litigation.[37] And Microsoft's manager declarants relied on documents that were never produced to Plaintiffs in discovery. Shaver Reply Decl., Ex. L.

### c. Microsoft argues a new standard for intentional discrimination

Microsoft ignores *all* of Plaintiffs' authorities,[38] and argues that Plaintiffs must show that Microsoft's senior leadership *directed* lower level managers to discriminate. Def. Br. at 33. This implausible idea is not the law. *Ellis*, 285 F.R.D. at 518 (plaintiffs need only prove a "regular practice [or] pattern of discriminatory decision making."); *Williams*, 225 F.R.D. at 636 (internal audits showing senior Boeing executives knew of disparate impact was evidence of intentional discrimination). As described in Plaintiffs' opening brief, the evidence is more than sufficient that senior leadership had direct knowledge of discrimination here. Pl. Br. at 10-13.

First, Microsoft admits it performs internal gender audits. *See, e.g.*, Dkt. 172, ¶¶ 4-5, 11 (                                                                                                ). Second, the OFCCP's Notice of Violation sets forth                                                                                                .[39] Shaver

---

[35] Shariff Tr. 12:14-13:2, 16:4-7, 17:3-9, 17:16-19, 18:8-11, 18:15-18, 19:3-6, 25:21-26:2; Calla Tr. 12:6-14, 15:1-3, 15:8-11, 18:9-13, 19:3-8, 20:16-10, 21:1-4, 21:8-11, 22:5-16; Dongale (Mahalati) Tr. 24:1-25:7, 28:19-32:2, 34:5-12, 45:3-8, 55:8-11, 57:8-14, 57:23-25, 64:16-20. Although Plaintiffs observed in the data produced by Microsoft that Class members witnesses have been paid less than comparable male coworkers, these witnesses testified that they did not know what others earned, meaning they were not aware of the on-going discrimination against them.
[36] One witness was unaware that Plaintiffs seek damages—*i.e.*, that she could benefit financially. Shariff Tr. 16:1-3.
[37] *See* Calla Tr. 8:3-5 ("Offered me Mr. Reilly and nobody else."); Dongale Tr. 61:15-17; Shariff Tr. 7:16-8:5. Shaver Reply Decl., ¶ 5 (engagement letters show no disclosure of potential conflict).
[38] Microsoft asserts that Plaintiffs cite only one post-*Dukes* case—*Ellis*—in which a court found proof of a policy of discrimination. Microsoft overlooks *McReynolds*, *Brown* and *Rollins*; earlier *Williams* and *Beck* remain good law.
[39] The Court may consider the Notice of Violation regardless of whether its legal conclusions are admissible, for the reasons stated in footnote 33, above. In addition, Microsoft is wrong that OFCCP's factual findings are inadmissible; in fact, they are routinely admitted under the hearsay exception for public records. *Sullivan v. Dollar Tree Stores*, 623 F.3d 770, 778 (9th Cir. 2010). The *Sullivan* court rejected the DOL's report in that case as untrustworthy because it was incomplete, appeared to be a draft, did not attach the exhibits it referenced, and did not list the author. *Id.* No such circumstances apply here.

REPLY ISO CLASS CERTIFICATION
Case No. 2:15-cv-01483-JLR

-17-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

Opening Decl., Ex. A at 00802741, Dkt. 229-1.  Third, although Microsoft dismisses as irrelevant its employees' critical responses to its two equal pay studies, these responses made clear the concerns in the field that stock level was masking pay inequality and that in general women are not paid and promoted fairly.[40]  Fourth, Microsoft fails to acquit its ERIT's team dismal record on complaint investigations, instead offering a whimsically inadequate expert rebuttal opinion.  In fact, Ms. Young reviewed only █ of Microsoft's gender complaints (a small sample ███████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████ Young Tr. 132:1-3; 267:6; 164:2-5.  Her observations, which she proudly claims are not based on ████████████████, should not be credited.[41]

Fifth, notwithstanding the documented weaknesses in Microsoft's diversity programs and Microsoft's vast overstatement of its spending,[42] D&I activities are completely irrelevant to Plaintiffs' disparate impact claim.  *Lafate v. Vanguard Grp., Inc.*, No. 13-5555, 2014 WL 4384510, at *8 (E.D. Pa. Sept. 5, 2014).  In addition, failure to follow diversity plans can be evidence of discriminatory intent.  *Butler v. Home Depot, Inc.*, No. 94-4335, 1997 WL 375285, at *3 (N.D. Cal. Apr. 24, 1997).

**B.    The Named Plaintiffs Are Typical.**

Microsoft attacks both Plaintiffs on the ground that they were treated fairly.  This defense is *non*-individualized and common: it is the crux of the case.  In addition, Microsoft attacks Plaintiff Moussouris, asserting she did not experience pay or promotion discrimination.  However, this assertion rests on a flawed application of Dr. Farber's regression model to predict individual outcomes, *see* § I.A.2.a., an application Microsoft admits elsewhere is improper.[43]

---

[40] *See* Dkt. 229-4 and 273-8.
[41] *See* Rebuttal Report of Caren Goldberg, ¶¶ 9,10,17, 20-22, 38. Plaintiffs also identify the biggest gaps in this expert's qualifications and opinions by page and line in the Shaver Reply Decl., but in order to understand the full scope of inadequate opinion, Plaintiffs also attach the full transcript of Ms. Young's deposition as Exhibit J.
[42] Microsoft's brief states that "Microsoft has allocated more than $55 million per year to innovative diversity and inclusion programs," (p.1) while the attesting declaration actually states that, "In 2015, our D&I budget was $13.4 million. The company has budgeted to increase its D&I spend to $55.4 million a year through 2020."  Dhillon, ¶ 6.
[43] *See* Def. Br. at 42; *see also* Farber Reply ¶ 12.

REPLY ISO CLASS CERTIFICATION
Case No. 2:15-cv-01483-JLR                                    -18-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

### C.    Plaintiff Moussouris is Adequate.

Microsoft incorrectly asserts that there are intra-class conflicts between Class members who participated in the Calibration process, such as Plaintiff Moussouris, and those who did not. Adequacy requires that named plaintiffs must "possess the same interest and suffer the same injury" as class members in order to avoid a conflict of interest. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). The conflict in *Amchem* involved irreconcilably different goals for class members with current injuries, who desired "generous immediate payments" and class members with potential future injuries, who desired a fund preserved for the future. *Id.* at 626. By contrast, the remedies sought here—injunctive relief and monetary damages—are consistent for all Class members. No female manager at Microsoft is at risk of being penalized for the Calibration process.[44] There is no conflict.

Microsoft relies on *Wagner v. Taylor*, 836 F.2d 578, 579 (D.C. Cir. 1987), a 40-year old out of circuit case which itself misunderstands the two older cases it cites: *Wells v. Ramsay, Scarlett & Co.*, 506 F.2d 436, 437 (5th Cir. 1975), where the Fifth Circuit simply found the plaintiff could not represent a class he was not a member of; and *Gilchrist v. Bolger*, 89 F.R.D. 402, 409 (S.D. Ga. 1981), *aff'd*, 733 F.2d 1551 (11th Cir. 1984), where the court found *no intra-class conflict*, and noted that "[a] naked allegation of antagonism cannot defeat class certification; there must be an actual showing of a real probability of a potential conflict which goes to the subject matter of the suit." In 2014, the D.C. Circuit limited *Wagner*'s holding in *In re Johnson*, 760 F.3d 66, 74 (D.C. Cir. 2014), finding (in analogous circumstances) that no conflict is present if some class members applied an allegedly flawed rating system and reached a discriminatory result as to other class members. The Ninth Circuit has also rejected broad application of *Wagner*, holding it "did not . . . adopt any per se rule concerning adequacy of representation where the class includes employees at different levels of an employment hierarchy." *Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003) (upholding certification of class including supervisors and their supervisees alleging discrimination in promotion,

---

[44] Even if some manager class members are not in the position to receive damages, that would not constitute a conflict precluding certification. *See Ochoa v. McDonald's Corp.*, No. 3:14-CV-02098-JD, 2016 WL 3648550, at *5 (N.D. Cal. July 7, 2016) (no conflict where some workers would receive overtime and others would be found overpaid, because defendant could not take back overpaid wages and no one loses if claims are successful).

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

compensation, and career development decisions).  Similarly, in *Pena v. Taylor Farms Pac.,*

*Inc.*, 305 F.R.D. 197, 215 (E.D. Cal. 2015),[45] the court found adequacy in a wage and hour class

of both non-exempt supervisors and their subordinates because the case alleged a uniform policy,

meaning all "would have been affected similarly."

Microsoft's principal authority—*Donaldson v. Microsoft Corp.*, 205 F.R.D. 558, 568

(W.D. Wash. 2001)—relies on *Wagner* and was issued prior to the D.C. and Ninth Circuits'

subsequent limiting interpretation of that case.[46]  Importantly, all Class members here share an

interest in a workplace free of gender bias.  That women are sometimes required to be both

players and pawns (as Microsoft quotes from *Donaldson*) does not lessen their shared interest in

fixing that system's flaws.[47]

## II.      Plaintiffs Satisfy Rule 23(b).

Plaintiffs satisfy all elements of 23(b)(2) and (b)(3).

### A.      Plaintiffs Satisfy Rule 23(b)(2).

Microsoft argues that an injunction is not appropriate because the class is not sufficiently

cohesive and an injunction would be too general to satisfy Rule 65(d).  These points are

premature and meritless.

***First***, the proposed Class is cohesive. Microsoft's argument arises from its mistaken

theory of relief.  If the challenged Calibration process is found to have a disparate impact on

women, an injunction remedying its effects would be appropriate for all class members.  *See*

*Ellis*, 285 F.R.D. at 505. Microsoft's cases are inapposite and do not support its position.  In

*Fosmire v. Progressive Max Insurance Co.*, for example, the court faced more than 17 allegedly

unlawful contracts under potentially 24 states' laws.  277 F.R.D. 625, 631, 634-35 (W.D. Wash.

2011) (Robart, J.).  Likewise in *Barraza v. C.R. Bard Inc.*, 322 F.R.D. 369 (D. Ariz. 2017), the

---

[45] *Order clarified sub nom. Carmen Pena v. Taylor Farms Pac., Inc.*, No. 2:13-01282, 2015 WL 12550898 (E.D. Cal. Mar. 30, 2015), and *aff'd*, 690 F. App'x 526 (9th Cir. 2017).

[46] Microsoft also cites a Seventh Circuit case finding intra-class conflict where named plaintiffs had authority over compensation of other class members, and the Court worried they might intentionally depress supervisee women's salaries in order to create evidence of discrimination and win the case.  *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011).  Microsoft has not claimed that Plaintiffs or class members have ultimate authority over pay.

[47] If the Court is concerned about conflict, Plaintiffs respectfully submit that the solution is not to deny certification, but to exclude the small number of "managers of managers" that Dr. Saad identified (¶¶ 16-17).  Dr. Farber has run all of his analysis excluding this population, and his results are unaffected.  Farber Reply ¶¶ 3, 6-7.

court was asked to certify eleven state law classes involving seven different product designs and different modified warnings, under varying tort laws for negligent design and failure-to-warn. *Id.* at 375-76.  By contrast, Plaintiffs challenge a common pay and promotion system, subject to Title VII and Washington laws that are interpreted co-extensively.

**Second**, Plaintiffs have sufficiently described the employment practice for purposes of this motion.  *See supra* at 2-3.  It is premature to determine the exact injunctive remedy required should liability be found at trial.[48]  *See Parsons v. Ryan*, 754 F.3d 657, 689 n.35 (9th Cir. 2014)); *Ashker v. Gov. of State of Cal.*, No. 09-5796, 2014 WL 2465191, at *7 (N.D. Cal. June 2, 2014).[49] Microsoft's cases do not hold otherwise.  *See Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) (regarding whether injunction was adequate "to premise plenary judicial review," not for Rule 23(b)(2)); *Shook v. Board of County Commissioners*, 543 F.3d 597, 602, 605-06 (10th Cir. 2008) (injunction used abstract and undefined terms not present here).  *But see Parsons*, 754 F.3d at 689 n.3 (Ninth Circuit rejected specificity of type required in *Shook*).

**Third**, contrary to Microsoft's suggestion, the challenged discriminatory practices are on-going.  *See supra* 2-3.  Regardless, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000).  Likewise, changes to a challenged employment practice do not preclude class certification for injunctive relief that is rooted in the former practice.[50]  *See Raffin v. Medicredit, Inc.*, No. 15-4912, 2017 WL 131745, at *10 (C.D. Cal. Jan. 3, 2017) (rejecting argument that changed practice defeated (b)(2) certification); *Easterling*, 278 F.R.D. at 46-47 ((b)(2) certification appropriate where no showing that challenged practice cannot reasonably be expected to recur).

[48] The New York City Fire Department (Vulcan Society) case, involving roughly the same number of class members (7,400), presents a good case study in terms of how class injunctive relief could be handled in the post-liability period. *See U.S. & Vulcan Soc'y v. City of N.Y.*, No. 07-2067, 2013 WL 5542459, at *1–2 (E.D.N.Y. Aug. 30, 2013) (non-discriminatory test developed pursuant to court order by parties and court-appointed Special Master). *Id.*
[49] *See also U.S. & Vulcan Soc'y v. City of N.Y.*, 681 F. Supp. 2d 274, 277 (E.D.N.Y. 2010) (parameters of injunctive relief would be subject of a stage-two proceeding with corresponding supplemental evidence and expert testimony).
[50] Microsoft cites *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511 (9th Cir. 1993), for the proposition that courts will not certify a (b)(2) class where the allegedly illegal conduct has ceased, however, the Ninth Circuit did not address class certification, and in fact ultimately determined that an injunction was warranted. 991 F.2d at 520. And in *Arabian v. Sony Electronics Inc.*, No. 05-1741, 2007 WL 627977 (S.D. Cal. Feb. 22, 2007), the court denied (b)(2) certification in under the pre-*Dukes* standard primarily because the plaintiffs' "request for injunctive relief appear[ed] to be of secondary importance to the request for monetary damages." *Id.* at *8.

REPLY ISO CLASS CERTIFICATION
Case No. 2:15-cv-01483-JLR

-21-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

**Fourth**, the entire class is entitled to injunctive relief, including former employees. Microsoft argues that Rule 23(b)(2) certification is "inappropriate when a large percentage of the class lacks standing to pursue an injunction." Def.'s Br. at 49. By this reasoning, if there is staff turnover over a long enough period—and current employees become formers—all civil rights (b)(2) class actions could be avoided. *See Ellis*, 285 F.R.D. at 536 (criticizing defense argument that all class members must be aggrieved; "if accepted, [it] would be far reaching and eviscerate the availability of (b)(2) certification for injunctive relief in virtually all employment cases"), *appeal dismissed*, No. 12-80188, Order ECF No. 5 (9th Cir. Jan. 16, 2013). Moreover, the future and ongoing effects of past discriminatory decisions are also the proper subject of prospective injunctive relief. *See* Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2.

Microsoft misinterprets *Dukes*, which rejected the Ninth Circuit's "predominance" test for (b)(2) but did not actually rule on the former employee standing issue. *Dukes*, 564 U.S. at 365 ("[w]hat follows from this, however, is not that some arbitrary limitation on class membership [to current employees] should be imposed but that the backpay claims should not be certified under Rule 23(b)(2) at all"); *Chen-Oster v. Goldman, Sachs & Co.*, 251 F. Supp. 3d 579, 587-88 (S.D.N.Y. 2017) ("The Supreme Court did not itself reach the conclusion that the former employees lacked standing . . . but wanted to show the ineffective nature of the predominance test."). Even where some of the class may not benefit from an injunction, this does not preclude (b)(2) certification for the class as a whole. *See, e.g.*, *Rodriguez v. Hayes,* 591 F.3d 1105, 1125 (9th Cir. 2010); *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998). Moreover, Microsoft's authorities involve non-employment settings where current and future customers have competing interests or only a tiny fraction of the class would benefit from injunctive relief. *See Schulken v. Wash. Mut. Bank*, No. 09-2780, 2012 WL 28099, at *6 (N.D. Cal. Jan. 5, 2012); *Gonzales v. Comcast Corp.*, No. 10-1010, 2012 WL 10621, at *16 (E.D. Cal. Jan. 3, 2012). Here, Microsoft concedes that over two-thirds of the Class are current employees. The class *as a whole* would benefit from relief, even if some individuals do not.

**Finally**, the injunction Plaintiffs seek will be informed by the contours of the liability phase of the case and with the assistance of the Court and additional experts. Microsoft's

REPLY ISO CLASS CERTIFICATION
Case No. 2:15-cv-01483-JLR
-22-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

argument that "enjoining [its] employment practices company-wide . . . would be massively overbroad," Def. Br. at 50, is meritless because Plaintiffs have not sought to enjoin practices that do not affect members of the class. Microsoft fails to cite any authority for its position, nor can it. *See, e.g., Ellis*, 285 F.R.D. at 536-37 ((b)(2) class for two job positions); *Williams*, 225 F.R.D. at 634-37 ((b)(2) class of employees in certain divisions). Moreover, Microsoft's argument that an injunction would be inappropriate because some women benefit from the Calibration process has also been soundly rejected: the "argument, if accepted, would be far reaching and eviscerate the availability of (b)(2) certification for injunctive relief in virtually all employment cases. Unless a discriminatory practice were to preclude, *e.g., all women* from receiving any promotion, there would always be employees who succeed despite a discriminatory pattern or practice." *Ellis*, 285 F.R.D. at 536-37; *Rodriguez*, 591 F.3d at 1125.

## B.     Plaintiffs Satisfy Rule 23(b)(3).

Microsoft mistakenly argues that the Court will need to hold an individual hearing for every class member. Def. Br. at 42. Plaintiffs do not seek to litigate the career trajectory of every single Class member, but rather whether Microsoft's Calibration process adversely impacted the Class as a whole, and whether Microsoft operates under a general policy of discrimination—both of which are amenable to classwide proof. *See, e.g.*, *Seaman v. Duke Univ.*, No. 15-00462 (M.D.N.C. Feb. 1, 2018), Dkt. 189 at p.19 ("[T]the injury to assert is in the plaintiff's hands, and [Plaintiff] chose to assert theories of class-wide impact, not individual impact. Individual issues arising under a theory of liability that [Plaintiff] does not assert do not defeat predominance because there is no reason to think that those issues will present themselves in the adjudication.").

### 1.     Common Questions Predominate Over Individual Questions.

**Liability**. There are several cases that illustrate why common questions predominate in determining liability under disparate impact and disparate treatment claims like the ones Plaintiffs bring here. For instance, in *Ellis*, the court found predominance satisfied because

> With respect to the disparate treatment claim, whether Defendant has engaged in a pattern or practice of discrimination such that all class members are entitled to [relief] under the *Teamsters* method of proof is a common issue subject to

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

classwide resolution. . . . Similarly, with respect to the disparate impact claim, whether Defendant's facially neutral policies and practices have a disparate impact on class members, and whether those practices are nonetheless justified by business necessity, are similarly issues best addressed with respect to the entire class.

*Ellis*, 285 F.R.D. at 538. Likewise, in certifying the liability phase of plaintiffs' disparate treatment and disparate impact claims, the court in *Vulcan Society* held that

[t]he initial classwide phases of a disparate impact claim similarly focus on the defendant's employment actions vis-à-vis the protected group as a whole. . . . As with the liability phase of a pattern-or-practice disparate treatment claim, statistical proof almost always occupies center stage in a prima facie disparate impact claim. The employer's defenses focus on the sufficiency of the plaintiffs' statistics and whether the challenged employment practices are job-related and consistent with business necessity.

*United States v. City of New York*, 276 F.R.D. 22, 34 (E.D.N.Y. 2011). *See also* Pl. Br. at 38-40 (collecting cases). Microsoft ignores Plaintiffs' authorities, citing inapplicable cases instead.[51]

**Causation**. Microsoft re-hashes the same causation argument it made with respect to commonality, and it is wrong for the same reasons. *See* § I.A.2.c., *supra*.

**Damages**. Plaintiffs proposed three valid methods for calculating damages: 1) the trier of fact can determine an overall aggregate backpay amount based on the parties' statistical reports, to be divided among Class members pursuant to a second stage eligibility determination using streamlined objective characteristics;[52] 2) the Court (or special master) can employ written or live *Teamsters* hearings to determine individual eligibility for relief in a second phase of trial if liability is established; or 3) the Court can certify a liability class only, and decide how to handle damages after resolution of the liability phase.[53] Pl. Br. at 40-41.

Microsoft ignores Plaintiffs' proposals. Instead, relying on *Comcast Corp. v. Behrend*,

---

[51] *Grosz v. Boeing Co.*, No. 02-71, 2003 WL 22971025, at *6 (C.D. Cal. Nov. 7, 2003), *aff'd*, 136 F. App'x 960 (9th Cir. 2005) (where no company-wide policy and class spans "operations of different heritage companies, multiple physical locations, and countless localized compensation practices"); *Hartman v. United Bank Card Inc.*, No. 11-1753-JLR, 2012 WL 4758052, at *12 (W.D. Wash. Oct. 4, 2012) (Robart, J.) (robocall case where statute was violated only if calls were answered, and there was no common proof of whether calls were answered or not); *Puffer v. Allstate Ins. Co.*, 255 F.R.D. 450, 457 (N.D. Ill. 2009), *aff'd*, 675 F.3d 709 (7th Cir. 2012) (where disparate impact theory was that company allowed managers' discrimination "to exist and go unremedied for so long that it amounts to a policy or practice); *Rhodes v. Cracker Barrel Old Country Store, Inc.*, 213 F.R.D. 619, 624 (N.D. Ga. 2003) (no employment policy, just a pattern of managers assigning black employees to lower level jobs).

[52] The Ninth Circuit has found that defendant's only interest is in the overall amount of liability, not in the identities of or amounts awarded to those receiving damages. *Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1140 (9th Cir. 2016). *C.f. Hilao v. Estate of Marcos*, 103 F.3d 767, 786 (9th Cir. 1996) (damages amount defendant's only interest).

[53] This was the approach taken by the court in *Vulcan Soc'y*, 276 F.R.D. at 34, *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 167 (2d Cir. 2001), and *Houser*, 28 F. Supp. 3d at 252-55.

REPLY ISO CLASS CERTIFICATION
Case No. 2:15-cv-01483-JLR

-24-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

569 U.S. 27 (2013), Microsoft argues that common issues do not predominate because Plaintiffs have not presented a valid method of calculating damages for every Class member.[54]  Yet the Circuit Courts have thoroughly rejected that argument: "*Comcast* held that a model for determining classwide damages relied upon to certify a class under Rule 23(b)(3) must actually measure damages that result from the class's asserted theory of injury; but the Court did not hold that proponents of class certification must rely upon a classwide damages model to demonstrate predominance." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015).  *See also Leyva v. Medline Indus. Inc.,* 716 F.3d 510, 514 (9th Cir. 2013) (interpreting *Comcast* to hold plaintiffs "must be able to show that their damages stemmed from the defendant's actions that created the legal liability" and rejecting argument that individual damages issues preclude predominance); *Butler v. Sears, Roebuck & Co.,* 727 F.3d 796, 799 (7th Cir. 2013) (same); *In re Deepwater Horizon,* 739 F.3d 790, 817 (5th Cir. 2014) (same).

**2.  Superiority Is Satisfied Even if Class Members Are Well Paid.**

Microsoft opposes superiority because some Class members are well-paid and could fund their own lawsuit.  Def. Br. at 46.  This is not a reason to deny class certification.

**III.  The Court May Certify Liability for Class Resolution Under 23(c)(4).**

This argument is not waived.  Plaintiffs here stated in four prominent places that the Court may certify a liability class under 23(c)(4).  Pl. Br. at 3; 29, 41, 44.  Rule 23(c)(4) issue certification is not an end-run around 23(b)(3), but rather a means of materially advancing the litigation if the Court is convinced that liability would be most efficiently resolved on a class basis, and wants to defer determination of how to handle damages.[55]

**CONCLUSION**

For the reasons above, and in Plaintiffs' opening brief, the class should be certified.

---

[54] Dr. Farber does calculate an aggregate value for the classwide shortfall in pay and promotions, but does not present a formula to calculate damages for each Class member at this stage, though it is possible to do so to create a plan of allocation should Plaintiffs obtain an aggregated back pay award for the Class at a later stage in the case.

[55] *See, e.g., Robinson,* 267 F.3d at 167 (pattern-or-practice liability phase would reduce range of disputed issues and promote judicial economy); *Houser*, 28 F. Supp. 3d at 253-54 (certifying liability under (b)(2) and (c)(4), and rejecting argument that individual damages issues precluded certification because "if and when the litigation reaches that stage, the Court will have a number of management tools at its disposal to help resolve these issues. For example, the Court could appoint a special master to preside over individual damages proceedings, or could decertify the class after the liability phase and provide notice to plaintiffs as to how to proceed to prove damages. There is no need to decide at this time which avenue to pursue.").

REPLY ISO CLASS CERTIFICATION
Case No. 2:15-cv-01483-JLR
-25-
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

Dated: February 9, 2018

**FRANK FREED SUBIT & THOMAS LLP**


By: ___/s/ Michael Subit_____
Michael Subit (Wash. Bar No. 29189)
705 Second Avenue, Suite 1200
Seattle, WA  98104
Telephone: (206) 682-6711
Facsimile: (206) 682-0401
E-Mail: msubit@frankfreed.com

**LIEFF, CABRASER, HEIMANN &**
**BERNSTEIN, LLP**
Kelly M. Dermody (admitted *pro hac vice*)
Anne B. Shaver (admitted *pro hac vice*)
Michael Levin-Gesundheit (admitted *pro hac vice*)
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008
E-Mail: kdermody@lchb.com
E-Mail: ashaver@lchb.com
E-Mail: mlevin@lchb.com

Sharon M. Lee (Wash. Bar No. 37170)
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
2101 Fourth Avenue, Suite 1900
Seattle, WA  98121
Telephone:  (206) 739-9059
Facsimile:  (415) 956-1008
E-Mail: slee@lchb.com

Rachel J. Geman (admitted *pro hac vice*)
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  (202) 355-9500
Facsimile:  (202) 355-9592
E-Mail: rgeman@lchb.com

REPLY ISO CLASS CERTIFICATION
Case No. 2:15-cv-01483-JLR

-26-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

Adam T. Klein (admitted pro hac vice)
Ossai Miazad (admitted  pro hac vice)
Elizabeth V. Stork (admitted pro hac vice)
**OUTTEN & GOLDEN LLP**
3 Park Avenue, 29th Floor
New York, NY  10016
Telephone:  (212) 245-1000
Facsimile:  (212) 977-4005
E-Mail: ATK@outtengolden.com
E-Mail: OM@outtengolden.com
E-Mail: estork@outtengolden.com

*Attorneys for Plaintiffs and the Proposed Class*

1506250.1

REPLY ISO CLASS CERTIFICATION
Case No. 2:15-cv-01483-JLR

-27-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Tel. 415.956.1000 • Fax 415.956.1008