**THE HONORABLE JAMES L. ROBART**

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

SEATTLE DIVISION

KATHERINE MOUSSOURIS, HOLLY
MUENCHOW, and DANA PIERMARINI,
on behalf of themselves and a class of
those similarly situated,

               Plaintiffs,

    v.

MICROSOFT CORPORATION,

               Defendant.

Case No. 2:15-cv-01483-JLR

**PLAINTIFFS' OPPOSITION TO
MICROSOFT'S MOTION FOR
SUMMARY JUDGMENT**

NOTE ON MOTION CALENDAR:
April 6, 2018

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................1

II.    DISPUTED AND UNDISPUTED FACTS.....................................................1

III.   ARGUMENT ...............................................................................................11

    A.   Plaintiffs' Claims Are Timely and Ripe.............................................12

        1.   Statutes of Limitation Do Not Bar Any of Plaintiffs' Claims.................12

        2.   Plaintiff Piermarini Has Exhausted Her Administrative Remedies .........12

    B.   Summary Judgment Is Not Warranted On Any Of Plaintiffs' Claims.................14

        1.   All Plaintiffs Suffered Cognizable Disparate Impact...............................14

        2.   There Is Substantial Evidence of Intentional Discrimination..................16

        3.   Plaintiff Moussouris Was Constructively Discharged. ...........................21

        4.   Plaintiffs Moussouris and Piermarini Were Retaliated Against..............21

            a.   Moussouris's 2008 Bonus Is Pre-Liability Evidence. .................22

            b.   Piermarini Suffered Retaliatory Adverse Employment Actions.......................23

        5.   Microsoft's Conduct Warrants Punitive Damages. ................................23

IV.    CONCLUSION ...........................................................................................24

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR                -i-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

# TABLE OF AUTHORITIES

**Page**

<u>Cases</u>

*Aragon v. Republic Silver State Disposal Inc.*,
292 F.3d 654 (9th Cir. 2002) ................................................................17

*Bains LLC v. Arco Prods. Co.*,
405 F.3d 764 (9th Cir. 2005) ................................................................24

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ................................................................11

*Chen-Oster v. Goldman, Sachs & Co.*,
2018 U.S. Dist. LEXIS 54732 (S.D.N.Y. Mar. 30, 2018) ....................16

*Coral Const. Co. v. King Cty.*,
941 F.2d 910 (9th Cir. 1991) ................................................................16

*Coszalter v. City of Salem*,
320 F.3d 968 (9th Cir. 2003) ................................................................23

*Davis v. Team Elec. Co.*,
520 F.3d 1080 (9th Cir. 2008) ................................................................18

*EEOC v. Fry's Electronics, Inc.*,
770 F. Supp. 2d 1168 (W.D. Wash. 2011) ...........................................13

*EEOC v. NCL America, Inc.*,
504 F. Supp. 2d 1008 (D. Haw. 2007) ................................................13

*Eldredge v. Carpenters J. Appr'ship & Tr. Comm.*,
833 F.2d 1334 (9th Cir. 1987) ................................................................16

*Gertskis v. N.Y.C. Dep't of Health & Mental Hygiene*,
07-2235, 2009 WL 812263 (S.D.N.Y. Mar. 26, 2009) ........................12

*Godwin v. Hunt Wesson, Inc.*,
150 F.3d 1217 (9th Cir. 1998) ................................................................17, 20

*Gonzalez v. Nat'l R.R. Passenger Corp.*,
376 F. App'x 744 (9th Cir. 2010) ................................................................13

*Harris v. Cty. of Orange*,
682 F.3d 1126 (9th Cir. 2012) ................................................................13

*Hazelwood Sch. Dist. v. United States*,
433 U.S. 299 (1977) ................................................................16

*Hemmings v. Tidyman's Inc.*,
285 F.3d 1174 (9th Cir. 2002) ................................................................14, 16

*Juell v. Forest Pharm., Inc.*,
456 F. Supp. 2d 1141 (E.D. Cal. 2006) ................................................21

*Kolstad v. Am. Dental Ass'n*,
527 U.S. 526 (1999) ................................................................24

*Kortan v. California Youth Authority*,
217 F.3d 1104 (9th Cir. 2000) ................................................................23

*Lindahl v. Air France*,
930 F.2d 1434 (9th Cir. 1991) ................................................................20

1

2

**TABLE OF AUTHORITIES**
(continued)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Page**

*Little v. Windermere Relocation, Inc.*,
  301 F.3d 958 (9th Cir. 2002) ...................................................................23

*Lyons v. England*,
  307 F.3d 1092 (9th Cir. 2002) ...........................................................12, 17

*McBain v. Behr Paint Corp.*,
  16-7036, 2017 WL 1208074 (N.D. Cal. Apr. 3, 2017) ..............................2

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973) ................................................................................17

*McGinest v. GTE Serv. Corp.*,
  360 F.3d 1103 (9th Cir. 2004) .................................................................17

*Microsoft Corp. v. Motorola, Inc.*, 10-1823,
  2013 WL 4008822 (W.D. Wash. Aug. 5, 2013) ......................................16

*Mitchell v. Superior Ct. of Cal. Cnty. of San Mateo*,
  312 F. App'x 893 (9th Cir. 2009) ............................................................23

*Moussouris v. Microsoft Corp.*,
  15-1483, 2016 WL 4472930 (W.D. Wash. Mar. 7, 2016) ...........13, 14, 17

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
  523 F.3d 1051 (9th Cir. 2008) .................................................................16

*Ng v. Potter*,
  2009 WL 3836045 (W.D. Wash. Nov. 12, 2009) .....................................13

*Oliver v. Pac. Nw. Bell Tel. Co.*,
  106 Wash. 2d 675 (1986) .........................................................................15

*Paige v. California*,
  291 F.3d 1141 (9th Cir. 2002) .................................................................16

*Passantino v. Johnson & Johnson Consumer Prod., Inc.*,
  212 F.3d 493 (9th Cir. 2000) ..............................................................22, 23

*Peterson v. Hewlett–Packard Co.*,
  358 F.3d 599 (9th Cir. 2004) ...................................................................17

*Price Waterhouse v. Hopkins*,
  490 U.S. 228 (1989) ...........................................................................19, 20

*Ray v. Henderson*,
  217 F.3d 1234 (9th Cir. 2000) .................................................................22

*Schueller v. Shin-Etsu Handotai Am., Inc.*,
  03-5210, 2004 WL 691794 (W.D. Wash. Feb. 9, 2004) ...........................15

*Shannon v. Pay 'N Save Corp.*,
  104 Wash. 2d 722 (1985) .........................................................................15

*Steiner v. Showboat Operating Co.*,
  25 F.3d 1459 (9th Cir. 1994) ...................................................................21

*Tex. Dep't of Community Affairs v. Burdine*,
  450 U.S. 248 (1981) ................................................................................18

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
Case No. 2:15-cv-01483-JLR

-iii-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Vasquez v. Cty. of Los Angeles,*
  349 F.3d 634 (9th Cir. 2003) ............................................................................................ 19

*Watson v. Fort Worth Bank & Trust,*
  487 U.S. 977 (1988) ......................................................................................................... 16

*Watson v. Nationwide Ins. Co.,*
  823 F.2d 360 (9th Cir. 1987) ........................................................................................... 21

*Williams v. Lane Cty.,* 04-6015,
  2004 WL 2332026 (D. Or. Oct. 15, 2004) ...................................................................... 23

*Yartzoff v. Thomas,*
  809 F.2d 1371 (9th Cir. 1987) .................................................................................... 18, 23

*Yount v. Regent University, Inc.,* 08-8011,
  2009 WL 995596 (D. Ariz. Apr. 14, 2009) .................................................................... 23

*Zipes v. Trans World Airlines, Inc.,*
  455 U.S. 385 (1982) ......................................................................................................... 13

## Statutes

42 U.S.C. § 2000e-5(e)(3)(A) ............................................................................................. 12

42 U.S.C. § 2000e-5(e)(3)(B) ............................................................................................. 12

## Rules

Fed. R. Civ. P. 56(a) ......................................................................................................... 11

Fed. R. Evid. 201 ................................................................................................................ 2

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
Case No. 2:15-cv-01483-JLR

-iv-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

1    I.    **INTRODUCTION**

2          Each Plaintiff submits compelling evidence in support of her individual and class claims

3    that readily forecloses summary judgment. Instead of addressing those facts and the substantial

4    class-based gender discrimination evidence (including expert reports, witness statements, and

5    hundreds of gender discrimination complaints by female technical professionals), Microsoft

6    misrepresents the record to argue there is no need for trial. Microsoft's motion is meritless.

7    II.   **DISPUTED AND UNDISPUTED FACTS[1]**

8          *Katherine Moussouris*. Moussouris brings individual and class pay and promotion

9    claims, and individual claims for constructive discharge, retaliation, and discrimination based on

10   performance review. Moussouris joined Microsoft's Trustworthy Computing Group ("TCG") in

11   April 2007 as a Level 62 Program Manager in the Engineering profession. ECF 242 (Moussouris

12   Decl.) ¶ 2; Lamy Decl., Ex. C, 28:18-21.

13

14          Lamy Decl., Ex. C, 27:10-28:9. She was named a top ten cybersecurity architect of the

15   decade, in large part for her innovative work at Microsoft. *Id*. at 28:14-17.

16          Despite her undisputed and extensive accomplishments at Microsoft, Moussouris was

17   promoted only twice in seven years. In 2008, she was promoted from Level 62 to 63 (Program

18   Manager II). ECF 242 ¶ 2. This merely aligned Moussouris with the Level she should have been

19   assigned at hire, given her prior work experience. ECF 410 (Moussouris Interrogs.) at 13.

20   Moussouris was promoted to Level 64 (Sr. Program Manager) in 2010, and remained stuck at

21   that level until she left the company in May 2014. ECF 242 ¶ 2; ECF 410 at 12.

22          Early in her tenure, Moussouris was retaliated against for reporting sexual harassment.

23

24

25          . Lamy Decl., Ex. C, 195:18-196:17, 198:16-17; ECF 410 at 13.

26

27   ─────────────────────
28   [1] Evidence cited herein is attached to the Declaration of Michelle Lamy in Support of Plaintiffs' Opposition to
     Microsoft's Motion for Summary Judgment ("Lamy Decl."). Corporate documents are attached as collective
     Exhibit A, and Plaintiff-produced documents are attached as Exhibit B, in numerical order by Bates Number.

1  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Lamy Decl., Ex. C, 195:18-196:17, 202:8-10; ECF 410 at

2  14. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[2] Lamy Decl., Ex.

4  C, 197:6-15; ECF 410 at 14. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Lamy Decl., Ex. C, 201:16-22, 202:3-7; ECF 410 at

6  14. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Lamy Decl., Ex. C, 202:8-20.

7        Moussouris was twice denied promotions to Level 65 (Principal Security Strategist) that

8  she deserved, first in June 2012 (despite being responsible for TCG's highest-rated project that

9  year) and again in May 2013 (even though ▮▮▮▮▮▮▮▮▮▮▮, told her she was qualified).

10  ECF 410 at 12. Both times, Moussouris observed men who had not performed the same scope of

11  work and had not attained the same level of impact or recognition get promoted to Level 65 over

12  her: ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13  ▮▮ ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14  ▮▮▮▮▮▮; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16  ▮▮▮▮▮▮▮▮▮▮ *Id.* at 20, 36-37; Lamy Decl., Ex. C,140:12-141:24; 279:18-

17  280:12; 295:5-10. Microsoft's argument that these men are not proper comparators raises

18  unresolved factual disputes.[3] Notably, Microsoft did not contest that these men earned more than

19  Moussouris. ECF 403 (Mot.) at 13; ECF 404 (Lee Decl.) ¶¶ 9-12 (filed by Microsoft).

20        Gender animated Microsoft's decision to promote these less qualified men over

21  Moussouris. Following the 2013 promotion cycle, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24

---

25  [2] Plaintiffs ask the Court to take judicial notice of ▮▮▮▮▮ public LinkedIn page (Lamy Decl., Ex. I) wherein
    he lists his promotions. *See McBain v. Behr Paint Corp.*, 16-7036, 2017 WL 1208074, at *3 (N.D. Cal. Apr. 3,

26  2017) (granting request for judicial notice of LinkedIn page under Fed. R. Evid. 201); *see also* Fed. R. Evid.
    801(d)(2)(D) (admissible as non-hearsay statement of party).

27  [3] For example, if certain of Moussouris's comparators were promoted after she left, this is irrelevant to those
    comparators promoted while she was employed and raises disputed issues of material fact regarding the career

28  promotion velocity of men around her, rendering Moussouris's individual discrimination claims inappropriate for
    summary judgment. *See* Mot. at 13; ECF 404 ¶¶ 9-12; *see also* § III.B.2, *infra*.

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR                    -2-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

1     ▮▮▮▮▮▮▮▮▮▮ Lamy Decl., Ex. C, 253:1-5, 257:10-13, 259:24-260:3, 265:20-266:3; ECF

2 410 at 7, 12. Moussouris frequently received gendered feedback of this type, where her qualities

3 of leadership, independence, and judgment were stereotyped as "harsh," "aggressive," "prickly,"

4 or not sufficiently "cooperative." ECF 410 at 7-8, 22-23. Her Performance Reviews contain

5 numerous such examples. *See, e.g.*, Lamy Decl., Ex. A at MSFT_842201 ("I marked 'strongly

6 agree' for 'demonstrates perseverance in the pursuit of goals' - but . . . Katie is often open [sic]

7 hostile towards those she disagrees with."). Moussouris's performance scores likewise reflect

8 gender discrimination. For example, Moussouris twice received a lower performance score,

9 following calibration, than the score initially advocated by her manager:

10     • ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11        ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ECF 410 at 9, 24.

12     • ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ECF 410 at 9, 24.

13 Managers ▮▮▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮ —

14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—told Moussouris that male managers described her as

15 "prickly" and it was cited as a reason to lower her rating even though managers agreed her

16 performance and impact far exceeded other employees in her peer group. ECF 410 at 8.

17     Microsoft's discrimination against Moussouris had a compounding effect on her

18 compensation and career trajectory over time. The evidence shows that comparators ▮▮▮▮

19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ were better compensated and/or

20 promoted faster than she was.[4] ECF 410 at 20, 36-37. Although the data produced to Plaintiffs

21 omits employee names (and, thus, Moussouris cannot state the exact salary of every man to

22 whom she compares herself), Plaintiffs were able to identify ▮▮▮▮▮▮▮ in Microsoft's

23 compensation data. *See* Klein Decl. ¶¶ 6-8.[5] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮ ▮▮▮

24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.*; ECF. 404 ¶ 12; Lamy Decl., Ex. B at

25 _____

26 [4] Microsoft is wrong in asserting Moussouris identified ▮▮▮▮▮ as a comparator. Mot. at 13.
   [5] The Declaration of Ruth Gilgenbach, filed herewith, also confirms the data extraction of various comparator job

27 histories that Plaintiffs' consultant performed at counsel's request. Plaintiffs do not contend that this data extraction constitutes expert opinion, but merely make the process transparent. *See also* Klein Decl. ¶¶ 6-8.

28 [6] Microsoft's assertion that ▮▮▮▮▮ "held a different title [and] reported to different managers" is incorrect. Mot. at 13. Both were ▮▮▮▮▮▮ within the same reporting structure. ECF. 404 ¶ 12; Lamy Decl., Ex. B at P000037.

1  P000037. ████████████████████████████████████████████████

2  ████████████████████████████████████████████████████████████

3  ████████████████████████████████████████████. Gilgenbach Decl., Tbl.

4  3. Microsoft's assertion that Moussouris had "the highest total pay in her group in 2012 and

5  2014," Mot. at 4, is beyond disputed: it is false. Further undermining Microsoft's suggestion that

6  Moussouris has no comparators, a simple review of men with the same objective characteristics[7]

7  as Moussouris within the data reflects ████ comparable men within the Engineering Profession

8  who were better compensated or promoted faster than Moussouris between 2012 and 2014.

9  Gilgenbach Decl. ¶ 3. Moreover, Microsoft's assertion that Moussouris's 2014 pay "was higher

10  even than her supervisor's, who had been at Microsoft twice as long," Mot. at 4, ignores

11  evidence that the supervisor (████████) was given that position despite—████████

12  ████████████████████████████████ Lamy Decl. Ex. C, 247:16-25;

13  ECF 410 at 12.

14       Microsoft also omits (or misrepresents) several critical facts about Moussouris's

15  employment history and performance. First, she did not leave management because of

16  preferences or deficiencies. Mot. at 5, 17. ████████████████████████████████

17  ████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████

19  ████████████ Moussouris had identified female reports who, like her, received lower

20  performance scores than recommended because of the gender bias that infected the stacked

21  ranking process.[8]

22       Second, Microsoft's assertion that "Moussouris did not work effectively with others and

---

[7] The characteristics Dr. Gilgenbach utilized in the data are: Discipline, Standard Title, Stock Level, Peer Group, Time in Level, Years at Microsoft, Age, Total Compensation, Promoted (yes or no), Performance Metric, Organization Exec., and Organization Exec. Detail. Klein Decl. ¶¶ 6-8. These characteristics cover a broader range of similarities than Plaintiffs submit are appropriate for class analysis, but Plaintiffs chose these to demonstrate that even a very narrow view of comparators generates a large list of male employees treated better than each Plaintiff.

[8] See, e.g., ECF 410 at 9-10 (in ████████████████); id. (in ████ | ████ | ████████); id. at 11 (in ████ | ████. a ████████████████████ corroborated Moussouris's observations that women were more likely to receive lower scores under Microsoft's old stack ranking system. Id.. at 11.

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR                    -4-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

1   struggled in managing employees" is likewise incorrect. Mot. at 2, 4, 17. ███████

2   ████████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████

6   ████████████████████████████ Lamy Decl., Ex. A at MSFT_842202.█

7   ████████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████

10  ██████████████████████████████████████████████████████

11  ███████████████████████████████████████████ ) (emphasis added).[9]

12      Third, Microsoft misrepresents the facts surrounding Moussouris's departure from the

13  company. Mot. at 5, 20. ██████████████████████████████████████

14  ████████████████████████████████████████████████████████████

15  ██████████████████████████████████████████████████████████

16  ███████████ Lamy Decl., Ex. C, 36:18-23.█████████████████████████

17  ████████████████████████████████████████████████████████████

18  █████████████████ *Id.* at 174:21-175:14.████████████████████████

19  ████████████████████████████████. *Id.* at 176:4-16, 176:22-24.████

20  ████████████████████████████████████████████████████████

21  ████████████████████████████████████████ *Id.* at 203:11-206:18;

22  ECF 410 at 18. ██████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████ Lamy

25  Decl., Ex. A at MSFT_16284.██████████████████████████████████

26  ████████████████████████████████. *Id.*, Ex. C, 34:11-35:16.

27  _____

28  [9] The testimony Microsoft cites for its assertion that each of Moussouris's supervisees expressed unhappiness with
    her management, Mot. at 4, does not contain such evidence and is contradicted by the actual record.

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR                                    -5-
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

1    ***Holly Muenchow.*** Muenchow brings individual and class pay and promotion claims, and

2    an individual claim for discrimination based on performance review. Muenchow earned a

3    bachelor's degree in computer science from Wellesley College in 2002 and entered Microsoft as

4    a Level 58 Software Test Engineer that same year. Lamy Decl., Ex. B at P000676; ECF 243

5    (Muenchow Decl.) ¶ 2. ████████████████████████████████████████████████

6    ████████████████████████████████████████████ ECF 411

7    (Muenchow Interrogs.) at 9. This discrimination ensured Muenchow was paid less despite

8    similar qualifications. ██████████████████████████████████████

9    ████████████████████████████████████████████████████

10   ████████████████████████████████████████████████

11   ██████████████████████████████████████████████

12   ████████████████████████████████████████████

13   ████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████

15   ████████████████████. █████████████████████████████████

16   ██████████████████████████████ Lamy Decl., Ex. D, 194:22-196:9.

17        Muenchow has also observed men who started after her at lower Levels or who worked

18   with her at the same Level get promoted over her despite her similar or better performance. ██

19   ██████████████████████████████████████████████████

20   ████████████████████████████████████ ECF 411 at 30; ECF 243

21   ¶ 2. ████████████████████████████████████████

22   ████████████████████████████████████████████████

23   ECF 243 ¶ 2, 18; ECF 404 ¶ 18; Gilgenbach Decl., Tbl. 3. ████████████

24   ████████████████████████████████████████████

25   ████████████████ Lamy Decl., Ex. D, 194:15-21; ECF 404 ¶ 18; Gilgenbach Decl., Tbl. 3.

26   ████████████████████████████████████████████

27   ████████████████████████ ECF 404 ¶ 21; ECF 411 at 29; Gilgenbach Decl., Tbl. 3.

28   ████████████████████████████████████████ ECF 404 ¶¶ 5,



1  21. ██████████████████████████████████████████████

2  ██████████ Gilgenbach Decl., Tbl. 3. ██████████████████████

3  ██████████████ Lamy Decl., Ex. D, 60:5-25.

4  In addition, Microsoft paid comparable men more than Muenchow. ██████████

5  ██████████████████████████████████████████████

6  ██████████████████████████████████████████████

7  ██████████████████████████████████ [10] Microsoft has not contested

8  that additional named comparators, such as ██████████████████████████

9  ██████, were paid more than Muenchow. ECF 411 at 28, 29.

10  ██████████████████████████████████████

11  ██████████████████████████████████████████████

12  ██████████████████████████████████████████████

13  ██████████████████████████████████████

14  ██████████████████████████████████████████████

15  ██████████████████████████████████████

16  ██████████████████████████████████████████████ Lamy Decl., Ex. D,

17  180:14-21. ██████████████████████████████████████

18  ██████████████████████████████████████████████

19  ██████████████████████████████████████

20  ██████████████████, ECF 243 ¶ 2. ██████████████████

21  ██████████████████████████████████████████████

22  ██████████████████████████████████████

23  ██████████████████████████████. Gilgenbach Decl. ¶ 4.

24  Muenchow has also been subject to gender stereotyping in performance feedback. ██

25

26  [10] ████████████████████████████████████████

27  ██████████████████████████████████████████████

28  ██████████████████████████████████████████████

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

1   ████████████████████████████████████████████████████████████████████

2   *See, e.g.*, Lamy Decl., Ex. A at MSFT_320, 24 ██████████████████████████████

3   ████, MSFT_311, 318 (same), and MSFT_275, 281 ████████████████████████

4   ████████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████ *Id.*; ECF 411 at 6; Lamy

6   Decl., Ex. D, 69:3-70:7, 83:11-18, 155:2-6, 260:15-23, 267:4-20.

7          Microsoft also misstates the record with respect to Muenchow's advocacy for higher

8   performance ratings. Muenchow has not agreed with her manager ratings. *Cf.* Mot. at 6. ████

9   ████████████████████████████████████████████████████████████████████

10  ██████████████████████████████. Lamy Decl., Ex. A at MSFT_363, 367, 481, 487; Ex.

11  F, 106:19-23 (Ritchie Tr.) ████████████████████████████████████████

12  Microsoft also erroneously suggests Muenchow had an opportunity in all years to propose a

13  performance rating in the review process. To the contrary, ████████████████████

14  ████████████████████████████████████████████████████████████████.

15  *See id.*, Ex. B at P000864. ██████████████████████████████████████████

16  ████████████████████████ ██████ ████████████████████████████████████

17  ████████████████████████████████ *Id.*, Ex. D, 166:16-172:1, 177:7-16.

18          ***Dana Piermarini***. Piermarini brings individual claims for discrimination based on pay,

19  promotion, and performance review, and for retaliation. Piermarini began at Microsoft in

20  September 2006 as a Solution Sales Specialist at Level 62 in the Federal Solutions Group

21  ("FSG"). Lamy Decl., Ex. A at MSFT_435; *id.*, Ex. E, 61:3-6. ████████████████

22  ████. Lamy Decl. Ex. G, ¶ 9. ████████████████████████████████████████

23  ████████████████████████████████████████████████████. ECF 412

24  (Piermarini Interrogs.) at 16; Lamy Decl., Ex. A at MSFT_459-65, 473-77, 481-87. ████████

25  ████████████████████████████████████████████████ *Id.* ████████

26  ██████████████████████████████████████. Lamy Decl., Ex E,

27  ─────────────────────────

28  [11] ¶ 18; Lamy Decl., Ex. D, 194:15-21; *Id.*, Ex. B at P000864, 72; *Id.*, Ex. A at MSFT_311, 18.

1   29:22-23; 31:1-4. ████████████████████████████████████████████████

2   ████████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████

5   ████████. *Id.* ████████████████████████████████████████████████

6   ██████████████████████████████. *Id.* at 215:23-216:21, 217:18-25. ████████

7   ████████████████████████████████████. *Id.* at 31:21-24; *id.*, Ex. A at MSFT_23269.

8   ████████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████

10  ████████. *Id.* at 79:11-80:3, 140:9-10. In 2014, ████████████████████

11  ████████████████████████████████████████████████████████. *Id.*

12  at 63:8-11; 88:8-89:9, 89:10-24. ████████████████████████████████

13  ████████████████████ *Id.* at 95:4-96:5. ████████████████████████

14  ██████████████████. *Id.* at 96:5-96:25. ████████████████████

15  ██████████████████████████████████████████. *Id.* at 96:5-

16  97:10. ████████████████████████████████████████. *Id.*

17  ██████████████████████. *Id.* at 133:17-134:4; 165:15-25. ████████

18  ████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████

20  ████. Lamy Decl., Ex. E, 166:24-167:6. ████████████████████████ ECF

21  404 ¶ 26.

22      Piermarini was never promoted higher than Level 64, despite Microsoft's admission that

23  she "consistently received strong performance reviews."[12] Mot. at 6. However, ████████████

24  ████████████████████████████████████████████████████████████:

25    • ████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████

27  [12] Microsoft's claim that Piermarini "generally agreed with the reviews she received," Mot. at 6, is incorrect and
    unsupported by the testimony it cites. Ms. Piermarini did not testify that she generally agreed with her reviews. ████

28  ████████████████████████████████████. ECF 4012-12 at 16-17.

1

2

3

4

5

6

7

8  In fact,

9   . Gilgenbach Decl. ¶ 5.

10      After November 2014,  .

11  Lamy Decl., Ex. E, 133:3-135:21.

12

13

14

15

16

17  *Id.* at 149:14-152:1, 153:13-15, 151:17-152:10, 153:19-20,

18  154:6-7, 154:22-155:14, 159:6-161:5.

19

20

21

22

23

24

25

26

27

28   . ECF 404 ¶ 6.

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

1 ████████████████████████████████████

2 ████████████████████████████████████████

3 ████████████████████████████████████████

4 ████████████████████████████████████

5 ██████████████████████████████████████.

6 Gilgenbach Decl., Tbl. 3.[13]

7 ████████████████████████████████████

8 ████████████████████████████████████

9 ██████████████████████████████████

10 ████████████████████████████████████████

11 ████████████████████████████████████████

12 ████████████████████████████████████

13 ████████████████████████████████████████

14 ████████████████████████████████████

15 ████████████████████████████████████

16 ████████████████████████████████████

17 ████████████████████████████████████████

18 ████████████████████████████████

19 ████ *Id.* ¶ 29.  Because of the continuous and ongoing pattern of discrimination and retaliation

20 she experienced at Microsoft, Piermarini had no choice but to resign on September 16, 2016.

21 **III.    ARGUMENT**

22 Microsoft bears the burden to demonstrate "there is no genuine dispute as to any material

23 fact" that would allow Plaintiffs' individual claims to proceed to trial. Fed. R. Civ. P. 56(a); *see*

24 *also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Microsoft has failed.

---

[13] Of Ms. Piermarini's named comparators, Plaintiffs have been unable to locate one of them – ████ – in the data produced by Microsoft. *See* Gilgenbach Decl., Tbl. 3.

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR                -11-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**A.     Plaintiffs' Claims Are Timely and Ripe**

**1.     Statutes of Limitation Do Not Bar Any of Plaintiffs' Claims**

The Parties do not dispute that the liability period for Title VII commences on July 18, 2013 and for the WLAD on September 16, 2012, under the ruling of this Court. ECF 134. All Plaintiffs assert *claims* that arose during these liability periods: each Plaintiff asserts pay, promotion, and performance claims during liability years in which they have been employed; Moussouris asserts claims for retaliation and constructive discharge in 2014; and Piermarini asserts a claim for retaliation in 2015.

To the extent Plaintiffs have adduced *facts* that predate the liability period—*e.g.*, 

—these are relevant background that "may be considered by the trier of fact in assessing [Microsoft]'s liability" during the present period. *Lyons v. England*, 307 F.3d 1092, 1111 (9th Cir. 2002). In particular, evidence of discrimination before the liability period may "be offered for its probative value in assessing whether the employer's justifications for its present conduct lack credibility." *Id.* at 1112. Additionally, the Ledbetter Fair Pay Act, which amended Title VII, provides that "an unlawful employment practice occurs . . . when an individual is affected by application of a discriminatory compensation decision or other practice, including each time . . . compensation is paid, resulting in whole or in part from such a [past] decision or other practice." 42 U.S.C. § 2000e-5(e)(3)(A). The statute, in turn, authorizes "recovery of back pay for up to two years preceding the filing of [an EEOC] charge." *Id.* 2000e-5(e)(3)(B). Thus, discriminatory compensation decisions that occur before the Title VII liability period are relevant because they may affect compensation during the liability period, and because Plaintiffs are entitled to two years of pre-liability period back pay. *See, e.g.*, *Gertskis v. N.Y.C. Dep't of Health & Mental Hygiene*, 07-2235, 2009 WL 812263, at *4 (S.D.N.Y. Mar. 26, 2009) (applying Ledbetter Fair Pay Act and explaining that pre-liability pay decisions continued to affect plaintiff and thus most of her Title VII claims not time-barred).

**2.     Plaintiff Piermarini Has Exhausted Her Administrative Remedies**

Piermarini was not required to exhaust WLAD claims, and those claims go forward,

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR                                                    -12-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

dating back to September 16, 2012 (based on the Complaint filing). *Gonzalez v. Nat'l R.R. Passenger Corp.*, 376 F. App'x 744, 746 (9th Cir. 2010). As to her Title VII claims, Microsoft is wrong that Piermarini cannot rely on Moussouris's EEOC class charge. The single filing rule permits individuals whose claims are encompassed by a class charge to "piggyback" on that charge. *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1136 (9th Cir. 2012). Moussouris's EEOC charge clearly covered Piermarini's pay, promotion, and retaliation claims because Piermarini was a member of the putative class encompassed by the charge.[14] The fact that Plaintiffs later moved for class certification on behalf of a narrower class is irrelevant to whether Piermarini was entitled to piggyback on Moussouris's charge at the time the Complaint was filed. The purpose of exhaustion is to provide notice to the employer of the claims and to enable the EEOC's conciliation efforts with the employer. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 397 (1982). Microsoft does not claim that it lacked notice of Piermarini's claims based on the original EEOC charge or that the EEOC was unable to conciliate the full scope of the claims. Mot. at 10. The charge thus supported piggybacking for Piermarini. *See Moussouris*, 2016 WL 4472930, at *5 n.6 (Mar. 7, 2016) (discussing application of single filing rule); *EEOC v. NCL America, Inc.*, 504 F. Supp. 2d 1008, 1013 (D. Haw. 2007) (piggybacking excuses exhaustion where little risk of prejudice to defendant). Microsoft cites no authority supporting its position.

Even if Microsoft were correct that Piermarini could not rely on the original charge, it has waived this argument. Filing a charge of discrimination with the EEOC "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes*, 455 U.S. at 393. Microsoft has been on notice of Piermarini's claims at least since Plaintiffs filed the First Amended Complaint in October 2015. It did not move to dismiss these claims for lack of exhaustion in its motions to dismiss that complaint, ECF No. 23, or the Second Amended Complaint, ECF No. 62.

---

[14] *See* ECF 8-1, ¶¶ 1, 21-22. The cases that Microsoft cites are distinguishable, Mot. at 10, because the charges alleged claims that were fundamentally different from those alleged in the lawsuits. *See Ng v. Potter*, 2009 WL 3836045, at *5-6 (W.D. Wash. Nov. 12, 2009) (in single-plaintiff case an EEOC disparate treatment charge was not sufficient to exhaust the hostile work environment claim); *EEOC v. Fry's Electronics, Inc.*, 770 F. Supp. 2d 1168, 1173 (W.D. Wash. 2011) (finding that one claim was "not 'nearly identical' or even substantially similar to that charged by Mr. Lam . . . [because] the two claims involve different elements and are legally independent").

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

1    Finally, ████████████████████████████████████████████

2    ████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████

4    ████████████████████████████████████████████████

5    ████████████████████████████.[15]  Lamy Decl., Ex. H. This filing effectively

6    bridges the time from when Moussouris filed her EEOC charge, protecting Piermarini's Title VII

7    claims from July 18, 2013, through at least October 27, 2017. With the 300-day look-back on

8    this April 2, 2018 filing, all dates and claims of her employment are covered and exhausted.

9        **B.    Summary Judgment Is Not Warranted On Any Of Plaintiffs' Claims**

10            **1.    All Plaintiffs Suffered Cognizable Disparate Impact**

11       Plaintiffs can prove each element of their disparate impact claim: "(1) show a significant

12   disparate impact on a protected class or group; (2) identify the specific employment practices or

13   selection criteria at issue; and (3) show a causal relationship between the challenged practices or

14   criteria and the disparate impact." *Moussouris*, 2016 WL 4472930, at *9 (citing *Hemmings v.

15   Tidyman's Inc.*, 285 F.3d 1174, 1190 (9th Cir. 2002)).

16       **Significant Disparate Impact:** As to Moussouris and Muenchow, ███████████

17   ████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████

20   ██████████████████████████.[16] ECF 384 (Farber Report), ¶ 53-56, Table 3. Likewise, ███████

21   ████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████

23   ████████████████████████████. *Id*. ¶ 77, Table 7. As to Piermarini, ████████

24   ████████████████████████████████████████████████████

25   ████████████████████████████. Rebuttal Report of Dr. Henry Farber Regarding Sales

26

27   ─────────────
[15] The retaliation claim asserted in the pending charge pertains to events that occurred in 2016, after this lawsuit was filed. Plaintiffs have not yet sought to amend the complaint to assert the claim, but will do so. Thus, the Court
28   should reject Microsoft's argument that the claim is not properly exhausted and must be dismissed. *See* Mot. at 10.
[16] *See* ECF 228 (Pl. Mot. for Class Certification) at p. 8, n.15 (citing authorities).

1    Profession (April 2, 2018) ¶¶ 3-5 & Tbls. 1 &2.[17]

2          **Specific Employment Practice:** Plaintiffs challenge Microsoft's pay and promotion

3    process ("Calibration").[18] ███████████████████████████████████████

4    ███████████████████████████████████████████████████████████

5    ███████████████████████████████████████████████████████████

6    ██████████████████████████████████████████████████████. ECF

7    344 (Farber Rebuttal Report) ¶ 16. ████████████████████████

8    ███████████████████████████████████████████████████████████

9    ███████████, ECF 231 (Ryan Report) ¶¶ 13, 20; ECF 345 (Ryan Reply Report) ¶¶ 2, 5. ████

10   ████████████████████████████████████. ECF 345 ¶¶ 17-43.

11   This is sufficient under federal and state law, though Microsoft mischaracterizes Plaintiffs'

12   disparate impact claims by asserting they are not cognizable under the WLAD because they are

13   based on "discretionary decision-making." Mot. at 21. Instead, as Plaintiffs' class certification

14   briefing makes clear, Plaintiffs are challenging common pay and promotion decisions that

15   include both objective and subjective components. ECF 228 at 5-10: ECF 340 at 2-12. Their

16   claims are therefore cognizable under the WLAD as a specific employment practice. *Shannon v.*

17   *Pay 'N Save Corp.*, 104 Wash. 2d 722, 733 (1985) (for disparate impact, "plaintiff must

18   demonstrate that he is attacking an employment practice that *includes* objective features")

19   (emphasis added); *id.* at 732 (subjective portion of employee evaluation process amenable to

20   disparate impact analysis).[20]

21          **Causal Relationship:** "Statistical evidence is used to demonstrate how a particular

22

23   [17] ███████████████████████████████████████████████████████

24   [18] ██████████████████████████ *See* ECF 232 at 5 n.10 (citing Ritchie Tr. at 136:25-
     138:22; 157:6-8; 229:16-17; 234:5-235:25). Microsoft essentially agrees with Plaintiffs' description of this process.
25   *See* Mot. at 3; ECF 286 (Def.'s Opp. to Class Cert.) at 5; ECF 340 at 2-3.
     [19] ███████████████████████████████████████████
26   ██████████████████████████ ECF 232 at 6 n.11 (and cited evidence).████
27   █████████. ECF 384 (Farber Report) ¶¶ 17-21.
     [20] Microsoft's cases are not to the contrary. *See Oliver v. Pac. Nw. Bell Tel. Co.*, 106 Wash. 2d 675, 680 (1986)
28   (challenged practice was purely "discretionary and subjective."); *Schueller v. Shin-Etsu Handotai Am., Inc.*, 03-
     5210, 2004 WL 691794, at *8 (W.D. Wash. Feb. 9, 2004) (workers in protected class not adversely affected).

employment practice causes a protected minority group to be under represented in a specific area

of employment (for example, hiring or promotion). The statistical analysis must show a disparity

that is 'sufficiently substantial' as to 'raise such an inference of causation.'" *Paige v. California*,

291 F.3d 1141, 1145 (9th Cir. 2002) (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977,

994-95 (1988)). Plaintiffs have presented sufficient statistical evidence to raise an inference that

the common pay and promotion Calibration process caused disparate impact.

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████ Taken together, the statistical and anecdotal evidence creates a causal chain

from which a jury could reasonably infer that the Calibration process caused the pay and

promotion disparities. *See Hemmings*, 285 F.3d at 1190 ("statistical conclusions about the large

disparities in salaries and the lack of women in upper management, as well as the anecdotal

testimony by multiple witnesses about the subjective promotion processes and award of salary

and benefits" supported disparate impact jury finding); *Coral Const. Co. v. King Cty.*, 941 F.2d

910, 919 (9th Cir. 1991) (denying summary judgment for "potent" combination of anecdotal and

statistical evidence).

Microsoft is wrong that Plaintiffs' experts must opine on causation, which is an issue for

the trier of fact to decide.[21] *See* ECF 340 (Pls.' Class Cert. Reply) at 10-11 (citing cases); ECF

370 (Pls.' Opp. to Def.'s Mot. to Exclude Farber Reports) at 11-12 (same).[22] *See also Hazelwood*

*Sch. Dist. v. United States*, 433 U.S. 299, 307 (1977); *Eldredge v. Carpenters J. Appr'ship & Tr.*

*Comm.*, 833 F.2d 1334, 1340 n.8 (9th Cir. 1987).[23]

### 2. There Is Substantial Evidence of Intentional Discrimination.

Plaintiffs will prove at trial that Microsoft discriminated against them on the basis of

---

[21] Microsoft's criticisms of the level of specificity and variables used by Dr. Farber should be rejected for the reasons in Plaintiffs' Opposition to Defendant's Motion to Exclude Dr. Farber's Reports and Opinion (ECF 370).
[22] *See Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (expert witness cannot give opinion as to legal conclusion, "*i.e.*, an opinion on an ultimate issue of law"); *see also Microsoft Corp. v. Motorola, Inc.*, 10-1823, 2013 WL 4008822, at *10 (W.D. Wash. Aug. 5, 2013) (Robart, J.) (same).
[23] *Chen-Oster v. Goldman, Sachs & Co.*, 2018 U.S. Dist. LEXIS 54732 (S.D.N.Y. Mar. 30, 2018) (certifying class and rejecting defendants' similar causation arguments).

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

gender. Under the *McDonnell Douglas* framework, Plaintiffs can establish a prima facie case of intentional discrimination by showing that (1) they belong to a protected class (this is undisputed here), (2) they were performing according to their employer's legitimate expectations, (3) they suffered an adverse employment action, and (4) other employees with similar qualifications were treated more favorably. *Moussouris*, 2016 WL 4472930, at \*8 (citing *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998)). The fourth element is also met if Plaintiffs present evidence of "other circumstances surrounding the adverse employment action [that] give rise to an inference of discrimination." *Peterson v. Hewlett–Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004). At the summary judgment stage, the evidence required for Plaintiffs to establish a prima facie case is "minimal and does not even need to rise to the level of a preponderance of the evidence." *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 659 (9th Cir. 2002).

The burden then shifts to Microsoft to articulate legitimate, non-discriminatory reasons for its adverse pay and promotion decisions. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). If it does so, the burden shifts back to Plaintiffs to show that Microsoft's proffered reasons are a pretext for gender discrimination. *Id.* at 804. Because *any* indication of discriminatory motive may suffice to raise a question that can only be resolved by a factfinder, summary judgment is "ordinarily not appropriate . . . on any ground relating to the merits" of a Title VII disparate treatment claim. *Lyons*, 307 F.3d at 1113. Here, Plaintiffs will establish each prima facie element and show that Microsoft's reasons are a pretext for gender discrimination.

**Plaintiffs' Performance and the Adverse Actions Taken:** Notwithstanding the discrimination they suffered, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[24] *See supra* § II. Plaintiffs more than meet their "minimal" burden to show that they experienced adverse employment actions related to compensation and promotions. ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮. *See* § II, *supra*; *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103,

---

[24] Microsoft concedes that Plaintiffs were well qualified. *See* Mot. at 4 (Moussouris consistently got "strong reviews"), 5 (noting Muenchow's five promotions), 6 (Piermarini consistently received "strong" reviews).

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR
-17-
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

1122 (9th Cir. 2004) ("Failure to promote is a common manifestation of disparate treatment.")

(citing *Tex. Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *Yartzoff v.*

*Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (undeserved performance ratings are adverse

employment decisions under Title VII); *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir.

2008) (adverse action if unfair rating "materially affect[s] the compensation, terms, conditions,

or privileges of . . . employment"). ███████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████

*Moussouris*. Moussouris was denied promotions ████████████, despite being eligible

and well-qualified. ██████████████████████████████████████████████████

██████████████████████████, Moussouris would have earned significantly more had

she been promoted.[25] Microsoft's argument that Moussouris was *already* highly compensated

and thus could not have experienced an adverse action is meritless. ███████████████████

████████████████████████████. Microsoft's argument that Moussouris's performance

evaluation ███████ cannot constitute an adverse action is also wrong (and Microsoft ignores her

███████████): ████████████████████████████████████████████████████

██████████████████████

*Muenchow*. Despite her qualifications, Muenchow was denied promotions. *See* § II,

*supra*. Microsoft concedes that these denials and corresponding pay decisions constitute adverse

employment actions, but argues that the criticisms in Muenchow's performance reviews are not.

Mot. at 14-15. ██████████████████████████████████████████████████

████████████████████████████████████████████████████. Muenchow has

made a prima facie showing that she received lower pay, fewer promotions, and harsher

---

[25] Microsoft recycles its earlier argument here that Moussouris was paid more than Dr. Farber's model purportedly predicts. As discussed in Plaintiffs' certification and *Daubert* briefing, it is inappropriate to use a class aggregate regression model to predict individual outcomes. ECF 340 at 6, 25 n.54; ECF 364 at 10 n.5. Microsoft also repeats its misapplication of Dr. Farber's probit analysis to predict an individual's probability of promotion in a single instance. Notwithstanding these issues, Dr. Farber illustrated in his Rebuttal Report that if Moussouris had been promoted in 2012, her compensation would have been significantly higher than the actual compensation she received in 2012, 2013, and 2014. ECF 344 (Farber Rebuttal Report) ¶ 17 & Tbl. 2.

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR
-18-
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

1    performance ratings than her male peers.

2    **_Piermarini_**. Piermarini was denied promotions repeatedly. *See* § II, *supra*. As a result,

3    Piermarini's compensation was also significantly lower than it should have been. Microsoft's

4    argument that negative reviews, including gender-based comments about "communication," are

5    not actionable must also be rejected for the same reasons as set forth above. Mot. at 25. ████

6    ████████████████████████████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████.

8    **Comparable Males' More Favorable Treatment:** ████████████████████████

9    ████████████████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████████

11   ████████████████     ████████████████████████████████████████████████

12   ████████████████████████████████████████ There remains significant discovery that

13   will occur after class certification, including depositions and document productions that may

14   shed additional light on male comparators. Plaintiffs anticipate using this evidence at trial.

15   Microsoft fails to provide any record evidence that rebuts Plaintiffs' testimony regarding

16   its treatment of comparable men. Instead, it relies on vague and inconsistent statements

17   contained in a declaration from a Human Resources employee. *See* ECF 404. This new

18   "evidence" is solely in Microsoft's possession, but was not produced during the pre-class

19   discovery period. It is entitled to no weight. Notably, this self-serving declaration omits

20   information about the comparators' job assignments, compensation, and performance.

21   **Absence of Legitimate Explanation:** Microsoft has failed to "articulate a legitimate,

22   nondiscriminatory reason for its allegedly discriminatory conduct." *Vasquez v. Cty. of Los*

23   *Angeles*, 349 F.3d 634, 640 (9th Cir. 2003). For Moussouris, Microsoft merely cites the gendered

24   feedback she received and reiterates the falsehood that she relinquished her managerial role due

25   to "deficiencies." Mot. at 18. But the feedback Moussouris received is a product of—not a

26   defense for—Microsoft's intentional discrimination. *See* § II, *supra*; *see also, e.g., Price*

27   *Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989) ("An employer who objects to aggressiveness

28   in women but whose positions require this trait places women in an intolerable and

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR                    -19-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

1    impermissible catch 22: out of a job if they behave aggressively and out of a job if they do not.

2    Title VII lifts women out of this bind."). As discussed above, Moussouris' reasons for

3    relinquishing management duties are also, *at minimum*, disputed.

4         For Muenchow, Microsoft argues that her self-assessments reveal "weaknesses" in her

5    work. Mot. at 19. To the contrary, the statements Microsoft highlights in self-evaluations reflect

6    only her efforts to conform to the biased reality she was forced to work within. ████████

7    ██████████████████████████████████████████████████████████████████████████

8    ██████████████████████████████████████████████████████████████████

9    Discrimination again fails as a defense to discrimination. *Hopkins*, 490 U.S. at 251.

10        For Piermarini, Microsoft cherry picks only three isolated comments from her nine-year

11   career at Microsoft. These do not justify Microsoft's repeated decision to pass over Piermarini

12   for promotion in favor of similarly or less qualified males. *See* § II, *supra*. Notably, *all* cited

13   criticisms are from 2015, shortly after she complained to human resources.

14        **Microsoft's Explanations are Pretextual:** A plaintiff may establish pretext "either

15   directly by persuading the court that a discriminatory reason more likely motivated the employer

16   or indirectly by showing that the employer's proffered explanation is unworthy of credence."

17   *Burdine*, 450 U.S. at 256. When direct, a plaintiff "need produce very little evidence of

18   discriminatory motive to raise a genuine issue of material fact." *Godwin*, 150 F.3d at 1220.

19   When indirect, a plaintiff must produce "specific, substantial evidence of pretext." *Id*. at 1221.

20        Here, all three Plaintiffs produced direct evidence of discriminatory motive, in that ██

21   ██████████████████████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████████

23   ████████████. *See* § II, *supra*; *see also Lindahl v. Air France*, 930 F.2d 1434, 1439 (9th Cir.

24   1991) (holding that statements "that reflect male/female stereotypes" such as that female

25   candidates get "nervous" and "easily upset [and] lose[] control" qualify as direct evidence of

26   discrimination). All Plaintiffs also produced direct and circumstantial evidence undermining

27   Microsoft's purported non-discriminatory reasons for its discrimination, ██████████████

28   ██████████████████████████████████. *See* ECF 228 at 19-26. This is the unusual case

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR                                    -20-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

where the Plaintiffs' individual claims are supported by a compendium of supporting class

evidence— ███████████████████████████████████████████████████

████████████████████████████████████

### 3. **Plaintiff Moussouris Was Constructively Discharged.**

To survive summary judgment, Moussouris "must show that there are triable issues of

fact as to whether a reasonable person in [her] position would have felt . . . forced to quit because

of intolerable and discriminatory working conditions." *Steiner v. Showboat Operating Co.*, 25

F.3d 1459, 1465 (9th Cir. 1994) (internal quotation marks omitted). This is typically a factual

determination, reserved for the jury. *Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir.

1987). Importantly, "the fact that [a] plaintiff was able to competently perform his job and meet

expectations does not prevent him from asserting that his working conditions were intolerable

such that a reasonable person faced with these conditions would have felt compelled to resign."

*Juell v. Forest Pharm., Inc.*, 456 F. Supp. 2d 1141, 1152 (E.D. Cal. 2006).[26]

Moussouris has provided substantial evidence that she was ████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████ *See* § II, *supra*; *see also Juell*, 456 F. Supp. 2d at 1151 (denying

summary judgment where there was a fact dispute regarding whether changes in job duties

rendered work intolerable); *Watson*, 823 F.2d at 361-62 (reversing summary judgment where,

among other things, manager transferred away supervisory duties). ██████████████

██████████████████████████████████████████████████████████, *Juell*,

456 F. Supp. 2d at 1152, and Microsoft's suggestion that she should have quit on the spot (and

further damaged her professional reputation), ████████████████████████████████

██████████████. *See id.* (triable claim where plaintiff *remained in same workplace*).

### 4. **Plaintiffs Moussouris and Piermarini Were Retaliated Against.**

An employee establishes a prima facie case of retaliation by showing that: (1) she

---

[26] Though *Juell* is a FEHA case, the court explicitly noted that FEHA is patterned after Title VII and that Title VII cases are therefore instructive. 456 F. Supp. 2d at 1149. The reverse is also true.

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR
-21-
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

1  engaged in protected activity, (2) her employer subjected her to an adverse employment action,

2  and (3) a causal link exists between the protected activity and the adverse employment action.

3  *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). The burden then shifts to the employer

4  to articulate a legitimate, non-retaliatory reason for the adverse actions. *Id.* at 1240. Plaintiffs

5  Moussouris and Piermarini have demonstrated a *prima facie* case of retaliation.

6        Both Plaintiffs suffered cognizable adverse employment actions under the Ninth Circuit's

7  "expansive" interpretation of those terms, *see id.* at 1241, and the temporal proximity between

8  their protected activity and the adverse actions they suffered, along with other evidence,

9  demonstrate the required causal nexus. *Passantino v. Johnson & Johnson Consumer Prod., Inc.*,

10  212 F.3d 493, 507 (9th Cir. 2000) (retaliatory intent may be inferred when adverse employment

11  decisions taken within reasonable period after complaints of discrimination have been made).

12  Microsoft has not proffered any legitimate reasons in response.

13        **a.**    <u>**Moussouris's 2008 Bonus Is Pre-Liability Evidence.**</u>

14      Microsoft's actions ███████████████████████████████████████

15  ████████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████████.

17  Moussouris engaged in protected activity (which Microsoft does not appear to dispute) ████████

18  ████████████████████████████████████████████████████████████████

19  *See* § II, *supra.* ██████████████████████████████████████████

20  ████████████████████████████████████████████. *See* § II, *supra.*

21  Microsoft merely asserts that Moussouris failed to show that her bonus was adjusted downward.

22  However, ████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████.

25  Therefore, Moussouris has established a prima facie case of retaliation, and while her claim may

26  be time-barred, it remains salient pre-liability evidence.[27]

27

28     [27] Moussouris also alleged retaliation in 2014 in her EEOC charge, ECF 8-1 ¶ 20, and re-stated those facts in the SAC.  ECF No. 55, ¶ 71.  Microsoft did not move for summary judgment on that claim.

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR                    -22-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

**b.**     **Piermarini Suffered Retaliatory Adverse Employment Actions.**

Piermarini received unwarranted negative feedback in her performance reviews on two

occasions, both closely following her complaints of gender bias, and her work assignments were

overloaded right after her deposition, setting her up for failure. *See* § II, *supra*. The proximity

between the reviews and Piermarini's protected conduct raises an inference of causation. *See*

*Yartzoff*, 809 F. 2d at 1376; *Passantino*, 212 F.3d at 507; *Coszalter v. City of Salem*, 320 F.3d

968, 977 (9th Cir. 2003) ("[T]hree to eight months is easily within a time range that can support

an inference of retaliation."). Moreover, Piermarini's negative reviews were inconsistent with her

prior reviews, which distinguishes this case from Microsoft's authority. *Compare Yount v.*

*Regent University*, *Inc.*, 08-8011, 2009 WL 995596, at *9 (D. Ariz. Apr. 14, 2009) (no retaliation

where employee failed to show employer's actions were sudden, unanticipated changes to

otherwise positive history) *with Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 970 (9th

Cir. 2002) (denying summary judgment where employee received only positive feedback prior to

adverse action). Furthermore, ████████████████████████████████

████████████████████████████████████████████████████████

████████████.[28] *See* § II, *supra*. These facts also support an inference of retaliation.[29]

Although Microsoft suggests that the negative feedback Piermarini received was

"legitimately related to her managers' opinions of her performance," Mot. at 23, it cites no

evidence to support its claim. Microsoft also fails to rebut Piermarini's allegations regarding the

realignment of her workload and subpar compensation in 2016.[30]

**5.**     **Microsoft's Conduct Warrants Punitive Damages.**

To receive an award of punitive damages under Title VII, a jury must conclude that

Microsoft acted with "malice" or "reckless indifference," meaning Microsoft had "knowledge

---

[28] *See Williams v. Lane Cty.*, 04-6015, 2004 WL 2332026, at *4 (D. Or. Oct. 15, 2004) (adverse action occurring between one and four months after protected activity raised inference of retaliation).

[29] *Kortan v. California Youth Authority*, cited by Defendant, is distinguishable both because the performance evaluation at issue was not "undeserved" and, unlike Piermarini, the plaintiff in *Kortan* cited no other consequences of the retaliation. 217 F.3d 1104, 1113 (9th Cir. 2000).

[30] The only other case cited by Microsoft, *Mitchell v. Superior Ct. of Cal. Cnty. of San Mateo*, also does not advance its argument. 312 F. App'x 893 (9th Cir. 2009). In *Mitchell*, the Ninth Circuit affirmed a grant of summary judgment on a retaliation claim where the employer proffered "at least nineteen different legitimate, non-discriminatory reasons" for the adverse employment action. *Id.* at 894-95. Microsoft has not offered a single one.

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

1    that it *may* be acting in violation of federal law, not its awareness that it is engaging in

2    discrimination." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999) (emphasis supplied).  On

3    the record before the Court, a jury could readily conclude that Microsoft knew that its pay and

4    promotion practices may violate Title VII systemically, that it failed to properly investigate and

5    discipline harassment, retaliation, and discrimination incidents, that it permitted serial sexual

6    harassers to thrive at the company, and that it did not enforce its antidiscrimination policy. *See*

7

8

9

10

11

12

13

14       Contrary to Microsoft's position, the existence of its Employee Relations Investigation

15    Team ("ERIT") provides no defense. Mot. at 24.

16

17

18

19

20

21

22

23

24

## IV.    CONCLUSION

26       Plaintiffs respectfully request that the Court deny Microsoft's motion.

27

28   [31] An antidiscrimination policy such as the one ERIT is tasked with enforcing does not protect the company from liability if it does not enforce the policy. *Bains LLC v. Arco Prods. Co.*, 405 F.3d 764, 774 (9th Cir. 2005).

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR
-24-
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

1
2   Dated: April 2, 2018                        **FRANK FREED SUBIT & THOMAS LLP**

3
4                                               By:    /s/   *Michael Subit*

5                                               Michael Subit (Wash. Bar No. 29189)
                                                705 Second Avenue, Suite 1200
6                                               Seattle, WA 98104
                                                Telephone: (206) 682-6711
7                                               Facsimile: (206) 682-0401
                                                E-Mail: msubit@frankfreed.com
8
9                                               Kelly M. Dermody (admitted *pro hac vice*)
                                                Anne B. Shaver (admitted *pro hac vice*)
10                                              Michael Levin-Gesundheit (admitted *pro hac vice*)
                                                Tiseme Zegeye (admitted *pro hac vice*)
11                                              Michelle A. Lamy (admitted *pro hac vice*)
                                                **LIEFF, CABRASER, HEIMANN &**
12                                              **BERNSTEIN, LLP**
13                                              275 Battery Street, 29th Floor
                                                San Francisco, CA 94111-3339
14                                              Telephone: (415) 956-1000
                                                Facsimile: (415) 956-1008
15                                              E-Mail: kdermody@lchb.com
                                                E-Mail: ashaver@lchb.com
16                                              E-Mail: mlevin@lchb.com
                                                E-Mail: mlamy@lchb.com
17                                              E-Mail: tzegeye@lchb.com

18                                              Sharon M. Lee (Wash. Bar No. 37170)
19                                              **LIEFF CABRASER HEIMANN &**
                                                **BERNSTEIN, LLP**
20                                              2101 Fourth Avenue, Suite 1900
                                                Seattle, WA 98121
21                                              Telephone: (206) 739-9059
                                                Facsimile: (415) 956-1008
22                                              E-Mail: slee@lchb.com

23                                              Rachel J. Geman (admitted *pro hac vice*)
                                                **LIEFF CABRASER HEIMANN &**
24                                              **BERNSTEIN, LLP**
25                                              250 Hudson Street, 8th Floor
                                                New York, NY 10013-1413
                                                Telephone: (202) 355-9500
26                                              Facsimile: (202) 355-9592
                                                E-Mail: rgeman@lchb.com
27
28

Adam T. Klein (admitted *pro hac vice*)
Ossai Miazad (admitted *pro hac vice*)
Michael C. Danna (admitted *pro hac vice*)
Daniel Stromberg (admitted *pro hac vice*)
**OUTTEN & GOLDEN LLP**
3 Park Avenue, 29th Floor
New York, NY 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005
E-Mail: ATK@outtengolden.com
E-Mail: OM@outtengolden.com
E-Mail: mdanna@outtengolden.com
E-Mail: dstromberg@outtengolden.com

*Attorneys for Plaintiffs and the Proposed Class*

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR
-26-
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

1

**CERTIFICATE OF SERVICE**

2           I hereby certify that on April 2, 2018, I caused the foregoing document to be

3 electronically filed with the Clerk of the Court using the CM/ECF system which will send

4 notification of the filing to all counsel of record.

5

Dated: April 2, 2018                              By:    /s/  *Michael Subit*

6

7                                                 Michael Subit
                                                  Frank Freed Subit & Thomas LLP
8                                                 705 Second Avenue, Suite 1200
                                                  Seattle, WA 98104
9

10

11     1533177.5

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28