1

**THE HONORABLE JAMES L. ROBART**

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                 WESTERN DISTRICT OF WASHINGTON

10                         SEATTLE DIVISION

11   KATHERINE MOUSSOURIS, HOLLY          Case No. 2:15-cv-01483-JLR
     MUENCHOW, and DANA PIERMARINI,
12   on behalf of themselves and a class of   **PLAINTIFFS' OPPOSITION TO**
     those similarly situated,                **MICROSOFT'S MOTION FOR**
13                                            **SUMMARY JUDGMENT**
                    Plaintiffs,
14                                           NOTE ON MOTION CALENDAR:
          v.                                 April 6, 2018
15
     MICROSOFT CORPORATION,
16                                            **REDACTED VERSION**
                    Defendant.
17

18

19

20

21

22

23

24

25

26

27

28

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................1

II.   DISPUTED AND UNDISPUTED FACTS.......................................................1

III.  ARGUMENT ................................................................................................11

    A.    Plaintiffs' Claims Are Timely and Ripe ...............................................12

        1.    Statutes of Limitation Do Not Bar Any of Plaintiffs' Claims .................12

        2.    Plaintiff Piermarini Has Exhausted Her Administrative Remedies ........12

    B.    Summary Judgment Is Not Warranted On Any Of Plaintiffs' Claims ................14

        1.    All Plaintiffs Suffered Cognizable Disparate Impact ..............................14

        2.    There Is Substantial Evidence of Intentional Discrimination..................16

        3.    Plaintiff Moussouris Was Constructively Discharged. ...........................21

        4.    Plaintiffs Moussouris and Piermarini Were Retaliated Against...............21

            a.    Moussouris's 2008 Bonus Is Pre-Liability Evidence. ..................22

            b.    Piermarini Suffered Retaliatory Adverse Employment Actions.....................23

        5.    Microsoft's Conduct Warrants Punitive Damages. .................................23

IV.   CONCLUSION .............................................................................................24

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR

-i-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

# TABLE OF AUTHORITIES

**Page**

## <u>Cases</u>

*Aragon v. Republic Silver State Disposal Inc.*,
292 F.3d 654 (9th Cir. 2002).................................................................................17

*Bains LLC v. Arco Prods. Co.*,
405 F.3d 764 (9th Cir. 2005).................................................................................24

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)...............................................................................................11

*Chen-Oster v. Goldman, Sachs & Co.*,
2018 U.S. Dist. LEXIS 54732 (S.D.N.Y. Mar. 30, 2018)......................................16

*Coral Const. Co. v. King Cty.*,
941 F.2d 910 (9th Cir. 1991).................................................................................16

*Coszalter v. City of Salem*,
320 F.3d 968 (9th Cir. 2003).................................................................................23

*Davis v. Team Elec. Co.*,
520 F.3d 1080 (9th Cir. 2008)...............................................................................18

*EEOC v. Fry's Electronics, Inc.*,
770 F. Supp. 2d 1168 (W.D. Wash. 2011) ............................................................13

*EEOC v. NCL America, Inc.*,
504 F. Supp. 2d 1008 (D. Haw. 2007) ..................................................................13

*Eldredge v. Carpenters J. Appr'ship & Tr. Comm.*,
833 F.2d 1334 (9th Cir. 1987)...............................................................................16

*Gertskis v. N.Y.C. Dep't of Health & Mental Hygiene*,
07-2235, 2009 WL 812263 (S.D.N.Y. Mar. 26, 2009) ..........................................12

*Godwin v. Hunt Wesson, Inc.*,
150 F.3d 1217 (9th Cir. 1998).........................................................................17, 20

*Gonzalez v. Nat'l R.R. Passenger Corp.*,
376 F. App'x 744 (9th Cir. 2010)..........................................................................13

*Harris v. Cty. of Orange*,
682 F.3d 1126 (9th Cir. 2012)...............................................................................13

*Hazelwood Sch. Dist. v. United States*,
433 U.S. 299 (1977)...............................................................................................16

*Hemmings v. Tidyman's Inc.*,
285 F.3d 1174 (9th Cir. 2002).........................................................................14, 16

*Juell v. Forest Pharm., Inc.*,
456 F. Supp. 2d 1141 (E.D. Cal. 2006) .................................................................21

*Kolstad v. Am. Dental Ass'n*,
527 U.S. 526 (1999)...............................................................................................24

*Kortan v. California Youth Authority*,
217 F.3d 1104 (9th Cir. 2000)...............................................................................23

*Lindahl v. Air France*,
930 F.2d 1434 (9th Cir. 1991)...............................................................................20

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR

-ii-

HEIMANN & BERNSTEIN, LLP275 Battery Street, 29th
Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

1
2

# TABLE OF AUTHORITIES
### (continued)

3

**Page**

*Little v. Windermere Relocation, Inc.*,
   301 F.3d 958 (9th Cir. 2002).................................................................23

4
5

*Lyons v. England*,
   307 F.3d 1092 (9th Cir. 2002)..........................................................12, 17

*McBain v. Behr Paint Corp.*,
   16-7036, 2017 WL 1208074 (N.D. Cal. Apr. 3, 2017) .............................2

6
7

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973) ...............................................................................17

8

*McGinest v. GTE Serv. Corp.*,
   360 F.3d 1103 (9th Cir. 2004).................................................................17

9
10

*Microsoft Corp. v. Motorola, Inc.*, 10-1823,
   2013 WL 4008822 (W.D. Wash. Aug. 5, 2013) .......................................16

*Mitchell v. Superior Ct. of Cal. Cnty. of San Mateo*,
   312 F. App'x 893 (9th Cir. 2009)............................................................23

11
12

*Moussouris v. Microsoft Corp.*,
   15-1483, 2016 WL 4472930 (W.D. Wash. Mar. 7, 2016) ..............13, 14, 17

13
14

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
   523 F.3d 1051 (9th Cir. 2008).................................................................16

*Ng v. Potter*,
   2009 WL 3836045 (W.D. Wash. Nov. 12, 2009) .....................................13

15
16

*Oliver v. Pac. Nw. Bell Tel. Co.*,
   106 Wash. 2d 675 (1986) ........................................................................15

*Paige v. California*,
   291 F.3d 1141 (9th Cir. 2002).................................................................16

17
18

*Passantino v. Johnson & Johnson Consumer Prod., Inc.*,
   212 F.3d 493 (9th Cir. 2000)..............................................................22, 23

19
20

*Peterson v. Hewlett–Packard Co.*,
   358 F.3d 599 (9th Cir. 2004)...................................................................17

*Price Waterhouse v. Hopkins*,
   490 U.S. 228 (1989) ..........................................................................19, 20

21
22

*Ray v. Henderson*,
   217 F.3d 1234 (9th Cir. 2000).................................................................22

*Schueller v. Shin-Etsu Handotai Am., Inc.*,
   03-5210, 2004 WL 691794 (W.D. Wash. Feb. 9, 2004) ...........................15

23
24

*Shannon v. Pay 'N Save Corp.*,
   104 Wash. 2d 722 (1985) ........................................................................15

25

*Steiner v. Showboat Operating Co.*,
   25 F.3d 1459 (9th Cir. 1994)...................................................................21

26

*Tex. Dep't of Community Affairs v. Burdine*,
   450 U.S. 248 (1981) ...............................................................................18

27
28

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
Case No. 2:15-cv-01483-JLR

-iii-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Vasquez v. Cty. of Los Angeles*,
  349 F.3d 634 (9th Cir. 2003) ................................................................... 19

*Watson v. Fort Worth Bank & Trust*,
  487 U.S. 977 (1988) ............................................................................... 16

*Watson v. Nationwide Ins. Co.*,
  823 F.2d 360 (9th Cir. 1987) ................................................................... 21

*Williams v. Lane Cty.*, 04-6015,
  2004 WL 2332026 (D. Or. Oct. 15, 2004) .............................................. 23

*Yartzoff v. Thomas*,
  809 F.2d 1371 (9th Cir. 1987) ........................................................... 18, 23

*Yount v. Regent University, Inc.*, 08-8011,
  2009 WL 995596 (D. Ariz. Apr. 14, 2009) ............................................. 23

*Zipes v. Trans World Airlines, Inc.*,
  455 U.S. 385 (1982) ............................................................................... 13

## **Statutes**

42 U.S.C. § 2000e-5(e)(3)(A) ....................................................................... 12

42 U.S.C. § 2000e-5(e)(3)(B) ....................................................................... 12

## **Rules**

Fed. R. Civ. P. 56(a) .................................................................................... 11

Fed. R. Evid. 201 ........................................................................................... 2

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
Case No. 2:15-cv-01483-JLR                    -iv-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

1    **I.      INTRODUCTION**

2           Each Plaintiff submits compelling evidence in support of her individual and class claims

3    that readily forecloses summary judgment. Instead of addressing those facts and the substantial

4    class-based gender discrimination evidence (including expert reports, witness statements, and

5    hundreds of gender discrimination complaints by female technical professionals), Microsoft

6    misrepresents the record to argue there is no need for trial. Microsoft's motion is meritless.

7    **II.     DISPUTED AND UNDISPUTED FACTS[1]**

8           ***Katherine Moussouris***. Moussouris brings individual and class pay and promotion

9    claims, and individual claims for constructive discharge, retaliation, and discrimination based on

10   performance review. Moussouris joined Microsoft's Trustworthy Computing Group ("TCG") in

11   April 2007 as a Level 62 Program Manager in the Engineering profession. ECF 242 (Moussouris

12   Decl.) ¶ 2; Lamy Decl., Ex. C, 28:18-21. Over seven years, Moussouris revolutionized

13   cybersecurity at Microsoft, including by creating new programs that were later adopted by the

14   industry. Lamy Decl., Ex. C, 27:10-28:9. She was named a top ten cybersecurity architect of the

15   decade, in large part for her innovative work at Microsoft. *Id*. at 28:14-17.

16          Despite her undisputed and extensive accomplishments at Microsoft, Moussouris was

17   promoted only twice in seven years. In 2008, she was promoted from Level 62 to 63 (Program

18   Manager II). ECF 242 ¶ 2. This merely aligned Moussouris with the Level she should have been

19   assigned at hire, given her prior work experience. ECF 410 (Moussouris Interrogs.) at 13.

20   Moussouris was promoted to Level 64 (Sr. Program Manager) in 2010, and remained stuck at

21   that level until she left the company in May 2014. ECF 242 ¶ 2; ECF 410 at 12.

22          Early in her tenure, Moussouris was retaliated against for reporting sexual harassment. In

23   2008, Moussouris learned from three women (███████████████████████████████

24   ████ that they had been subjected to unwelcome sexual harassment by Andrew Cushman, then-

25   Director of TCG. Lamy Decl., Ex. C, 195:18-196:17, 198:16-17; ECF 410 at 13. Following a

26   conversation with Moussouris, Microsoft investigated and concluded Mr. Cushman had in fact

27

28   [1] Evidence cited herein is attached to the Declaration of Michelle Lamy in Support of Plaintiffs' Opposition to
     Microsoft's Motion for Summary Judgment ("Lamy Decl."). Corporate documents are attached as collective
     Exhibit A, and Plaintiff-produced documents are attached as Exhibit B, in numerical order by Bates Number.

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

1  sexually harassed female employees. Lamy Decl., Ex. C, 195:18-196:17, 202:8-10; ECF 410 at

2  14. Yet Microsoft's response was to transfer Mr. Cushman to another team while retaining his

3  title and influence (and *promoting* him to Senior Director the following year).[2] Lamy Decl., Ex.

4  C, 197:6-15; ECF 410 at 14. Before he was transferred, Mr. Cushman retaliated against

5  Moussouris by recommending a low bonus. Lamy Decl., Ex. C, 201:16-22, 202:3-7; ECF 410 at

6  14. Moussouris complained, but Microsoft took no action. Lamy Decl., Ex. C, 202:8-20.

7      Moussouris was twice denied promotions to Level 65 (Principal Security Strategist) that

8  she deserved, first in June 2012 (despite being responsible for TCG's highest-rated project that

9  year) and again in May 2013 (even though her manager, Mark Oram, told her she was qualified).

10  ECF 410 at 12. Both times, Moussouris observed men who had not performed the same scope of

11  work and had not attained the same level of impact or recognition get promoted to Level 65 over

12  her: ████████ joined Microsoft ████████Moussouris, and was promoted to Level 65 in

13  ████████ joined ████████Moussouris and was promoted to Level 65

14  in ████████ joined ████████Moussouris and was promoted to

15  Level 65 in ████ and ████████ joined ████ only ████████e Moussouris and was

16  promoted to Level 65 in ████. *Id.* at 20, 36-37; Lamy Decl., Ex. C,140:12-141:24; 279:18-

17  280:12; 295:5-10. Microsoft's argument that these men are not proper comparators raises

18  unresolved factual disputes.[3] Notably, Microsoft did not contest that these men earned more than

19  Moussouris. ECF 403 (Mot.) at 13; ECF 404 (Lee Decl.) ¶¶ 9-12 (filed by Microsoft).

20      Gender animated Microsoft's decision to promote these less qualified men over

21  Moussouris. Following the 2013 promotion cycle, Michael Reavey—Moussouris's manager after

22  Mr. Oram—explained to Moussouris that although the impact, quality, and scope of her work

23  had been "Principal level" (*i.e.*, Level 65 or greater) for years, the "how" of her work kept her

24

25  [2] Plaintiffs ask the Court to take judicial notice of Mr. Cushman's public LinkedIn page (Lamy Decl., Ex. I) wherein
26  he lists his promotions. *See McBain v. Behr Paint Corp.*, 16-7036, 2017 WL 1208074, at *3 (N.D. Cal. Apr. 3, 2017) (granting request for judicial notice of LinkedIn page under Fed. R. Evid. 201); *see also* Fed. R. Evid. 801(d)(2)(D) (admissible as non-hearsay statement of party).

27  [3] For example, if certain of Moussouris's comparators were promoted after she left, this is irrelevant to those
28  comparators promoted while she was employed and raises disputed issues of material fact regarding the career promotion velocity of men around her, rendering Moussouris's individual discrimination claims inappropriate for summary judgment. *See* Mot. at 13; ECF 404 ¶¶ 9-12; *see also* § III.B.2, *infra.*

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR                                     -2-
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

1  from being promoted. Lamy Decl., Ex. C, 253:1-5, 257:10-13, 259:24-260:3, 265:20-266:3; ECF

2  410 at 7, 12. Moussouris frequently received gendered feedback of this type, where her qualities

3  of leadership, independence, and judgment were stereotyped as "harsh," "aggressive," "prickly,"

4  or not sufficiently "cooperative." ECF 410 at 7-8, 22-23. Her Performance Reviews contain

5  numerous such examples. *See, e.g.*, Lamy Decl., Ex. A at MSFT_842201 ("I marked 'strongly

6  agree' for 'demonstrates perseverance in the pursuit of goals' - but . . . Katie is often open [sic]

7  hostile towards those she disagrees with."). Moussouris's performance scores likewise reflect

8  gender discrimination. For example, Moussouris twice received a lower performance score,

9  following calibration, than the score initially advocated by her manager:

- In May 2012, Mr. Oram said her performance was outstanding and she had earned a 2
  score, but following the forced ranking process she received a 3. ECF 410 at 9, 24.

- In May 2013, Mr. Oram again commended her performance and told her she deserved a
  score of 1; following forced ranking, she received a 2. ECF 410 at 9, 24.

13  Managers Ellen Cram-Kowalczyk and Leah Lease—who participated in calibration meetings

14  regarding Moussouris's performance—told Moussouris that male managers described her as

15  "prickly" and it was cited as a reason to lower her rating even though managers agreed her

16  performance and impact far exceeded other employees in her peer group. ECF 410 at 8.

17      Microsoft's discrimination against Moussouris had a compounding effect on her

18  compensation and career trajectory over time. The evidence shows that comparators ███

19  ████████████████████████████████████████████were better compensated and/or

20  promoted faster than she was.[4] ECF 410 at 20, 36-37. Although the data produced to Plaintiffs

21  omits employee names (and, thus, Moussouris cannot state the exact salary of every man to

22  whom she compares herself), Plaintiffs were able to identify ████████████ in Microsoft's

23  compensation data. *See* Klein Decl. ¶¶ 6-8.[5] ██████ worked in ███ in the ████████[6] and Level

24  as Moussouris, until he was promoted over her in ██████ *Id.*; ECF. 404 ¶ 12; Lamy Decl., Ex. B at

25
_____

26  [4] Microsoft is wrong in asserting Moussouris identified ████████████ as a comparator. Mot. at 13.
   [5] The Declaration of Ruth Gilgenbach, filed herewith, also confirms the data extraction of various comparator job
27  histories that Plaintiffs' consultant performed at counsel's request. Plaintiffs do not contend that this data extraction
   constitutes expert opinion, but merely make the process transparent. *See also* Klein Decl. ¶¶ 6-8.
28  [6] Microsoft's assertion that ██████ "held a different title [and] reported to different managers" is incorrect. Mot. at
   13. Both were ████████████████ within the same reporting structure. ECF. 404 ¶ 12; Lamy Decl., Ex. B at
   P000037.

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR                               -3-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

P000037. Though ███████ joined Microsoft ████████Moussouris and had substantially less prior professional experience upon hire, he was paid $65,227 more than Moussouris in 2011, $23,655 more in 2012, $59,702 more in 2013, and $84,019 more in 2014. Gilgenbach Decl., Tbl. 3. Microsoft's assertion that Moussouris had "the highest total pay in her group in 2012 and 2014," Mot. at 4, is beyond disputed: it is false. Further undermining Microsoft's suggestion that Moussouris has no comparators, a simple review of men with the same objective characteristics[7] as Moussouris within the data reflects 286 comparable men within the Engineering Profession who were better compensated or promoted faster than Moussouris between 2012 and 2014. Gilgenbach Decl. ¶ 3. Moreover, Microsoft's assertion that Moussouris's 2014 pay "was higher even than her supervisor's, who had been at Microsoft twice as long," Mot. at 4, ignores evidence that the supervisor (Jerry Bryant) was given that position despite—*by his own admission*—having less relevant experience than Moussouris. Lamy Decl. Ex. C, 247:16-25; ECF 410 at 12.

Microsoft also omits (or misrepresents) several critical facts about Moussouris's employment history and performance. First, she did not leave management because of preferences or deficiencies. Mot. at 5, 17. She left because she "had seen such a poor outcome of the stack ranking process and the calibration process [for her] direct reports," and "didn't want to be party to [a] system" she believed was "broken and disadvantageous" to women. Lamy Decl. Ex. C, 248:1-9. Moussouris had identified female reports who, like her, received lower performance scores than recommended because of the gender bias that infected the stacked ranking process.[8]

Second, Microsoft's assertion that "Moussouris did not work effectively with others and

---

[7] The characteristics Dr. Gilgenbach utilized in the data are: Discipline, Standard Title, Stock Level, Peer Group, Time in Level, Years at Microsoft, Age, Total Compensation, Promoted (yes or no), Performance Metric, Organization Exec., and Organization Exec. Detail. Klein Decl. ¶¶ 6-8. These characteristics cover a broader range of similarities than Plaintiffs submit are appropriate for class analysis, but Plaintiffs chose these to demonstrate that even a very narrow view of comparators generates a large list of male employees treated better than each Plaintiff.
[8] *See, e.g.*, ECF 410 at 9-10 (in ████████████ recommended for 1 and received 3, despite agreement by all managers that performance was exceptional); *id.* (in ███████████ recommended for 2, received a 5—the lowest score—despite performing better than man in same job who received a 3); *id.* at 11 (in ██████████, a male, recommended for 4, but received 3 following stack ranking). Female managers ████████████ corroborated Moussouris's observations that women were more likely to receive lower scores under Microsoft's old stack ranking system. *Id.*. at 11.

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR
-4-
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

struggled in managing employees" is likewise incorrect. Mot. at 2, 4, 17. The 2013 review Microsoft cites as evidence also included: "Katie gets stuff done, and not just any stuff: huge business impacting stuff that requires company-wide approval at exec levels," "I also think she does a great job of bringing the right people in to help collaborate and contribute to the efforts she is driving," and "[d]ue to the impact she has been making, I would not be surprised that she makes further advances in her career soon." Lamy Decl., Ex. A at MSFT_842202. Moreover, in 2012 Moussouris's manager commended her exceptional management. *Id.* at MSFT_145 ("You were presented with an unexpected and challenging personnel performance issue . . . [you] worked hard to both give the employee every opportunity to address their performance issues while also mitigating delivery impacts. . . . I have no doubt that the whole experience has contributed to your becoming an *even more effective* manager.") (emphasis added).[9]

Third, Microsoft misrepresents the facts surrounding Moussouris's departure from the company. Mot. at 5, 20.  In January 2014 and after, Moussouris made clear in her communications to Human Resources and colleagues that she "was being forced to resign" due to the discrimination she had suffered during her years at Microsoft and most recently under Jerry Bryant. Lamy Decl., Ex. C, 36:18-23. Moussouris testified that Bryant stripped away her engineering work and saddled her with unnecessary administrative tasks, which her peers were not required to perform. *Id.* at 174:21-175:14. Her signature responsibilities were assigned to a male two Levels below her with no relevant experience. *Id.* at 176:4-16, 176:22-24. Moussouris complained to HR that Microsoft was "taking away and reducing the scope of [her] role and forcing [her] out because of . . . gender," but Microsoft took no action. *Id.* at 203:11-206:18; ECF 410 at 18. Moussouris's communications during this time period reflect her awareness that management was trying to force her out. As she said in a March 20, 2014 email, she had "been scoped out of [her] role by [Bryant] and [she was] unhappy to make an understatement." Lamy Decl., Ex. A at MSFT_16284. When Moussouris resigned in May 2014, she followed "normal professional standards" in giving two weeks' notice. *Id.*, Ex. C, 34:11-35:16.

---

[9] The testimony Microsoft cites for its assertion that each of Moussouris's supervisees expressed unhappiness with her management, Mot. at 4, does not contain such evidence and is contradicted by the actual record.

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR                                          -5-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

1    **_Holly Muenchow_.** Muenchow brings individual and class pay and promotion claims, and

2    an individual claim for discrimination based on performance review. Muenchow earned a

3    bachelor's degree in computer science from Wellesley College in 2002 and entered Microsoft as

4    a Level 58 Software Test Engineer that same year. Lamy Decl., Ex. B at P000676; ECF 243

5    (Muenchow Decl.) ¶ 2. Soon after she started, she observed that several male peers with similar

6    backgrounds entered Microsoft right out of college at Level 59 (and even higher). ECF 411

7    (Muenchow Interrogs.) at 9. This discrimination ensured Muenchow was paid less despite

8    similar qualifications. Coupled with Microsoft's ongoing discriminatory annual Calibration

9    Process, this discrimination and under-leveling has had a compounding effect on Muenchow's

10   compensation and promotion trajectory. For example, peers ███████ and ███████

11   started at Microsoft ███████████████, and ███████, and ███

12   ███████ started ███████ over time, despite Muenchow's similar or better

13   performance, these men were promoted to Principal-Level (Level 66) while she remains Senior-

14   Level (Level 63) at significantly less pay. ECF 243 ¶ 4; ECF 411 at 15, 29-30; Lamy Decl., Ex.

15   D, 93:17-22, 192:23-193:8. Muenchow challenges Microsoft's failure to promote her to Level 66

16   by 2016, as it did the male peers with whom she started. Lamy Decl., Ex. D, 194:22-196:9.

17       Muenchow has also observed men who started after her at lower Levels or who worked

18   with her at the same Level get promoted over her despite her similar or better performance. For

19   example, ███████████ graduated from college ███████ Muenchow and started at

20   Microsoft in ███ at Level ███ at the time, Muenchow was at Level 61. ECF 411 at 30; ECF 243

21   ¶ 2. By 2012, both Muenchow and ███████were at Level 61, yet he made $40,941 more; in

22   2013, both were at Level 62, yet he made $14,063 more in that year and $21,539 more in 2014.

23   ECF 243 ¶¶ 2, 18; ECF 404 ¶ 18; Gilgenbach Decl., Tbl. 3. In ███████ was promoted to

24   Level 63 (while Muenchow was not) and earned $36,061 more than Muenchow; in 2016, he

25   earned $42,894 more. Lamy Decl., Ex. D, 194:15-21; ECF 404 ¶ 18; Gilgenbach Decl., Tbl. 3.

26   Muenchow also worked with ███████ on the same team at the same Level (62) in 2012,

27   yet he was paid $33,478 more that year. ECF 404 ¶ 21; ECF 411 at 29; Gilgenbach Decl., Tbl. 3.

28   ███████ was promoted to Level 63 in ███████████Muenchow. ECF 404 ¶¶ 5,

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR                      -6-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

21. ███████ earned $18,097, $25,711, and $44,279 more in 2013, 2014, and 2015, respectively. Gilgenbach Decl., Tbl. 3. Muenchow challenges denials of promotion to Level 63 in 2014 and 2015. Lamy Decl., Ex. D, 60:5-25.

In addition, Microsoft paid comparable men more than Muenchow. For example, comparators she identified who started at or near the same time—███████████████████ ███—earned dramatically more than Muenchow. In 2012 Muenchow was paid $120,455, while ███████ was paid $237,923 and █████ $237,242.[10] Microsoft has not contested that additional named comparators, such as ███████████████████████████████ ███, were paid more than Muenchow. ECF 411 at 28, 29.

While certain of Muenchow's comparators worked in the Engineering Profession, Muenchow was relegated to the lower-salaried I T Operations Profession even though she has performed the same work as the male Engineering colleagues on her teams. Lamy Decl., Ex. D, 36:13-37:2, 179:2-4, 180:13-21; ECF 411 at 30; ECF 404 ¶ 18. Since 2010, Muenchow has reported to an Engineering manager, "the vast majority of the people on [her] team have been engineers," and during reorganizations, her tasks have been assigned to engineers, while the tasks she has taken on "have been the previous responsibility of engineers." Lamy Decl., Ex. D, 180:14-21. Muenchow continually expressed interest in moving officially to Engineering during her annual midyear career discussions with managers, *id.* 179:5-180:4, but Microsoft did not re-categorize Muenchow into the Engineering Profession until April 2016—approximately 6 months after Muenchow joined this lawsuit, ECF 243 ¶ 2. Nevertheless, the employee data produced by Microsoft also reflects 24 comparable men—within IT Operations from 2012 to 2016, and Engineering from 2016 to the present—who share objective characteristics with Muenchow but were better paid or promoted faster. Gilgenbach Decl. ¶ 4.

Muenchow has also been subject to gender stereotyping in performance feedback. Her

---

[10] Disparities continue in subsequent years: 2013—Muenchow ($120,455), █████($237,923), █████($237,242); 2014—Muenchow ($135,445), █████($321,311) █████$334,986); 2015—Muenchow ($127,300), ($296,058), █████($294,030); 2016—Muenchow ($134,600), █████($325,858), ███s ($323,030). Gilgenbach Decl., Tbl. 3. Although Microsoft suggests that Muenchow identified █████ and █████ as comparators, Mot. at 15, Muenchow identified them as men who were not subjected to gender-based criticism of their "tone" of their communication, Lamy Decl., Ex. D, 56:20-57:6, 66:13-67:8.

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR                                    -7-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

leadership, focus, or ambition has been characterized as too "strong," "tenacious," or "direct." *See, e.g.*, Lamy Decl., Ex. A at MSFT_320, 24 ("Communication style can be too direct at times."), MSFT_311, 318 (same), and MSFT_275, 281 ("She can have very strong convictions and she is assertive in articulating them."). These criticisms were not leveled at Muenchow's male peers, for whom such attributes would be considered positively. *Id.*; ECF 411 at 6; Lamy Decl., Ex. D, 69:3-70:7, 83:11-18, 155:2-6, 260:15-23, 267:4-20.

Microsoft also misstates the record with respect to Muenchow's advocacy for higher performance ratings. Muenchow has not agreed with her manager ratings. *Cf.* Mot. at 6. In 2003, Muenchow rated herself 3.5 rather than the lower 3 from her manager; in 2005 Muenchow rated herself a 4 versus a 3.5 from her manager. Lamy Decl., Ex. A at MSFT_363, 367, 481, 487; Ex. F, 106:19-23 (Ritchie Tr.) (in pre-2006 rating system, 5 was highest and 1 was lowest). Microsoft also erroneously suggests Muenchow had an opportunity in all years to propose a performance rating in the review process. To the contrary, Microsoft's performance review forms have *not* provided an opportunity for employees to suggest a rating in the last 6-7 years. *See id.*, Ex. B at P000864. Due to discrimination, Muenchow did not receive a top performance review score during any year since 2012,[11] and should have received higher performance review scores in all years during the liability period. *Id.*, Ex. D, 166:16-172:1, 177:7-16.

***Dana Piermarini***. Piermarini brings individual claims for discrimination based on pay, promotion, and performance review, and for retaliation. Piermarini began at Microsoft in September 2006 as a Solution Sales Specialist at Level 62 in the Federal Solutions Group ("FSG"). Lamy Decl., Ex. A at MSFT_435; *id.*, Ex. E, 61:3-6. She was promoted to Level 63 in 2008. Lamy Decl. Ex. G, ¶ 9. During fiscal years 2008-2010, Piermarini's performance reviews indicated she was performing at or near the "20% level" for contribution ranking. ECF 412 (Piermarini Interrogs.) at 16; Lamy Decl., Ex. A at MSFT_459-65, 473-77, 481-87. Yet, she was ultimately ranked only at the 70% level—not the 20% level—in all three years. *Id.* In 2010, Piermarini's supervisor, Javier Vasquez, recommended her for a promotion. Lamy Decl., Ex E,

---

[11] For example, Muenchow received a score of 3 in 2012 and a score of 2 in 2013, while her male colleague ▓▓▓▓▓ (whose performance she met or exceeded) received higher scores of a 2 in 2012 and 1 in 2013. ECF 243 ¶ 18; Lamy Decl., Ex. D, 194:15-21; *Id.*, Ex. B at P000864, 72; *Id.*, Ex. A at MSFT_311, 18.

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR
-8-
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

29:22-23; 31:1-4. When Piermarini returned from maternity leave in November 2010, however, she learned that Curt Colcun, a higher-level manager, had denied her the promotion. *Id*. Mr. Vasquez told Piermarini that Mr. Colcun wanted to "see what [Piermarini] c[ould] do" when she returned from leave, suggesting that, had she not taken maternity leave, she would have been promoted. *Id*. That same year, a male peer in the same group (but with a weaker performance), ▮▮▮▮▮▮▮▮ was promoted to Level 65. *Id*. at 215:23-216:21, 217:18-25. Piermarini was not even promoted to Level 64 until September 2011. *Id*. at 31:21-24; *id.*, Ex. A at MSFT_23269.

In approximately 2014, David Walker became Piermarini's manager. Lamy Decl., Ex. E, 57:3-7. Until approximately mid-2016, Piermarini was the only woman on the team that reported to Mr. Walker. *Id*. at 79:11-80:3, 140:9-10. In 2014, Piermarini's second-level manager, Nina Somerville, told her she would be considered for a promotion to Level 65 in the near future. *Id*. at 63:8-11; 88:8-89:9, 89:10-24. Piermarini spoke with Mr. Walker about the potential for promotion in November 2014. *Id*. at 95:4-96:5. Mr. Walker told Piermarini that she should take on a big project to show she was ready. *Id*. at 96:5-96:25. Piermarini proposed taking on the cloud consumption project, which aimed to ensure customers used their cloud space. *Id*. at 96:5-97:10. Mr. Walker agreed, and told her to put together a proposal. *Id*. After sending the proposal, Piermarini followed up at least twice. *Id*. at 133:17-134:4; 165:15-25. Yet Mr. Walker assigned the project to a male, ▮▮▮▮▮▮ who was ▮▮▮▮▮▮▮▮. *Id*. at 165:15-167:6; ECF 412 at 13. ▮▮▮▮▮▮ told Piermarini that he did not know why Mr. Walker had assigned the project to him, not her. Lamy Decl., Ex. E, 166:24-167:6. ▮▮▮▮▮▮ was promoted to Level 65 in 2015. ECF 404 ¶ 26.

Piermarini was never promoted higher than Level 64, despite Microsoft's admission that she "consistently received strong performance reviews."[12] Mot. at 6. However, several men on her team and men who held positions with the same or similar duties were promoted, including:

- ▮▮▮▮▮▮ assigned to a higher pay band (Level 65) than Piermarini when he joined the ▮▮▮, and promoted in ▮▮▮▮▮▮ Lamy Decl., Ex. E, 62:15-19; ECF 412 at 15;

---

[12] Microsoft's claim that Piermarini "generally agreed with the reviews she received," Mot. at 6, is incorrect and unsupported by the testimony it cites. Ms. Piermarini did not testify that she generally agreed with her reviews. In fact, she identified that in 2014 and 2015, she unjustly received less favorable performance reviews than in the three previous years, despite consistently strong performance relative to her peers. ECF 4012-12 at 16-17.

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

ECF 404 ¶ 23. ▓▓▓▓▓▓ did not have more relevant experience or skills than Piermarini, and had a shorter tenure at Microsoft. ECF 412 at 15.

- ▓▓▓▓▓▓ promoted to Level 65 in ▓▓▓ after working as a ▓▓▓▓▓▓▓▓ for only ▓▓▓▓. ECF 412 at 15; Lamy Decl., Ex. E, 219:15-16. He had shorter tenure and less experience than Piermarini. Lamy Decl., Ex. E, 218:25-219:5, 219:15-16.
- ▓▓▓▓▓▓—whom Mr. Walker assigned the cloud project over Piermarini—promoted to Level 65 in ▓▓▓. *Id.* 133:17-134:4, 165:15-25, 166:21-167:6; ECF 412 at 13, 16.
- ▓▓▓▓▓▓ promoted to Level 65 despite having less time on the job than Piermarini. ▓▓▓▓▓▓ began working as a ▓▓▓▓▓▓▓▓ in ▓▓▓ in approximately ▓▓▓. ECF 412 at 15-16; ECF 404 ¶ 24. At the time of his promotion in ▓▓▓, he had been working as a ▓▓▓▓▓▓▓▓ for approximately ▓▓▓▓▓▓. Lamy Decl., Ex. A at MSFT_449; ECF 412 at 15-16; ECF 404 ¶ 24.

In fact, Microsoft's employee data reflects 8 comparable men within Solution Sales who were better paid or promoted faster than Piermarini between 2012 and 2016. Gilgenbach Decl. ¶ 5.

After November 2014, Piermarini had several unpleasant interactions with Mr. Walker. Lamy Decl., Ex. E, 133:3-135:21. In March 2015, Piermarini met with Mr. Walker to discuss these incidents. *Id.* at 135:22-136:3; 141:24-142:6. During the meeting, Mr. Walker criticized her for her childcare responsibilities—such as when her children were sick—even though she had never missed a deadline or a scheduled meeting. *Id.* at 136:16-24; 139:12-22; ECF 412 at 6. Mr. Walker did not criticize Piermarini's male co-workers with similar childcare responsibilities. *Id.* at 140:6-16, 143:1-23. Piermarini complained about the unfair treatment to several Microsoft employees and human resources. *Id.* at 149:14-152:1, 153:13-15, 151:17-152:10, 153:19-20, 154:6-7, 154:22-155:14, 159:6-161:5.

In August 2015, while Microsoft was purportedly investigating Piermarini's complaints, Piermarini received negative feedback in a performance review that was unlike feedback she had previously received. Lamy Decl., Ex. E, 228:4-229:22; 230:7-14; *id.*, Ex. A at MSFT_595-97, 11027, 11031-32. Piermarini believed Mr. Walker solicited the negative feedback from an Account Executive whom Piermarini supported, in retaliation for her complaints. ECF 412 at 11. The feedback was inconsistent with positive feedback the Executive provided earlier that year and included a gender-based critique of her communication style. Lamy Decl., Ex. E, 230:7-14; *id.*, Ex. A at MSFT_595-97, 11027, 11031-32. Piermarini complained to Microsoft's ERIT team, and requested that the review be changed. *Id.*, Ex. E, 232:2-18, 232:25-233:16. She received a lower merit increase in the 2015 review cycle than in previous fiscal years. ECF 404 ¶ 6.

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR                                    -10-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

1    Microsoft also paid Piermarini less than comparable males. For example, ███████

2    was paid more than Piermarini each year that he worked in her group, despite the fact that he had

3    fewer years of experience in the position and fewer years at Microsoft. *See* ECF 412 at 15; 404 ¶

4    23. In ████, the year ██████████ started in ████ as a █████████████████, he earned $291,434

5    while Piermarini earned $259,852; in 2015, he earned $433,996 while she earned $358,576.

6    Gilgenbach Decl., Tbl. 3.[13]

7        In June or early July 2016, Noah Sandidge became Piermarini's direct supervisor. Lamy

8    Decl., Ex. H, ¶ 26. Directly following Piermarini's deposition in this case, which Ms. Sandidge

9    attended, Ms. Sandidge realigned and vastly expanded Piermarini's territory, increasing her

10   workload to an unsustainable degree, and required her to oversee many more accounts than her

11   male counterparts (and too many accounts for any one employee to oversee effectively). *Id.* ¶ 27.

12   In fact, an account manager whom Piermarini supported, Mark Romano, complained about the

13   reassignment to FSG Vice President Greg Myers. *Id.* ¶ 28. Mr. Romano believed that Microsoft

14   was setting Piermarini up for failure because there was no other explanation for why it would

15   assign the accounts so disproportionately. *Id.* Soon after, in September 2016, Mr. Walker made

16   unsupported and misleading claims about Piermarini's performance in her 2016 end-of-year

17   Connect, even though she attained over 145% of her quota in FY16. *Id.* ¶¶ 28-29. Piermarini also

18   received a lower salary increase and bonus than in prior years and in comparison to her male

19   peers. *Id.* ¶ 29.  Because of the continuous and ongoing pattern of discrimination and retaliation

20   she experienced at Microsoft, Piermarini had no choice but to resign on September 16, 2016.

21   **III.    ARGUMENT**

22       Microsoft bears the burden to demonstrate "there is no genuine dispute as to any material

23   fact" that would allow Plaintiffs' individual claims to proceed to trial. Fed. R. Civ. P. 56(a); *see*

24   *also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Microsoft has failed.

25

26

27

28   ---
     [13] Of Ms. Piermarini's named comparators, Plaintiffs have been unable to locate one of them – ██████████ – in the
     data produced by Microsoft. *See* Gilgenbach Decl., Tbl. 3.

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR                                    -11-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

### A.   Plaintiffs' Claims Are Timely and Ripe

#### 1.   Statutes of Limitation Do Not Bar Any of Plaintiffs' Claims

The Parties do not dispute that the liability period for Title VII commences on July 18, 2013 and for the WLAD on September 16, 2012, under the ruling of this Court. ECF 134. All Plaintiffs assert *claims* that arose during these liability periods: each Plaintiff asserts pay, promotion, and performance claims during liability years in which they have been employed; Moussouris asserts claims for retaliation and constructive discharge in 2014; and Piermarini asserts a claim for retaliation in 2015.

To the extent Plaintiffs have adduced *facts* that predate the liability period—*e.g.*, that Muenchow suffered pay discrimination early in her career that continued and compounded over time—these are relevant background that "may be considered by the trier of fact in assessing [Microsoft]'s liability" during the present period. *Lyons v. England*, 307 F.3d 1092, 1111 (9th Cir. 2002). In particular, evidence of discrimination before the liability period may "be offered for its probative value in assessing whether the employer's justifications for its present conduct lack credibility." *Id.* at 1112. Additionally, the Ledbetter Fair Pay Act, which amended Title VII, provides that "an unlawful employment practice occurs . . . when an individual is affected by application of a discriminatory compensation decision or other practice, including each time . . . compensation is paid, resulting in whole or in part from such a [past] decision or other practice." 42 U.S.C. § 2000e-5(e)(3)(A). The statute, in turn, authorizes "recovery of back pay for up to two years preceding the filing of [an EEOC] charge." *Id.* 2000e-5(e)(3)(B). Thus, discriminatory compensation decisions that occur before the Title VII liability period are relevant because they may affect compensation during the liability period, and because Plaintiffs are entitled to two years of pre-liability period back pay. *See, e.g.*, *Gertskis v. N.Y.C. Dep't of Health & Mental Hygiene*, 07-2235, 2009 WL 812263, at *4 (S.D.N.Y. Mar. 26, 2009) (applying Ledbetter Fair Pay Act and explaining that pre-liability pay decisions continued to affect plaintiff and thus most of her Title VII claims not time-barred).

#### 2.   Plaintiff Piermarini Has Exhausted Her Administrative Remedies

Piermarini was not required to exhaust WLAD claims, and those claims go forward,

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR

-12-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

dating back to September 16, 2012 (based on the Complaint filing). *Gonzalez v. Nat'l R.R. Passenger Corp.*, 376 F. App'x 744, 746 (9th Cir. 2010). As to her Title VII claims, Microsoft is wrong that Piermarini cannot rely on Moussouris's EEOC class charge. The single filing rule permits individuals whose claims are encompassed by a class charge to "piggyback" on that charge. *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1136 (9th Cir. 2012). Moussouris's EEOC charge clearly covered Piermarini's pay, promotion, and retaliation claims because Piermarini was a member of the putative class encompassed by the charge.[14] The fact that Plaintiffs later moved for class certification on behalf of a narrower class is irrelevant to whether Piermarini was entitled to piggyback on Moussouris's charge at the time the Complaint was filed. The purpose of exhaustion is to provide notice to the employer of the claims and to enable the EEOC's conciliation efforts with the employer. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 397 (1982). Microsoft does not claim that it lacked notice of Piermarini's claims based on the original EEOC charge or that the EEOC was unable to conciliate the full scope of the claims. Mot. at 10. The charge thus supported piggybacking for Piermarini. *See Moussouris*, 2016 WL 4472930, at *5 n.6 (Mar. 7, 2016) (discussing application of single filing rule); *EEOC v. NCL America, Inc.*, 504 F. Supp. 2d 1008, 1013 (D. Haw. 2007) (piggybacking excuses exhaustion where little risk of prejudice to defendant). Microsoft cites no authority supporting its position.

Even if Microsoft were correct that Piermarini could not rely on the original charge, it has waived this argument. Filing a charge of discrimination with the EEOC "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes*, 455 U.S. at 393. Microsoft has been on notice of Piermarini's claims at least since Plaintiffs filed the First Amended Complaint in October 2015. It did not move to dismiss these claims for lack of exhaustion in its motions to dismiss that complaint, ECF No. 23, or the Second Amended Complaint, ECF No. 62.

---

[14] *See* ECF 8-1, ¶¶ 1, 21-22. The cases that Microsoft cites are distinguishable, Mot. at 10, because the charges alleged claims that were fundamentally different from those alleged in the lawsuits. *See Ng v. Potter*, 2009 WL 3836045, at *5-6 (W.D. Wash. Nov. 12, 2009) (in single-plaintiff case an EEOC disparate treatment charge was not sufficient to exhaust the hostile work environment claim); *EEOC v. Fry's Electronics, Inc.*, 770 F. Supp. 2d 1168, 1173 (W.D. Wash. 2011) (finding that one claim was "not 'nearly identical' or even substantially similar to that charged by Mr. Lam . . . [because] the two claims involve different elements and are legally independent").

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

Finally, although Plaintiffs submit that Piermarini is not required to do so, Piermarini has timely amended her EEOC charge to include all claims alleged in the case in order to forestall any argument that the statutes of limitations on exhausting her Title VII claims began running again on October 27, 2017, when Plaintiffs filed their Motion for Class Certification and the class definition excluded Piermarini's position.[15]  Lamy Decl., Ex. H. This filing effectively bridges the time from when Moussouris filed her EEOC charge, protecting Piermarini's Title VII claims from July 18, 2013, through at least October 27, 2017. With the 300-day look-back on this April 2, 2018 filing, all dates and claims of her employment are covered and exhausted.

### B.    Summary Judgment Is Not Warranted On Any Of Plaintiffs' Claims

#### 1.    All Plaintiffs Suffered Cognizable Disparate Impact

Plaintiffs can prove each element of their disparate impact claim: "(1) show a significant disparate impact on a protected class or group; (2) identify the specific employment practices or selection criteria at issue; and (3) show a causal relationship between the challenged practices or criteria and the disparate impact." *Moussouris*, 2016 WL 4472930, at *9 (citing *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1190 (9th Cir. 2002)).

**Significant Disparate Impact:** As to Moussouris and Muenchow, Plaintiffs have presented statistical evidence that women in their Professions (Engineering and IT Ops) are paid approximately 2.8% less than men, at a statistically significant level of 21.7 standard deviations, well exceeding the threshold of 1.96 standard deviations that courts routinely accept as probative evidence of discrimination.[16] ECF 384 (Farber Report), ¶ 53-56, Table 3. Likewise, Plaintiffs presented evidence that women in Engineering and IT Ops received approximately 518 fewer promotions than would be expected given their characteristics other than gender, and that the difference is statistically significant. *Id.* ¶ 77, Table 7. As to Piermarini, Plaintiffs present evidence that women in the Sales profession are underpaid by 3.86%, to a statistically significant level of 5.55 standard deviations. Rebuttal Report of Dr. Henry Farber Regarding Sales

---

[15] The retaliation claim asserted in the pending charge pertains to events that occurred in 2016, after this lawsuit was filed. Plaintiffs have not yet sought to amend the complaint to assert the claim, but will do so. Thus, the Court should reject Microsoft's argument that the claim was not properly exhausted and must be dismissed. *See* Mot. at 10.
[16] *See* ECF 228 (Pl. Mot. for Class Certification) at p. 8, n.15 (citing authorities).

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR                                    -14-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

1    Profession (April 2, 2018) ¶¶ 3-5 & Tbls. 1 &2.[17]

2       **Specific Employment Practice:** Plaintiffs challenge Microsoft's pay and promotion

3    process ("Calibration").[18] Under this process, managers apply common criteria to compare

4    employees within peer groups to make pay and promotion recommendations to senior-level

5    managers.[19] The final pay and promotion decisions are reviewed and approved by a small group

6    of senior-level managers based on common criteria that applies to all reviewed employees. ECF

7    344 (Farber Rebuttal Report) ¶ 16. The criteria are vague and ill-defined, and managers are

8    allowed to weight the criteria in ways not correlated with other raters and not aligned with job

9    requirements. ECF 231 (Ryan Report) ¶¶ 13, 20; ECF 345 (Ryan Reply Report) ¶¶ 2, 5. Thus,

10   performance is divorced from rewards, and the process is vulnerable to bias. ECF 345 ¶¶ 17-43.

11   This is sufficient under federal and state law, though Microsoft mischaracterizes Plaintiffs'

12   disparate impact claims by asserting they are not cognizable under the WLAD because they are

13   based on "discretionary decision-making." Mot. at 21. Instead, as Plaintiffs' class certification

14   briefing makes clear, Plaintiffs are challenging common pay and promotion decisions that

15   include both objective and subjective components. ECF 228 at 5-10: ECF 340 at 2-12. Their

16   claims are therefore cognizable under the WLAD as a specific employment practice. *Shannon v.*

17   *Pay 'N Save Corp.*, 104 Wash. 2d 722, 733 (1985) (for disparate impact, "plaintiff must

18   demonstrate that he is attacking an employment practice that *includes* objective features")

19   (emphasis added); *id.* at 732 (subjective portion of employee evaluation process amenable to

20   disparate impact analysis).[20]

21       **Causal Relationship:** "Statistical evidence is used to demonstrate how a particular

22

---

23   [17] This pay difference rises to 4.32% at 5.73 standard deviations when incentive pay is included in the analysis.
     Rebuttal Report of Dr. Henry Farber Regarding Sales Profession, Tbls. 1 &2.

24   [18] From 2011 to May 2014, Microsoft used the term "calibration meetings" for this process; since May 2014, it is
     called "People discussions," but the function remains the same. *See* ECF 232 at 5 n.10 (citing Ritchie Tr. at 136:25-

25   138:22; 157:6-8; 229:16-17; 234:5-235:25). Microsoft essentially agrees with Plaintiffs' description of this process.
     *See* Mot. at 3; ECF 286 (Def.'s Opp. to Class Cert.) at 5; ECF 340 at 2-3.

26   [19] Peer groups encompass employees in multiple stock levels doing comparable work at different rates of pay. The
     relevant peer groups are 59-60, 61-62, 63-64, and 65-67. ECF 232 at 6 n.11 (and cited evidence). Peer groups

27   correspond to career stages and standard titles. ECF 384 (Farber Report) ¶¶ 17-21.

     [20] Microsoft's cases are not to the contrary. *See Oliver v. Pac. Nw. Bell Tel. Co.*, 106 Wash. 2d 675, 680 (1986)

28   (challenged practice was purely "discretionary and subjective."); *Schueller v. Shin-Etsu Handotai Am., Inc.*, 03-
     5210, 2004 WL 691794, at *8 (W.D. Wash. Feb. 9, 2004) (workers in protected class not adversely affected).

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR                                        -15-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

1   employment practice causes a protected minority group to be under represented in a specific area

2   of employment (for example, hiring or promotion). The statistical analysis must show a disparity

3   that is 'sufficiently substantial' as to 'raise such an inference of causation.'" *Paige v. California*,

4   291 F.3d 1141, 1145 (9th Cir. 2002) (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977,

5   994-95 (1988)). Plaintiffs have presented sufficient statistical evidence to raise an inference that

6   the common pay and promotion Calibration process caused disparate impact.

7       Plaintiffs' experiences as participants in the Calibration process, and their observations of

8   female colleagues' experiences, support such a finding. *See* § II, *supra*. So, too, do Dr. Ryan's

9   analysis of the common infirmities in these practices, and company documents and testimony

10  regarding same. Taken together, the statistical and anecdotal evidence creates a causal chain

11  from which a jury could reasonably infer that the Calibration process caused the pay and

12  promotion disparities. *See Hemmings*, 285 F.3d at 1190 ("statistical conclusions about the large

13  disparities in salaries and the lack of women in upper management, as well as the anecdotal

14  testimony by multiple witnesses about the subjective promotion processes and award of salary

15  and benefits" supported disparate impact jury finding); *Coral Const. Co. v. King Cty.*, 941 F.2d

16  910, 919 (9th Cir. 1991) (denying summary judgment for "potent" combination of anecdotal and

17  statistical evidence).

18      Microsoft is wrong that Plaintiffs' experts must opine on causation, which is an issue for

19  the trier of fact to decide.[21] *See* ECF 340 (Pls.' Class Cert. Reply) at 10-11 (citing cases); ECF

20  370 (Pls.' Opp. to Def.'s Mot. to Exclude Farber Reports) at 11-12 (same).[22] *See also Hazelwood*

21  *Sch. Dist. v. United States*, 433 U.S. 299, 307 (1977); *Eldredge v. Carpenters J. Appr'ship & Tr.*

22  *Comm.*, 833 F.2d 1334, 1340 n.8 (9th Cir. 1987).[23]

23              **2.    There Is Substantial Evidence of Intentional Discrimination.**

24      Plaintiffs will prove at trial that Microsoft discriminated against them on the basis of

25

26  [21] Microsoft's criticisms of the level of specificity and variables used by Dr. Farber should be rejected for the
    reasons in Plaintiffs' Opposition to Defendant's Motion to Exclude Dr. Farber's Reports and Opinion (ECF 370).
27  [22] *See Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (expert witness cannot
    give opinion as to legal conclusion, "*i.e.*, an opinion on an ultimate issue of law"); *see also Microsoft Corp. v.*
    *Motorola, Inc.*, 10-1823, 2013 WL 4008822, at *10 (W.D. Wash. Aug. 5, 2013) (Robart, J.) (same).
28  [23] *Chen-Oster v. Goldman, Sachs & Co.*, 2018 U.S. Dist. LEXIS 54732 (S.D.N.Y. Mar. 30, 2018) (certifying class
    and rejecting defendants' similar causation arguments).

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT                              LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
CASE NO. 2:15-CV-01483-JLR                        -16-                 275 Battery Street, 29th Floor
                                                                       San Francisco, CA 94111-3339
                                                                       Tel. 415.956.1000 • Fax 415.956.1008

1   gender. Under the *McDonnell Douglas* framework, Plaintiffs can establish a prima facie case of

2   intentional discrimination by showing that (1) they belong to a protected class (this is undisputed

3   here), (2) they were performing according to their employer's legitimate expectations, (3) they

4   suffered an adverse employment action, and (4) other employees with similar qualifications were

5   treated more favorably. *Moussouris*, 2016 WL 4472930, at *8 (citing *Godwin v. Hunt Wesson,*

6   *Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998)). The fourth element is also met if Plaintiffs present

7   evidence of "other circumstances surrounding the adverse employment action [that] give rise to

8   an inference of discrimination." *Peterson v. Hewlett–Packard Co.*, 358 F.3d 599, 603 (9th Cir.

9   2004). At the summary judgment stage, the evidence required for Plaintiffs to establish a prima

10   facie case is "minimal and does not even need to rise to the level of a preponderance of the

11   evidence." *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 659 (9th Cir. 2002).

12        The burden then shifts to Microsoft to articulate legitimate, non-discriminatory reasons

13   for its adverse pay and promotion decisions. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792,

14   802 (1973). If it does so, the burden shifts back to Plaintiffs to show that Microsoft's proffered

15   reasons are a pretext for gender discrimination. *Id.* at 804. Because *any* indication of

16   discriminatory motive may suffice to raise a question that can only be resolved by a factfinder,

17   summary judgment is "ordinarily not appropriate . . . on any ground relating to the merits" of a

18   Title VII disparate treatment claim. *Lyons*, 307 F.3d at 1113. Here, Plaintiffs will establish each

19   prima facie element and show that Microsoft's reasons are a pretext for gender discrimination.

20        **Plaintiffs' Performance and the Adverse Actions Taken:** Notwithstanding the

21   discrimination they suffered, the evidence shows each Plaintiff received strong reviews and was

22   exceptionally well-qualified for pay and promotions she did not receive.[24] *See supra* § II.

23   Plaintiffs more than meet their "minimal" burden to show that they experienced adverse

24   employment actions related to compensation and promotions. All Plaintiffs have shown that they

25   were paid less than, denied promotions accorded to, and received lower performance evaluations

26   than comparable male employees. *See* § II, *supra*; *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103,

27

28   [24] Microsoft concedes that Plaintiffs were well qualified. *See* Mot. at 4 (Moussouris consistently got "strong reviews"), 5 (noting Muenchow's five promotions), 6 (Piermarini consistently received "strong" reviews).

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR
-17-
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

1122 (9th Cir. 2004) ("Failure to promote is a common manifestation of disparate treatment.")

(citing *Tex. Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *Yartzoff v.*

*Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (undeserved performance ratings are adverse

employment decisions under Title VII); *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir.

2008) (adverse action if unfair rating "materially affect[s] the compensation, terms, conditions,

or privileges of . . . employment"). At Microsoft, an employee's performance rating affects her

salary increase, bonus, and stock awards. *See* Lamy Decl., Ex. F, 231:20-25, 325:6-10 (Ritchie

Tr.) ("[A]ll other things being equal, best performers get increases larger than the level below,

the level below, the level below.").

*Moussouris*. Moussouris was denied promotions in 2012 and 2013, despite being eligible

and well-qualified. Because a promotion results in an increase in Level that corresponds to

higher compensation, *see* ECF 384 ¶ 16, Moussouris would have earned significantly more had

she been promoted.[25] Microsoft's argument that Moussouris was *already* highly compensated

and thus could not have experienced an adverse action is meritless. In fact, she was paid less than

male comparators. *See* § II, *supra*. Microsoft's argument that Moussouris's performance

evaluation in 2013 cannot constitute an adverse action is also wrong (and Microsoft ignores her

2012 claim): Moussouris deserved a rating of 2 in 2012 but received a 3, and a rating of 1 in

2013 but received a 2. *Id.*

*Muenchow*. Despite her qualifications, Muenchow was denied promotions. *See* § II,

*supra*. Microsoft concedes that these denials and corresponding pay decisions constitute adverse

employment actions, but argues that the criticisms in Muenchow's performance reviews are not.

Mot. at 14-15. This is wrong. Muenchow, who never received the highest rating, deserved a

higher rating in every year, including a 1 in 2013 rather than a 2. *See* § II, *supra*. Muenchow has

made a prima facie showing that she received lower pay, fewer promotions, and harsher

---

[25] Microsoft recycles its earlier argument here that Moussouris was paid more than Dr. Farber's model purportedly predicts. As discussed in Plaintiffs' certification and *Daubert* briefing, it is inappropriate to use a class aggregate regression model to predict individual outcomes. ECF 340 at 6, 25 n.54; ECF 364 at 10 n.5. Microsoft also repeats its misapplication of Dr. Farber's probit analysis to predict an individual's probability of promotion in a single instance. Notwithstanding these issues, Dr. Farber illustrated in his Rebuttal Report that if Moussouris had been promoted in 2012, her compensation would have been significantly higher than the actual compensation she received in 2012, 2013, and 2014. ECF 344 (Farber Rebuttal Report) ¶ 17 & Tbl. 2.

OPPOSITION FOR MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR
-18-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

1   performance ratings than her male peers.

2   **Piermarini**. Piermarini was denied promotions repeatedly. *See* § II, *supra*. As a result,

3   Piermarini's compensation was also significantly lower than it should have been. Microsoft's

4   argument that negative reviews, including gender-based comments about "communication," are

5   not actionable must also be rejected for the same reasons as set forth above. Mot. at 25. Notably,

6   Piermarini performed as well as or better than her male peers in 2014 and 2015, yet she received

7   worse performance reviews. *See* Gilgenbach Decl., Tbl. 3; ECF 412 at 15.

8   **Comparable Males' More Favorable Treatment:** Plaintiffs point to specific examples

9   of comparable or less qualified men who were paid more and/or promoted more rapidly than

10  they were. *See* § II, *supra*. Plaintiffs also submit the declaration of Dr. Gilgenbach, which

11  explains that Plaintiffs will be able to identify additional comparators based on Microsoft's pay

12  and promotions data at trial. Gilgenbach Decl. ¶¶ 3-5. There remains significant discovery that

13  will occur after class certification, including depositions and document productions that may

14  shed additional light on male comparators. Plaintiffs anticipate using this evidence at trial.

15  Microsoft fails to provide any record evidence that rebuts Plaintiffs' testimony regarding

16  its treatment of comparable men. Instead, it relies on vague and inconsistent statements

17  contained in a declaration from a Human Resources employee. *See* ECF 404. This new

18  "evidence" is solely in Microsoft's possession, but was not produced during the pre-class

19  discovery period. It is entitled to no weight. Notably, this self-serving declaration omits

20  information about the comparators' job assignments, compensation, and performance.

21  **Absence of Legitimate Explanation:** Microsoft has failed to "articulate a legitimate,

22  nondiscriminatory reason for its allegedly discriminatory conduct." *Vasquez v. Cty. of Los*

23  *Angeles*, 349 F.3d 634, 640 (9th Cir. 2003). For Moussouris, Microsoft merely cites the gendered

24  feedback she received and reiterates the falsehood that she relinquished her managerial role due

25  to "deficiencies." Mot. at 18. But the feedback Moussouris received is a product of—not a

26  defense for—Microsoft's intentional discrimination. *See* § II, *supra*; *see also, e.g.*, *Price*

27  *Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989) ("An employer who objects to aggressiveness

28  in women but whose positions require this trait places women in an intolerable and

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR
-19-
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

impermissible catch 22: out of a job if they behave aggressively and out of a job if they do not. Title VII lifts women out of this bind."). As discussed above, Moussouris' reasons for relinquishing management duties are also, *at minimum*, disputed.

For Muenchow, Microsoft argues that her self-assessments reveal "weaknesses" in her work. Mot. at 19. To the contrary, the statements Microsoft highlights in self-evaluations reflect only her efforts to conform to the biased reality she was forced to work within. Lamy Decl., Ex. D, 155:2-6 ("there's a different band of appropriate behaviors" for men and women at Microsoft with men allowed to "interrupt people or have a more aggressive communication style"). Discrimination again fails as a defense to discrimination. *Hopkins*, 490 U.S. at 251.

For Piermarini, Microsoft cherry picks only three isolated comments from her nine-year career at Microsoft. These do not justify Microsoft's repeated decision to pass over Piermarini for promotion in favor of similarly or less qualified males. *See* § II, *supra*. Notably, *all* cited criticisms are from 2015, shortly after she complained to human resources.

**Microsoft's Explanations are Pretextual:** A plaintiff may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. When direct, a plaintiff "need produce very little evidence of discriminatory motive to raise a genuine issue of material fact." *Godwin*, 150 F.3d at 1220. When indirect, a plaintiff must produce "specific, substantial evidence of pretext." *Id.* at 1221.

Here, all three Plaintiffs produced direct evidence of discriminatory motive, in that all three identified sexist comments in performance reviews or as justification for holding them back from promotion, whether due to stereotypes about their communication styles or childcare responsibilities. *See* § II, *supra*; *see also Lindahl v. Air France*, 930 F.2d 1434, 1439 (9th Cir. 1991) (holding that statements "that reflect male/female stereotypes" such as that female candidates get "nervous" and "easily upset [and] lose[] control" qualify as direct evidence of discrimination). All Plaintiffs also produced direct and circumstantial evidence undermining Microsoft's purported non-discriminatory reasons for its discrimination, such as the extensive record of a culture of gender bias at Microsoft. *See* ECF 228 at 19-26. This is the unusual case

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR

-20-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

1   where the Plaintiffs' individual claims are supported by a compendium of supporting class

2   evidence—including the gender discrimination complaints of hundreds of other female

3   employees at Microsoft. *See, e.g.*, *id.* at 23-24; ECF 340 at 15.

4           **3.    Plaintiff Moussouris Was Constructively Discharged.**

5           To survive summary judgment, Moussouris "must show that there are triable issues of

6   fact as to whether a reasonable person in [her] position would have felt . . . forced to quit because

7   of intolerable and discriminatory working conditions." *Steiner v. Showboat Operating Co.*, 25

8   F.3d 1459, 1465 (9th Cir. 1994) (internal quotation marks omitted). This is typically a factual

9   determination, reserved for the jury. *Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir.

10  1987). Importantly, "the fact that [a] plaintiff was able to competently perform his job and meet

11  expectations does not prevent him from asserting that his working conditions were intolerable

12  such that a reasonable person faced with these conditions would have felt compelled to resign."

13  *Juell v. Forest Pharm., Inc.*, 456 F. Supp. 2d 1141, 1152 (E.D. Cal. 2006).[26]

14          Moussouris has provided substantial evidence that she was forced to resign as a result of

15  gender discrimination at Microsoft, including Microsoft's decision in 2014 to reassign her

16  signature job responsibilities to a lesser qualified man, and HR's refusal to do anything about her

17  complaints regarding same. *See* § II, *supra*; *see also Juell*, 456 F. Supp. 2d at 1151 (denying

18  summary judgment where there was a fact dispute regarding whether changes in job duties

19  rendered work intolerable); *Watson*, 823 F.2d at 361-62 (reversing summary judgment where,

20  among other things, manager transferred away supervisory duties). It is irrelevant that

21  Moussouris began considering resignation two months before her ultimate departure date, *Juell*,

22  456 F. Supp. 2d at 1152, and Microsoft's suggestion that she should have quit on the spot (and

23  further damaged her professional reputation), rather than extending the professional courtesy of a

24  two-week notice, is baseless. *See id.* (triable claim where plaintiff *remained in same workplace*).

25          **4.    Plaintiffs Moussouris and Piermarini Were Retaliated Against.**

26          An employee establishes a prima facie case of retaliation by showing that: (1) she

27

28  ──────────────
    [26] Though *Juell* is a FEHA case, the court explicitly noted that FEHA is patterned after Title VII and that Title VII cases are therefore instructive. 456 F. Supp. 2d at 1149. The reverse is also true.

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR                    -21-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

1 engaged in protected activity, (2) her employer subjected her to an adverse employment action,

2 and (3) a causal link exists between the protected activity and the adverse employment action.

3 *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). The burden then shifts to the employer

4 to articulate a legitimate, non-retaliatory reason for the adverse actions. *Id.* at 1240. Plaintiffs

5 Moussouris and Piermarini have demonstrated a *prima facie* case of retaliation.

6      Both Plaintiffs suffered cognizable adverse employment actions under the Ninth Circuit's

7 "expansive" interpretation of those terms, *see id.* at 1241, and the temporal proximity between

8 their protected activity and the adverse actions they suffered, along with other evidence,

9 demonstrate the required causal nexus. *Passantino v. Johnson & Johnson Consumer Prod., Inc.*,

10 212 F.3d 493, 507 (9th Cir. 2000) (retaliatory intent may be inferred when adverse employment

11 decisions taken within reasonable period after complaints of discrimination have been made).

12 Microsoft has not proffered any legitimate reasons in response.

13              **a.**     **Moussouris's 2008 Bonus Is Pre-Liability Evidence.**

14      Microsoft's actions in protecting a serial sexually harassing manager and failing to

15 intervene in a retaliatory reduction of Moussouris's bonus is pre-liability evidence of the hostile

16 work environment which gave rise to further discriminatory actions within the liability period.

17 Moussouris engaged in protected activity (which Microsoft does not appear to dispute) when she

18 complained in 2008 about the Director of TCG's sexual harassment of other female employees.

19 *See* § II, *supra*. That Director, who was aware of her complaint, recommended a lower bonus

20 than she should have received based upon her performance and evaluation. *See* § II, *supra*.

21 Microsoft merely asserts that Moussouris failed to show that her bonus was adjusted downward.

22 However, Moussouris testified that the amount of her bonus—which fell at the very bottom of

23 her "range" for that year—was inconsistent with her review score—the highest available—and

24 her promotion to a senior-level position in that review cycle. Lamy Decl., Ex. C, 200:8-202:2.

25 Therefore, Moussouris has established a prima facie case of retaliation, and while her claim may

26 be time-barred, it remains salient pre-liability evidence.[27]

27

28 [27] Moussouris also alleged retaliation in 2014 in her EEOC charge, ECF 8-1 ¶ 20, and re-stated those facts in the SAC. ECF No. 55, ¶ 71. Microsoft did not move for summary judgment on that claim.

OPPOSITION FOR MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR
-22-
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

**b.**   **Piermarini Suffered Retaliatory Adverse Employment Actions.**

Piermarini received unwarranted negative feedback in her performance reviews on two occasions, both closely following her complaints of gender bias, and her work assignments were overloaded right after her deposition, setting her up for failure. *See* § II, *supra*. The proximity between the reviews and Piermarini's protected conduct raises an inference of causation. *See Yartzoff*, 809 F. 2d at 1376; *Passantino*, 212 F.3d at 507; *Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003) ("[T]hree to eight months is easily within a time range that can support an inference of retaliation."). Moreover, Piermarini's negative reviews were inconsistent with her prior reviews, which distinguishes this case from Microsoft's authority. *Compare Yount v. Regent University*, *Inc.*, 08-8011, 2009 WL 995596, at *9 (D. Ariz. Apr. 14, 2009) (no retaliation where employee failed to show employer's actions were sudden, unanticipated changes to otherwise positive history) *with Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 970 (9th Cir. 2002) (denying summary judgment where employee received only positive feedback prior to adverse action). Furthermore, Piermarini's claims are not based only on her reviews, as Microsoft suggests, but also on the change in her workload after her deposition and the pay she received as a result.[28] *See* § II, *supra*. These facts also support an inference of retaliation.[29]

Although Microsoft suggests that the negative feedback Piermarini received was "legitimately related to her managers' opinions of her performance," Mot. at 23, it cites no evidence to support its claim. Microsoft also fails to rebut Piermarini's allegations regarding the realignment of her workload and subpar compensation in 2016.[30]

**5.**   **Microsoft's Conduct Warrants Punitive Damages.**

To receive an award of punitive damages under Title VII, a jury must conclude that Microsoft acted with "malice" or "reckless indifference," meaning Microsoft had "knowledge

---

[28] *See Williams v. Lane Cty.*, 04-6015, 2004 WL 2332026, at *4 (D. Or. Oct. 15, 2004) (adverse action occurring between one and four months after protected activity raised inference of retaliation).

[29] *Kortan v. California Youth Authority*, cited by Defendant, is distinguishable both because the performance evaluation at issue was not "undeserved" and, unlike Piermarini, the plaintiff in *Kortan* cited no other consequences of the retaliation. 217 F.3d 1104, 1113 (9th Cir. 2000).

[30] The only other case cited by Microsoft, *Mitchell v. Superior Ct. of Cal. Cnty. of San Mateo*, also does not advance its argument. 312 F. App'x 893 (9th Cir. 2009). In *Mitchell*, the Ninth Circuit affirmed a grant of summary judgment on a retaliation claim where the employer proffered "at least nineteen different legitimate, non-discriminatory reasons" for the adverse employment action. *Id.* at 894-95. Microsoft has not offered a single one.

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR                                    -23-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

1    that it *may* be acting in violation of federal law, not its awareness that it is engaging in

2    discrimination." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999) (emphasis supplied).  On

3    the record before the Court, a jury could readily conclude that Microsoft knew that its pay and

4    promotion practices may violate Title VII systemically, that it failed to properly investigate and

5    discipline harassment, retaliation, and discrimination incidents, that it permitted serial sexual

6    harassers to thrive at the company, and that it did not enforce its antidiscrimination policy. *See*

7    ECF 228 § II.B.1 (internal monitoring). Microsoft was also on notice by the OFCCP, which

8    issued notices of violation in 2016 ████████████████████████████████████████████

9    ████████████████████████████ *see id.* § II.B.2, and employees who let management know

10   of their disagreements with company statements about supposed equal pay results. *See id.* §

11   II.B.3. Knowledge of gender bias made it to the very top of the company. *Id.* at 17 (███ Senior

12   Leadership Team document, █████████████████████████████████████████████

13   █████████████████████████████████████████

14        Contrary to Microsoft's position, the existence of its Employee Relations Investigation

15   Team ("ERIT") provides no defense. Mot. at 24. ERIT has clearly failed to correct a culture rife

16   with sexual harassment, ECF 228 § II.C.2, including sexual harassment of Moussouris's

17   colleagues and retaliation against her for reporting the harassment, *see* § II, *supra*. Microsoft's

18   complaint logs also reflect ERIT's lack of efficacy: out of 119 gender discrimination complaints

19   made by professional women in technical jobs at Microsoft, ERIT only made a "founded"

20   determination *one time*. ECF 229-3. Plaintiffs' expert Dr. Caren Goldberg opined that ERIT's

21   complaint investigations do not satisfy the standards of human resources management because,

22   among other reasons, "even in cases where there was a clear violation of Microsoft's policies,

23   investigators were frequently able to conclude, inexplicably, that even under egregious facts,

24   there was no policy violation." ECF 346 ¶ 31.[31]

25   **IV.   CONCLUSION**

26        Plaintiffs respectfully request that the Court deny Microsoft's motion.

27

28   ---
[31] An antidiscrimination policy such as the one ERIT is tasked with enforcing does not protect the company from liability if it does not enforce the policy. *Bains LLC v. Arco Prods. Co.*, 405 F.3d 764, 774 (9th Cir. 2005).

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

Dated: April 2, 2018

**FRANK FREED SUBIT & THOMAS LLP**


By:   /s/   *Michael Subit*

Michael Subit (Wash. Bar No. 29189)
705 Second Avenue, Suite 1200
Seattle, WA 98104
Telephone: (206) 682-6711
Facsimile: (206) 682-0401
E-Mail: msubit@frankfreed.com


Kelly M. Dermody (admitted *pro hac vice*)
Anne B. Shaver (admitted *pro hac vice*)
Michael Levin-Gesundheit (admitted *pro hac vice*)
Tiseme Zegeye (admitted *pro hac vice*)
Michelle A. Lamy (admitted *pro hac vice*)
**LIEFF, CABRASER, HEIMANN &**
**BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
E-Mail: kdermody@lchb.com
E-Mail: ashaver@lchb.com
E-Mail: mlevin@lchb.com
E-Mail: mlamy@lchb.com
E-Mail: tzegeye@lchb.com


Sharon M. Lee (Wash. Bar No. 37170)
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
2101 Fourth Avenue, Suite 1900
Seattle, WA 98121
Telephone: (206) 739-9059
Facsimile: (415) 956-1008
E-Mail: slee@lchb.com


Rachel J. Geman (admitted *pro hac vice*)
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (202) 355-9500
Facsimile: (202) 355-9592
E-Mail: rgeman@lchb.com

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR
-25-
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Adam T. Klein (admitted *pro hac vice*)
Ossai Miazad (admitted *pro hac vice*)
Michael C. Danna (admitted *pro hac vice*)
Daniel Stromberg (admitted *pro hac vice*)
**OUTTEN & GOLDEN LLP**
3 Park Avenue, 29th Floor
New York, NY 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005
E-Mail: ATK@outtengolden.com
E-Mail: OM@outtengolden.com
E-Mail: mdanna@outtengolden.com
E-Mail: dstromberg@outtengolden.com

*Attorneys for Plaintiffs and the Proposed Class*

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-01483-JLR

-26-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on April 2, 2018, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of the filing to all counsel of record.

Dated: April 2, 2018                    By:____/s/  *Michael Subit*_____

Michael Subit
Frank Freed Subit & Thomas LLP
705 Second Avenue, Suite 1200
Seattle, WA 98104

1533177.5