# EXHIBIT H

**REDACTED VERSION**

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | | CHARGE NUMBER |
|---|---|---|
| | FEPA | |
| X | EEOC | 551-2017-01470C |

## Washington State Human Rights Commission and EEOC
*State or local Agency, if any*

| NAME (*Indicate Mr., Ms., Mrs.*) | HOME TELEPHONE (*Include Area Code*) |
|---|---|
| Dana Piermarini | ▮ |

| STREET ADDRESS | CITY, STATE & ZIP CODE | DATE OF BIRTH |
|---|---|---|
| ▮ | ▮ VA ▮ | ▮ |

**NAME OF THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)**

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (*Include Area Code*) |
|---|---|---|
| Microsoft Corporation | Over 100,000 | 425-882-8080 |

| STREET ADDRESS    CITY, STATE, AND ZIP CODE | COUNTY |
|---|---|
| One Microsoft Way, Redmond, WA 98052 | King County |

**CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))**

| | |
|---|---|
| [ ] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [ ] AGE | **DATE DISCRIMINATION TOOK PLACE** |
| [X] RETALIATION  [ ] NATIONAL ORIGIN  [ ] DISABILITY  [ ] OTHER (*specify*) | EARLIEST: July 18, 2013    LATEST: September 16, 2016 |

[ ] CONTINUING ACTION

**THE PARTICULARS ARE (If additional paper is needed, attach extra sheet (s)):**

See attached Supplemental Particulars.

☑ I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in processing my charge in accordance with their procedure.

I declare under penalty of perjury that the foregoing is true and correct.

3/30/2018
Date

*Charging Party (Signature)*

**NOTARY** (When necessary for State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(*Day, month, and year*)

SUK LEE
NOTARY
COMMISSION EXPIRES
SEPT. 30, 2021
REGISTRATION NO.
PUBLIC
COMMONWEALTH OF VIRGINIA

EEOC FORM 5 (Test 10/94)

**Dana Piermarini**
**Supplemental Charge of Discrimination**

The Particulars are:

## I.    BACKGROUND

1.    My name is Dana Piermarini, and I am female.  I make claims herein under both disparate impact and disparate treatment theories of discrimination, including but not limited to claims based on discriminatory pay, promotion, and performance reviews.

2.    I was employed by Microsoft Corporation ("Microsoft") from approximately September 2006 until September 2016 as a Solutions Specialist for the Federal division of the Sales, Marketing and Services Group.  For much of my career, I was the only woman on my Specialist Team Unit.

3.    On October 27, 2015, I joined as a named plaintiff in *Moussouris et al. v. Microsoft Corporation*, No. 2:15-cv-1483 (W.D. Wash.), a putative class action brought on behalf of female employees in engineering and technical positions in the United States ("female technical employees") at Microsoft.  I had not filed my own charge of discrimination at that point and instead piggybacked on the EEOC class charge of Katie Moussouris (Charge No. 551-2014-01204) pursuant to the single- filing rule because Ms. Moussouris had filed an EEOC charge in May 2014 on behalf of herself and all female technical employees at the company.  Ms. Moussouris's charge protected the Title VII claims of all putative class members dating from July 18, 2013, forward.

4.    I joined the lawsuit because like other female technical employees at Microsoft, I have been harmed by a continuing policy, pattern, or practice of sex discrimination with respect to performance evaluations, pay, promotions, and other terms and conditions of employment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, as well as the Washington State Law Against Discrimination, Rev. Code of Wash. §§ 49.60.010, *et seq*.

5.    Microsoft has also retaliated against me because I complained about this discrimination.

6.    After I joined the lawsuit, Microsoft retaliated against me because of my participation in the case with unfair performance evaluations, loss of promotion opportunities and bonus rewards that were not in line with my contributions or performance.  Microsoft's discriminatory and retaliatory conduct forced me to resign my employment with the company on September 16, 2016.  On June 9, 2017, I filed an individual EEOC charge related to my claims of discrimination

and retaliation subsequent to joining the *Moussouris* lawsuit (Charge No. 551-2017-01470C).

7. On March 15, 2018, Microsoft filed a motion for summary judgement arguing that the Court should dismiss my claims entirely for failure to exhaust my administrative remedies. Microsoft argues that I can no longer take advantage of the single-filing rule to piggyback on Ms. Moussouris's EEOC charge based on the fact that on October 27, 2017, plaintiffs moved for class certification on a subset of female technical employees which did not include my job title. While I disagree with this legal position, in an abundance of caution, I file this supplemental EEOC charge to ensure that any claims upon which statutes of limitations may have begun running are now administratively exhausted and protected.

## II.   HISTORY OF DISCRIMINATION

8. During my tenure at Microsoft, I consistently achieved and usually exceeded my performance goals and made significant contributions to Microsoft's business. However, my performance evaluations and compensation frequently did not reflect my contributions, and I received promotion opportunities at a far slower rate than my male counterparts.

9. Despite my demonstrated record of leadership and a readiness to take on increasing responsibility, I received only two promotions during my 10 years with Microsoft: from Level 62 to Level 63 in 2008 and from Level 63 to Level 64 in 2011. I was not promoted at all for the last five years of my employment despite continued strong performance and a demonstrated motivation to achieve a promotion to Level 65. I was repeatedly passed over for promotions in favor of less qualified and less experienced men.

10. Sometime in mid-2014, I discussed my desire and readiness to be promoted to Level 65 with my then-Director, Nina Somerville, who said that I was a likely candidate for a promotion in 2015.

11. In November 2014, I told my new direct manager, David Walker, that I was ready for a promotion. Mr. Walker told me that I first needed to execute a high visibility project, which was known to be required in order to be promoted to Level 65. I suggested that I could direct the ▆▆▆▆▆▆ deployment project for Office 365 to set me up for promotion the next year. At my check-in meeting in December 2014, I delivered a presentation related to the project and asked for feedback from Mr. Walker. He said he would get back to me. In January 2015, I checked in with Mr. Walker about whether I had permission to move forward with the presentation I had built (and the ▆▆▆▆▆ project more broadly), but Mr. Walker did not give me the approval I needed to move forward. I did not hear anything about the project again until Mr. Walker sent an email to our team in approximately March 2015 announcing that ▆▆▆▆▆ my male counterpart,

would be the ████████████ Around the same time, I learned that Mr. Walker had given the project to ██████ and that ████████ had begun working on the project while I was waiting to get approval to proceed. ████████ and I were both Level 64 at the time.

12.     I complained internally about gender discrimination and retaliation issues on multiple occasions.  In April 2015, I brought to the attention of Dick Hoell from Human Resources the fact that I believed I was being treated unfairly by Mr. Walker.  For example, he dismissed the fact that I had raised concerns with him about his poor treatment of me as compared to others by claiming I had become emotional during a meeting.  He also singled me out for my childcare responsibilities although they had no impact on my performance, and male members of my team were in comparable situations.

13.     After I did not receive an adequate response, in May 2015, I again complained to Human Resources to report that I believed that Microsoft had discriminated against me because of my gender.  Microsoft's Employee Relations Investigations Team began to conduct an investigation in approximately May or June 2015.  During the investigation, I provided evidence of Microsoft's discriminatory treatment of me, as well as various instances of sexual harassment against other female employees of which I was aware.

14.     In August 2015, during Microsoft's investigation, I informed a member of Microsoft's investigations team that my 2015 end-of-year performance evaluation that Mr. Walker drafted was unfairly negative in a manner that was discriminatory and/or in retaliation for my making complaints of discrimination against him.  In response, Microsoft confirmed that the review should be revised in part, but closed the investigation in September 2015 without making a finding that Mr. Walker had violated Microsoft's non-discrimination and retaliation policy.

15.     In September 2015, after I had complained to Human Resources about Mr. Walker's discriminatory treatment, Microsoft promoted ████████ to level 65.  Microsoft did not promote me, although I was just as qualified for the promotion.

16.     In addition to my male counterpart, ████████ I have observed other men advance through the company faster than me, despite the fact that I performed similarly or better than they did.

17.     I believe, for example, that the following additional men were promoted to Level 65 while I was not, despite my similar education and experience and similar or better performance record ██████████████████████████████████

18.     In approximately █████████████████████ was hired into my team as a Level 65 – a level above me – despite the fact that ████████ did not have significantly more relevant experience or skills than I had and had been with the company for ████████ than I had been.  I was involved in interviewing ████

3

██████ for the position, and did not learn that he would be a higher level than I was until after Microsoft hired him. ██████████ has since been promoted again into a management position.

19.  I also observed that another male counterpart, ████████ rose through the ranks much faster than I did despite having a shorter tenure with the company and fewer years of relevant experience.  He started working for Microsoft in approximately ████████ I did— in another role within the company.  I believe that he became a Solutions Specialist in approximately ██████ and was promoted to Level █ in approximately ████████████ of work as a ████████ ██. By contrast, it took me five years as a Solutions Specialist to achieve this promotion.  Likewise, I believe that ████████ was promoted to Level 65 in █, despite having only ████████, of experience as a Solutions Specialist and ██████████ of tenure with the company, and without completing a high visibility project which (as explained above) was required for promotion to Level 65.  I was not able to attain a promotion to Level 65 even after ten years of strong performance as a Solutions Specialist.

20.  I also observed that ████████████ rose through the ranks much faster than I did despite having a shorter tenure with the company and fewer years of relevant experience.  ████████████ started working for Microsoft in approximately ████ as a Technical Solutions Professional – approximately ███ years after I started working for the company.  In approximately ████, ████████ became a Solutions Specialist in my division, ████████████████ In ████, ████████████ was promoted to Level 65, despite having only ████████ of experience as a Solutions Specialist and only ████████ of tenure with the company.

21.  As part of the year-end review cycle in 2015, I ultimately received lower compensation, including lower merit increases and bonus awards, than in the previous three fiscal years.  I believe that my compensation for 2015 was also less than my male counterparts who had similar or worse performance for the year.

22.  Microsoft also refused to promote me to Level 65 during the 2016 review cycle despite my strong performance with a disproportionate and challenging workload.

23.  In addition, my former boss, Mr. Walker, against whom I made complaints of discrimination and retaliation, was promoted again to Level 66 some time during 2016.

### III.   RETALIATION FOR PARTICIPATION IN THE *MOUSSOURIS* LAWSUIT

24.  After I joined the *Moussouris* lawsuit as a named plaintiff in October 2015, Microsoft continued to discriminate and retaliate against me and it became clear to me that I was the target of unfair performance evaluations, based on false or misleading information, because of my participation in the lawsuit.

4

25.     In March 2016, I reported to Human Resources that my supervisor Mr. Walker
        had unfairly evaluated my performance in my quarterly Connect.  I reported that I
        did not believe that various statements Mr. Walker included accurately reflected
        my performance during the quarter or adequately accounted for the fact that I was
        out on medical leave during more than a third of the time period covered.
        Microsoft failed to take any action to correct the inaccurate statements in my
        performance record.

26.     In June 2016, counsel for Microsoft took my deposition in connection with the
        *Moussouris* lawsuit. Noah Sandidge, Director, Productivity, was present at my
        deposition and thus learned details about my discrimination and retaliation claims
        against Microsoft. Just two days after my deposition, Microsoft made Ms.
        Sandidge my direct manager.

27.     In July 2016, Ms. Sandidge realigned and vastly expanded my territory and
        workload to include all systems integrators and a large proportion of the federal
        civilian agencies, without providing me with necessary additional resources. This
        resulted in my workload increasing to nearly double the amount of accounts as
        compared to my male counterparts. I was being set up to fail.

28.     Soon after, one of the account team managers whom I supported, Mark Romano,
        told me that he believed that no one was capable of effectively supporting a
        territory of that size and complexity.  This manager indicated that he had
        escalated the issue to my Director and Greg Myers, VP of Federal. He also
        indicated to me that he believed that Microsoft management was trying to set me
        up for failure because there was no other explanation for why it would assign the
        territories so disproportionately.

29.     In September 2016, Microsoft again unfairly evaluated my performance.  Ms.
        Sandidge delivered my 2016 end-of-year Connect, but the Connect contained
        comments from David Walker, who was my supervisor during the entire fiscal
        year 2016.  The Connect included unsupported and misleading claims by Mr.
        Walker about performance deficiencies for the FY16 Q4 Connect period, despite
        the fact that I attained over 145% of my quota in FY16.  I also received lower
        rewards than my performance merited.  In fact, my merit increase and bonus was
        lower than prior years, and upon information and belief, lower than my male
        counterparts. I know this because there is a set bonus pool each year for the
        Specialist Team Unit that is divided between me and my counterparts, and if I
        receive less, they necessarily receive more.

30.     In addition, as mentioned above, in 2016 Microsoft again refused to promote me,
        and again promoted my former supervisor, Mr. Walker, against whom I had made
        complaints of discrimination and retaliation.

31.     Both Mr. Walker and Ms. Sandidge were aware of my role in the lawsuit against Microsoft when they engaged in the conduct described above.  In fact, as stated above, Ms. Sandidge attended my deposition in connection with the *Moussouris* case in June 2016.

32.     Microsoft's discrimination and retaliation resulted in my being singled out for unfair performance evaluations, denied deserved promotions, and directly affected my compensation and career trajectory.

33.     Because of the continuous and ongoing pattern of discrimination and retaliation I experienced at Microsoft, I had no choice but to resign on September 16, 2016.

34.     I swear under penalty of perjury that I have read the above charge and that it is true and correct to the best of my knowledge, information, and belief.  This charge is not intended to be exhaustive, but representative of the treatment to which Microsoft has subjected me.

Dated: March 30, 2018
_Leesburg_ , Virginia

Dana Piermarini


Sworn to me this 30 th day of March, 2018

Notary Public

SUK LEE
NOTARY
COMMISSION
EXPIRES
SEPT. 30, 2021
REGISTRATION NO.
306914
PUBLIC
COMMONWEALTH OF VIRGINIA

6