# EXHIBIT 11

**FILED UNDER SEAL**

1

2

3

4

5

6

7                                                                    The Honorable James L. Robart

8                              UNITED STATES DISTRICT COURT
                              WESTERN DISTRICT OF WASHINGTON
9                                       AT SEATTLE

10

11  KATHERINE MOUSSOURIS, HOLLY              Case No. 2:15-cv-01483-JLR
    MUENCHOW, and DANA PIERMARINI,
12  on behalf of themselves and a class of    **PLAINTIFF HOLLY MUENCHOW'S**
    those similarly situated,                 **AMENDED OBJECTIONS AND**
13                                            **RESPONSES TO DEFENDANT**
                Plaintiff,                    **MICROSOFT CORPORATION'S FIRST**
14                                            **SET OF INTERROGATORIES TO**
         v.                                   **PLAINTIFF HOLLY MUENCHOW**
15
    MICROSOFT CORPORATION,
16
                Defendant.
17

18       PROPOUNDING PARTY:     Defendant MICROSOFT CORPORATION

19       RESPONDING PARTY:      Plaintiff HOLLY MUENCHOW

20       SET NUMBER:       ONE (1)

21       Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff, by her attorneys,

22  Lieff Cabraser Heimann & Bernstein, LLP and Outten & Golden LLP, makes the following

23  responses and objections to Defendant Microsoft Corporation's First Set of Interrogatories to

24  Plaintiff Holly Muenchow (the "Document Requests"), dated February 25, 2016.

25                              **PRELIMINARY STATEMENT**

26       Plaintiffs have not completed their investigation of the facts related to this case, have not

AMENDED OBJECTIONS AND RESPONSES TO                    LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
INTERROGATORIES                                                        2101 FOURTH AVENUE, SUITE 1900
CASE NO. 2:15-CV-01483-JLR                -1-                           SEATTLE, WASHINGTON 98121
                                                                          TEL. 206.739.9059

 HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

1   completed discovery in this action, and have not completed preparation for trial.  While on May

2   3, 2016, the Court ordered Plaintiff to respond to these Interrogatories, Plaintiff reserves her right

3   to supplement these responses and objections at an appropriate time before trial, as Plaintiff

4   discovers additional facts relevant to her claims.

5        Plaintiff's responses or objections to any Interrogatory or part of an Interrogatory are not

6   an admission of any fact set forth or assumed by that Interrogatory.  In addition, each of

7   Plaintiff's responses to an Interrogatory or part of an Interrogatory is not a waiver of part or all of

8   any objection she might make to that Interrogatory, or an admission that such answer or

9   objection constitutes admissible evidence.

10       This preliminary statement is incorporated into each response by this reference.

## GENERAL OBJECTIONS

12       The following General Objections are applicable to and incorporated into each

13  interrogatory response:

14       1.   Plaintiff objects to each Interrogatory to the extent that it is premature at

15  this early stage in discovery.

16       At this time, most material facts supporting Ms. Muenchow's contentions remain

17  uniquely in Defendant's custody and control.  To date, Defendant has not produced a substantial

18  quantity of documents responsive to Plaintiffs' requests, few Rule 30(b)(6) depositions have

19  taken place, and Plaintiffs have not received class-wide data.  Without class-wide data, the

20  process of expert statistical analysis cannot begin.  Such statistical analysis will be an

21  indispensable part of Plaintiffs' factual record.  In addition, the parties are still in the process of

22  negotiating regarding search-term based custodial discovery, and documents obtained via these

23  searches will provide substantial relevant information, as will 30(b)(6) witness depositions on the

24  topics of performance evaluations, compensation, promotions, and internal complaints and

25  compliance.

26       Federal Rule of Civil Procedure 33(a)(2) authorizes courts to protect litigants from

AMENDED OBJECTIONS AND RESPONSES TO
INTERROGATORIES
CASE NO. 2:15-CV-01483-JLR

-2-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98121
TEL. 206.739.9059

442        HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

abusive interrogatories, particularly those served before discovery is complete.  Referencing an interrogatory that "asks for an opinion or contention," the rule provides that "the court may order that an interrogatory need not be answered until designed discovery is complete, or until a pretrial conference or some other time."  Fed. R. Civ. Pr. 33(a)(2).

There is also overwhelming support for Plaintiffs' position in the Ninth Circuit.  For example, courts have recognized that "[c]ontention interrogatories which 'systematically track all of the allegations in an opposing party's pleading, and that ask for 'each and every fact' and application of law to fact that support the party's allegations are an abuse of the discovery process because they are overly broad and unduly burdensome.'"  *Miles v. Shanghai Zhenhua Port Mach. Co.*, No. 08-5743, 2009 WL 3837523, at *1 (W.D. Wash. Nov. 17, 2009) (quoting *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M. 2007)) (allowing a plaintiff, eleven months into discovery, to rest on the allegations in the complaint in response to a contention interrogatory).  Courts are particularly wary of defendants' use of contention interrogatories as an attempt to prematurely narrow a plaintiff's case.  For example, in *Advocare International, L.P. v. Scheckenbach*, No. 08-85332, 2009 WL 3064867, at *1 (W.D. Wash. Sept. 24, 2009), the court denied a motion to compel a response to an "overly broad" contention interrogatory as "an attempt to prevent the plaintiff[] from using any evidence or argument, other than that already provided."  The court denied that motion to compel fifteen months after the case had been filed and with only two months left to complete discovery—*i.e.*, far later in the discovery process than the parties find themselves now.

Courts have also recognized that it is inefficient and burdensome to require plaintiffs to provide responses to contention interrogatories that would undoubtedly be incomplete given the posture of the case, as would be true here.  For example, in *In re eBay Seller Antitrust Litigation*, No. 07-1882, 2008 WL 5212170, at *2 (N.D. Cal. Dec. 11, 2008), the court denied a motion to compel responses to contention interrogatories early in discovery because the plaintiff's answers "likely would be materially incomplete," and given "the tentative nature of any responses

AMENDED OBJECTIONS AND RESPONSES TO
INTERROGATORIES
CASE NO. 2:15-CV-01483-JLR

-3-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98121
TEL. 206.739.9059

443                   HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

generated at this stage," they "would be of questionable value to the goal of efficiently advancing

the litigation."  Likewise, in *Campbell v. Facebook, Inc.*, No. 13-5996, 2015 WL 3533221 (N.D.

Cal. June 3, 2015), a court denied a motion to compel responses to contention interrogatories for

much the same reason.  There, the interrogatories were served nine months before class

certification and summary judgment motion deadlines.  The court noted that the defendant, like

Defendant, had "better access to the information" sought.  *Id.* at *5.  The court also rejected the

defendant's argument that the court should compel the plaintiff to answer the interrogatories and

require the plaintiff to update answers as the factual record developed, stating, "It strikes the

Court as unnecessarily burdensome to constantly revise and update such responses."  *Id.* at *6.

Defendant's contention interrogatories served on Plaintiff are inappropriate at this time for the

same reasons.[1]  (Objection on the ground of "**Prematurity**.")

        2.      Plaintiff objects to each Interrogatory to the extent that it calls for

information protected by the attorney-client privilege, the work product doctrine, or any other

constitutional, statutory, or common law privilege or protection, including Plaintiff's privacy

rights, or the privacy rights of others, or any other lawfully recognized privilege or immunity

from disclosure that may attach to information requested by the interrogatory.  (Objection on the

ground of "**Privilege**" or "**Privacy.**")

---

[1] Further, similar examples of courts in this circuit taking issue with early contention interrogatories are legion.  *See, e.g.*, *Amgen, Inc. v. Sandoz, Inc.*, No. 17-4741, 2016 WL 1039029, at *4 (N.D. Cal. Mar. 15, 2016) ("[Defendant] has not demonstrated that its interrogatory is appropriate at this stage as it has not shown how responding to its interrogatories before substantial discovery has been conducted will contribute meaningfully to clarifying the issues in the case or narrowing the scope of the dispute."); *Cardoza v. Bloomin' Brands, Inc.*, Case No. 2:13-cv-01820-JAD-NJK, 2015 WL 3875916, at *1-2 (D. Nev. Jun. 22, 2015) (holding that contention interrogatories served shortly after the opening of discovery and ten months before its close were premature); *Folz v. Union Pac. R.R. Co.*, No. 13-579, 2014 WL 357929, at *2 (S.D. Cal. Jan. 31, 2014) ("[C]ourts are reluctant to allow contention interrogatories, especially when the responding party has not yet obtained enough information through discovery to respond."); *S.E.C. v. Berry*, No. 07-4431, 2011 WL 2441706, at *4 (N.D. Cal. June 15, 2011) ("Contention interrogatories asking for 'each and *every* fact,' or application of law to fact, that supports particular allegations in an opposing pleading may be held overly broad and unduly burdensome." (quoting Schwarzer et. al., Cal. Prac. Guide: Fed. Civ. Pr. Before Trial § 11:1682 (The Rutter Group 2010))).  Microsoft itself has objected to answering premature contention interrogatories.  *Microsoft Corp. v. Motorola, Inc.*, 10-1823 (W.D. Wash.), Roberts Decl., May 1, 2013, Ex. E, at 42, 52, Dkt. 683-1 ("Microsoft further objects that this is a premature contention interrogatory.  Microsoft is not obligated to respond to premature contention interrogatories until the parties have *substantially completed* discovery.") (emphasis added).

AMENDED OBJECTIONS AND RESPONSES TO
INTERROGATORIES
CASE NO. 2:15-CV-01483-JLR

-4-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98121
TEL. 206.739.9059

444          HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

1      3.      Plaintiff objects to each Interrogatory to the extent that it purports to

2 impose any duty upon Plaintiff that is inconsistent with, or beyond that required by, the rules of

3 this Court and the Federal Rules of Civil Procedure.  (Objection on the ground of "**Scope**.")

4      4.      Plaintiff objects to each Interrogatory that seeks information that is

5 (a) neither relevant nor material to the subject matter of this action, nor reasonably calculated to

6 lead to the discovery of admissible evidence, or (b) which bears only such slight relevance to the

7 subject matter of this action that the expenditure of resources necessary to produce such

8 information would be grossly disproportionate to that relevance.  Under such circumstances,

9 responding would be unduly burdensome and oppressive.  (Objection on the ground of

10 "**Relevance**.")

11      5.      Plaintiff objects to each Interrogatory to the extent that it seeks

12 information for the illegitimate purposes of harassing, annoying, or embarrassing Plaintiff.

13 (Objection on the ground of "**Harassment**.")

14      Plaintiff asserts these objections without waiving or intending to waive any objections as

15 to competency, relevancy, materiality, or privilege.

16      In addition to the General Objections set forth above, Plaintiff will also state specific

17 objections to Interrogatories where appropriate, including objections that are not generally

18 applicable to all of the Interrogatories.  By setting forth such specific objections, Plaintiff does

19 not intend to limit or restrict the General Objections set forth above.  To the extent that Plaintiff

20 responds to Interrogatories to which she objects, such objections are not waived.

21      **RESPONSES TO FIRST SET OF INTERROGATORIES**

22 **INTERROGATORY NO. 1:**

23      If YOU contend that Microsoft operated under a general policy of discrimination against

24 women in the purported class, state all material facts supporting that contention.

25 **RESPONSE TO INTERROGATORY NO. 1:**

26      Plaintiff incorporates the general objections stated above and reserves her right to

AMENDED OBJECTIONS AND RESPONSES TO
INTERROGATORIES
CASE NO. 2:15-CV-01483-JLR                                    -5-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98121
TEL. 206.739.9059

445                          HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

1   supplement her response before trial.  Subject to and without waiving these objections, Plaintiff

2   responds as follows:

3         Plaintiff incorporates her allegations in the Second Amended Complaint.  Plaintiff also

4   incorporates her answers to all the Interrogatories herein.

5         As a Microsoft employee for her entire professional career since 2002, Plaintiff has made

6   many observations of gender discrimination at Microsoft.  These include the following:

7               Gender-Based Critiques in Performance Reviews

8         In Plaintiff's performance reviews, Plaintiff has noted gender-based critiques of her

9   demeanor that are generally not made of male employees.  For example, in Plaintiff's Fiscal

10  Year 2011 Check-In, dated February 28, 2011, her manager, Darla Herschberger, comments that

11  Plaintiff can be "assertive" in expressing her convictions.  Bates

12  MSFT_MOUSSOURIS_00000272.  Additionally, in her Fiscal Year 2011 Annual Performance

13  Review, dated September 16, 2011, Ms. Herschberger comments that "Holly has often been

14  referred to as a 'pit bull' and I think it's an interesting description of how she is perceived: strong

15  and tenacious, but sometimes dangerous."  Bates MSFT_MOUSSOURIS_00000272.

16        In Plaintiff's Fiscal Year 2013 Check-In, dated March 4, 2013, her manager, Jim Warner,

17  states that her "[c]ommunication style can be too direct at times."  Bates

18  MSFT_MOUSSOURIS_00000324.  This is the type of comment Plaintiff has not heard as a

19  negative about men in the company.  In Plaintiff's Fiscal Year 2013 Annual Performance

20  Review, dated September 9, 2013, her manager, Adrian Vinca, observes about her

21  communication style, "at times she can be perceived as being too direct…."  Bates

22  MSFT_MOUSSOURIS_00000318.  Again, Plaintiff has not observed men criticized for being

23  too direct, but other women have discussed receiving this critique from managers.

24               Sexual Harassment & Hostile Work Environment

25        Plaintiff has observed and learned of incidents of sexual harassment and hostile work

26  environment at Microsoft.  Plaintiff has attended product "ship" parties where scantily-clad

AMENDED OBJECTIONS AND RESPONSES TO
INTERROGATORIES
CASE NO. 2:15-cv-01483-JLR                    -6-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98121
TEL. 206.739.9059

446          HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

women serve alcoholic beverages.  She has heard that at some "ship" parties female strippers are present.  When Plaintiff and her colleagues learned in March 2016 via the mainstream media that female dancers dressed as scantily-clad schoolchildren had been hired to perform atop tables at a at Microsoft Game Developers conference, Plaintiff observed her colleagues exchanging stories via the C+E Women's Leadership Council list-serv and/or Yammer about the frequency of these sorts of events in the past.  Around this time, Plaintiff conducted internet research and learned that at Microsoft's after-party at the Consumer Electronics Show in Las Vegas in January 2016 entertainment included "sexy women in [Star Wars] Stormtrooper outfits" and "scantily clad women descend[ing] from the ceiling on trapezes."  *See* Dean Takahashi, *The craziest party at CES: Microsoft at the Omnia nightclub at Caesars Palace*, VentureBeat (Jan. 10, 2016, 9:35 a.m.), http://venturebeat.com/2016/01/10/the-craziest-party-at-ces-microsoft-at-the-omnia-nightclub-at-caesars-palace/.

Roughly two to three times per year, Plaintiff receives comments from male co-workers on the attractiveness of her clothing or her physical attributes.  For example, Marc Goodner made a comment of this nature in 2013, and another male co-worker made a comment of this sort in 2014.  Plaintiff does not hear such comments made about male colleagues.  Plaintiff has learned of similar reports of this type of behavior directed at her female colleagues.

Additionally, Plaintiff learned in approximately 2005 of a serious incident of sexual harassment affecting ███████████████████████████████████████ asked her out on a date, making her uncomfortable, and she reported the incident to human resources.  Ms ████ had to ██████████████ to get away from the situation.  ████████████ ██████████████████████████, then treated her differently and spread rumors that she was "difficult to work with."

<u>Attitudes Toward Female Participation in Discussions and Meetings</u>

Plaintiff has observed that women at Microsoft are held to a different standard of personality than men: they can neither be "too quiet" nor "too loud."  When they speak up to

AMENDED OBJECTIONS AND RESPONSES TO
INTERROGATORIES
CASE NO. 2:15-cv-01483-JLR                                    -7-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98121
TEL. 206.739.9059

447                          HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

1   actively participate in substantive discussions regarding technology, they receive negative

2   criticism for being too aggressive.  Women are encouraged to be "nicer and less aggressive," or

3   more of a "cheerleader," while those comments are not made about men. Plaintiff has also heard

4   complaints about these expectations frequently from other women at networking meetings of the

5   DevDiv Women's Council. To the best of her knowledge, ██████████████████████

6   ██████████████, █████████████████████████████████████████

7   █████████████ have made these sorts of comments.  In fact, Plaintiff recalls Darla

8   Herschberger telling her in 2012 that female managers have a hard time advocating passionately

9   for their reports at calibration meetings because other male managers respond negatively to

10  women acting "aggressively."

11      While female employees are frequently criticized when jumping into a conversation at

12  meetings, male employees are much less likely to be criticized.  For example, in the last few

13  months, a more senior male colleague, Scott Wadsworth, told Plaintiff not to interrupt at a

14  meeting, but then a few comments later, various men at the meeting, including Mr. Wadsworth,

15  ██████████ and ██████████████, interrupted others, including Plaintiff, but no critiques of

16  them were made.  Plaintiff also recalls that in ████, after engaging in an extended discussion of

17  differing views about technology with █████ colleague █████████ with her manager Michael

18  Wilmot present, Mr. Wilmot suggested Plaintiff should apologize to █████████. When Plaintiff

19  followed up with █████████, █████████ expressed surprise that their conversation had been

20  called out and indicated no apology was necessary. Plaintiff and █████████ discussed how

21  managers perceive female communication styles differently. Plaintiff is aware of at least three

22  women (including herself) who have received boxing gloves from male co-workers for their

23  "toughness."  Plaintiff is not aware of any man who has received boxing clubs from their male

24  coworkers at Microsoft.

25      Additionally, Plaintiff has observed male colleagues exclude female colleagues from

26  important discussions by setting meetings when they know the women have family

AMENDED OBJECTIONS AND RESPONSES TO
INTERROGATORIES
CASE NO. 2:15-CV-01483-JLR                                -8-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98121
TEL. 206.739.9059

448                    HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

1   responsibilities and on very short notice, even when the women could have attended with more

2   notice and/or would have attended if the meeting had been set at another time.  Plaintiff has

3   observed that there is an assumption that women are less committed to their careers if they have

4   children, but men who have children are not subject to that same assumption.  For example, prior

5   to 2010, Plaintiff recalls comments from male colleagues made in reference to Alicia Li about

6   her not being around for important meetings (from which she was excluded because she had

7   family responsibilities).  In fact, a male coworker told Plaintiff it was bad for her career to have

8   Ms. Li as a supervisor.

9   <u>Hiring and Job Assignments</u>

10   Plaintiff originally interviewed for a position as a Software Design Engineer in Test.  She

11   was not hired for the position.  Instead, she was asked to interview for the position of Software

12   Test Engineer.  She was then hired for this position.  She subsequently learned that the position

13   she was hired into was valued less within the company, and she was paid less than she would

14   have been had she been hired as a Software Design Engineer in Test.  She later observed that

15   Microsoft tended to put women in the role of Software Test Engineer, while men were more

16   likely to be hired as Software Design Engineers in Test.  She also was hired as a Level 58, and

17   she later learned that her male peers who were hired out of college were hired at Level 59.  This

18   impacted her compensation at entry and has also had a compounding effect throughout her

19   tenure.

20   Plaintiff has observed that men and women with similar credentials are not offered the

21   same opportunities upon entry into Microsoft.  Software Design Engineering ("Dev") is

22   considered more prestigious, and is more highly compensated than Software Design Engineering

23   in Test ("Test").  Among men and women with similar credentials, men are more likely to be

24   assigned to Dev, and men within Test are more likely to be transferred to Dev.  Furthermore,

25   women in Dev are more likely to be transferred to Test than are men.  For example, in

26   approximately ▮▮▮ Plaintiff observed ▮▮▮▮▮▮▮▮ and another male transition from Test to

AMENDED OBJECTIONS AND RESPONSES TO
INTERROGATORIES
CASE NO. 2:15-CV-01483-JLR                              -9-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98121
TEL. 206.739.9059

449                    HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

1    Dev, but she cannot recall a similar transition made by a woman.

2        <u>Comments from Women Concerned About the Impact of Maternity Leave and Childcare</u>

3        <u>on Performance Reviews and Assignments</u>

4        Plaintiff reads the "MSMOMS" Anonymous Questions Forum on SharePoint and posts

5    that are forwarded to the MSMOMS list-serv.  Over the years, within this forum and list-serv,

6    she has read comments from women about general gender bias at the company, as well as about

7    the negative impact of taking maternity leave on performance reviews, work assignments, and

8    promotions.  It appears that a substantial number of posts regarding gender bias that Plaintiff

9    recalls reading from previous years have been deleted from the SharePoint forum.  However,

10   Plaintiff is able to report the following comments she has read:

11   •   Regarding the interaction of maternity leave and performance reviews, a forum

12       participant writes, "I just had a very bad Connect, and then found that my manager has

13       also checked the 'Insufficient Results' box, which kinda disqualifies me for an internal

14       transfer, or will disqualify me when the rewards are 0 as per the HR transfer policy.

15       Everything has been new for me - just 6+ months new to the org, new to the role, new to

16       the level, just returned from maternity leave, no guidance from my manager or team, and

17       basically I feel like I was an easy target to put at the bottom.  He made it clear that there

18       is no option to stay in the team, I must move out. But I can't transfer at least with this bad

19       connect and insufficient results and 0 rewards."  (Dated June 24, 2015.)

20   •   Regarding a negative review and a manager's perception of commitment in light of

21       maternity leave and childcare commitments, a forum participant writes the following:

22           I really need some motivation and positive energy my way.

23           I joined Microsoft (my dream jobs) in 2006.  I joined as Program Manager (level
24       60) in Marketing COE team and have changed teams due to re-org multiple times.  In
         year Jan 2012 I had my second promo to level 62.  I was pregnant with my second baby
25       at this time and had my delivery in May 2012.  Though I took maternity immediately, I
         took my parental early 2013 after which I joined Windows team in March 2013.  My
26       reviews were pretty good for IT rewards all this time until 2013.  I was pregnant again

450          HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

that time and was given not-so-critical work in Windows.  I had my 3rd baby in October 2013 and took 5 months break this time.  I joined back in Feb 2014 fully re-charged but my review in 2014 was just-met-expectation with all the pregnancy and parental time off I had.

My manager changed in between and I worked hard with the new manager to get larger scope.  I got a good nanny to help with kids and my husband supported me a lot at home so I can pull up my reputation in career.  I worked close to 16 hours every day, putting everything behind but work.  I was working on 5 different projects, with multiple deliverables critical for the release of Win 10 during this time.

Last week, I asked my manager when I can have a discussion regarding reviews and he pushed it to Thursday evening 4:30pm.  On Thursday, when I went there, I was told he had an appointment at 4:45pm but I insisted on my review.  I was of course proud of the accomplishments I had and was looking forward for the review.  After few discussions on 1509, I got us on track for rewards and my manager pulled up my numbers.  They look pathetic.  I had a 3K merit, 6K stocks and 6K bonus.  As I stand there shocked, my manager continues – these numbers show you are improving and you are on right track.  I reminded him of the work I did and the fact that my contribution and rewards do not match.  At this point, my manager says: "there was a disconnect in your case but I am committed to make sure I give you critical projects and ensure I showcase it appropriately going forward".  I have no idea what that means.  I am still shocked.  The numbers do not even look to what I used to get in IT where numbers are usually low compared to product group.

I told my manager that I am very disappointed with the numbers but he tells me that he is committed to help me succeed.  He also added that there is a "how" part.  He said there are some deliverables which could have been done differently to be more efficient.  When I asked him for an example he says he doesn't remember anything and he would like to go through his notes.  He is OOF part of this week, so asked me to set up sometime the week of Sept 7th.  By then he will recollect and write down something that he would be able to discuss with me.

I am totally lost at this point.  I am really really demotivated.  Microsoft is my dream job and I am very passionate about what I do.  I had put everything behind (I worked really long hours and weekends and incurred a lot of nanny bills) and worked hard to earn the reputation back after back to back pregnancies but it appears I failed.  I failed either because my manager had a 'disconnect'.  I failed for not having an efficient manager who can speak up for me.

I have scheduled a meeting with my skip level, but that may not really help.  My skip is new to the team (6 months old in the team) and whatever opinion he has on me is what my manager would have showcased.

I need guidance on how to take it forward.  Would other teams consider

AMENDED OBJECTIONS AND RESPONSES TO
INTERROGATORIES
CASE NO. 2:15-CV-01483-JLR                    -11-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98121
TEL. 206.739.9059

451            HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

candidates like me who has not had great reviews for 2 years or would they look beyond these 2 years.  I can get strong recommendations from some of my peers and my co-workers, would that help?  Or is my only option to look for a job outside Microsoft and feel good about being a working mom.  Is there any team or a manager who can help me recover from such a terrible state.  As much as I am passionate about MSFT, I have reached a point where I need some positive energy and recognition.

(Dated August 31, 2015.)

- Regarding how to communicate with co-workers while on maternity leave, a participant

    writes, "For both of my maternity leaves, I said something like, 'Thank you for your

    message. I am currently on parental leave. Please contact [list of areas I support and

    people covering each area].'  Like you, I thought it was better to be straightforward about

    the type of leave so people from outside of my immediate team would not wonder why I

    was gone for so long.  I used the word 'parental' because I think there is (sadly) some

    negativity associated with anything specifically maternity-related at work (not to

    everyone, of course).  I like the gender-neutral 'parental' better for that reason, although I

    have absolutely no evidence that it made a difference in how people viewed my leave."

    (Dated September 16, 2015.)

- Regarding addressing gender bias in the workplace, a forum participant writes, "This is

    more of a general rant, but does anyone else find it annoying that WE have to work to

    craft these messages to avoid bias instead of oh, i don't know, teaching the people that

    have the bias that it isn't appropriate?!  I know we have the unconscious bias training, but

    the amount of joking and eye rolling related to that that I've seen is indicative that most

    people don't take it seriously.  I read that same thread and it is ridiculous and

    unacceptable to me that women are expected to essentially hide these things, rather than

    focusing more energy on penalizing managers and other employees who exercise bias

    against mothers (and women in general)."  (Dated September 16, 2015.)

- Regarding how to communicate about maternity leave, a forum participant writes, "There

    is research showing that both pregnant women and women with small children are

AMENDED OBJECTIONS AND RESPONSES TO
INTERROGATORIES
CASE NO. 2:15-CV-01483-JLR                                      -12-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98121
TEL. 206.739.9059

452                      HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

perceived to be less capable, ambitious and dependenable [sic] as compared to other women.  So personally I think having a big sign in your email saying "I just had a kid!" can do you no good.  It's horrible to say but it's probably true.  I'm taking my second leave in a few months and I absolutely do NOT plan to put the reason why in my OOF message.  When I came back from my first leave, people made assumptions about how I would handle workload when I came back.  They assumed my life was hectic because I had a small child, and would push me to take less of a workload.  I left that team because I wasn't being challenged and I think their own biases played a part in that, even though I think there were good intentions behind it."  (Dated October 5, 2015.)

- Regarding co-workers assuming that the commenter would not come back from maternity leave because another co-worker going out on maternity was not planning to come back, a forum participant writes: "Just sucked royally for me, because everyone assumed *I* wasn't coming back, either.  I'll never know what opportunities I missed out on during that period.  I can't fault another woman (or man) for doing what's right for her family, but man, it makes it hard on those of us who make different choices."  (Dated October 19, 2015.)

- Regarding a question about when to take maternity leave, a forum participant writes: "In terms of career impact, you'll get impacted regardless.  The main drawback with taking 2 chunks off is that you might end up doing grunt work for the 3 months you're back and not get assigned any major pieces." (Dated April 4, 2016.)

<u>Katherine Moussouris's EEOC Charge</u>

Plaintiff has read Katherine Moussouris's EEOC charge dated May 13, 2014.  Katherine Moussouris's experience represents an example of gender discrimination within Microsoft in terms of performance evaluation, compensation, and promotions.  As a manager, Ms. Moussouris observed that "female technical employees tended to receive lower scores than their male peers, despite having equal or better work performance," and that "[f]emale technical

AMENDED OBJECTIONS AND RESPONSES TO
INTERROGATORIES
CASE NO. 2:15-CV-01483-JLR

-13-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98121
TEL. 206.739.9059

453                    HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

1   employees disproportionately received 4s and 5s as compared to male technical employees."

2   While Plaintiff has not been involving in reviewing employee performance, she understands that

3   performance review scores affect one's likelihood of promotion.  Plaintiff has observed her male

4   colleagues rise through the ranks faster within Microsoft, corroborating Ms. Moussouris's

5   allegations, regarding performance evaluation, compensation, and promotions.

6   <u>Microsoft Publications</u>

7   In 2012, Plaintiff viewed a 2012 ThinkWeek study, "Be Successful, Be Happy, Believe It!:

8   Culture Shifts and Opportunities," ["2012 ThinkWeek Study"] in which a group studying

9   work/life balance collected suggestions.  The document is described as "a collection of stories

10  and tips from Microsoft employees who are happy with their work/life balance."  Comments in

11  the publication suggest that the reason for the frequency of average ("3") review scores for

12  women is because women have a desire to "settle." ███████████████ writes, "There's a

13  tendency for people (particularly women) who are seeking work/life balance to 'settle' for lower

14  review scores or pay in exchange for what they perceive to be a better deal…" 2012 ThinkWeek

15  Study at 10.  Another employee suggested moms accept a "3" as a good performance evaluation

16  score. *Id.* at 9.

17  The document also contains several suggestions that it is the responsibility of female employees

18  to seek out managers who recognize the value that women with children bring to the workplace.

19  *See, e.g., id.* at 5, 24.

20  Finally, certain material relevant to my claims in this case has been produced to my attorneys as

21  highly confidential information.  Accordingly, I do not have access to that information, but

22  believe that additional facts exists therein that are responsive to this interrogatory.

23  **INTERROGATORY NO. 2:**

24       If YOU contend that Microsoft operated under a general policy of discrimination that

25  manifested itself in promotion practices impacting the purported class, state all material facts

26  supporting that contention.

AMENDED OBJECTIONS AND RESPONSES TO
INTERROGATORIES
CASE NO. 2:15-CV-01483-JLR                        -14-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98121
TEL. 206.739.9059

454                    HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

**RESPONSE TO INTERROGATORY NO. 2:**

Plaintiff incorporates the general objections stated above and reserves her right to supplement her response before trial.  Subject to and without waiving these objections, Plaintiff responds as follows:

Plaintiff incorporates her response to Interrogatory number 1.

Plaintiff observed that her gender affected her promotion opportunities during her tenure at Microsoft.

Over her career at Microsoft, Plaintiff has also observed men advance through the company faster than women performing similarly.  Below are examples:

- The following men ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as Plaintiff did at Microsoft in similar roles and have been promoted to the title of Principal while Plaintiff has not, despite similar or better performance: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, ▮▮▮▮▮▮▮▮▮▮  Over the years, other ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ also failed to receive promotions despite strong performance.  In turn, many of these women have ▮▮▮▮▮▮▮▮.  These individuals include: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- During approximately the ▮▮▮▮▮▮ time period, ▮▮▮▮▮▮▮ and ▮▮▮▮ ▮▮▮ both Program Managers, reported to ▮▮▮▮▮▮▮▮.  ▮▮▮▮▮▮ work was broader in scope and she ran an entire team responsible for a major release, while ▮▮▮▮▮▮ was only responsible for a specific technical area of that release.  Despite ▮▮▮▮▮▮ superior performance, ▮▮▮▮▮ was promoted to Principal, while ▮▮▮▮ was not.

- Some time in approximately the ▮▮▮▮▮▮ time period, ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ reported to either ▮▮▮▮▮▮ or to the same ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  While ▮▮▮▮▮ performed similarly to ▮▮▮▮▮▮▮ she was assigned lower-value tasks and was not

AMENDED OBJECTIONS AND RESPONSES TO
INTERROGATORIES
CASE NO. 2:15-cv-01483-JLR

-15-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98121
TEL. 206.739.9059

HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

455

1    promoted or rewarded in the same manner as ████████████████.

2    • Between ██████████ Plaintiff observed █████████ performing comparable

3    work to male colleagues above her level as a ████████████████████,

4    but she was not promoted to the next level.

5    • ████████████████ started at Microsoft in █████ as a ████████████████

6    ███████ a lower level than Plaintiff, who at that time was an Operations Program

7    Manager.  █████████ was quickly promoted to ████████████.  In █████████

8    ████ and Plaintiff were both at level 62—he as a ████████████████ and she as

9    an IT/OPS Program Manager.  During that year they worked together on █

10   products and performed work of similar quality; in fact, Plaintiff believes she had

11   one of her best years performance-wise.  Nevertheless while Mr. ████████ was

12   promoted to ██████████████—from level 62 to 63 with corresponding salary

13   increase—Plaintiff remained at level 62.  She received no promotion, and a bonus

14   and raise on par with previous years.

15   • Plaintiff observed that █████████ rose through the ranks much faster than her

16   despite performing work of the same or similar scope.  He started working at

17   Microsoft directly out of college in ████████████████—and was

18   promoted to ████████████████ after less than one year of

19   work; it took Plaintiff three years to achieve this promotion.  He is currently a

20   ████████████████  Nevertheless, Plaintiff and █████████ perform work of

21   similar quality.  In fact, in █████ Plaintiff and █████████ had been responsible for

22   the same scope of work (coordinating multiple teams' testing and validation for

23   monthly ███████████████ to ensure they did not break ████████████

24   ████████████, while Plaintiff believes █████████ was paid more than

25   Plaintiff.

26   In addition, Plaintiff learned from an interview with an Office of Federal Contract

AMENDED OBJECTIONS AND RESPONSES TO
INTERROGATORIES
CASE NO. 2:15-CV-01483-JLR          -16-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98121
TEL. 206.739.9059

456          HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

1  Compliance Programs ("OFCCP") investigator in May 2016 that when an employee is promoted

2  at Microsoft, they may move up more than one level.  Plaintiff had previously understood that

3  each promotion came with only a one level increase.  She understands that men may be more

4  likely to receive multiple level promotions than women.

5  **INTERROGATORY NO. 3:**

6        If YOU contend that Microsoft operated under a general policy of discrimination that

7  manifested itself in performance evaluation practices impacting the purported class, state all

8  material facts supporting that contention.

9  **RESPONSE TO INTERROGATORY NO. 3:**

10        Plaintiff incorporates the general objections stated above and reserves her right to

11  supplement her response before trial.  Subject to and without waiving these objections, Plaintiff

12  responds as follows:

13        Plaintiff incorporates her response to Interrogatory number 1-2.

14        Plaintiff observed that her gender affected her performance evaluation during her tenure

15  at Microsoft.

16        The gendered stereotypes involving Plaintiff's communication style have also harmed her

17  in calibration meetings.  For example, in Plaintiff's Fiscal Year 2012 Annual Performance

18  Review, her manager wrote: "In the IT Operations calibration discussion, it was clear that

19  Holly's impact is very high relative to her peers, but the 'How' brought her down into the 3's."

20  Bates MSFT_MOUSSOURIS_00000297.  Among other reasons, Holly was advised that she

21  could "have a clearer path to the next level" if she worked on her "outward communication."  *Id.*

22  In Plaintiff's Fiscal Year 2011 Check-In, Plaintiff was described as "assertive."  Bates

23  MSFT_MOUSSOURIS_00000272.  In Plaintiff's Fiscal Year 2011 Annual Performance

24  Review, she was described as a "pit bull."  Bates MSFT_MOUSSOURIS_00000272.  In

25  Plaintiff's Fiscal Year 2013 Check-In, her manager stated her "[c]ommunication style can be too

26  direct at times."  Bates MSFT_MOUSSOURIS_00000324.  In Plaintiff's Fiscal Year 2013

AMENDED OBJECTIONS AND RESPONSES TO
INTERROGATORIES
CASE NO. 2:15-CV-01483-JLR

-17-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98121
TEL. 206.739.9059

457

HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

1   Annual Performance Review, her manager wrote about her communication style, "at times she

2   can be perceived as being too direct…."  Bates MSFT_MOUSSOURIS_00000318.

3        Plaintiff also read the 2012 ThinkWeek Study, in which an employee described the

4   phenomenon of working mothers at Microsoft receiving "3" review scores.  2012 ThinkWeek

5   Study at 9.

6   **INTERROGATORY NO. 4:**

7        If YOU contend that Microsoft operated under a general policy of discrimination that

8   manifested itself in compensation practices impacting the purported class, state all material facts

9   supporting that contention.

10  **RESPONSE TO INTERROGATORY NO. 4:**

11       Plaintiff incorporates the general objections stated above and reserves her right to

12  supplement her response before trial.  Subject to and without waiving these objections, Plaintiff

13  responds as follows:

14       Plaintiff incorporates her response to Interrogatory number 1-3.

15       Plaintiff observed that her gender has affected her compensation during her tenure at

16  Microsoft.

17       Plaintiff has observed men rise through the ranks faster at Microsoft, and Plaintiff

18  understands that with promotions, come salary increases.  Therefore, male colleagues performing

19  work of similar quality receive greater compensation.  Additionally, Plaintiff is aware that even

20  without a promotion, a higher review score results in greater salary rewards, and that women are

21  treated differently in reviews.  Plaintiff herself has observed and also has heard from others—

22  many anonymously via the MSMOMS Anonymous forum—that women are often criticized for

23  personality traits considered to be strengths in men, are not credited for their contributions, and

24  receive mediocre review scores upon returning from maternity leave.  This practice reduces

25  female compensation vis-à-vis male compensation.

26

AMENDED OBJECTIONS AND RESPONSES TO
INTERROGATORIES
CASE NO. 2:15-cv-01483-JLR

-18-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98121
TEL. 206.739.9059

458        HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

1   **INTERROGATORY NO. 5:**

2       If YOU contend that Microsoft operated under a general policy of discrimination that had

3   the effect of denying the purported class members business opportunities, state all material facts

4   supporting that contention.

5   **RESPONSE TO INTERROGATORY NO. 5:**

6       Plaintiff incorporates the general objections stated above and reserves her right to

7   supplement her response before trial.  Subject to and without waiving these objections, Plaintiff

8   responds as follows:

9       Plaintiff incorporates her response to Interrogatory number 1-4.

10       Managers tend to assign men the most prestigious and valued tasks.  For example, over

11   the ███████████████ a female, and ██████████ a male, both reported to ██████

12   ███████ a male manager.  Ms. ██████ has been assigned day-to-day administrative work,

13   including cross-checking data collection, while Mr. ██████, a peer with a similar skillset, is

14   assigned high visibility projects, including drafting new proposals, developing workflow

15   systems, and implementing those systems.  Additionally, in the summer of 2015, Plaintiff

16   observed ██████████ receive much lower-value (lower visibility and lower impact)

17   assignments than her male colleague ███████████ despite having similar skillsets.

18       In 2013, Plaintiff's manager Ken Reppart asked her to be a "cheerleader" to encourage

19   other teams to meet quality criteria for Visual Studio software.  Plaintiff has never heard a man

20   instructed to be a "cheerleader" at Microsoft.

21   **INTERROGATORY NO. 6:**

22       If YOU contend that Microsoft operated under a general policy of discrimination that had

23   the effect of providing purported class members with inferior terms and conditions of

24   employment, state all material facts supporting that contention.

25   **RESPONSE TO INTERROGATORY NO. 6:**

26       Plaintiff incorporates the general objections stated above and reserves her right to

AMENDED OBJECTIONS AND RESPONSES TO
INTERROGATORIES
CASE NO. 2:15-CV-01483-JLR
-19-
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98121
TEL. 206.739.9059

459   HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

1   supplement her response before trial.  Subject to and without waiving these objections, Plaintiff

2   responds as follows:

3          Plaintiff incorporates her response to Interrogatory number 1-5.

4          Plaintiff recalls receiving an email in approximately 2012 from the Milk Moms list-serv

5   from a female employee complaining that her manager was not supportive of her taking 15-

6   minute breaks when needed to pump breast milk.  This type of complaint has been repeated

7   many times by women at Microsoft.

8   **INTERROGATORY NO. 7:**

9          If YOU contend that each nonresident putative class member had sufficient contact with

10  the state of Washington to apply the Washington Law Against Discrimination (RCW § 24

11  49.60.010 et seq.) ("WLAD") to their claims, state all material facts supporting that contention.

12  **RESPONSE TO INTERROGATORY NO. 7:**

13         Plaintiff incorporates the general objections stated above and reserves her right to

14  supplement her response before trial.  Plaintiff also objects on the ground that this Interrogatory

15  calls for a legal conclusion.  Subject to and without waiving these objections, Plaintiff responds

16  as follows:

17         Plaintiff believes that a majority of technical employees work in Washington State.

18  Plaintiff believes that the performance, compensation, and promotion policies at issue were

19  developed and implemented by company leadership and/or human resources in Washington

20  State.  Plaintiff believes company training materials are generated by employees in Washington

21  State.  Plaintiff understands that the employee agreement she received in 2002 states that

22  Washington Law applies to her employment, and Plaintiff believes similar statements are made

23  in the employee agreements of others, regardless of whether they work primarily in Washington.

24  **INTERROGATORY NO. 8:**

25         If YOU contend that the WLAD does not conflict in any material way with ANY other

26  state anti-discrimination laws applicable to the putative class, state all material facts supporting

AMENDED OBJECTIONS AND RESPONSES TO
INTERROGATORIES
CASE NO. 2:15-CV-01483-JLR                            -20-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98121
TEL. 206.739.9059

460          HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

1   that contention.

2   **RESPONSE TO INTERROGATORY NO. 8:**

3       Plaintiff incorporates the general objections stated above and reserves her right to

4   supplement her response before trial.  Plaintiff also objects on the ground that this Interrogatory

5   calls for a legal conclusion.

6   **INTERROGATORY NO. 9:**

7       State all material facts supporting YOUR contention that Microsoft implemented its

8   performance evaluation policies "despite knowing that they have a longstanding disparate impact

9   on female employees."

10   **RESPONSE TO INTERROGATORY NO. 9:**

11       Plaintiff incorporates the general objections stated above and reserves her right to

12   supplement her response before trial.  Subject to and without waiving these objections, Plaintiff

13   responds as follows:

14       Plaintiff incorporates her response to Interrogatory number 1-8.

15       Plaintiff is aware of the 2012 ThinkWeek study in which a group studying work/life

16   balance included a discussion of how new parents receive "3" scores (and a suggestion from a

17   female employee that they accept this).  This report was delivered to the ThinkWeek review

18   committee, a high-level corporate group, and nothing was done to address this issue.

19       Plaintiff discussed with managers (and is aware of female coworkers who did the same)

20   that women's communication style is harshly criticized and gender-biased.  Plaintiff spoke with a

21   male manager about bias in stack ranking.  Plaintiff has complained about gender bias at

22   Microsoft to Microsoft human resources, and she knows that others have made such complaints

23   as well.  On November 19, 2014, Plaintiff contacted human resources to give feedback on gender

24   bias at Microsoft.  She emailed her human resources representative, Lisa Winfrey.  She then met

25   for 30 minutes with Bryna McCool, who acknowledged that Microsoft had a problem, and told

26   Plaintiff that Microsoft planned greater diversity and inclusion training.  Plaintiff was concerned

AMENDED OBJECTIONS AND RESPONSES TO
INTERROGATORIES
CASE NO. 2:15-CV-01483-JLR          -21-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98121
TEL. 206.739.9059

461      HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

1   that existing training was not constructive and offered no solutions, and she wanted materials for

2   her team.  Plaintiff also expressed concern that the company did not assess its own data on men's

3   and women's experiences.  The feedback she received was that very little was happening and

4   there was no support from HR.

5         In addition, Plaintiff learned from her interview with the OFCCP that other women have

6   formally complained of gender discrimination, and that some women who experienced bias did

7   not formally complain because they were afraid of retaliation.  Plaintiff is aware of a general

8   perception at Microsoft that if a woman is perceived as a complainer, it will hurt her career, and

9   managers will not want to work with her.

10  **INTERROGATORY NO. 10:**

11        State all material facts supporting YOUR contention that Microsoft implemented its pay

12  policies "despite knowing that they have a longstanding disparate impact on female employees."

13  **RESPONSE TO INTERROGATORY NO. 10:**

14        Plaintiff incorporates the general objections stated above and reserves her right to

15  supplement her response before trial.  Subject to and without waiving these objections, Plaintiff

16  responds as follows:

17        Plaintiff incorporates her response to Interrogatory number 1-9.

18        Plaintiff observed how women's pay was affected by the performance evaluations and

19  promotions. Plaintiff discussed with managers (and is aware of female coworkers who did the

20  same) that women's communication style was harshly criticized and gender-biased.  Plaintiff

21  spoke with a male manager about bias in stack ranking.  Plaintiff has complained about gender

22  bias at Microsoft to Microsoft human resources, and she knows that others have made such

23  complaints as well.  On November 19, 2014, Plaintiff contacted human resources to give

24  feedback on gender bias at Microsoft.  She emailed her human resources representative, Lisa

25  Winfrey.  She then met for 30 minutes with Bryna McCool, who acknowledged that Microsoft

26  had a problem, and told Plaintiff that Microsoft planned greater diversity and inclusion training.

AMENDED OBJECTIONS AND RESPONSES TO
INTERROGATORIES
CASE NO. 2:15-CV-01483-JLR                    -22-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98121
TEL. 206.739.9059

462   HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

1    Plaintiff was concerned that existing training was not constructive and offered no solutions, and

2    she wanted materials for her team.  Plaintiff also expressed concern that the company did not

3    assess its own data on men's and women's experiences.  The feedback she received was that

4    very little was happening and there was no support from HR.

5        In addition, Plaintiff learned from her interview with the OFCCP that other women have

6    formally complained of gender discrimination, and that some women with bias claims did not

7    formally complain because they were afraid of retaliation.  Plaintiff is aware of a general

8    perception at Microsoft that if a woman is perceived as a complainer, it will hurt her career, and

9    managers will not want to work with her.

10       Plaintiff also spoke with male managers about women being channeled into lower

11   prestige jobs and paid less.  Plaintiff is aware of other women raising pay issues with managers

12   with no resulting correction.

13       Plaintiff knows that, as a federal contractor, Microsoft is obligated to keep track of data

14   on the compensation of men versus women in similar roles, and that the company must therefore

15   be aware of a pay disparity.

16   **INTERROGATORY NO. 11:**

17       State all material facts supporting YOUR contention that Microsoft implemented its

18   promotion policies "despite knowing that they have a longstanding disparate impact on female

19   employees."

20   **RESPONSE TO INTERROGATORY NO. 11:**

21       Plaintiff incorporates the general objections stated above and reserves her right to

22   supplement her response before trial.  Subject to and without waiving these objections, Plaintiff

23   responds as follows:

24       Plaintiff incorporates her response to Interrogatory number 1-10.

25       Plaintiff made numerous complaints to her managers about being promoted.  Most

26   recently, in 2015, a male colleague with the same scope of responsibility got promoted when she

AMENDED OBJECTIONS AND RESPONSES TO
INTERROGATORIES
CASE NO. 2:15-CV-01483-JLR                    -23-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98121
TEL. 206.739.9059

463    HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

1  did not.  Over the years, Plaintiff heard many women describe complaining to managers when

2  they observed male peers being promoted above them.

3      Plaintiff has observed a dearth of female employees at more senior levels within her

4  organization and other portions of the technical workforce.  Plaintiff knows that, as a federal

5  contractor, Microsoft is obligated to keep track of data on the relative representation of men and

6  women in management, and that the company must therefore be aware of the problem.

7      Plaintiff is aware of the 2012 ThinkWeek study, in which a group studying work/life

8  balance reflected the phenomenon of new parents being stuck with 3 review scores, and having

9  their promotion track delayed.  *See* Study at 10("promotion velocity has slowed some").

10     Plaintiff discussed with managers (and is aware of female coworkers who did the same)

11 that women's communication style was harshly criticized and gender-biased.  Plaintiff spoke

12 with a male manager about bias in stack ranking.  Plaintiff has complained about gender bias at

13 Microsoft to Microsoft human resources, and she knows that others have made such complaints

14 as well.  On November 19, 2014, Plaintiff contacted human resources to give feedback on gender

15 bias at Microsoft.  She emailed her human resources representative, Lisa Winfrey.  She then met

16 for 30 minutes with Bryna McCool, who acknowledged that Microsoft had a problem, and told

17 Plaintiff that Microsoft planned greater diversity and inclusion training.  Plaintiff was concerned

18 that existing training was not constructive and offered no solutions, and she wanted materials for

19 her team.  Plaintiff also expressed concern that the company did not assess its own data on men's

20 and women's experiences.  The feedback she received was that very little was happening and

21 there was no support from HR.

22     In addition, Plaintiff learned from her interview with the OFCCP that men are often

23 promoted 2 levels at once, compared to just 1 for women, that other women have formally

24 complained of gender discrimination at the company, and that some women with bias complaints

25 did not formally complain because they were afraid of retaliation.  Plaintiff is aware of a general

26 perception at Microsoft that if a woman is perceived as a complainer, it will hurt her career, and

AMENDED OBJECTIONS AND RESPONSES TO
INTERROGATORIES
CASE NO. 2:15-CV-01483-JLR                                    -24-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98121
TEL. 206.739.9059

464          HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

1   managers will not want to work with her.

2   **INTERROGATORY NO. 12:**

3       If YOU contend that Microsoft implemented ANY policy that caused an adverse impact

4   on women, specifically identify each such policy.

5   **RESPONSE TO INTERROGATORY NO. 12:**

6       Plaintiff incorporates the general objections stated above and reserves her right to

7   supplement her response before trial.  Subject to and without waiving these objections, Plaintiff

8   responds as follows:

9       Plaintiff incorporates her response to Interrogatory number 1-11.  Plaintiff contends that

10  the performance review, compensation, and promotion policies at issue have an adverse impact

11  on women.

12  **INTERROGATORY NO. 13:**

13      If you identified a policy or policies in response to Interrogatory No. 12 above, state all

14  material facts supporting your contention that the policy or policies caused the alleged adverse

15  impact.

16  **RESPONSE TO INTERROGATORY NO. 13:**

17      Plaintiff incorporates the general objections stated above and reserves her right to

18  supplement her response before trial.  Subject to and without waiving these objections, Plaintiff

19  responds as follows:

20      Plaintiff incorporates her response to Interrogatory number 1-12.  Plaintiff has observed

21  for herself and has heard men and women say that women are paid and promoted less and

22  calibrated differently than men.  Plaintiff believes that the OFCCP is conducting a systemic

23  investigation into gender bias at the company because of issues with pay and promotion, among

24  other things.

25  **INTERROGATORY NO. 14:**

26      If YOU identified a policy or policies in response to Interrogatory No. 12 above, and

AMENDED OBJECTIONS AND RESPONSES TO
INTERROGATORIES
CASE NO. 2:15-CV-01483-JLR                                    -25-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98121
TEL. 206.739.9059

465         HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

1   YOU contend that Microsoft implemented the policy or policies because of their alleged adverse

2   impact on women, state all material facts supporting that contention.

3   **RESPONSE TO INTERROGATORY NO. 14:**

4   Plaintiff incorporates the general objections stated above and reserves her right to

5   supplement her response before trial.  Subject to and without waiving these objections, Plaintiff

6   responds as follows:

7   Plaintiff does not allege that "Microsoft implemented the policy or policies because of

8   their alleged adverse impact on women" in the Second Amended Complaint.  Plaintiff alleges

9   that Microsoft implemented discriminatory policies and practices regarding performance

10  reviews, compensation, and promotions; that those policies had an adverse impact on women;

11  that Microsoft maintained those policies and practices with knowledge of their adverse impact;

12  that those policies and practices are not and cannot be justified by business necessity; and that

13  even if those policies and practices could be justified by business necessity, less discriminatory

14  alternatives exist and would equally serve any alleged necessity.  Plaintiff incorporates her

15  response to Interrogatory number 1-13.

16  **INTERROGATORY NO. 15:**

17  If YOU contend that Microsoft implemented ANY practice that caused an adverse impact

18  on women, specifically identify each such practice.

19  **RESPONSE TO INTERROGATORY NO. 15:**

20  Plaintiff incorporates the general objections stated above and reserves her right to

21  supplement her response before trial.  Subject to and without waiving these objections, Plaintiff

22  responds as follows:

23  Plaintiff incorporates her response to Interrogatory number 1-14, and specifically her

24  response to number 12.

25  **INTERROGATORY NO. 16:**

26  If YOU identified a practice or practices in response to Interrogatory No. 15 above, state

AMENDED OBJECTIONS AND RESPONSES TO
INTERROGATORIES
CASE NO. 2:15-cv-01483-JLR

-26-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98121
TEL. 206.739.9059

466   HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

1   all material facts supporting your contention that the practice or practices caused the alleged

2   adverse impact.

3   **RESPONSE TO INTERROGATORY NO. 16:**

4       Plaintiff incorporates the general objections stated above and reserves her right to

5   supplement her response before trial.  Subject to and without waiving these objections, Plaintiff

6   responds as follows:

7       Plaintiff incorporates her response to Interrogatory number 1-15, and specifically her

8   response to number 13.

9   **INTERROGATORY NO. 17:**

10      If YOU identified a practice or practices in response to Interrogatory No. 15 above, and

11  YOU contend that Microsoft implemented the practice or practices because of their adverse

12  impact on women, state all material facts supporting that contention.

13  **RESPONSE TO INTERROGATORY NO. 17:**

14      Plaintiff incorporates the general objections stated above and reserves her right to

15  supplement her response before trial.  Subject to and without waiving these objections, Plaintiff

16  responds as follows:

17      Plaintiff does not allege that "Microsoft implemented the practice or practices because of

18  their adverse impact on women" in the Second Amended Complaint.  Plaintiff alleges that

19  Microsoft implemented discriminatory policies and practices regarding performance reviews,

20  compensation, and promotions; that those policies had an adverse impact on women; that

21  Microsoft maintained those policies and practices with knowledge of their adverse impact; that

22  those policies and practices are not and cannot be justified by business necessity; and that even if

23  those policies and practices could be justified by business necessity, less discriminatory

24  alternatives exist and would equally serve any alleged necessity.  Plaintiff incorporates her

25  response to Interrogatory number 1-16.

26

AMENDED OBJECTIONS AND RESPONSES TO
INTERROGATORIES
CASE NO. 2:15-CV-01483-JLR

-27-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98121
TEL. 206.739.9059

467   HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

1 **INTERROGATORY NO. 18:**

2      If YOU contend that your WLAD disparate impact claim is not based on discretionary

3 performance decisions, state all material facts that support that contention.

4 **RESPONSE TO INTERROGATORY NO. 18:**

5      Plaintiff incorporates the general objections stated above and reserves her right to

6 supplement her response before trial.  Additionally, Plaintiff objects on the ground that this

7 Interrogatory calls for a legal conclusion.

8 **INTERROGATORY NO. 19:**

9      Identify all individuals by name and by job title who YOU consider to be YOUR

10 comparators for the disparate treatment and disparate impact claims you allege against Microsoft.

11 **RESPONSE TO INTERROGATORY NO. 19:**

12      Plaintiff incorporates the general objections stated above and reserves her right to

13 supplement her response before trial.  Plaintiff also objects that the term comparator is vague and

14 ambiguous.  To the extent that Plaintiff can guess at the meaning and subject to and without

15 waiving these objections, Plaintiff responds as follows:



22 **INTERROGATORY NO. 20:**

23      If YOU identified individuals in response to Interrogatory No. 19 above, state all material

24 facts to support YOUR contention that these individuals are YOUR comparators.

25 **RESPONSE TO INTERROGATORY NO. 20:**

26      Plaintiff incorporates the general objections stated above and reserves her right to

AMENDED OBJECTIONS AND RESPONSES TO
INTERROGATORIES
CASE NO. 2:15-CV-01483-JLR

-28-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98121
TEL. 206.739.9059

468

HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

1   supplement her response before trial.  Subject to and without waiving these objections, Plaintiff

2   responds as follows:

3   ████████████

4   Plaintiff and █████ started in the ████████ and on the ████████

5   ████████████

6   ████████ is a ████████████ He reports to ████████, who in turn reports to

7   ████████████████ Plaintiff has observed that ████████ rose through the ranks much

8   faster than her.  He started working at Microsoft directly ████████████████████████

9   Plaintiff—and was promoted to Software Design Engineer in Test in ████ after less than one

10  year of work; it took Plaintiff three years to achieve this promotion.

11  Plaintiff has worked with Mr. ████ since 2014, and they perform similar work.  For

12  example, in ████, both Plaintiff and Mr. ████ were responsible for coordinating multiple

13  teams' testing and validation for monthly ████████████████ to ensure they did not

14  break ████████████ products.

15  ████████████

16  Plaintiff and ████████ worked on ████████████ and were at a ████████████

17  before he got promoted ahead of her.

18  ████████████

19  ████████████ is a Senior Program Manager.  He reports to ████████████ who in

20  turn reports to ████████████.  Plaintiff is not aware of ████████ level but,

21  based on his title, understands it to be at her same level or higher than hers.

22  Plaintiff worked with ████████ between ████████████ and has worked with ██.

23  ████ from ████████████.  They perform similar work ████████████ of approximately

24  ████████████ For example, during the ████████████ both ████████ and Plaintiff

25  served as the ████████████████████.  Plaintiff  believes that ████

26  ████ is rewarded more favorably than she.

AMENDED OBJECTIONS AND RESPONSES TO
INTERROGATORIES
CASE NO. 2:15-CV-01483-JLR                                                -29-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98121
TEL. 206.739.9059

469                              HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

1   ████████████

2   Plaintiff and ████████ started in ████████████████████████

3   ████████████████

4   ████████████ is a ████████████████████ He reports to ████████████, who in turn

5   reports to ████████████████████. Plaintiff is informed and believes ████████ has been at

6   level 63 since ████████

7   Plaintiff has observed ████████ rise through the ranks much faster than her despite

8   performing similar quality work.  He graduated from college a ████████████████ and started at

9   Microsoft ████████████████████████. He started as a ████████████████████████,

10  in a ████ level at the time than Plaintiff at the time, who at that time was an Operations Program

11  Manager. ████████ was promoted to ████████████████ In ████ when Plaintiff was an

12  IT/OPS Program Manager and he was a Software Engineer II, they were both at level ██ In

13  ████ despite Plaintiff's excellent performance, ████████ was promoted to a level ██, while

14  Plaintiff was not. ████████s new title was ████████████████.

15  Plaintiff worked with ████████████████████████ and has worked with ████████ from

16  ████████████████ They shared the ████████████████████████. They have

17  performed similar work and have both been responsible for tasks related to maintaining the ████

18  Framework.

19

20

21

22

23

24

25

26

AMENDED OBJECTIONS AND RESPONSES TO
INTERROGATORIES
CASE NO. 2:15-CV-01483-JLR                           -30-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98121
TEL. 206.739.9059

470                     HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

1

**VERIFICATION**

2

    I, Holly Muenchow, verify subject to the penalty of perjury that the foregoing answers to

3

interrogatories are true and correct to the best of my knowledge and belief.

4

5

Dated:    May 18, 2016        By: _____

6

Holly Muenchow

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

AMENDED OBJECTIONS AND RESPONSES TO
INTERROGATORIES
CASE NO. 2:15-CV-01483-JLR

-31-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98121
TEL. 206.739.9059

471    HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

1   Dated: May 18, 2016                    By:  /s/ Michael Levin-Gesundheit
2                                               Michael Levin-Gesundheit

3                                          Kelly M. Dermody (*pro hac vice*)
                                           Anne B. Shaver (*pro hac vice*)
                                           Michael Levin-Gesundheit (*pro hac vice*)
4                                          Yaman Salahi (*pro hac vice*)
                                           **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
5                                          275 Battery Street, 29th Floor
                                           San Francisco, California  94111-3339
6                                          Telephone:  (415) 956-1000
                                           Facsimile:  (415) 956-1008
7                                          E-Mail: kdermody@lchb.com
                                           E-Mail: ashaver@lchb.com
8                                          E-Mail: mlevin@lchb.com
                                           E-Mail: ysalahi@lchb.com
9
                                           Sharon M. Lee (Wash. Bar No. 37170)
10                                         **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
                                           2101 Fourth Avenue, Suite 1900
11                                         Seattle, Washington  98121
                                           Telephone:  (206) 739-9059
12                                         Facsimile:  (415) 956-1008
                                           E-Mail: slee@lchb.com
13
                                           Rachel J. Geman (*pro hac vice*)
14                                         **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
                                           250 Hudson Street, 8th Floor
15                                         New York, New York  10013-1413
                                           Telephone: (212) 355-9500
16                                         Facsimile: (212) 355-9592
                                           E-Mail: rgeman@lchb.com
17
                                           Adam T. Klein (*pro hac vice*)
18                                         Cara E. Greene (*pro hac vice*)
                                           Ossai Miazad (*pro hac* vice)
19                                         Elizabeth V. Stork (*pro hac vice*)
                                           **OUTTEN & GOLDEN LLP**
20                                         3 Park Avenue, 29th Floor
                                           New York, New York  10016
21                                         Telephone:  (212) 245-1000
                                           Facsimile:  (646) 509-2060
22                                         E-Mail: ATK@outtengolden.com
                                           E-Mail: CEG@outtengolden.com
23                                         E-Mail: OM@outtengolden.com
                                           E-Mail: estork@outtengolden.com
24

25

26

AMENDED OBJECTIONS AND RESPONSES TO
INTERROGATORIES
CASE NO. 2:15-CV-01483-JLR                    -32-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98121
TEL. 206.739.9059

472          HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY

1   Jahan C. Sagafi (*pro hac vice*)
    Katrina L. Eiland (*pro hac vice*)
2   **OUTTEN & GOLDEN LLP**
    One Embarcadero Center, 38th Floor
3   San Francisco, California  94111
    Telephone:  (415) 638-8800
4   Facsimile: (415) 638-8810
    E-Mail: jsagafi@outtengolden.com
5   E-Mail: keiland@outtengolden.com

6   Michael Subit (Wash. Bar No. 29189)
    **FRANK FREED SUBIT & THOMAS LLP**
7   705 Second Avenue, Suite 1200
    Seattle, Washington  98104
8   Telephone: (206) 682-6711
    Facsimile: (206) 682-0401
9   E-Mail: msubit@frankfreed.com

10  *Attorneys for Plaintiffs and the proposed Class*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

AMENDED OBJECTIONS AND RESPONSES TO
INTERROGATORIES
CASE NO. 2:15-CV-01483-JLR

-33-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98121
TEL. 206.739.9059

473                HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY